**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FOX CORPORATION; FOX MEDIA LLC; FOX SPORTS EN ESPAÑOL LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MEDIA DEPORTES MEXICO, S. de R.L. de C.V.,<br><br>Defendant. | Case No.: 1:25-cv-06703 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION**

**[REDACTED VERSION PUBLICLY FILED]**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ....1

BACKGROUND ....2

A. Defendant Obtains a Non-Exclusive License to Use the Fox Sports Trademarks in Mexico. ....2

1. MDM agreed to the unredacted terms of the Fox-21CF License Agreement. ....4

2. MDM agreed to the forum selection clause in the Fox-21CF License Agreement. ....5

3. MDM was assigned a non-exclusive license to the Fox Sports Trademarks. ....5

4. MDM agreed to the Quality Control provision in the Fox-21CF License Agreement. ....6

B. MDM's Failure to Maintain the Reputation of the Fox Sports Trademarks Leads Fox to Terminate the License Agreement. ....7

C. MDM Obtains an Injunction in Mexico Based on Misrepresentation. ....9

1. MDM obtains an injunction by misrepresenting an order by Mexico's telecommunications regulator. ....9

2. The IFT confirms that MDM was granted a non-exclusive license to the Fox Sports Trademarks. ....10

D. MDM Attempts to Seize Control of the Fox Sports Trademarks and Tortiously Interferes with Fox's Business Relationships ....12

LEGAL STANDARD ....13

ARGUMENT ....14

I. Fox Is Likely to Succeed on the Merits of Its Claims ....14

A. Breach of Contract. ....14

1. MDM breached the 21CF-MDM Assignment Agreement's forum selection provision. ....14

2. Defendant breached the 21CF-MDM Assignment Agreement's Quality Control provision. ....15

B. Tortious Interference With Business Relations. ....15

C. Lanham Act Trademark Infringement ....19

1. MDM uses Fox's marks. ....19

2. Defendant is using Fox's marks in commerce without consent. ....20

3. MDM's unauthorized use of Fox's marks establishes likelihood of confusion. ....27

**TABLE OF CONTENTS**
**(Continued)**

**Page**

II. Fox Will Suffer Irreparable Harm If an Injunction Does Not Issue. ....28
- A. Fox Will Suffer Irreparable Harm If It Is Forced to Litigate in Mexico....28
- B. Fox Will Suffer Irreparable Reputational Harm If an Injunction Does Not Issue. ....28
- C. MDM's Trademark Infringement Constitutes Irreparable Harm....30

III. The Equities and the Public Interest Favor an Injunction....30

IV. Fox Satisfies the Elements for an Anti-Suit Injunction. ....31
- A. Fox Meets *China Trade*'s Threshold Requirements....32
  - 1. The parties are substantially similar. ....32
  - 2. This action will be dispositive of the foreign proceeding....33
- B. Fox satisfies the *China Trade* factors. ....33
  - 1. Frustration of a policy in the enjoining forum....34
  - 2. The foreign proceeding is vexatious....34
  - 3. The foreign proceeding threatens this Court's exclusive jurisdiction. ....34
  - 4. The foreign proceeding prejudices equitable considerations of Fox. ....35
  - 5. The foreign proceeding has caused delay, inconvenience, and expense....35

V. No Notice Is Required. ....36

CONCLUSION....37

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Artisan Mfg. Corp. v. All Granite & Marble Corp.*,
559 F. Supp. 2d 442 (S.D.N.Y. 2008)....................30

*AU New Haven, LLC v. YKK Corp.*,
2018 WL 2128373 (S.D.N.Y. May 8, 2018) ....................34

*Benihana v. Benihana of Tokyo, LLC*,
784 F.3d 887 (2d Cir. 2015)....................31

*Bihari v. Gross*,
119 F. Supp. 2d 309 (S.D.N.Y. 2000)....................27

*Bravo Pizza Enter., Inc. v. Azizo*,
2023 WL 5548372 (E.D.N.Y. Aug. 29, 2023)....................31

*C=Holdings B.V. v. Asairim Corp.*,
992 F. Supp. 2d 223 (S.D.N.Y. 2013)....................27

*Capri Sun GmbH v. Am. Beverage Corp.*,
595 F. Supp. 3d 83 (S.D.N.Y. 2022)....................27

*China Trade & Dev. Corp. v. M.V. Choong Yong*,
837 F.2d 33 (2d Cir. 1987)....................31, 32, 33, 35

*Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*,
794 F.2d 38 (2d Cir. 1986)....................30

*Deutsche Mexico Holdings S.a.r.l. v. Accendo Banco, S.A.*,
2019 WL 5257995 (S.D.N.Y. Oct. 17, 2019) ....................28, 33

*Env. Servs., Inc. v. Recycle Green Servs., Inc.*,
7 F. Supp. 3d 260 (E.D.N.Y. 2014) ....................29

*Forbes IP (HK) Ltd. v. Media Bus. Generators, S.A. de C.V.*,
2024 WL 1743109 (S.D.N.Y. Apr. 23, 2024).................... *passim*

*Harsco Corp. v. Segui*,
91 F.3d 337 (2d Cir. 1996)....................14

*Hart Enter. Int'l, Inc. v. Anhui Provincial Import & Export Corp.*,
888 F. Supp. 587 (S.D.N.Y. 1995) ....................14

*In re Viterra Inc.*,
671 F.3d 1358 (Fed. Cir. 2012)....................20

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*,
441 F. Supp. 2d 552 (S.D.N.Y. 2006)....31, 32

*Jahr Printing & Pub. Co. v. Meredith Corp.*,
991 F.2d 1072 (2d Cir. 1993)....19, 27

*Jolen, Inc. v. Kundan Rice Mills, Ltd.*,
2019 WL 1559173 (S.D.N.Y. Apr. 9, 2019)....34

*Josie Maran Cosmetics, LLC v. Shefa Grp. LLC*,
624 F. Supp. 3d 281 (E.D.N.Y. 2022) ....18

*Kramer v. Lockwood Pension Svcs., Inc.*,
653 F.Supp.2d 354 (S.D.N.Y. 2011)....16

*Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*,
192 F.3d 337 (2d Cir. 1999)....19, 20

*Millennial Plastic Surgery PLLC v. James*,
2021 WL 5988322 (S.D.N.Y. Dec. 16, 2021) ....28

*Motorola Credit Corp. v. Uzan*,
2003 WL 56998 (S.D.N.Y. Jan. 7, 2003) ....32

*Nat'l Coal. on Black Civic Participation v. Wohl*,
498 F. Supp. 3d 457 (S.D.N.Y. 2020)....13

*New York v. U.S. Dep't of Educ.*,
477 F. Supp. 3d 279 (S.D.N.Y. 2020)....13

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
369 F.3d 645 (2d Cir. 2004)....31, 32

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004)....28

*Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*,
754 F. Supp. 2d 616 (S.D.N.Y. 2010)....30

*Scutti Enters., LLC v. Park Place Ent. Corp.*,
322 F.3d 211 (2d Cir. 2003)....15

*Star Indus., Inc. v. Bacardi & Co.*,
412 F.3d 373 (2d Cir. 2005)....27

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*State Street Global Advisors Trust Co. v. Visbal*,
431 F. Supp. 3d 322 (S.D.N.Y. 2020)....................16

*Team Rubicon Global, Ltd. v. Team Rubicon, Inc.*,
2020 WL 2539117 (S.D.N.Y. May 19, 2020) ....................31

*Telebrands Corp. v. Del Laby's, Inc.*,
719 F. Supp. 2d 283 (S.D.N.Y. 2010)....................20

*Transcience Corp. v. Big Time Toys*,
LLC, 50 F. Supp. 3d 441 (S.D.N.Y. 2014) ....................15

*Two Hands IP LLC v. Two Hands Am., Inc.*,
563 F. Supp. 3d 290 (S.D.N.Y. 2021)....................30

*Unicorn Crowdfunding, Inc. v. New St. Enter., Inc.*,
507 F. Supp. 3d 547 (S.D.N.Y. 2020)....................16, 18

*Universal City Studios, Inc. v. Nintendo Co., Ltd.*,
797 F.2d 70 (2d Cir. 1986)....................16

*Videri, Inc. v. ONAWHIM (OAW) Inc.*,
2024 WL 4027980 (S.D.N.Y. Sept. 3, 2024)....................26

*Willis Re Inc. v. Herriott*,
550 F. Supp. 3d 68 (S.D.N.Y. 2021)....................28

**FEDERAL STATUTES**

15 U.S.C.
§ 1065....................20
§ 1114....................19
§ 1116(a) ....................30
§ 1127....................27

**FEDERAL RULES**

Fed. R. Civ. P. 65 ....................13

Fed. R. Civ. P. 65(b)(1)....................2, 36

## PRELIMINARY STATEMENT

Defendant Media Deportes Mexico, S. de R.L. de C.V. ("MDM") is weaponizing the police and trademark office in Mexico, attempting to seize intellectual property that belongs to Plaintiffs and shut down Plaintiffs' business operations, one facility at a time.

