**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FOX CORPORATION; FOX MEDIA LLC; and FOX SPORTS EN ESPAÑOL LLC,<br><br>        Plaintiffs,<br><br>        v.<br><br>MEDIA DEPORTES MEXICO, S. de R.L. de C.V.,<br><br>        Defendant. | Case No.: 1:25-cv-06703-JSR<br><br>**RESPONSE IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION TO HOLD DEFENDANT MEDIA DEPORTES MEXICO AND NON-PARTIES MEXICO SPORTS DISTRIBUTION LLC, GRUPO LAUMAN HOLDING, AND MANUEL ARROYO IN CONTEMPT** |

3049745

**TABLE OF CONTENTS**

**Page**

I.      Manuel Arroyo and Grupo Lauman Holding received adequate notice and service ...........1

II.     Manuel Arroyo is central to Defendant's contempt .............................................................3

        A.      Manuel Arroyo is personally involved in the dispute with Fox Corporation .........3

        B.      Manuel Arroyo should be held in contempt.............................................................5

III.    The Court should impose a compensatory sanction payable to Plaintiffs .........................8

CERTIFICATE OF COMPLIANCE...........................................................................................12

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Bd. of Comm'rs of Leavenworth Cnty. v. Sellew*,
  99 U.S. 624 (1878)........................................................................................................2

*CBS Broadcasting Inc. v. FilmOn.com, inc.*,
  814 F.3d 91 (2d Cir. 2016).........................................................................................5, 6

*Certain Underwriters at Lloyd's of London v. Corp. Pines Realty Corp.*,
  No. CV H-06-3361, 2011 WL 13247496 (S.D. Tex. Apr. 1, 2011) .........................................6

*CKR L. LLP v. Anderson Invs. Int'l, LLC*,
  525 F. Supp. 3d 518 (S.D.N.Y. 2021).......................................................................................3

*Fox Cable Network Services, et. al. v. Grupo Lauman Holding, et al.*,
  Case No. 2:25-cv-02444-JFW (C.D. Cal. March 20, 2025) ...................................................4, 5

*In re Enron Corp.*,
  298 B.R. 513 (Bankr. S.D.N.Y. 2003), *subsequently aff'd*, 419 F.3d 115 (2d Cir.
  2005) ........................................................................................................................................2

*Int'l Techonologies Mktg., Inc. v. Cognyte Techs. Israel Ltd.*,
  No. 1:15-CV-2457-GHW, 2022 WL 11280876 (S.D.N.Y. Oct. 19, 2022)...........................6, 7

*KeyBank Nat'l Ass'n v. Monolith Solar Assocs. LLC*,
  No. 1:19-CV-1562, 2020 WL 4201489 (N.D.N.Y. July 22, 2020), *vacated*, No.
  1:19-CV-1562, 2021 WL 810105 (N.D.N.Y. Mar. 3, 2021) ...................................................10

*King v. Allied Vision, Ltd.*,
  65 F.3d 1051 (2d Cir.1995)........................................................................................................8

*New England Car-Spring Co. v. Union India Rubber Co.*,
  18 F. Cas. 59 (C.C.S.D.N.Y. 1857) ..........................................................................................3

*NLRB v. Hopwood Retinning Co.*,
  104 F.2d 302 (2d Cir. 1939).......................................................................................................6

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*,
  462 F.3d 87 (2d Cir. 2006).........................................................................................................9

*Perfect Fit Indus., Inc. v. Acme Quilting Co.*,
  673 F.2d 53 (2d Cir. 1982).........................................................................................................8

*S.E.C. v. Musella*,
  818 F. Supp. 600 (S.D.N.Y. 1993) .........................................................................................6, 7

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*Sunbeam Corp. v. Golden Rule Appliance Co.*,
    252 F.2d 467 (2d Cir. 1958)..................................................................................................10

*Wilson v. United States*,
    221 U.S. 361 (1911)............................................................................................................2

**STATUTES**

18 U.S.C. § 1512(a)(2)..........................................................................................................5

28 U.S.C. § 1963....................................................................................................................9

**RULES**

Fed. R. Civ. P. 69..................................................................................................................9

