# EXHIBIT B

Machine Translated by Google




**ECONOMIC COMPETENCE UNIT**
**GENERAL DIRECTORATE OF CONCENTRATIONS AND CONCESSIONS**
FILE: UCE/CNC-003-2021

Mexico City, February 12, 2025. Having seen the following:

**Background**

**First.-** On March 11, 2019, through agreement P/IFT/110319/122 (Resolution), the Plenary Session of the Federal Telecommunications Institute (Institute or IFT) authorized, subject to compliance with conditions, the concentration (Transaction) notified by TFCF Corporation (formerly Twenty-First Century Fox, Inc., hereinafter 21CF or TFCF) and TWDC Enterprises 18 Corp. (formerly The Walt Disney Company, hereinafter TWDC, and jointly with 21CF, the Parties). This Transaction was processed by the Economic Competition Unit (UCE) under file number UCE/CNC-001-2018 (File).

For the purposes of this agreement, the conditions imposed by the IFT Plenary in the Resolution will hereinafter be referred to as *"Conditions";* and terms beginning with capital letters will have the meaning established in the Resolution.

**Second.-** On March 15, 2019, in a document submitted to the IFT's official office, pursuant to the First Section of the Resolution, 21CF and TWDC expressed their acceptance of the Conditions (Conditions Acceptance Document). Consequently, on March 20, 2019, the IFT Plenary issued agreement P/IFT/200319/152, which deemed the Conditions accepted by 21CF and TWDC, dated March 15, 2019 (Conditions Acceptance Agreement).

**Third.-** On April 10, 2019, through agreement P/IFT/100419/215, the IFT Plenary resolved that (i) Mazars LLP (Mazars) meets the eligibility criteria set forth in section 8.4.4.1 of the Resolution to serve as Independent Auditor; and (ii) ING Financial Markets LLC (ING) meets the eligibility criteria set forth in section 8.4.9.2 of the Resolution to serve as Divestment Agent (Candidate Resolution).

**Fourth.-** On May 7, 2019, through a document and attachments submitted to the IFT's official party, the Parties submitted the documentation to prove the execution of the Operation (Closing Notice), dated March 20, 2019 (Closing Date).

INSTITUTO FEDERAL DE TELECOMUNICACIONES

On May 14, 2019, through an agreement issued by the Head of the UCE, notified by list on the same day, the documentation certifying the Closing of the Operation was submitted in accordance with the Third Resolution of the Resolution.

**Fifth.-** On June 29, 2020, through Agreement P/IFT/EXT/290620/20, the Plenary of the IFT issued the *"Agreement by which the Plenary of the Federal Telecommunications IFT, due to force majeure, determines the cases in which the legal deadlines and terms are suspended, based on the provisions of articles 28, second and third paragraphs of the Federal Law of Administrative Procedure; 115, second paragraph and 121 of the Federal Law on Economic Competition, due to the contingency measures for the COVID-19 coronavirus pandemic, as well as its exceptions, in order to preserve the essential functions carried out by the IFT itself and guarantee the continuity and quality in the provision of telecommunications and broadcasting services",* which entered into force on July 1, 2020 and provides, among other matters, that the concentration notification procedures processed in accordance with articles 90 and 92 of the Federal Law of Economic Competition Law (LFCE), during the validity of said agreement, may be processed remotely at the request of the economic agents involved and in accordance with the provisions established therein (Agreement P/IFT/EXT/290620/20).

**Sixth.-** On June 8, 23 and 25, as well as July 5, all of 2020, through documents sent to this IFT remotely and signed by Eduardo Pérez Motta, authorized by the Parties in terms of the second paragraph of article 111 of the LFCE, the Parties requested, among other elements, to resume the procedure filed in the File electronically (Electronic Processing Requests).

**Seventh.-** On July 7, 2020, through an agreement signed by the Director General of Concentrations and Concessions of the UCE, notified via email to the Parties on the same date and published in the daily list of notifications of the UCE on July 9, 2020, the IFT received the Electronic Processing Requests and resumed the procedure remotely, in accordance with the applicable administrative provisions.

**Eighth.-** On April 26, 2021, the Divestment Agent together with the potential Buyer Grupo Lauman Holding, S. de RL de CV (Grupo Lauman), submitted a document and attachments in which they present the information required in section 8.4.9.15 of the Resolution in correlation with section 8.4.7.1 of the same ordinance, to evaluate and decide on the approval of the potential Buyer and the proposed transaction (First Request Letter).

INSTITUTO FEDERAL DE TELECOMUNICACIONES

**Ninth.-** On May 14, 2021, through agreement P/IFT/EXT/140521/9, the IFT Plenary agreed that Grupo Lauman meets the eligibility criteria established in section 8.4.7.1 of the Resolution (Grupo Lauman Approval Agreement).