To prevent Plaintiffs and their business partners from using Fox Sports trademarks and other marks to which MDM does not have a license, MDM has pursued a bad-faith injunction in Mexico in violation of a binding forum selection clause. That injunction is premised on the false claim that MDM has an exclusive license to the Fox Sports marks. Armed with that wrongfully-obtained injunction, MDM has used it to try to destroy Fox's business.

In the early afternoon on August 11, 2025, attorneys for MDM joined Mexican police and officials from the Mexican Trademark Office to shut down the production facilities of MediaPro, one of Plaintiffs' business partners in Mexico City, relating to purported trademark violations of marks that MDM has no right to use. Yet, due to MDM's actions, the entire MediaPro facility was shut down—all employees removed, all work ground to a halt, with seals across the doors—leaving Plaintiff Fox Sports en Español (a U.S. company that provides Spanish-language programming to viewers in the U.S. with no public-facing presence in Mexico) without its principal live studio operations for its Spanish-language sports news coverage in the U.S.

The raid instigated by MDM has disrupted Plaintiffs' ability to produce and air several live programs in the U.S., including sports news coverage, and MDM has stated it is targeting Plaintiffs' other production facilities in Mexico next. These wrongful acts occurred notwithstanding that MediaPro produces content for Plaintiffs using marks entirely distinct from the Fox Sports marks to which MDM claims rights.

In addition to this raid, MDM has continued to use Fox Sports trademarks after Plaintiffs terminated MDM's non-exclusive license for them. That termination was based on the severe

damage MDM caused to the reputation and goodwill associated with the Fox Sports trademarks. MDM has also injected its wrongful use of the Fox Sports marks into the United States, despite only having a (now-terminated) license expressly limiting its use of the Fox Sports marks to Mexico.

This pattern of lawlessness must be stopped. Plaintiffs' reputation and the goodwill of their intellectual property is being irreparably harmed in Mexico and the United States by MDM's wrongful conduct. Pursuant to Federal Rule of Civil Procedure 65(b)(1), Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC (collectively, "Fox") seek a temporary restraining order without notice and an order to show cause for a preliminary injunction enjoining MDM from (1) using Fox Sports trademarks in Mexico and the United States, (2) pursuing any legal action in Mexico related to the Fox Sports trademarks, and (3) interfering with Fox's business relationships. Immediate injunctive relief is necessary to enforce Fox's contractual rights and relieve the harm that MDM is causing to Fox's reputation and relationships with its business partners.

## BACKGROUND

### A. Defendant Obtains a Non-Exclusive License to Use the Fox Sports Trademarks in Mexico.

Fox Corporation, through its subsidiary Fox Media LLC, is the owner of several registered trademarks with various depictions of the words "Fox Sports." Declaration of Carlos Martinez ("Martinez Decl.") ¶ 4, Exs. 1–12. In 2019, The Walt Disney Company ("Disney") purchased certain portions of Twenty-First Century Fox ("21CF"), while the remainder of 21CF was spun off as Fox Corporation. *Id.* ¶ 3. On March 19, 2019, Fox Corporation granted 21CF a *non-exclusive* license to use certain Fox Sports trademarks, among others. *Id.* ¶ 5, Ex. 13 at 13 (§ 2.1(e)) (the "Fox-21CF License Agreement").

In May 2021, [redacted]

[redacted], on November 10, 2021, 21CF assigned its non-exclusive license to use the Fox Sports Trademarks in Mexico to MDM. *Id.* ¶ 7, Ex. 15. On July 25, 2022, 21CF and MDM entered into an Amended and Restated License Assignment Agreement.[1] *Id.* ¶ 9, Ex. 16. The November 2021 and the July 2022 agreements shall be collectively referred to as the "21CF-MDM Assignment Agreement." The 21CF-MDM Assignment Agreement is substantively identical to [redacted]

[redacted]

[1] The Amended Assignment did not did not alter the non-exclusive or geographical nature of the license to use the Fox Sports Trademarks.

*with id.* ¶ 7, Ex. 15 at 19:

> (e) Grant of International Channel Trademark License. Subject to the terms and conditions of this Agreement, FOX hereby grants to the Remainco Group [redacted] during the International Channel Term [redacted] a non-exclusive, [redacted] irrevocable and royalty-free license to use the International Channel Marks, solely in the International Channel Field in the International Channel Territory (the "International Channel License").

**1. MDM agreed to the unredacted terms of the Fox-21CF License Agreement.**

The 21CF-MDM Assignment Agreement incorporated certain obligations and limitations over the Fox Sports Trademarks from the Fox-21CF License Agreement. The 21CF-MDM Assignment Agreement attached a redacted copy of the Fox-21CF License Agreement and expressly stated that MDM adopted all obligations under the Fox-21CF License Agreement that were not redacted.

> This Amended and Restated License Assignment Agreement (the "Agreement"), dated as of July 25, 2022 (the "Execution Date"), is by and between Media Deportes Mexico, S. de R.L. de C.V, a *sociedad de responsabilidad limitada de capital variable* (limited liability company) organized under the laws of Mexico ("Mexico Newco"), and TFCF Corporation (f/k/a Twenty-First Century Fox, Inc.), a Delaware corporation ("Assignor" and, together with Mexico Newco, each a "Party" and collectively the "Parties"). Any capitalized terms used but not otherwise defined in this Agreement shall have the meaning given to them in the Purchase Agreement (as defined below).

. . .

> 4. Mexico Newco hereby undertakes, with respect to the Fox Sports Trademarks and Fox Sports Domain Names and from and after the Original Execution Date, to meet all of the disclosed obligations of Assignor as set forth in the Redacted TMLA.

. . .

> (d) "Redacted TMLA" means the Trademark License Agreement as attached in redacted form hereto as Exhibit 1.

*Id.* ¶ 9, Ex. 16 at 1-3.

**2. MDM agreed to the forum selection clause in the Fox-21CF License Agreement.**

The 21CF-MDM Assignment Agreement incorporated the forum selection clause of the Fox-21CF License Agreement. Under that provision, Defendant consented to exclusive jurisdiction in New York regarding any and all claims, disputes, controversies, or disagreements between Fox and Defendant related to the Fox Sports Trademarks licensed under the Fox-21CF License Agreement:

> 12.3. Governing Law and Submission to Jurisdiction. This Agreement shall be governed by, and construed in accordance with, the Laws of the State of New York, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws thereof. Each Party irrevocably consents to the exclusive jurisdiction, forum and venue of the Commercial Division of the Supreme Court of the State of New York, New York County and the United States District Court for the Southern District of New York over any and all claims, disputes, controversies or disagreements between the Parties or any of their respective successors and assigns under or related to this Agreement.

*Id.* ¶ 9, Ex. 16 at 28.

**3. MDM was assigned a non-exclusive license to the Fox Sports Trademarks.**

The Fox-21CF License Agreement defined the scope of the license assigned to MDM in the 21CF-MDM Assignment Agreement, including that the license to use the Fox Sports Trademarks was non-exclusive and limited to Mexico:

> TRADEMARK LICENSE AGREEMENT (this "Agreement"), dated as of March 19, 2019 (the "Effective Date"), by and among FOX Corporation ("FOX"), and Twenty-First Century Fox, Inc., a Delaware corporation ("Remainco," and, together with FOX, each a "Party" and collectively the "Parties") [redacted].