3049745

At the hearing held on September 5, 2025, the Court requested that Plaintiffs file a supplemental submission in support of their emergency motion to hold Defendant Media Deportes Mexico and non-parties Mexico Sports Distribution LLC, Grupo Lauman Holding, and Manuel Arroyo in contempt. The Court requested additional information relating to (1) the service and notice provided to Grupo Lauman Holding and Manuel Arroyo, (2) Manuel Arroyo's personal involvement in the dispute between Fox Corporation, on the one hand, and Defendant, Mexico Sports Distribution, LLC, and Grupo Lauman Holding, on the other, and (3) the basis for Plaintiffs' request to shift the Court's contempt sanction from being payable to the Clerk of Court to being payable to Plaintiffs, as a compensatory sanction. *See* September 8, 2025 Declaration of Christopher T. Berg ("Berg Decl."), Ex. H (9/5/2025 H'rg Transcript) at 21:10–22:23; 24:13–25:5; 27:14–29:14.

## I.      Manuel Arroyo and Grupo Lauman Holding received adequate notice and service

Manuel Arroyo and Grupo Lauman Holding received electronic service of all notices, submissions, and orders related to the Court's contempt ruling against them. This service and notice was achieved by Plaintiffs' counsel emailing Defendant's Mexico counsel the notice of the Court's contempt teleconference, Plaintiffs' motions for contempt, and the Court's contempt orders. Berg Decl. ¶¶ 3–10. As President of Fox Sports Mexico and thus President of Defendant,[1] ECF No. 43-1, Exhibit D at 1, Manuel Arroyo received notice of the contempt orders against himself and Grupo Lauman when Plaintiffs' counsel emailed those papers to Defendant's Mexico counsel. Just as courts have long held that the officers of a corporation may be personally held in contempt when the corporation is served with a court order and disobeys it,

---

[1] Fox Sports Mexico is the joint name for Defendant and Mexico Sports Distribution, LLC. *See* ECF No. 13-3 at 6.

so too have courts have made clear that notice to the corporation is notice to the officers of the corporation. *See Wilson v. United States*, 221 U.S. 361, 376 (1911) (notice of judicial command served on corporation is sufficient to personally bind officer of the corporation); *Bd. of Comm'rs of Leavenworth Cnty. v. Sellew*, 99 U.S. 624, 627 (1878) (when a judicial command is served on the board of company, "[w]hile the board is proceeded against in its corporate capacity, the individual members are punished in their natural capacities for failure to do what the law requires of them as the representatives of the corporation").

Grupo Lauman also received notice of the contempt hearing and contempt papers when Plaintiffs' counsel served Defendant's Mexico counsel with those materials. By Defendant's own admission, Grupo Lauman Holding exercises control over Fox Sports Mexico, and thus exercises control over Defendant and MSD, the entities that constitute Fox Sports Mexico. *See* ECF No. 13-3 at 13 ("As of 2021, the Fox Sports Mexico business operates (to date) under the control of Grupo Lauman Holding."). Where a corporate parent shares officers with its subsidiary and the two entities are closely related in their business operations and other activities, notice to the subsidiary is imputed to the parent. *See In re Enron Corp.*, 298 B.R. 513, 523 (Bankr. S.D.N.Y. 2003), *subsequently aff'd*, 419 F.3d 115 (2d Cir. 2005). Grupo Lauman Holding controls Defendant and MSD, and thus they are closely related in their business operations and activities. Grupo Lauman Holding also shares a common principal officer with Defendant: Manuel Arroyo is Grupo Lauman Holding's CEO and is Defendant's President. Accordingly, Grupo Lauman Holding is imputed to have notice of documents served on Defendant, including the notice of the September 5, 2025 contempt hearing.

But even if the Court finds that electronic service to Defendant was insufficient for purposes of providing Manuel Arroyo and Grupo Lauman with adequate notice of their

3049745                                                          2

contempt, that hypothetical deficiency was mooted on September 6, 2025 when Plaintiffs' counsel sent all relevant submissions and orders relating to Manuel Arroyo's contempt to his business email address.  Berg. Decl. ¶ 11 (no bounce-back received); September 8, 2025 Declaration of Carlos Martinez ("9/8/2025 Martinez Decl."), ¶ 3 (certifying reliability of Arroyo email address); *see also New England Car-Spring Co. v. Union India Rubber Co.*, 18 F. Cas. 59, 61 (C.C.S.D.N.Y. 1857) (notice to the president or administrative officer of a corporation is notice to the corporation); *CKR L. LLP v. Anderson Invs. Int'l, LLC*, 525 F. Supp. 3d 518, 525 (S.D.N.Y. 2021) (service via known email address constitutes adequate service).