**Tenth.-** On May 21, 2021, by email to the Office of the Recipients of this IFT, the Disincorporation Agent sent this IFT a document with attachments containing information corresponding to section 8.4.7.4 of the Resolution. This information was received in physical form at the Office of the Recipients of this IFT on May 24, 2021 (Approval Request).

**Eleventh.-** On May 27, 2021, through emails submitted to the following IFT email addresses: oficialiadepartes@ift.org.mx and oficialiacompetencia@ift.org.mx, and on May 28, 2021, a document with attachments (Lauman/21CF Notification Document) was sent to the IFT's official party office, by means of which Grupo Lauman (Buyer) and 21CF (hereinafter Seller, and together with Grupo Lauman, the Divestment Parties) notified this IFT of a concentration in terms of article 90 of the LFCE, consisting of the acquisition by Grupo Lauman, through Altener, SA de CV (Altener), of the assets, as well as the operations of the Fox Sports business in Mexico (FSM Business or Business to be Divested), related to the production and licensing of 21CF's Sports Channels to restricted television and audio service operators -STAR- in Mexico (Divestment Operation). This Disincorporation Operation was processed by the UCE under file number UCE/CNC-003-2021 (File UCE/CNC-003-2021 or Disincorporation File).

In the Lauman/21CF Notification Letter, the Disincorporation Parties expressly agree to be subject to remote processing to follow the Disincorporation Operation procedure, in accordance with the provisions of Agreement P/IFT/EXT/290620/20 (Remote Processing Request).

**Twelfth.-** On June 1, 2021, through an agreement signed by the Head of the UCE, notified via email to the Parties to the Disincorporation and published on IFT lists the same day, the notification of the Disincorporation Operation was filed under file number UCE / CNC-003-2021 or Disincorporation File, the notification of the Disincorporation Operation was received for processing as of May 27, 2021 and the Disincorporation File was forwarded to the General Directorate of Concentrations and Concessions (DGCC) for the purpose of processing the corresponding procedures in terms of the LFCE (Reception Agreement).

**Thirteenth.-** On June 7, 2021, by Agreement P/IFT/EXT/070621/11, the Plenary of the IFT authorized the Disincorporation Operation filed under file No. UCE/CNC-003-2021 or

Divestment File, notified by Grupo Lauman and 21CF, as well as the final purchase agreement submitted by ING, which was notified remotely on June 8, 2021, to the Divestment Parties, as well as to the designated Independent Auditor and Divestment Agent.

**Fourteenth.-** On August 20, 2021, Agreement P/IFT/040821/356 was published in the Official Gazette of the Federation (DOF), by which the IFT Plenary issued the *"AGREEMENT that determines the conclusion of the validity of the Agreement by which the Plenary of the Federal Telecommunications Institute, due to force majeure, determines the cases in which the legal deadlines and terms are suspended, based on the provisions of articles 28, second and third paragraphs of the Federal Law of Administrative Procedure; 115, second paragraph and 121 of the Federal Law on Economic Competition, due to the contingency measures for the COVID-19 coronavirus pandemic, as well as its exceptions, in order to preserve the essential functions carried out by the Institute itself and guarantee the continuity and quality in the provision of telecommunications and broadcasting services"* which entered into force on August 23, 2021 (Agreement P/IFT/040821/356).1

**Fifteenth.-** On November 9, 2021, through a document and attachments submitted to the IFT's official parts office, 21CF notified that: (i) 21CF and Grupo Lauman would proceed to close the Disincorporation Operation, (ii) they made adjustments to the documents of the Disincorporation Operation, and (iii) the adjustments made do not alter the substance of the Disincorporation Operation (Adjustments Document).

**Sixteenth.-** On November 11, 2021, through a document submitted to the IFT's official party, Grupo Lauman and 21CF notified that the closing of the Disincorporation Operation took place on November 10, 2021 and, to prove its completion, they state that it occurred with the formalization of the documents delivered in the Adjustment Document (Closing Document).

**Seventeenth.-** On November 11, 2021, through a document submitted to the IFT's official party, the Parties notified that the Disincorporation Operation was closed on November 10, 2021, and that such closure was verified with the formalization of the documents delivered in the Adjustment Document. Therefore, they consider that the disincorporation obligation established in section 8.4 of the Resolution is satisfied. Thus, the Parties requested that the IFT consider that they have fulfilled the disincorporation obligation established in section 8.4 of the Resolution (Disincorporation Compliance Document).

---

1 See http://www.dof.gob.mx/nota_detalle.php?codigo=5627260&fecha=20/08/2021.

**Eighteenth.-** On November 16, 2021, through a document and attachments filed with the IFT's official party, 21CF submitted Spanish translations of certain documents presented in the Adjustments Document (Scope of the Closing Document, and together with the Adjustments Document and the Closing Document, Closing Documents of the Divestment Operation).