> (e) Grant of International Channel Trademark License. Subject to the terms and conditions of this Agreement, FOX hereby grants to the Remainco Group [redacted] during the International Channel Term [redacted] a non-exclusive, [redacted] irrevocable and royalty-free license to use the International Channel Marks, solely in the International Channel Field in the International Channel Territory (the "International Channel License").

*Id.* ¶ 9, Ex. 16 at 11, 17.

The "International Channel Marks" is defined in the 21CF-MDM Assignment Agreement to mean the "Fox Sports Trademarks," which in turn refers to a list of Mexico-registered Fox Sports Trademarks. The International Channel Territory is defined as Mexico:

> (d) the International Channel Marks shall be deemed a reference to the Fox Sports Trademarks;

> (b) "Fox Sports Trademarks" means the trademarks listed on Schedule A attached hereto;

> (f) the International Channel Territory shall be deemed a reference to Mexico;

*Id.* ¶ 9, Ex. 16 at 2-3, *id.* ¶ 7, Ex. 15 at 35-36.

MDM *never* owned an exclusive license to the Fox Sports Trademarks, a license to use those marks in the United States, or a license to any U.S.-registered Fox Sports trademarks.

**4. MDM agreed to the Quality Control provision in the Fox-21CF License Agreement.**

Under the Fox-21CF License Agreement, the licensee affirmed its familiarity with "the high standards, quality, style, and image of the Trademarks to which it receives a license under this Agreement" and was prohibited from using the marks in a manner that would have an adverse effect on the image or reputation of the Fox Sports Trademarks or Fox Corporation:

> 4. Quality Control.
>
> 4.1. Quality. Each Party acknowledges and is familiar with the high standards, quality, style, and image of the Trademarks to which it receives a license under this Agreement and shall, at all times, conduct its business under such Trademarks and use such Trademarks in a manner consistent with these standards, quality, style, and image. [Redacted]. Each Party shall ensure that all services and goods provided by it, under or in association with any of the Trademarks to which it receives a license under this Agreement, shall (i) be substantially the same as or greater than the quality of the services and goods provided under such Trademarks as of the Distribution Effective Time and (ii) not have an adverse effect on the image or reputation of any such Trademarks,

> Remainco, or FOX. Without the other Party's prior written consent, a Party shall not: (i) knowingly take any action which would reasonably be expected to dilute or impair the Trademarks to which it receives a license under this Agreement, or tarnish or bring into disrepute the reputation of or goodwill associated with such Trademarks or (ii) use the Trademarks to which it receives a license under this Agreement in any jurisdiction, including within the Licensed Territory, after such time that such Party has received a judgement from a court of competent jurisdiction that such use infringes, dilutes or otherwise violates the trademark rights or other proprietary rights of another Person.

*Id.* ¶ 59, Ex. 13 at 19-20. That provision was incorporated into the 21CF-MDM Assignment Agreement. *Id.* ¶ 9, Ex. 16 at 3, 20-21.

### B. MDM's Failure to Maintain the Reputation of the Fox Sports Trademarks Leads Fox to Terminate the License Agreement.

Since securing a license to use the Fox Sports Trademarks, MDM, in concert with its U.S. affiliate Mexico Sports Distribution LLC ("MSD"), has conducted business under the name "Fox Sports Mexico" and entered into contracts to broadcast major sporting events in Mexico, including with the National Football League and many Mexican soccer clubs. *Id.* ¶ 10. MDM and MSD have repeatedly failed to pay licensing fees for these broadcasts. *Id*. Since January 2024, MDM and MSD have had broadcasts interrupted or lost licensing rights from the following for failure to pay licensing fees—all reported in the media:

1. Liga Mx Club Monterrey, *id.* ¶ 12, Ex. 17 at 4;[2]

2. Liga Mx Club Tijuana, *id.*, Ex. 18;

3. Liga Mx Club Queretaro, *id.*, Ex. 18;

4. National Football League, *id.*, Ex. 19;

5. Liga Mx Club Pachuca and Leon, *id.*, Ex. 20;

6. Liga Mx Club Juarez, *id.*, Ex. 21;

7. Concacaf Champions Cup, *id.*, Ex. 22;

8. Kings and Queens League, *id.*, Ex. 23;

9. Liga Mx Club Mazatlan, *id.*, Ex. 24;

10. Liga Mx Club Puebla, *id.*, Ex. 24;

11. Formula One, *id.*, Exs. 25, 26.

[2] Given the exigency of this motion, Plaintiffs have provided the Court with English translations created by Google Translate of certain Spanish-language documents. Plaintiffs will submit certified translations of these documents as soon as they are available.

These rights losses were publicized in a manner that damaged the reputation of Fox and the Fox Sports Trademarks. After MDM and MSD failed to pay licensing fees owed to the NFL, the NFL posted the following:




*Id.* ¶ 13, Ex. 27.

In March 2025, Fox Corporation informed MDM that it was terminating MDM 's license to use the Fox Sports Trademarks based on MDM's material breach of Section 4.1—the Quality Control provision. *Id.* ¶ 14, Ex. 28. Fox Corporation cited numerous instances of MDM damaging the reputation and goodwill of the Fox Sports Trademarks by associating the marks with MDM's repeated failures to pay licensing fees and the negative press that followed. *Id.,* Ex. 28 at 1–3.

### C. MDM Obtains an Injunction in Mexico Based on Misrepresentation.

#### 1. MDM obtains an injunction by misrepresenting an order by Mexico's telecommunications regulator.

Despite the termination of the license, not only did Defendant refuse to cease using the

Fox Sports Trademarks, it attempted to prevent Fox from using those marks in Mexico and the equivalent marks in the U.S. On March 26, 2025, MDM and its affiliate MSD obtained a no-notice injunction from a court in Mexico City (the "Judicial Trademark Injunction") premised on a false representation about MSD having an exclusive license to use the Fox Sports Trademarks in Mexico. Declaration of Christopher T. Berg ("Berg Decl.") ¶ 3, Ex. 29. The Judicial Trademark Injunction enjoined Fox Corporation, Fox Media, and others from interfering with MDM's purported rights to use the Fox Sports Trademarks. *See id.*, ¶ 3, Ex. 29 at 8-12. It also prohibited Fox and its business partners (identifying seventeen) from using Fox's "Fox Deportes" mark, a distinct, Mexico-registered trademark that was not enumerated in the 21CF-MDM Assignment Agreement. *Id.* ¶ 3, Ex. 29 at 8-12; *see also* Martinez Decl. ¶ 19, Ex. 35.

The false allegation at the heart of MDM's injunction request was that MDM had an *exclusive* license to use the Fox Sports Trademarks. MDM claimed that Mexico's telecommunications regulator, the Instituto Federal de Telecomunicaciones ("IFT"), had issued a resolution in 2019 (the "2019 IFT Resolution") requiring that license for the Fox Sports Trademarks be for MDM's exclusive use. *Id.* ¶ 4, Ex. 30 at 10-13. In reality, the 2019 IFT Resolution required only that any license for the Fox Sports Trademarks be used exclusively for sports content (rather than for other content). Martinez Decl. ¶ 16, Ex. 31 at 44-45. Defendant did not reveal to the Mexico City court that the language of the 21CF-MDM Assignment Agreement expressly granted a non-exclusive license. Berg Decl. ¶ 4, Ex. 30.

**2. The IFT confirms that MDM was granted a non-exclusive license to the Fox Sports Trademarks.**

The IFT was responsible for granting regulatory approval over Disney's acquisition of 21CF as it pertained to antitrust issues in Mexico. Martinez Decl. ¶ 15. It conditioned approval of the acquisition on Disney divesting the "Fox Sports" assets it acquired from 21CF. *Id.* ¶¶ 15–

16, Ex. 31. With respect to the Fox Sports Trademarks, the IFT required: "Once the sale of the Business to be Divested is complete, the name 'Fox' shall be offered to the Buyer under an exclusive, gratuitous license for sports content, to be used in accordance with the current use given to it by the Business to be Divested." *Id.* ¶ 18, Ex. 32 at 6.