## II.    Manuel Arroyo is central to Defendant's contempt

Unsurprisingly, after Manuel Arroyo received the additional electronic service on September 6, 2025, Defendant continues to use the Fox Sports trademarks with impunity and continues to pursue the litigation referenced in the Court's preliminary injunction.  Berg Decl. ¶¶ 15, 16.  Arroyo is in active concert with Defendant's contempt and should therefore personally be held in contempt.

### A.    Manuel Arroyo is personally involved in the dispute with Fox Corporation

This case is not one in which the CEO of a parent company is unaware of or detached from litigation of its subsidiaries.  To the contrary, Manuel Arroyo has directly and personally involved himself in the dispute between Fox and his companies, including by physically battering and threatening the life of Carlos Martinez, Executive Vice President and Managing Director of Latin America for Fox Corporation.  Mr. Martinez is the principal fact witness Plaintiffs presented in support of their application for the preliminary injunction.

On June 15, 2025, while Mr. Martinez was a spectator at a Nascar event in Mexico City, Mr. Martinez was confronted by Manuel Arroyo (his bodyguard in tow) in a hallway outside a

public restroom.  Security video footage shows Manuel Arroyo striking Mr. Martinez across the face, knocking Mr. Martinez's glasses to the ground.  Manuel Arroyo proceeded to threaten to Mr. Martinez with violence by saying: *"What's wrong with you, kid? You don't know what to do with who did you get involved with?  I'm going to kill you,"*[2]  Berg Decl., Ex. G at 7 (September 5, 2025 civil complaint by Carlos Martinez seeking a restraining order against Manuel Arroyo for physical battery and threats of violence); *see also* 9/8/2025 Martinez Decl. ¶ 2.

Manuel Arroyo went on to threaten: "*You don't know with who are you getting into, son of a bitch,*" "*now I'm going to do shit,*" "*you and those damn American lawyers. [I] don't give a damn, here in Mexico I'm in charge,*" "*They'll [American lawyers] see with who they got involved,*" "*I'm going to be your worst enemy, asshole*," repeating over and over again "*I'm in charge here*"[3] and boasting that Arroyo has may connections and influences in the political and judicial systems in Mexico.  *Id.*, Ex. G at 7–8; 9/8/2025 Martinez Decl. ¶ 2.

Manuel Arroyo's reference to "American lawyers" was a reference to Plaintiffs' counsel. By the time of the incident, Fox subsidiaries Fox Cable Network Services and Tubi, Inc. had sued Defendant Media Deportes Mexico, Mexico Sports Distribution LLC ("MSD"), and Grupo Lauman Holding in federal court in California (the "California Litigation") over unpaid licensing fees.  *See Fox Cable Network Services, et. al. v. Grupo Lauman Holding, et al.*, Case No. 2:25-

---

[2]  Original Spanish: "*¿Qué te pasa pendejo?, no sabes con quién te metiste. Te voy a matar.*" Berg Decl., Ex. G1 at 7.

[3] Original Spanish: "*no sabes con quién te estás metiendo, hijo de tu puta madre,*" "*ahora sí te voy a hacer mierda,*" "*tú y los pinches abogados gringos me la pelan, aquí en México mando yo, me la van a pelar, cabrón,*" "*van a ver con quién se metieron, voy a ser tu peor enemigo, pendejo,*" "*aquí mando yo.*"  Berg Decl., Ex. G1 at 7–8.

cv-02444-JFW, ECF No. 1 (C.D. Cal. March 20, 2025).[4]  Fox's counsel in the California

Litigation is the same counsel appearing here.

Manuel Arroyo's assault on Carlos Martinez underscores his direct and personal

involvement in—and responsibility for—Defendant's campaign to weaponize the Mexican

government to shut down the production facilities of Fox and its business partners in Mexico.