**Nineteenth.-** On November 24, 2021, and within the Disincorporation File, through an agreement signed by the General Director of Concentrations and Concessions, and notified in IFT lists the following day, the Closing Documents of the Disincorporation Operation were considered submitted and Grupo Lauman and 21CF were informed that they would be evaluated.

**Twentieth.-** On November 24, 2021, through an agreement signed by the Director General of Concentrations and Concessions, and notified in the IFT lists the following day, the Compliance with Disincorporation Document was considered submitted and the Parties were informed that they would be evaluated.

**Twenty-First.-** On December 16, 2021, through a document and attachments submitted to the IFT's official party, Grupo Lauman and TFCF presented a copy of the final signed version of the "Equity Purchase Agreement" (EPA) that certifies the closing of the Divestment Operation, including its attachments and relevant changes.

**Twenty-Second.-** On January 10, 2022, and within the Disincorporation File, through a document and electronic annexes submitted to the IFT's official party, Grupo Lauman and TFCF submitted signed versions of various appendices to the EPA Amendment and Restatement Agreement, as well as various annexes and auxiliary documents thereof for the IFT's knowledge (Scope Information Document of January 10, 2022).

**Twenty-Third.-** On January 11, 2022, and within the Disincorporation File, through an agreement signed by the General Director of Concentrations and Concessions, and notified in the IFT lists the following day, the Scope Information Document of January 10, 2022 was considered submitted, and the physical and electronic annexes submitted with it were noted.

**Twenty-Fourth.-** On January 12, 2022, the *"Agreement by which the Plenary of the Federal Telecommunications Institute issues a statement regarding compliance with the conditions established in Resolution P/ IFT/ 110319/122 regarding the concentration between TFCF Corporation (formerly Twenty-First Century Fox, Inc.) and TWDC Enterprises Corp. (formerly The Walt Disney Company)" was issued* (Agreement P/IFT/120122/7).

INSTITUTO FEDERAL DE TELECOMUNICACIONES

**Twenty-Fifth.-** On January 21, 2022, through an agreement signed by the Director General of Concentrations and Concessions, and notified in the IFT lists on January 25 of the same year, the Closing Documents for the Divestment Operation were deemed to have been submitted in a timely manner and in the correct form, and the completion of the Concentration was accredited under the terms authorized in Agreement P/IFT/EXT/070621/11.

**Twenty-Sixth.-** On April 14, 2023, through an agreement signed by the Director General of Concentrations and Concessions, various information was requested from Grupo Lauman in order to monitor compliance with the Conditions established in the Resolution and prevent possible violations thereof (Condition Monitoring Requirement).

**Twenty-Seventh.-** On May 17, 2023, by means of a document with attachments submitted via email to oficialiadepartes@ift.org.mx and oficialiacompetencia@ift.org.mx, Grupo Lauman submitted information to address the Condition Monitoring Request. This information was physically submitted to the IFT's official office on May 18, 2023 (Condition Monitoring Request Discharge Document).

**Twenty-eighth.-** On June 1, 2023, through an agreement signed by the Director General of Concentrations and Concessions and notified by list on June 2, 2023, the Written Relief of the Request for Monitoring of Conditions by Grupo Lauman was considered submitted.

**Twenty-ninth.-** On June 26, 2023, by means of an agreement signed by the Director General of Concentrations and Concessions, notified by email and by list on June 27, 2023, Grupo Lauman was requested various information related to the broadcast rights of the *UEFA Champions League,* the *UEFA Europa League* and the *UEFA Europa Conference League* (UEFA Request).

**Thirtieth.-** On July 11, 2023, by means of a document with attachments submitted via email to the email addresses oficialiadepartes@ift.org.mx and oficialiacompetencia@ift.org.mx, Grupo Lauman submitted information to address the UEFA request. This information was filed in person at the IFT's official website on July 12, 2023 (UEFA Request for Relief).

**Thirty-First.-** On July 31, 2023, through an agreement signed by the Director General of Concentrations and Concessions, notified by email and by list on August 7, 2023, the Request on UEFA by Grupo Lauman was considered resolved.

**Thirty-Second.-** On May 16, 2024, through an agreement signed by the Director General of Concentrations and Concessions, notified by email and by list on the same date, Grupo Lauman was requested to provide various information and documentation related to sports broadcasting rights contracts (Request on Broadcasting Contracts).

**Thirty-Third.-** On June 4, 2024, through a document with attachments (Fox-Lauman Notification Document) filed with the IFT's official party, Fox Corporation (Fox) and Grupo Lauman notified a concentration in terms of article 90 of the LFCE (Fox-Lauman Concentration).
This Fox-Lauman Concentration was processed by the UCE under file number UCE/CNC-005-2024.