Disney satisfied that condition when certain of its subsidiaries entered into the EPA, Exhibit B of which contains a form License Assignment Agreement listing MDM as the assignee to use the Fox Sports Trademarks in Mexico. *Id.* ¶ 6, Ex. 14 at 84. That form agreement is substantively identical to the 21CF-MDM Assignment Agreement, including attaching as Exhibit 1 a redacted version of the Fox-21CF License Agreement that contains the provision defining the Fox Sports Trademarks license as "non-exclusive."

MDM has taken the position that the 2019 IFT Resolution mandated an exclusive license regardless of what the Fox-21CF License Agreement grants. Berg Decl. ¶ 4, Ex. 30 at 13. That is wrong. On April 28, 2025, Fox requested that the IFT issue a letter explaining that the 2019 IFT Resolution did not order issuance of an exclusive license to MDM. Martinez Decl. ¶ 17. On July 14, 2025, the IFT responded (the "IFT Letter") and made clear it had authorized and approved the language of the EPA and 21CF-MDM Assignment Agreement, which define the Fox Sports Trademarks license as non-exclusive. *Id.* ¶ 18, Ex. 32 at 9-10. The IFT further explained that the form License Assignment Agreement attached as Exhibit B to the EPA incorporated and complied with the requirements of Section 8.4.12.4 of the 2019 IFT Resolution, *id.* ¶ 18, Ex. 32 at 9—which required that "the name 'Fox' shall be offered to the Buyer under an exclusive, gratuitous license for sports content," *id.* ¶ 18, Ex. 32 at 6. The IFT also explained that it authorized and approved the 21CF-MDM Assignment Agreement, which also contains the non-exclusive license language for the Fox Sports Trademarks. *Id.* ¶ 18, Ex. 32 at 9.

Accordingly, the IFT authorized the grant of a *non-exclusive* license to MDM to use the Fox Sports Trademarks. The July IFT Letter establishes that there was no IFT resolution that somehow overrode the non-exclusive license language in the 21CF-MDM Assignment Agreement.

### D. MDM Attempts to Seize Control of the Fox Sports Trademarks and Tortiously Interferes with Fox's Business Relationships

In the last few months, MDM has interfered with Fox's business relationships. MDM, with its affiliate MSD, has sought provisional injunctive relief from Mexico's Trademark Office, the Instituto Mexicano de la Propriedad Industrial ("IMPI"), based on the same false representations that Defendant had an exclusive license to the Fox Sports Trademarks and that the IFT had required as much. Berg Decl. ¶ 5, Ex. 33, at 7. On April 11, 2025, MDM induced IMPI to issue a no-notice order (the "IMPI Raid Order"), which incorporated the Judicial Trademark Injunction and authorized IMPI officials to raid Audiovisuales Media Pro Mexico, S.A. de C.V. (MEXICO) ("MediaPro"), Berg Decl. ¶ 6, Ex. 34 at 2-4, one of Fox's broadcast production partners in Mexico that creates streaming content for "Fox en Tubi" in Mexico and television content for "Fox Deportes" in the United States, Martinez Decl. ¶ 23. Fox had no knowledge of the IMPI Raid Order and no opportunity to oppose. *Id.*

On June 27, 2025, IMPI, along with lawyers for MDM, attempted to raid MediaPro's production studios in Mexico to confiscate any display of the Fox Sports Trademarks. Declaration of Juan Carlos Ortiz Rico ("Rico Decl.") ¶¶ 4-6; Declaration of Guadalupe Jocelyn Cueva Sanchez ("Sanchez Decl.") ¶¶ 4-5. The basis for this raid—that MDM has an exclusive license—was lawless. Berg Decl. ¶ 6, Ex. 34. Nevertheless, a group of IMPI officials and lawyers for MDM demanded access to MediaPro's offices. MediaPro refused IMPI entry. Rico Decl. ¶ 6; Sanchez Decl. ¶ 5.

On August 11, 2025, MDM's lawyers, Mexican police, and IMPI officials returned and shut down MediaPro's production facilities in Mexico City. Declaration of Brisa Ha Miranda Gonzalez ("Gonzalez Decl.") ¶ 4. All MediaPro employees were required to exit the building, all work stopped, and the doors were sealed. *Id.* This raid has left Fox without its principal live studio operations for its Spanish-speaking sports news coverage in the United States. Martinez Decl. ¶ 27. As Fox scrambles to restore its ability to service its Spanish-speaking audience in the U.S., it incurs daily losses of approximately $60,000 a day. *Id.* Defendant is targeting other studios next. Berg Decl. ¶ 20.

Since the June raid, MediaPro has required Fox to provide evidence that it has rights to the trademarks that MediaPro uses to produce content on Fox's behalf, and to indemnify MediaPro for any injury arising from use of marks in production of Fox content. Martinez Decl. ¶ 25. Fox has incurred economic loss as a result. *Id.*

MDM continues unauthorized use the Fox Sports Trademarks with impunity. It has breached the forum selection clause of the 21CF-MDM Assignment Agreement by using the Mexican legal system to deprive Fox of its rights through wrongful judicial and administrative orders, interfering with Fox's business partners and damaging Fox's reputation. Fox has no choice but to seek injunctive relief.

## LEGAL STANDARD

The standards for a temporary restraining order and a preliminary injunction pursuant to Rule 65 are identical. *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 469 (S.D.N.Y. 2020). A party "must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest." *New York v. U.S. Dep't of Educ.*, 477 F. Supp. 3d 279, 293 (S.D.N.Y. 2020).

## ARGUMENT

### I. Fox Is Likely to Succeed on the Merits of Its Claims.

#### A. Breach of Contract.

Defendant breached the forum selection clause of the 21CF-MDM Assignment Agreement by seeking the Judicial Trademark Injunction, failing to maintain the high quality of the Fox Sports Trademarks, and adversely impacting the reputation and goodwill associated with those marks.

To state a claim for breach of contract under New York law, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir. 1996). Here, there can be no dispute that an agreement exists, and that Fox performed under the contract by granting a license to use the Fox Sports Trademarks.

##### 1. MDM breached the 21CF-MDM Assignment Agreement's forum selection provision.

MDM is bound by a forum selection clause requiring it to bring any dispute or controversy related to the Fox Sports Trademarks in New York. Martinez Decl. ¶ 9, Ex. 16 at 3 §§ 4-5, at 28 § 12.3. MDM breached by initiating injunctive proceedings in Mexico, Berg Decl. ¶ 3, Ex. 29, and damaging Fox Corporation by depriving it of the benefit of the forum selection clause. The existence of this foreign proceeding satisfies Fox's showing that it is likely to succeed on the merits for its claim of breach of contract.[3] *See Forbes IP (HK) Ltd. v. Media Bus. Generators, S.A. de C.V.*, 2024 WL 1743109, at *7 (S.D.N.Y. Apr. 23, 2024) ("filing for the

---

[3] MDM has asserted that Fox cannot assert a breach of the 21CF-MDM Assignment Agreement because it is not a party to it. That is wrong. Where an assignee has affirmatively "assumed the duty of performance of the contracts," the contract is enforceable against that party by the non-assigning party. *Hart Enter. Int'l, Inc. v. Anhui Provincial Import & Export Corp.*, 888 F. Supp. 587, 590 (S.D.N.Y. 1995).

Mexico Injunction" established likelihood of success on breach claim).

**2. Defendant breached the 21CF-MDM Assignment Agreement's Quality Control provision.**

Fox is likely to succeed in proving that MDM breached the Quality Control provision of the 21CF-MDM Assignment Agreement. MDM was obligated to maintain the high quality of the Fox Sports Trademarks. *See* Martinez Decl. ¶ 9, Ex. 16 at 3 §§ 4-5, at 20-21 § 4.1. MDM breached these obligations by failing to pay, or directing its affiliate MSD not to pay, contractually-required license fees to multiple licensors. This breach resulted in broadcast disruptions or lost contract rights to sports properties, harming the reputation of the Fox Sports Trademarks and Fox Corporation. That conduct has damaged the reputation and goodwill associated with the Fox Sports Trademarks, in breach of the Quality Control provision. This reputational damage is particularly severe because the loss of contract rights and broadcast disruptions have been widely reported in the media. *Id.* ¶¶ 12-13, Exs. 17–27. Accordingly, Fox is likely to succeed on the merits of its breach of contract claim.[4]

**B. Tortious Interference With Business Relations.**

MDM has initiated bad-faith litigation to tortiously interfere with Fox Corporation and Fox en Español's business relations.