The connection is not speculative: just one day after Defendant directed the shutdown of the

production facilities of Fox business partner MediaPro, Defendant's Mexico counsel reached out

to Carlos Sanchez, the General Manager responsible for Fox's Spanish-language broadcasts in

the United States.  Manuel Arroyo's enmity toward Carlos Martinez explains why Defendant's

Mexico counsel specifically asked Mr. Sanchez about the production facilities that Carlos

Martinez uses to produce content for Fox in Mexico.  *See* ECF No. 13 ¶ 20.

This conduct is gravely serious.  Manuel Arroyo's actions amount to threats of violence

against Mr. Martinez—Fox Corporation's principal executive in Mexico and a key witness in this

case and the California Litigation—should Mr. Martinez continue to participate with Fox

Corporation in seeking redress from the U.S. legal system against Arroyo's companies.  Arroyo's

explicit reference to "American lawyers" leaves little doubt that Fox's litigation against his

companies inspired Arroyo's attack—squarely implicating federal laws against such conduct.

*See, e.g.*, 18 U.S.C. § 1512(a)(2) (witness tampering).

**B.    Manuel Arroyo should be held in contempt**

Manuel Arroyo's misconduct compels the conclusion that he be held personally

responsible for Defendant's contempt.  "A command to a company is in 'effect a command to

---

[4] Also by this time, Defendant and MSD had procured an injunction purporting to prohibit Fox Corporation, Fox Cable Network Services, and Fox Media LLC from using the Fox Sports Trademarks.  *See* ECF No. 13-1 (March 26, 2025).

those who are officially responsible for the conduct of its affairs.'"  *CBS Broadcasting Inc. v. FilmOn.com, inc.*, 814 F.3d 91, 100 (2d Cir. 2016) (quoting *NLRB v. Hopwood Retinning Co.*, 104 F.2d 302, 305 (2d Cir. 1939)).  "Even when corporate officers are not a party to the original action, if they 'prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.'"  *CBS Broadcasting Inc.*, 814 F.3d at 100 (quoting *Hopwood*, 104 F.2d at 305)).

The principle is well settled across the circuits.  "[T]he practice of holding corporate officers liable for the contempt of a corporation has been widely applied by federal courts." *Certain Underwriters at Lloyd's of London v. Corp. Pines Realty Corp.*, No. CV H-06-3361, 2011 WL 13247496, at *7 (S.D. Tex. Apr. 1, 2011) (collecting cases from the First, Fifth, Sixth, Seventh and Eighth Circuits).  "[I]f a corporate officer avoids a court's order to the corporation by failing to take action or attempt compliance, the officer may be punished for contempt and it is fully appropriate to impose judicial sanctions on the nonparty corporate officer." *Int'l Techonologies Mktg., Inc. v. Cognyte Techs. Israel Ltd.*, No. 1:15-CV-2457-GHW, 2022 WL 11280876, at *8 (S.D.N.Y. Oct. 19, 2022) (internal quotation and citation omitted).  Nor must a party seeking contempt against a corporate officer show that the officer was acting willfully, in bad faith, or without advice from counsel.  "The party seeking a finding of contempt need not show that violation of the order was willful, and good faith is not a defense.  Nor may the alleged contemnor rely on his own inadvertence, misunderstanding or advice from counsel." *S.E.C. v. Musella*, 818 F. Supp. 600, 606 (S.D.N.Y. 1993).

At the September 5 hearing, the Court observed that "[i]f, in reliance on that advice of counsel, the CEO then allowed his company to not appear in New York and to take the various

actions you have referred to in Mexico, I am not sure it would be a basis for holding the CEO in personal contempt." Berg Decl., Ex. H at 28:1–5. But as *Musella* makes clear, advice of counsel does not shield an officer from contempt for the actions taken by himself or by his company.