**Thirty-Fourth.-** On June 12, 2024, by Resolution P/IFT/120624/209, the Plenary of the IFT authorized the concentration notified by Fox and Grupo Lauman (Fox-Lauman Resolution), which was notified to them on June 18, 2024.

**Thirty-Fifth.-** On July 10, 2024, through an agreement signed by the Director General of Concentrations and Concessions, notified by email and by list on the same date, the Lauman Group was deemed to have resolved the Transmission Contracts Request.

**Thirty-Sixth.-** On December 13, 2024, through an agreement signed by the Director General of Concentrations and Concessions, notified by email and by list on the same date, Grupo Lauman was requested various information and documentation related to, among other aspects, the suspension of the broadcast of sports content from the National Football League (NFL) for Fox Sports channels in Mexico (Suspension Request).

**Thirty-Seventh.-** On December 20, 2024, the Decree amending, adding to, and repealing various provisions of the Political Constitution of the United Mexican States, in terms of organic simplification (Organic Simplification Decree),2 was published in the Official Gazette of the Federation. Its transitory articles First, Tenth, and Eleventh establish that the modifications to paragraphs fifteenth to twentieth of article 28 that are amended in the Organic Simplification Decree will enter into force and the IFT will be extinguished within a period of one hundred and eighty days.

---

[2] Available at https://www.dof.gob.mx/nota_detalle.php?codigo=5745905&fecha=20/12/2024#gsc.tab=0.

counted from the entry into force of the secondary legislation on competition and free competition and on telecommunications and broadcasting, respectively, issued by the Congress of the Union, and the acts issued by the IFT prior to its extinction will have all their legal effects.

**Thirty-eighth.-** On January 7, 2025, through a document submitted to the IFT's official office, Gabriela Montaño Zúñiga, in her capacity as representative of Grupo Lauman, requested an extension to respond to the Suspension Request (Extension Document of January 7, 2025).

**Thirty-ninth.-** On January 8, 2025, by agreement signed by the Director General of Concentrations and Concessions, notified by email and by list on the same date, granted Grupo Lauman an extension of 5 (five) business days to respond to the Suspension Request (Extension Agreement).

**Fortieth.-** On January 9, 2025, through a document submitted to the IFT's official office, Gabriela Montaño Zúñiga, in her capacity as representative of Grupo Lauman, requested that she be granted a period of 10 (ten) business days (and not 5 -five- business days) to address the Request for Suspension (Written request for clarification of the period).

**Forty-First.-** On January 14, 2025, through a document submitted to the IFT's official parts office, Gabriela Montaño Zúñiga, in her capacity as representative of Grupo Lauman, requested an extension of 10 (ten) business days to submit the information and documentation mentioned in the Request for Suspension (Extension Reiteration Document).

**Forty-Second.** On January 16, 2025, by agreement signed by the Director General of Concentrations and Concessions, notified by email and by list on the same date, regularized the period granted in the Request for Suspension in favor of Grupo Lauman (Regularization Agreement). Pursuant to this Regularization Agreement, the extension authorized for Grupo Lauman began on January 15, 2025, and would expire on January 28, 2025.

**Forty-Third.** On January 28, 2025, in a document filed with the IFT's official office, Gabriela Montaño Zúñiga, in her capacity as representative of Grupo Lauman, made various statements seeking to refuse to respond to the Suspension Request (Refusal to Respond document).

In light of the aforementioned background, and

INSTITUTO FEDERAL DE TELECOMUNICACIONES

## Considering

**First.-** In accordance with the provisions of the First, Tenth, and Eleventh Transitional Articles of the Organic Simplification Decree, the amendments to paragraphs fifteenth through twentieth of Article 28 that are amended in the Organic Simplification Decree shall enter into force and the IFT shall be dissolved *within a period of one hundred and eighty days from the entry into force of the secondary legislation* issued by the Congress of the Union on matters of competition and free competition and on matters of telecommunications and broadcasting, respectively. In this regard, it is a well-known fact for this IFT that, at the time of issuing this agreement, the Congress of the Union had not issued the aforementioned secondary legislation, so the issuance of this agreement is appropriate.

**Second.-** In its Written Refusal to Respond, Grupo Lauman alleges that this IFT lacks the authority to obtain the information requested through the Suspension Request, because in its opinion: i) the conditions or obligations of disincorporation ordered by the

IFT in Resolution P/IFT/110319/122 "were already considered fulfilled," as recognized in its Agreement P/IFT/120122/7 dated January 12, 2022 and ii) the authorization to carry out the Fox-Lauman Concentration issued by Resolution P/IFT/120624/209 would be valid for 6 (six) months; however, said period has already elapsed without that authorized operation having been carried out, for which reason the authorization granted has become void.