To prevail on this claim, Fox must show (1) the existence of "business relations with a third party," (2) that MDM "interfered with those business relations," (3) that MDM "acted for a wrongful purpose or used dishonest, unfair, or improper means," and (4) that MDM's "acts injured the relationship." *Scutti Enters., LLC v. Park Place Ent. Corp.*, 322 F.3d 211, 215 (2d

[4] The 21CF-MDM License Agreement permits injunctive relief after termination. *See* Martinez Decl. ¶ 9, Ex. 16, at 27 § 10.3. Termination of a license does not preclude a breach of contract claim on that agreement. *See Transcience Corp. v. Big Time Toys,* LLC, 50 F. Supp. 3d 441, 450 (S.D.N.Y. 2014).

Cir. 2003). Improper or wrongful means includes the initiation of bad-faith litigation. *See Unicorn Crowdfunding, Inc. v. New St. Enter., Inc.*, 507 F. Supp. 3d 547, 567 (S.D.N.Y. 2020).

Defendant has filed bad-faith litigation in Mexico to interfere with Fox's business relationships. *First*, Defendant's bad-faith litigation has targeted specific business relationships maintained by Fox, most notably with MediaPro, as well as 17 others identified in the Judicial Trademark Injunction. *See* Berg Decl. ¶ 3, Ex. 29.

*Second*, MDM interfered with those relationships. Most obviously, MDM caused IMPI to raid MediaPro's production studios—including shutting them down. *Id.* ¶ 6, Ex. 34; Rico Decl. ¶¶ 4-8; Sanchez Decl. ¶¶ 4-5; Gonzalez Decl. ¶ 4. After MDM named 17 of Fox's business partners in the Judicial Trademark Injunction and requested that the issuing court notify those partners, Fox received calls from at least two of those business partners requesting an explanation of Fox's legal basis to do business in Mexico. Martinez Decl. ¶ 20.

*Third*, MDM's conduct was done for a wrongful purpose and used improper means. Bad-faith litigation constitutes a wrongful purpose via improper means. *See Kramer v. Lockwood Pension Svcs., Inc.*, 653 F.Supp.2d 354, 382 (S.D.N.Y. 2011). This element is satisfied where "(1) the defendant has no belief in the merit of the litigation, or (2) the defendant otherwise institutes or threatens to institute litigation in bad faith, intending only to harass the third parties and not to bring its claim to definitive adjudication." *Unicorn Crowdfunding*, 507 F. Supp. 3d at 567 (quotes omitted)). MDM must either have had "no belief in the merit of the litigation" or "having some belief in the merits of the suit, nevertheless institute[d] or threatened to institute the litigation in bad faith." *State Street Global Advisors Trust Co. v. Visbal*, 431 F. Supp. 3d 322, 351 (S.D.N.Y. 2020). This element is satisfied where a defendant knows it does "not have a trademark," and nevertheless threatens suit "to coerce others." *Universal City Studios, Inc. v.*

*Nintendo Co., Ltd.*, 797 F.2d 70, 75 (2d Cir. 1986).

The plain language of the 21CF-MDM Assignment Agreement unambiguously grants a *non-exclusive* license to use the Fox Sports Trademarks to MDM. Martinez Decl. ¶ 9, Ex. 16 at 17 § 2.1(e). In bad faith, MDM concealed from the Mexico court the language in the 21CF-MDM Assignment Agreement that grants a non-exclusive license. *See* Berg Decl. ¶ 4, Ex. 30; *id.* ¶ 5, Ex. 33 at 1-38.

MDM knows it does not have an exclusive license to use the Fox Sports Trademarks. And yet, MDM has obtained an injunction and raid order by claiming it has one—quintessential bad faith. . Berg Decl. ¶ 4, Ex. 30 at 6-10; *id.* ¶ 5, Ex. 33 at 7.

MDM has announced it *knows* it lacks an exclusive license, publishing in a newspaper on May 9, 2025 that the owner of the Fox Sports registrations (*i.e.*, Fox) is authorized to use and exploit the Fox Sports Trademarks: "[O]nly the owner of said registrations and/or [MDM], in its capacity as exclusive licensee, are authorized to use and exploit the aforementioned trademarks." *Id.* ¶ 5, Ex. 33 at 71.

MDM knew from its license agreement that Fox Corporation was the owner of the registrations for the Fox Sports Trademarks,[5] *see* Martinez Decl. ¶ 9, Ex. 16 at 1, 21 § 5.1, and its May announcement thus admits that Fox has the right to use them, *see* Berg Decl. ¶ 5, Ex. 33 at 71.

MDM has also argued that the 2019 IFT Resolution required any license for the Fox Sports Trademarks to allow for exclusive use of the marks. Berg Decl. ¶ 5, Ex. 33. That is a flagrant misreading. That resolution required only that any license for the Fox Sports Trademarks must be used exclusively for the broadcast of sports content. Martinez Decl. ¶ 16,

---

[5] After entering into the Fox-21CF License Agreement, Fox Corporation transferred ownership of the Fox Sports Trademarks to Fox Media LLC. Martinez Decl. ¶ 8.

Ex. 31 at 279-80; *see also id.* ¶ 18, Ex. 32 at 6.

The IFT recently confirmed that the 2019 IFT Resolution did not order an exclusive license be granted to MDM. The IFT explained that it approved [redacted] and the 21CF-MDM Assignment Agreement, and reaffirmed that those agreements govern the relationship between Fox, Disney, and MDM as it pertains to the Fox Sports Trademarks. Martinez Decl. ¶ 18, Ex. 32. Because those agreements create a non-exclusive license over the Fox Sports Trademarks, the IFT Letter shows that MDM misconstrued the 2019 IFT Resolution in bad faith.

MDM sought the Judicial Trademark Injunction to harass rather than "to bring its claim to definitive adjudication." *Unicorn Crowdfunding*, 507 F. Supp. 3d at 567 (quotation and citation omitted). The Judicial Trademark Injunction was issued on March 26, 2025. Berg Decl. ¶ 3, Ex. 29. Over four months later, MDM has not served a complaint to litigate the claims on which the Injunction was purportedly based. Martinez Decl. ¶ 22. That delay demonstrates that MDM is using the injunction to harass Fox and its business partners with no interest in adjudicating claims.

*Fourth*, Fox's relationships with its partners, including MediaPro, have been injured as the result of MDM's bad-faith litigation. MediaPro now requires Fox to indemnify any legal exposure arising out of the use of trademarks in Fox productions. Martinez Decl. ¶ 25. That indemnification expense constitutes a loss of revenue for Fox and a disruption of its relationship with MediaPro. *Id.*; *see also Josie Maran Cosmetics, LLC v. Shefa Grp. LLC*, 624 F. Supp. 3d 281, 295 (E.D.N.Y. 2022). MediaPro also requires Fox to prove that it has the right to use any trademarks included in the broadcasts MediaPro produces for Fox. Martinez Decl. ¶ 25. Those new requirements did not exist prior to the June IMPI raid. *Id.*. Moreover, following the August

IMPI raid, Fox has been incurring costs of $60,000 per day, including talent costs, crew costs, engineering costs, and other technical costs. *Id.* ¶ 27. That shutdown also has caused reputational harm to Fox, as Fox has had to been unable to provide its Spanish-speaking viewership with its regularly scheduled live programming with its principal on-air talent. *Id.* ¶¶ 28-29.

Additional interference against the 17 business partners named in the Judicial Trademark Injunction, and against other Fox partners, is highly likely and imminent. Prospective relief enjoining MDM from taking actions to interfere with those relationships is warranted to save Fox from incurring additional economic loss and reputational injury. Fox is likely to succeed on the merits of its claim for tortious interference with business relations.