Even the indifferent officer who fails to ensure compliance can be sanctioned. Arroyo has entirely "fail[ed] to take action or attempt compliance," and thus should be "punished for contempt, and it is fully appropriate to impose judicial sanctions on the nonparty corporate officer" for that inaction alone. *Int'l Technologies Mktg., Inc.,* 2022 WL 11280876, at *8. But the case for contempt here is even stronger than the case of the indifferent officer, even though that is all that is legally required. *See id.* Here, the principal officer of Defendant has made it obvious that he is not merely aware of Fox's litigation against his companies, he has reacted violently to Fox's litigation against his companies, including by directly and personally retaliating against Fox Corporation's principal executive in Mexico. Manuel Arroyo's conduct in response to Fox's litigation, including physically battering and threatening further violence against Carlos Martinez, and specifically referencing those "damn American lawyers" in connection with U.S. litigation, demonstrate that Manuel Arroyo is personally aware of the U.S. litigation and is directing his companies' campaign against Fox. Most relevant to these proceedings, this conduct makes clear that Arroyo is not merely dispassionately following the advice of counsel, but rather is authorizing the contemptuous conduct before this Court. Manuel Arroyo's own words make his role unmistakable: "*Here in Mexico I'm in charge,*" "*I'm going to be your worst enemy,*" "*I'm in charge.*" These are admissions that Arroyo has claimed responsibility for the adversarial actions of his companies against Fox Corporation, communicated to Fox Corporation's principal executive in Mexico amidst battery and further threats of violence. The law already requires that Manuel Arroyo be held in contempt by virtue

3049745                                                    7

of his position as the principal officer of Defendant.  But Arroyo's personal misconduct and statements remove any doubt that this Court should coerce his compliance with its ordered injunctive relief.

**III.    The Court should impose a compensatory sanction payable to Plaintiffs**

To ensure that its contempt order is both coercive and compensatory, the Court should structure sanctions in a manner that directly targets contemnors' U.S. assets and remedies Plaintiffs' proven daily losses.  The Court can resolve the enforceability problem by making the sanction payable directly to Plaintiffs.

As Plaintiffs previewed at the September 5 hearing, the Court should modify its contempt sanction against Defendant and nonparties MSD, Grupo Lauman Holding, and Manuel Arroyo to make the sanction payable to Plaintiffs.  Making this modification would accomplish two objectives: (1) it would enhance the coercive effect of the contempt sanction to further ensure that the contemnors comply with the Court's order and (2) it would provide compensation to Plaintiffs for the damages they are suffering arising from the contempt.

"[A] sanction imposed on a party held in civil contempt generally may serve either or both of two purposes: to coerce the contemnor into complying in the future with the court's order, or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 56 (2d Cir. 1982). In crafting a coercive sanction, the Court has "broad discretion to design a remedy that will bring about compliance." *Id.* at 57.  When crafting a compensatory remedy, "the sanction should correspond at least to some degree with the amount of damages." *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1062 (2d Cir.1995).

Despite being on notice of the Court's contempt sanction of $200,000 per day, the contemnors continue to use the Fox trademarks with impunity and continue to pursue litigation in Mexico concerning Fox trademarks that was specifically prohibited by the Court's temporary restraining order and preliminary injunction.  Berg Decl. ¶¶ 15, 16.  Contemnors' continued, willful non-compliance warrants an enhanced sanction.  Plaintiffs request that the Court's sanction be modified to $200,208 per day and made payable to Plaintiffs.

As currently structured, the Court's fine is payable to the Clerk of Court.  The Clerk of Court, however, lacks the ability to seek enforcement of the Court's fine.  As a result, the foreign recalcitrant contemnors are able to allow the fines to accrue indefinitely without fear of those fines ever being enforced against any of their assets.  That is an intolerable circumstance given the degree to which contemnors have defied the Court's authority and given that their principal officer has physically assaulted a Fox witness.

The Court can solve this enforceability problem by making the sanction payable to Plaintiffs.  Plaintiffs are aware that contemnors hold several million dollars in assets, including real and personal property, in the United States.  Because a contempt order imposing sanctions against a non-party constitutes a final judgment, *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 462 F.3d 87, 92–93 (2d Cir. 2006), if the Court makes the sanction payable to Plaintiffs, then Plaintiffs can request a writ of execution from the Court after a material amount of fines have accrued.  *See* Fed. R. Civ. P. 69.  Plaintiffs can then register that writ of execution in the relevant jurisdictions where contemnors' assets are located.  *See* 28 U.S.C. § 1963.  Once registered, Plaintiffs can request the local federal court to enforce the writ of execution on contemnors' assets in satisfaction of the damages awarded under the Court's contempt order.  In this manner, the Court can impose an enforceable threat to contemnors' assets in the United States, which will

have substantial coercive effect and is well tailored to bring about contemnors' compliance with the Court's injunction.