**Third.-** Contrary to what Grupo Lauman states in its Refusal to Respond, the IFT, in terms of articles 12, section XXVI, and 119 of the LFCE, as well as condition 8.6.4. of Resolution P/IFT/110319/122, does have the authority to request information from Grupo Lauman, as explained below.

In this regard, articles 12, section XXVI, and 119 of the LFCE state:

> ***"Article 12.*** *The IFT shall have the following powers:*
>
> ***XXVI.*** *Request or* ***require, in order to exercise its powers, any information it deems necessary.***
> *(…)".*
>
> ***"Article 119.*** *Any person who has knowledge or connection with any fact that the Institute is investigating or with the subject matter of its ongoing procedures, has the obligation to provide within ten days the information, things and documents that are in his possession in the medium that is available to him.*

Machine Translated by Google




*required; to appear to testify at the place, date and time in which they are summoned, and to allow verification visits to be carried out (…)".*

Thus, in terms of articles 12, section XXVI, and 119 of the LFCE, the IFT in the exercise of its powers may request Grupo Lauman to provide the information it deems necessary, and Grupo Lauman has the obligation to respond within 10 (ten) days, being a person who has knowledge or relationship with the subject matter of the IFT procedures in progress, in this case of facts related to the Fox Sports Mexico Business (FSM Business) that was divested from Grupo Lauman based on the conditions imposed by the IFT in Resolution P/IFT/ 110319/122, still in force.

-

Additionally, condition 8.6.4 of Resolution P/IFT/110319/122 states that:

*"8.6.4* ***The Institute may at any time request information from the Parties and/ or third parties that is necessary to verify compliance with the conditions established herein,*** *in accordance with the provisions of Article 131 of the Regulatory Provisions."*

In this regard, in terms of condition 8.6.4 of Resolution P/IFT/110319/122, the IFT may at any time request Grupo Lauman and Grupo Lauman is obliged to respond to the information requests that are necessary to verify compliance with the conditions established in Resolution P/IFT/110319/122, which are indicated in the following section.

**Fourth.-** The disincorporation of the FSM Business from the 21CF and TWDC businesses, its sale as a viable, competitive and ongoing business, the evaluation of potential buyers, the approval of Grupo Lauman as a possible buyer and the subsequent sale of the FSM Business in favor of Grupo Lauman, were all legal acts ordered and supervised by this IFT.
That is, Grupo Lauman acquired the FSM Business through the divestiture, oversight, monitoring, and sale order authorized by this IFT. Specifically, in accordance with Resolution P/IFT/110319/122, the purpose of the sale of the FSM Business was, among other things, to "preserve the number and size of the existing participants prior to the closing of the Transaction," as well as "to preserve [the existence of the FSM Business] as a viable competitor" (see sections 8.2.2.6 and 8.4.1).
of the Resolution, respectively, pages 228/305 and 257/305). That is, to preserve the FSM Business as a viable competitor in the provision and licensing of audiovisual content (programming channels and channel packages) in the Sports programmatic category to restricted television and audio service providers (STAR).

In particular, according to section 8.2.2.14 of Resolution P/IFT/110319/122, the Buyer of the FSM Business had to comply with, among others, the following characteristic:

Machine Translated by Google




*"have financial resources, proven experience, incentives and plans to acquire,* ***maintain and develop the Business to be Divested, as a viable and active competitor in the market;"***

In line with the above, section 8.4.7 of Resolution P/IFT/110319/122 established the eligibility criteria for potential Buyers of the FSM Business, in particular, the following:

*"c) That it has the financial capacity and incentives to acquire and operate the Business to be Disincorporated, as well as to adequately and immediately conclude the Disincorporation;*
*d) That it has the capacity and incentives to compete independently in the relevant market, in a viable and competitive manner;"*

Thus, when presenting its initial proposal as a potential Buyer of the FSM Business, Grupo Lauman, through a letter dated April 26, 2021 signed by his representative Enrique Uruñuela told this IFT the following:3

*"The Lauman Group has available working capital derived from the operations of its subsidiaries and affiliates, as well as from retained earnings from prior years.* ***This capital can adequately support the continued development of the Divested Company*** *(…)*

*Based on the agreements reached, including the agreed allocations described in section 8.4.9.15 (e) above, the Divested Company should generate positive short-term financial results, based on the assumptions described."*

Additionally, he noted that:

*The Lauman Group will partner with current and former key executives from Fox Sports Mexico and Fox Sports LATAM, who have extensive business expertise, including the team responsible for negotiating sports rights, distribution agreements, advertising agreements, affiliation agreements, and key talent, among others.*

*The Lauman Group's post-acquisition strategy includes the continuity of the current business, plus the launch of a new premium channel that leverages current programming, as well as the launch of a direct-to-consumer app.* ***Both will serve as strategic enhancements to***

3 All of the above was stated in the document called "Joint Presentation to the Federal Telecommunications Institute (IFT) in accordance with section 8.4.9.15 of the Resolution," submitted to this IFT by the Divestment Agent (ING Financial Markets LLC) on April 26, 2021, and which is signed by Enrique Uruñuela, in his capacity as representative of Grupo Lauman, and Philip Comerford, in his capacity as representative of the Divestment Agent.