### C. Lanham Act Trademark Infringement

Fox is likely to succeed on its claim for trademark infringement under 15 U.S.C. § 1114 for MDM's use of Fox's marks in the U.S. Fox "must show that defendant (1) without consent, (2) used in commerce, (3) a reproduction, copy or colorable imitation of plaintiff's registered mark, as part of the sale or distribution of goods or services, and (4) that such a use is likely to cause confusion." *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993).

#### 1. MDM uses Fox's marks.

Fox Media has registered in the U.S. marks that are identical to the Fox Sports Trademarks registered in Mexico. "A certificate of registration with the PTO is prima facie evidence that the mark is registered and valid (i.e., protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." *Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999). "Registration by the PTO without proof of secondary meaning creates the presumption that the mark is more than merely

descriptive, and, thus, that the mark is inherently distinctive." *Id.* Fox Media's registered marks are incontestable, as affidavits of continuous use and incontestability have been filed with the U.S. Patent & Trademark Office. 15 U.S.C. § 1065. The relevant trademarks are listed in the Berg Declaration at paragraph 7, with their corresponding registrations and affidavits located in Exhibits 36-45.[6] The marks include (1) three standard character marks[7] for the words "Fox Sports," Berg Decl. ¶¶ 7(A)-(C), Exs. 36-41; and (2) two design marks for a "Fox Sports" logo consisting of "Fox Sports" in a stylized oval (depicted below), *id.* ¶¶ 7(D)-(E), Exs. 42-45:

The registration of both the "Fox Sports" characters and the stylized oval design of "Fox Sports" shows that Fox Media owns those marks and has the right to exclusively use them in commerce.

**2. Defendant is using Fox's marks in commerce without consent.**

MDM is using Fox Media's marks in commerce without Fox Media's consent on a widespread scale. Defendant uses the "Fox Sports" standard characters in the form of a stylized logo on its website http://foxsports.com.mx, which is accessible in the U.S.:

---

[6] The Court may take judicial notice of official records of the USPTO. *Telebrands Corp. v. Del Laby's, Inc.*, 719 F. Supp. 2d 283, 287 n.3 (S.D.N.Y. 2010).

[7] "If a mark . . . is presented in standard characters, the owner of the mark is not limited to any particular depiction of the mark." *In re Viterra Inc.*, 671 F.3d 1358, 1363 (Fed. Cir. 2012). Any depiction of the standard characters "Fox Sports" is protected.




*Id.* ¶ 8, Ex. 46. Lest there be any doubt as to who is responsible for this webpage, MDM claims ownership of the copyright at the bottom of the page of http://foxsports.com.mx.

© 2024 Copyright, Media Deportes México, S. de R.L. de C.V.

*Id.* ¶ 8, Ex. 46 at 8.

MDM uses Fox's stylized "Fox Sports" oval design mark on its website and on its YouTube videos.


Usuario
Contraseña
INICIAR SESIÓN
OLVIDASTE TU CONTRASEÑA?
or
REGISTRAR CUENTA

*Id.* ¶ 9, Ex. 47.




*Id.* ¶ 13, Ex. 51.

MDM uses the "Fox Sports" standard characters in the form of a stylized logo on its Facebook page, its X, YouTube, Instagram, and TikTok accounts.


Search Facebook
FOX SPORTS
FOX Sports MX
1.7M likes • 7M followers
Message
Like
Search
Posts
About
Mentions
Reels
Photos
Videos
More
Intro
La página Oficial de Facebook de FOX Sports México
Page · TV channel
foxsports.com.mx
Featured
FOX Sports MX
21h
Chicago vibra con UFC 319: Du Plessis vs Chimaev en una guerra por el trono, y Loopy Godínez...
FOX Sports MX
September 19, 2023
¡SÍGUENOS EN WHATSAPP CHANNELS!
Únete a nuestro canal y continúa

*Id.* ¶ 10, Ex. 48.




*Id.* ¶ 11, Ex. 49.




*Id.* ¶ 12, Ex. 50.




*Id.* ¶ 14, Ex. 52.




*Id.* ¶ 15, Ex. 53.

None of these uses is authorized. Martinez Decl. ¶ 24. These unauthorized uses interfere with Fox's ability to offer its own Fox Sports products to viewers in the U.S. Use of an infringing mark on the internet is "use in commerce." *Videri, Inc. v. ONAWHIM (OAW) Inc.*,

2024 WL 4027980, at *11 (S.D.N.Y. Sept. 3, 2024) (collecting cases). MDM's unauthorized uses of the Fox Sports marks in the United States are likely to divert or misdirect viewers in the U.S. by "using [Fox's] mark to trick Internet users into visiting defendant[s'] website, believing either that they were visiting [Fox's] website or that the defendant[s]' website was sponsored by [Fox]." *Bihari v. Gross*, 119 F. Supp. 2d 309, 321 (S.D.N.Y. 2000). Defendant has therefore infringed Fox Media's marks.

**3. MDM's unauthorized use of Fox's marks establishes likelihood of confusion.**

Defendant's unauthorized use of the Fox Sports marks is likely to confuse consumers into associating Fox with that use. Plaintiffs must prove the likelihood of confusion among "ordinary prudent purchasers." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 384 (2d Cir. 2005) (quoting *Gruner + Jahr*, 991 F.2d at 1077).

Here, MDM is using counterfeit marks that are identical to Fox's U.S.-registered marks on websites and social media, all of which are accessible in the United States. Unauthorized use of a mark establishes likelihood of confusion as a matter of law. *See Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 147 (S.D.N.Y. 2022) (collecting authorities finding "likelihood of confusion" as a matter of law where marks are "identical"); 15 U.S.C. § 1127 (defining a "counterfeit" mark as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark"). "Given that a counterfeit mark," like the marks that MDM has used here, "is 'inherently confusing,' consumer confusion is presumed in such cases." *C=Holdings B.V. v. Asairim Corp.*, 992 F. Supp. 2d 223, 241 (S.D.N.Y. 2013).

Fox is likely to succeed on the merits of its Lanham Act claim for trademark infringement.

## II. Fox Will Suffer Irreparable Harm If an Injunction Does Not Issue.

### A. Fox Will Suffer Irreparable Harm If It Is Forced to Litigate in Mexico.

Irreparable harm is shown when a party violates the forum selection clause of an agreement. *See Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 98 (S.D.N.Y. 2021) ("'[D]ragging' Plaintiffs into 'litigation in a court other than the court' for which they bargained 'constitutes irreparable harm.'") (quoting *Deutsche Mexico Holdings S.a.r.l. v. Accendo Banco, S.A.*, 2019 WL 5257995, at *7 (S.D.N.Y. Oct. 17, 2019)). MDM sought and obtained the Judicial Trademark Injunction, Berg Decl. ¶ 3, Exs. 29, notwithstanding being bound by an exclusive forum selection clause for disputes related to the Fox Sports Trademarks, Martinez Decl. ¶ 7, Ex. 16 at 28 § 12.3. The existence of that litigation in Mexico satisfies Fox's showing of irreparable harm. *Forbes IP*, 2024 WL 1743109, at *7.

### B. Fox Will Suffer Irreparable Reputational Harm If an Injunction Does Not Issue.

MDM's violation of the forum selection clause is sufficient to establish irreparable harm. But Fox would suffer additional irreparable harm to its reputation without an injunction. Impairment of goodwill and the loss of control over reputation constitute irreparable harm. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (breach of contract constitutes irreparable harm if the breach causes "loss of reputation"). Reputational injury is considered irreparable because the damages associated with it are "difficult to establish and measure." *Id.*; *see also Millennial Plastic Surgery PLLC v. James*, 2021 WL 5988322, at *2 (S.D.N.Y. Dec. 16, 2021)..

MDM's continued abuse of the Fox Sports Trademarks will cause Fox irreparable reputational harm. Fox is a competitor in the sports broadcast market in Mexico. *See* Martinez Decl. ¶ 29. The continued unauthorized use of the Fox Sports Trademarks alongside MDM's

inept management of its licensing rights will cause the Mexican public to associate the Fox Sports brand with poor business practices and the inability to provide reliable sports content to viewers. That association, in turn, will significantly impair—in a certain but difficult-to-quantify manner—Fox's current and future ability to broadcast sports in Mexico because Mexican viewers will likely associate Fox with MDM and MDM's public-facing brand, Fox Sports Mexico. *Id.* ¶ 29. MDM's continued use of the Fox Sports Trademarks will thus continue to harm the reputation of the marks and the reputation of Fox as the owner of the marks.