A compensatory sanction requires some proof of loss that corresponds to the sanction, and Plaintiffs have provided that evidence. As set forth in the September 5, 2025 Declaration of Carlos Martinez ("9/5/2025 Martinez Decl."), Plaintiffs are suffering a daily loss of revenue as a result of Defendant and contemnors misappropriating the Fox trademarks for their financial gain. Under the guise of Fox Sports Mexico, Defendant and contemnors are paid a fee by broadcast and streaming distributors for including Fox Sports Mexico channels in the package of channels provided by these distributors to their viewing customers. Defendant informed Plaintiffs about its fee arrangements with distributors in Mexico in connection with an unrelated transaction in 2024. 9/5/2025 Martinez Decl. ¶¶ 4, 6, 7. Based on those distributor fees, Defendant and contemnors receive approximately $200,208 per day. *Id*. ¶ 9. Defendant and Contemnors derive those fees from the viewership that the Fox Sports brand commands. *Id.* Those revenues constitute ill-gotten gains based on the unauthorized and uncompensated use of Plaintiffs' trademarks. Plaintiffs have their own Fox-branded channels that are broadcast by distributors in Mexico. Were Defendant and contemnors to cease using the Fox trademarks, Plaintiffs would be able to absorb all or nearly all of the revenue generated from Defendant and contemnors' wrongful use of the Fox marks. *Id.* ¶ 10. Accordingly, not only are Defendant and contemnors receiving a windfall from their contemptuous conduct, Plaintiffs are suffering daily injury in lost revenue that it would otherwise be able to claim but for the wrongful use of the Fox trademarks. Courts have recognized awarding compensatory sanctions for this type of injury. *See KeyBank Nat'l Ass'n v. Monolith Solar Assocs. LLC*, No. 1:19-CV-1562, 2020 WL 4201489, at *4 (N.D.N.Y. July 22, 2020), *vacated*, No. 1:19-CV-1562, 2021 WL 810105 (N.D.N.Y. Mar. 3,

2021) (vacated because contemnor came into compliance with court order); *Sunbeam Corp. v. Golden Rule Appliance Co.*, 252 F.2d 467, 470 (2d Cir. 1958).

The Court should modify the contempt order as discussed above to enhance the coercive effect of the order and to compensate Plaintiffs for the proven damages they are suffering on a daily basis arising from the contempt. The Court should also impose a freeze on the transfer or conveyance of any of the contemnors' assets in the United States. That freeze is necessary to prevent the contemnors from dissipating or otherwise concealing their U.S. assets during the pendency of the execution of the Court's contempt order. A proposed order reflecting this proposal accompanies this submission.

Dated: September 8, 2025

Respectfully submitted,

ELLIS GEORGE LLP

By:                 */s/Christopher T. Berg*
        Eric M. George
        Katherine A. Petti, *Pro Hac Vice*
        Christopher T. Berg, *Pro Hac Vice*

2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone:  (310) 274-7100
Facsimile:  (310) 275-5697
egeorge@ellisgeorge.com
kpetti@ellisgeorge.com
cberg@ellisgeorge.com

Stephen P. Farrelly
ELLIS GEORGE LLP
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone:  (212) 413-2600
Facsimile:  (212) 413-2629
sfarrelly@ellisgeorge.com

*Attorneys for Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC*

3049745                    11

**CERTIFICATE OF COMPLIANCE**

I, Christopher T. Berg, an attorney duly admitted Pro Hac Vice to practice in the Southern District of New York herby certify that this memorandum is no longer than 25-double spaced pages and the text and footnotes are in 12 point type, which complies with Judge Rakoff's Rule 2(e).

Executed this 8th day of September 2025 in Los Angeles, California.


_____/s/Christopher T. Berg_____
Christopher T. Berg