INSTITUTO FEDERAL DE TELECOMUNICACIONES

***modernize channels and help ensure that the Divested Company remains strong, sustainable, and viable."*** [4]

Thus, taking into account the statements and information provided by the Divestment Agent and Grupo Lauman, on May 14, 2021, through agreement P/IFT/EXT/140521/9, the IFT Plenary agreed that Grupo Lauman met the eligibility criteria established in section 8.4.7.1 of Resolution P/IFT/110319/122, in the sense that, among other elements: (a) it has the financial capacity and incentives to acquire and operate the FSM Business, and (b) it has the capacity and incentives to compete independently in the relevant market, in a viable and competitive manner.

Subsequently, the IFT Plenary authorized - through Agreement P/IFT/EXT/070621/11 - the Concentration of the Divestment Agreement in favor of Grupo Lauman, as well as the final purchase agreement for the FSM Business. Specifically, regarding this transaction, by which Grupo Lauman acquired the FSM Business, the IFT Plenary concluded the following:

> *"Based on the foregoing, it is concluded that the transaction intended to be carried out for the acquisition of the Business to be Divested by Grupo Lauman would be carried out in accordance with the terms established in the Resolution and, in particular, would preserve the existence of a viable, competitive competitor, operating and competitive in the Relevant Market, at a level comparable to that maintained prior to the closing of the Transaction, which would remedy and counteract the risks of the Transaction.*
>
> *It is thus anticipated that the completion of the EPA under its terms would result in the transfer of the Business to be Divested as an ongoing, viable, competitive, and independent operation between the Parties, at a comparable level prior to that at which it operated prior to the closing of the Transaction. This is in compliance with the purpose of the Conditions and the reasonableness for which they were established in the Resolution, since the transfer of the Business to a Buyer previously approved by the Institute will preserve the existence of a viable competitor in the Relevant Market, to offset the risks of the Transaction identified in the Resolution.*

In accordance with the above, the review of the development and operation of the FSM Business is of utmost interest to this IFT, since in terms of Resolution P/IFT/110319/122 that ordered its disincorporation and Resolution P/IFT/EXT/070621/11 that authorized its sale, its main objective was to preserve a viable, competitive competitor operating in Mexican territory.

---

[4] The above was stated in the document called "Joint Presentation to the Federal Telecommunications Institute (IFT) in accordance with section 8.4.9.15 of the Resolution," submitted to this Institute by the Divestment Agent (ING Financial Markets LLC) on April 26, 2021, and which is signed by Enrique Uruñuela, in his capacity as representative of Grupo Lauman, and Philip Comerford, in his capacity as representative of the Divestment Agent.

INSTITUTO FEDERAL DE TELECOMUNICACIONES

In this sense, Grupo Lauman is the entity that directly possesses information related to the viability of the FSM Business, as it was Grupo Lauman that acquired it. Therefore, Grupo Lauman is obligated to respond to the information requests issued by this IFT to verify compliance with the objective of the conditions imposed in Resolution P/IFT/110319/122, which is to "preserve [the existence of the FSM Business] as a viable competitor."

**Fifth.-** In its Denial of Response, Grupo Lauman states that the conditions or obligations of divestment ordered by the IFT in Resolution P/IFT/110319/122 "have already been considered fulfilled," as it recognized in its Agreement P/IFT/120122/7 dated January 12, 2022. However, this is incorrect, since, as has been pointed out, the ultimate purpose of the divestment conditions is "to preserve [the existence of the FSM Business] as a viable competitor."