Likewise, Fox will experience irreparable reputational harm with its business partners if MDM is not enjoined from using bad-faith litigation to interfere with those relationships. *See Env. Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 280-81, 283 (E.D.N.Y. 2014) (granting preliminary injunction to enjoin competitor from interfering with customer contracts based on damage to the plaintiff's reputation). Convincing a Mexico court to provide formal notice of a meritless injunction to 17 of Fox's business partners is severely damaging to Fox's reputation. Now that Defendant is starting to take more drastic action against Fox's business partners, like shutting down MediaPro, the threat of continued and escalating reputational injury is acute, with injury already sustained: Fox has lost studio operations.

Furthermore, without an injunction, Fox faces another distinct reputational injury arising from MDM's tortious interference. The business partners that MDM has targeted are the business relationships that allow Fox to provide content to its viewers—they are predominantly production studios and content distributors. Martinez Decl. ¶¶ 21, 23, 27. If MDM is permitted to continue to encroach on Fox's ability to produce content, as in the example of MediaPro, then Fox will be prevented from providing sports content to its viewers. Where "the dispute between the parties leaves one party unable to provide its product to customers," the consequent damage

to the impacted party's goodwill and reputation is irreparable. *Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 621 (S.D.N.Y. 2010). As of August 11, MDM has prevented Fox from providing its broadcasting-product to its Spanish-language audience in the U.S. after IMPI shut down MediaPro's production studios at MDM's behest. Martinez Decl. ¶ 27.

Fox will suffer irreparable reputational harm with Fox's business partners, the Mexican public, and Fox's Spanish-speaking viewership in the U.S. if an injunction does not issue.

**C. MDM's Trademark Infringement Constitutes Irreparable Harm.**

Finally, MDM's unauthorized use of Fox Media's marks in the U.S. constitutes irreparable harm. "In the trademark infringement context, a requisite showing of success on the merits generally establishes a risk of irreparable harm." *Artisan Mfg. Corp. v. All Granite & Marble Corp.*, 559 F. Supp. 2d 442, 449 (S.D.N.Y. 2008). In particular, "a licensor who establishes a likelihood of confusion as to product source in a trademark infringement suit simultaneously demonstrates the requisite irreparable harm essential to obtaining a preliminary injunction." *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 43 (2d Cir. 1986). Likewise, "a plaintiff seeking a preliminary injunction is entitled to a rebuttable presumption of irreparable harm upon a court's finding a likelihood of success on the merits." *Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 300 (S.D.N.Y. 2021) (citing 15 U.S.C. § 1116(a)). Because Fox Media is likely to succeed on the merits of its trademark infringement claim, Fox will suffer irreparable harm if an injunction is not issued.

**III. The Equities and the Public Interest Favor an Injunction.**

Both the equities and the public interest weigh Fox's favor. Without an injunction, Fox will also be denied its contractual right to the forum-selection clause and continue to suffer irreparable harm by MDM's wrongful use of its marks. It is no hardship for MDM to be ordered

to abide by its legal obligations. *See Benihana v. Benihana of Tokyo, LLC*, 784 F.3d 887, 897 (2d Cir. 2015)..

The public interest also weighs in favor of Fox. It is well-settled that "[t]he public has an interest in strict enforcement of contract provisions and trademark laws." *Team Rubicon Global, Ltd. v. Team Rubicon, Inc.*, 2020 WL 2539117, at *7 (S.D.N.Y. May 19, 2020); *see Benihana*, 784 F.3d at 897 ("[T]he public interest here is served by the enforcement of the parties' lawful agreement."); *Bravo Pizza Enter., Inc. v. Azizo*, 2023 WL 5548372, at *6 (E.D.N.Y. Aug. 29, 2023) (public interest served where injunction protects consuming public "from confusion, deception and mistake.'")

**IV. Fox Satisfies the Elements for an Anti-Suit Injunction.**

In addition to seeking an injunction enjoining MDM from using the Fox Sports Trademarks and interfering with its business relationships, Fox seeks to enjoin MDM from enforcing the Judicial Trademark Injunction. Fox bases its request for an anti-suit injunction exclusively on MDM's violation of the forum selection clause.

It is "beyond question" that the Court may "enjoin a party before it from pursuing litigation in a foreign forum." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004) (citing *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987)). A court may issue a foreign anti-suit injunction when two threshold requirements are met and the balancing of five discretionary factors weighs in favor of issuing the injunction. First, an injunction may issue if (1) the parties are substantially similar in both matters and (2) resolution of the case before the enjoining court is dispositive of the action to be enjoined. *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.,* 441 F. Supp. 2d 552, 562 (S.D.N.Y. 2006). Second, "courts consider: (1) frustration of policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the

issuing court's in rem or quasi in rem jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5) adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment." *Forbes IP (HK) Ltd.*, 2024 WL 1743109, at *4-5 (citing *China Trade*, 837 F.2d at 35 ). Once the *China Trade* test has been met, the court may issue an anti-suit injunction if the movant has met the elements for a preliminary injunction. Fox meets these requirements.

**A. Fox Meets *China Trade*'s Threshold Requirements.**

**1. The parties are substantially similar.**

An anti-suit injunction is permitted where "parties to the two actions are affiliated or substantially similar, such that their interests are represented by one another." *Int'l Equity Invs., Inc.*, 441 F. Supp. 2d at 562.

Here, the parties are affiliated and their interests are represented by one another. The Judicial Trademark Injunction named as plaintiffs Defendant and its affiliate Mexico Sports Distribution LLC, a co-subsidiary of their common parent, Altener, their ultimate parent is Grupo Lauman Holding, S. de R.L. de C.V . Berg Decl. ¶ 3, Ex. 29 at 2. In that capacity, Media Deportes Mexico represents Mexico Sports Distribution LLC's interests. Moreover, Mexico Sports Distribution LLC does not purport to be a license holder to the Fox Sports Trademarks, *see id.* ¶ 4, Exs. 30 at 14, and so is not necessary to the Judicial Trademark Injunction, as it has no rights to pursue that were independent of those asserted by Media Deports Mexico—the purported license holder of the Fox Sports Trademarks. *See Motorola Credit Corp. v. Uzan*, 2003 WL 56998, at *2 (S.D.N.Y. Jan. 7, 2003) (disregarding absence of a party named in the foreign proceeding where that party was not necessary to foreign proceeding). Accordingly, Mexico Sports Distribution LLC is named in the Judicial Trademark Injunction "chiefly on the basis of its aspects of identity with" MDM. *Paramedics Electromedicina Comercial, Ltda v. GE*

*Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004).

The Judicial Trademark Injunction names as defendants Fox Corporation, Fox Media LLC, and Fox Cable Network Services LLC, and in this action the plaintiffs are Fox Corporation, Fox Media, and Fox Sports en Español. Berg Decl. ¶ 3, Ex. 29 at 2. Fox Media, Fox Cable Network Services, and Fox Sports en Español are indirect subsidiaries and affiliates of Fox Corporation. Martinez Decl. ¶ 30. They also effectively represent one another's interests for the purposes of both litigations. *Id.* Accordingly, the defendants and plaintiffs in this action and in the foreign proceeding are substantially similar.

**2. This action will be dispositive of the foreign proceeding.**

Fox must next demonstrate that an anti-suit injunction would be dispositive of the proceeding in Mexico. A ruling here holding that the Judicial Trademark Injunction was obtained in violation of the forum selection clause of the 21CF-MDM Assignment Agreement would be dispositive of the issues raised in the foreign proceeding, which purported to vindicate MDM's rights under the 21CF-MDM Assignment Agreement. Berg Decl. ¶ 4, Ex. 30 at 14-16; *see also Forbes IP (HK) Ltd.*, 2024 WL 1743109, at *5 ("Petitioner here seeks an order from the Court directing Respondent to withdraw and refrain from enforcing the Mexico Injunction. Necessarily then, a ruling here, holding that the Mexico Injunction was obtained in violation of the Agreement will be dispositive of the Mexico Injunction."); *Deutsche Mexico Holdings S.a.r.l.*, 2019 WL 5257995, at *6 (same).