Likewise, in accordance with these decisions issued by the IFT, the following conditions are still in force: i) TWDC's obligation not to repurchase the FSM Business, which will remain in force until November 10, 2031 - condition 8.4.8.2 - and ii) the sublicensing of exclusive free use of the "FOX" brand for sports content agreed between TWDC and 21CF, so that the buyer of the divested business (in this case, Grupo Lauman) could use said brand for a minimum period, which, derived from the negotiations between TWDC / 21CF and Grupo Lauman and in accordance with the License Assignment Agreement submitted to the IFT on March 16, 2022, turned out to be 5 (five)

years, which would conclude on November 10, 2026, -condition 8.4.12.4.-

**Sixth.-** In the particular case, the Request on the Suspension that this IFT made to Grupo Lauman seeks to obtain information on a fundamental aspect: the suspension in the transmission of the NFL sports content. Additionally, this IFT is aware that the FSM Business has also stopped broadcasting sporting events of the Pachucha, León, Tijuana, and Querétaro soccer clubs of the men's Liga MX, to name a few, a situation that directly impacts the viability of the FSM Business. 5 In this regard, it is essential that this IFT be aware of the causes that could lead to a decrease in the viability of the business, as this undermines the purposes and objectives of the conditions imposed in Resolution P/IFT/ 110319/122.

**Seventh.-** This IFT issued and notified the Suspension Request to Grupo Lauman since December 13, 2024, date from which that company has been able to respond to the request, without having corrected it to date, which is why it is necessary to apply the necessary enforcement measures in accordance with the provisions of article 126 of the LFCE.

[5] According to information available on the official Liga MX website, these teams' sporting events are being streamed on the digital platforms Tubi and Caliente, respectively. See information available at: https://ligamx.net/.

Machine Translated by Google




**Eighth.-** Once again, and in order to have the best information available to identify the reasons why Grupo Lauman, through the FSM Business, suspended the transmission of NFL sports content and has stopped broadcasting sporting events from soccer clubs, or even from other leagues, based on articles 12, section XXVI, and 119, of the LFCE, as well as in terms of condition 8.6.4. of Resolution P/IFT/ 110319/122, Grupo Lauman is ordered to be required to, within 10 (ten) business days from the day following the day on which the notification of this agreement takes effect, present the information referred to in the Ninth Considering of this agreement.

**Ninth.-** Grupo Lauman is required to **provide the following information and/or documentation:**

1. The reasons why Grupo Lauman suspended the broadcast of NFL sports content for the FSM Business channels, as well as the broadcast of the game scheduled for December 12, 2024, between the Rams and 49ers. Please also specify the reasons why the NFL suspended the FSM Business's access to its content.

2. Payments and/or debts that Grupo Lauman / Negocio FSM have pending with the NFL.

3. Any outstanding payments and/or debts that Grupo Lauman / Negocio FSM has with any other content provider and/or broadcast rights holder other than the NFL.

4. For answers to items 2 and 3 above, use the table below to present your answer, and add the rows and columns as necessary to include each and every transmission right for which Grupo Lauman / Negocio FSM has outstanding payments and/or debts.

Machine Translated by Google




| Property subject to the contract | Payments that Grupo Lauman / Negocio FSM has the obligation to make from December 1, 2024 until the end of each of the Transmission Rights Contracts | Payments actually made by Grupo Lauman / FSM Business as of December 1, 2024 |
|---|---|---|
| Not.<br>NFL | Not.<br>Total Payment: $XX Million from XXX for Season(s) XX<br><br>The FSM/Lauman Group Business must pay XXX monthly installments (annuities) of $XXX, which must cover the first XXX days following XX. In the final stages, it must pay $XX million of XX in the XX days following XX. | Not.<br>**Monthly payments:**<br>1. XX of XX of 20XX / $XXX million of XX<br>2. XX of XX of 20XX / $XXX million of XX<br>...<br>**Annual payments:**<br>1. XX of XX of 20XX / $XXX million of XX<br>2. XX of XX of 20XX / $XXX million of XX<br>...<br>**Payments by final phases:**<br>1. XX of XX of 20XX / $XXX million of XX (for Liga MX semifinal, 2022 closing)<br>2. XX of XX of 20XX / $XXX million of XX (XXX)<br>... |
| | Not.<br>Total Payment: $XX Million from XXX for Season(s) XX<br><br>The FSM/Lauman Group Business must pay XX monthly installments (annuities) of $XX, which must cover the first XX days following XX. In the final stages, it must pay $XX million of XX in the XX days following XX. | Not.<br>**Monthly payments:**<br>1. XX of XX of 20XX / $XXX million of XX<br>2. XX of XX of 20XX / $XXX million of XX<br>...<br>**Annual payments:**<br>1. XX of XX of 20XX / $XXX million of XX<br>2. XX of XX of 20XX / $XXX million of XX<br>...<br>**Payments by final phases:**<br>1. XX of XX of 20XX / $XXX million of XX (for Liga MX semifinal, 2022 closing)<br>2. XX of XX of 20XX / $XXX million of XX (XXX)<br>... |
| ... | ... | ... |
| ... | ... | ... |
| ... | ... | ... |
| ... | ... | ... |

5. Identify each of the content providers and/or rights holders. Broadcasting, as well as the corresponding sporting events, for which Grupo Lauman / Negocio FSM is up-to-date on payments. For these, please submit documentation proving that payments are up-to-date.