**B. Fox satisfies the *China Trade* factors.**

This case is substantially similar to the facts in *Forbes IP v. Media Business Generators*—a case in which the defendant obtained an injunction in Mexico in violation of a forum selection clause that fixed exclusive jurisdiction in New York. This Court should adopt the *Forbes IP* analysis and find that the *China Trade* factors favor an anti-suit injunction.

**1. Frustration of a policy in the enjoining forum.**

First, "there is a strong public policy in enforcing forum selection clauses." *See Forbes IP (HK) Ltd*., 2024 WL 1743109, at *5. "Requiring [Defendant] to . . . refrain from enforcing the Mexico Injunction assists in enforcing the [21CF-MDM Assignment Agreement's] forum selection clause." *Id.*; *see also AU New Haven, LLC v. YKK Corp.*, 2018 WL 2128373, at *3 (S.D.N.Y. May 8, 2018) (where forum selection clause specified New York, allowing party to proceed with the foreign action "would undermine the parties' forum selection agreement and thereby frustrate this jurisdiction's strong public policies"). This factor weighs in favor of Fox's request.

**2. The foreign proceeding is vexatious.**

The foreign proceeding that issued the Judicial Trademark Injunction "is vexatious because it was filed *ex parte*." *Forbes IP (HK) Ltd*., 2024 WL 1743109, at *6 (citing *Jolen, Inc. v. Kundan Rice Mills, Ltd.*, 2019 WL 1559173, at *4 (S.D.N.Y. Apr. 9, 2019)). It is also vexatious because "allowing the Mexico Injunction to be maintained will force [Fox] to challenge it in the Mexico courts, undermining [Fox's] rights to the agreed upon forum." *Id.* This factor weighs in favor of Fox's request.

**3. The foreign proceeding threatens this Court's exclusive jurisdiction.**

"[W]here a party brings suit in a foreign forum and seeks the aid of a foreign proceeding in a blatant attempt to evade the rightful authority of the forum court, such acts may threaten the issuing court's jurisdiction." *Id.* (citing *Jolen, Inc.*, 2019 WL 1559173, at *4). Because the 21CF-MDM Assignment Agreement "provides for New York courts to have exclusive jurisdiction over any disputes raised under the Agreement," and because MDM blatantly evaded that provision, this factor weighs in favor of Fox's request. *Id.*

### 4. The foreign proceeding prejudices equitable considerations of Fox.

The language of the Judicial Trademark Injunction is excessively broad, covering marks like Fox's "Fox Deportes" trademark, which is not included in the Fox Sports Trademarks. Berg Decl. ¶ 4, Exs. 29 at 10-12. The Judicial Trademark Injunction also effectively transforms MDM's non-exclusive license into an exclusive license by prohibiting Fox from using any of the Fox Sports Trademarks in Mexico. *Id.* ¶ 4, Ex. 29 at 10-12. There is no basis for MDM to claim exclusivity. The Judicial Trademark Injunction also permits MDM to continue enjoying the use of the Fox Sports Trademarks despite MDM being in breach of the forum selection and Quality Control provisions of the 21CF-MDM Assignment Agreement. Because the foreign proceeding prejudices Fox's equitable considerations in numerous ways, this factor weighs in favor of Fox's request.

### 5. The foreign proceeding has caused delay, inconvenience, and expense

Forcing Fox to litigate the Judicial Trademark Injunction in Mexico will result in a delay of at least several months and require Fox to incur unjustifiable expense. Already, Fox "has experienced inconvenience and expense by pursuing the instant matter. [Fox] will incur additional inconvenience and expense if forced to appeal the [Judicial Trademark Injunction] in the Mexican courts. This factor weighs in favor of an anti-suit injunction." *Forbes IP (HK) Ltd.*, 2024 WL 1743109, at *6.

* * *

Fox satisfies the *China Trade* test and, as discussed above, the requirements for a preliminary injunction based on MDM's breach of the forum selection clause. For these reasons, the Court should issue an anti-suit injunction against MDM.[8]

---

[8] MDM agreed to waive bond under the 21CF-MDM Assignment Agreement. Martinez Decl. ¶ 7, Ex. 15 at 31, § 12.6(b).

## V. No Notice Is Required.

Pursuant to Rule 65(b)(1), the Court should grant the motion without notice to MDM. Notice would give MDM the opportunity to use its wrongful Mexican injunction to shut down Fox's business in Mexico before this Court can act. That threat is imminent. Yesterday, one day after MediaPro's offices were shut down, lawyers for Defendant contacted Carlos Sanchez, the General Manager responsible for Fox's Spanish-language broadcasts in the U.S. Berg Decl. ¶ 20. Defendant's lawyers told him they were looking for the production facilities that Carlos Martinez—Executive Vice President and Managing Director of Latin America at Fox Corporation—uses to produce Fox broadcast content in Mexico so that they could shut down those operations. *Id.*

Defendant is on the warpath to inflict more disruption on Fox. Fox recently acquired Caliente TV, a sports broadcasting platform, including its production facilities in Mexico. Martinez Decl. ¶ 31. That acquisition was made known to the public through a press release and news reporting. *Id.* It is highly likely that MDM has become aware that Fox uses those production facilities to broadcast content in Mexico. *Id.* If MDM learns of Fox's request to enjoin MDM's conduct, MDM will immediately use its injunction to induce Mexican authorities to disrupt Fox's broadcasts from the Caliente TV facilities. That very likely would deprive the Court of the ability to provide meaningful relief. If Defendant causes an arm of the Mexican government to close the production facilities at Caliente TV, this Court would lack the power to order the reopening of those facilities, as this Court cannot force the Mexican government to act. Only by enjoining Defendant before it has an opportunity to further mobilize the Mexican regulatory apparatus can this Court afford Fox meaningful preliminary relief.

The harm that Fox would suffer in the above scenario would be irreparable. Defendant's use of its Mexican injunction to instigate Mexican regulators to disrupt Fox's broadcasting

capability will (1) impair Fox's ability to provide its broadcasting products to its customers; (2) that impairment will harm Fox's reputation among its viewers, advertisers, and business partners; and (3) all this conduct shall further frustrate the forum selection agreement that Fox negotiated. These injuries constitute distinct and independent bases for irreparable harm. A no-notice temporary restraining order is indispensable and the sole method of preserving the state of affairs in which the Court can provide effective final relief.

**CONCLUSION**

For the foregoing reasons, the Court should enter a temporary restraining order without notice against MDM enjoining it from (i) using the Fox Sports Trademarks in Mexico and the United States, (ii) pursuing any legal action relating to the Fox Sports Trademarks in Mexico, (iii) interfering with Fox's business relationships, and (2) issue an order to show cause for why a preliminary injunction should not be granted.

Dated: August 13, 2025

ELLIS GEORGE LLP

By: */s/ Stephen P. Farrelly*
Stephen P. Farrelly

Eric M. George
Katherine A. Petti, *Pro Hac Vice Forthcoming*
Christopher T. Berg, *Pro Hac Vice Forthcoming*
David Carroll
ELLIS GEORGE LLP
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697
egeorge@ellisgeorge.com
kpetti@ellisgeorge.com
cberg@ellisgeorge.com

Stephen P. Farrelly
ELLIS GEORGE LLP
152 West 57th Street, 28th Floor
New York, NY 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629

*Attorneys for Plaintiff Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC*

**CERTIFICATE OF COMPLIANCE**

I, Stephen P. Farrelly, attorney for the Plaintiffs, certify that this Memorandum of Law complies with the requirements of Local Civ. Rule 7.1 and Rule III(F) of this Court's rules because it contains 8,597 words across 38 pages, excluding the caption, table of contents, table of authorities, and signature blocks.

Dated: August 13, 2025

ELLIS GEORGE LLP

By: */s/ Stephen P. Farrelly*
Stephen P. Farrelly