6. Please specify which other sporting event broadcasts are at risk of being suspended or have already been suspended for FSM Business channels, and the reasons for this.

Machine Translated by Google


INSTITUTO FEDERAL DE TELECOMUNICACIONES

7. Explain the reasons why the closure of the Fox Concentration was not carried out. The herd.

8. Present a copy of the audited financial statements of the FSM Business for the fiscal year that ended on December 31, 2024.

Based on the above,

## Remember

**First.-** Require Grupo Lauman Holding, S. de RL de CV again, so that within the term of 10 (ten) business days counted from the day following the one in which the notification of this agreement, provide the information and/or documentation described in the Consideration Ninth of this agreement.

Based on article 126, sections I and II, of the LFCE, Grupo Lauman Holding, S. de RL de CV is hereby notified that, **in the event of not providing the required information and documentation in a complete manner and within the 10 (ten) day period ordered, and taking into account the need and relevance of having it in terms of what is expressed in the Considerations of this agreement, the IFT may impose a fine of up to the equivalent of 3,000 (three thousand) times and Update Unit (UMA) 6 daily in force, which may be applied for each Measurement day that passes without complying with what was ordered.**

**Second.-** Make known to Grupo Lauman Holding, S. de RL de CV that all information and/or documentation provided for the purpose of fulfilling the requirement will be done under protest of telling the truth, since in accordance with the provisions of article 127, section III, of the LFCE, this IFT may apply a fine of up to the equivalent of 175,000 (one hundred seventy-five thousand) times the UMA, for falsely declaring or providing false information to this authority, regardless of the criminal liability incurred.

**Third.-** Make known to Grupo Lauman Holding, S. de RL de CV that, in terms of Articles 124 and 125 of the LFCE, the information that this IFT obtains for the discharge of this

6 This is in accordance with the "Decree declaring reformed and added various provisions of the Political Constitution of the United Mexican States, regarding the deindexation of the minimum wage," published in the Official Gazette of the Federation on January 27, 2016. Available at: https://dof.gob.mx/nota_detalle.php?codigo=5423663&fecha=27/01/2016#gsc.tab=0

The requirement will be confidential and may only be consulted by economic agents with an interest legal in the procedure.

Likewise, information may be classified as confidential when it meets the legal requirements. To this end, taking as reference the provisions of the General Law on Transparency and Access to Information Public Information and the applicable provisions, with the understanding that the information thus classified It will not be subject to any temporality for its protection and only the owners will be able to have access to it. of the same, its representatives and the Public Servants authorized to do so.

**Fourth.- Notify Grupo Lauman Holding, S. de RL de CV personally.**

This was agreed and signed by the General Director of Concentrations and Concessions of the Economic Competition Unit of this Federal Telecommunications Institute, based on articles 28, paragraphs fifteenth to eighteenth, of the Political Constitution of the United Mexican States published on October 30, 2024, in relation to the transitory articles First, Tenth and Eleventh of the "Decree by which various provisions of the Political Constitution of the United Mexican States are reformed, added and repealed, in matters of organic simplification", published in the Official Gazette of the Federation on December 20, 2024; 7, third paragraph, of the Federal Telecommunications and Broadcasting Law; 1, 2, 5, first paragraph, 12, section XXVI, 111, 112, 119 and 126, sections I and II, of the Federal Economic Competition Law; 1, 36, 40,165, section I, 166, section XI, and 175 of the Regulatory Provisions of the Federal Law on Economic Competition for the telecommunications and broadcasting sectors; numeral 8.6.4 of Resolution P/IFT/110319/122; Second Agreement of Agreement P/IFT/040821/356; section B, numeral VII, subparagraph b), of the Annex, of Agreement P/IFT/EXT/290620/20; First Agreement, subparagraph c), of Agreement P/IFT/041120/337; as well as articles 1, 4, section IX, subparagraph xviii), 20, sections VI, VIII, X, XI and XVI, and 50, sections IV, V and XV, of the Organic Statute of the Federal Telecommunications Institute.

**Juan Manuel Hernández Pérez**

**Director General of Concentrations and Concessions**
**Economic Competition Unit**

[SAHA/CARP/BUSM]
CCP Salvador Flores Santillán. Head of the Economic Competition Unit.

Machine Translated by Google


FIRMADO POR: JUAN MANUEL HERNANDEZ PEREZ
FECHA FIRMA: 2025/02/12 5:23 PM
AC: AC DEL SERVICIO DE ADMINISTRACION
TRIBUTARIA
ID: 163488
HASH:
2D289FFF342CB39856818E06A22452B8641E442498932C
14F21E3A7C2944D1E5