# EXHIBIT K

EXECUTION VERSION

# AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT OF MEXICO SPORTS DISTRIBUTION LLC

This Amended and Restated Limited Liability Company Agreement (this "**Agreement**") is entered into as of November 10, 2021 by Altener, S.A. de C.V., a sociedad anonima de capital variable (the "**Member**").

WHEREAS, immediately prior to the adoption of this Agreement, the Company was governed by that certain Limited Liability Company Agreement of Mexico Sports Distribution LLC (the "**Company**"), dated as of August 27, 2019 (the "**Prior Agreement**"), under which TFCF Latin American Channel LLC (f/k/a Fox Latin American Channel LLC), a Delaware limited liability company ("**FLAC**"), and Fox Sports Mexico Distribution LLC, a Delaware limited liability company ("**FSMD**" and together with FLAC, the "**Prior Members**"), were all the members and holders of all outstanding limited liability company interests of the Company;

WHEREAS, on the date hereof, the Prior Members transferred all of the limited liability company interests of the Company to the Member pursuant to that certain Amended and Restated Equity Purchase Agreement, dated as of November 10, 2021, among FLAC, FSMD and the Member; and

WHEREAS, as a result of the foregoing, the Member desires to amend and restate the Prior Agreement in its entirety, in the manner set out in this Agreement, to, among other things, reflect that each Prior Member ceased to be a member of the Company and the admission of the Member as the new sole member of the Company.

NOW, THEREFORE, in consideration of the agreements and obligations set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1. Name. The Company was formed under the name "Mexico Sports Distribution LLC." The Member may change the name of the Company at any time in its sole discretion. The Company shall conduct business under its legal name or such other name(s) as the Member shall designate.

2. Certificates. Pursuant to and in accordance with the Delaware Limited Liability Company Act (6 Del.C. §§18-101, et seq.), as amended from time to time (the "**Act**"), the Company was organized as a limited liability company pursuant to the filing of the Certificate of Formation of the Company with the office of the Secretary of State of the State of Delaware on August 27, 2019. Henceforth, the Member shall be designated as an authorized person within the meaning of the Act. The Member shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in a jurisdiction in which the Company may wish to conduct business.

3. Purpose. The Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any

lawful act or activity for which limited liability companies may be formed under the Act.

4. Powers. In furtherance of its purposes, but subject to all of the provisions of this Agreement, the Company shall have the power, and is hereby authorized, to do such things, engage in activities and otherwise take any and all actions necessary, appropriate, proper, advisable, incidental or convenient in connection with or in furtherance of the purposes of the Company.

5. Principal Business Office. The principal business office of the Company shall be located at 357 Almeria Av Suite 101, Coral Gables, Florida, 33134, or at such other location as may hereafter be determined by the Member.

6. Registered Office. The address of the registered office of the Company in the State of Delaware is c/o Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

7. Registered Agent. The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

8. Members. The name and the mailing address of the Member is set forth on Schedule A attached hereto.

9. Limited Liability. Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated directly for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

10. Admission of Members. Any member is deemed admitted as a Member of the Company upon its execution and delivery of this Agreement, without making a capital contribution or being obligated to do so, as permitted under §18-301(d) of the Act.

11. Contributions. The Member is not required to make any capital contribution to the Company. However, the Member may make capital contributions to the Company as the Member determines is appropriate.

12. Allocation of Profits and Losses. The Company's profits and losses shall be allocated to the Member in accordance with the percentage set forth on Schedule A attached hereto (the "**Allocation Percentages**").

13. Distributions. Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member, in accordance with the Allocation Percentages. Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make a distribution to the Member on account

of its interest in the Company if such distribution would violate Section 18-607 of the Act or other applicable law.

14. Management. In accordance with Section 18-402 of the Act, management of the Company shall be vested in the Member, and those persons appointed by the Member pursuant to Section 15 hereof, if any. The Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members of a limited liability company under the laws of the State of Delaware. The Member has the authority to bind the Company.

15. Officers. The Member may, from time to time as it deems advisable, appoint officers of the Company (each an "**Officer**") and assign in writing titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person. Unless the Member deems otherwise, the assignment of such title shall constitute the delegation to such person the authorities and duties that are normally associated with that office as commonly used for officers of a business corporation formed under the Delaware General Corporation Law. Any Officer with a title that is not commonly used with a business corporation shall have the authorities and duties as given by the Member or that are normally associated with a Vice President of a business corporation, and such other duties and authorizations as would be reasonable and common based on the title assigned. Any delegation or appointment pursuant to this Section 15 may be revoked at any time by the Member. The initial Officers are listed on Schedule B attached hereto, which may be amended from time to time by the Member.

16. Execution of Contracts and Other Documents. The Member, an Officer or any other person acting within the scope of authority granted in writing by the Member, may execute and/or deliver, in the name and on behalf of the Company, agreements, contracts, powers of attorney, evidences of indebtedness, conveyances, proxies, waivers, consents, notices, and any other document or instrument.

17. Other Business. The Member may engage in or possess an interest in other business ventures of every kind and description, independently or with others. The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

18. Exculpation and Indemnification. The Member or any Officer shall not be liable to the Company, or any other person or entity who has an interest in the Company, for any loss, damage or claim incurred by reason of any act or omission performed or omitted by the Member or such Officer in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on the Member or such Officer by this Agreement, except that the Member or an Officer shall be liable for any such loss, damage or claim incurred by reason of the Member's or such Officer's willful misconduct. To the fullest extent permitted by applicable law, the Member or an Officer shall be entitled to indemnification from the Company for any loss, damage or claim incurred by the Member or such Officer

by reason of any act or omission performed or omitted by the Member or such Officer in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on the Member or such Officer by this Agreement, except that the Member or any Officer shall not be entitled to be indemnified in respect of any loss, damage or claim incurred by the Member or such Officer by reason of willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 18 shall be provided out of and to the extent of Company assets only, and the Member shall not have personal liability on account thereof.

19. Assignments. The Member may assign in whole or in part its limited liability company interest. If the Member transfers all of its interest in the Company pursuant to this Section 19, the transferee shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective immediately prior to the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

20. Admission of Additional Members. Additional members of the Company may be admitted to the Company with the written consent of the Member, but such admission shall not become effective until this Agreement is amended to reflect the newly admitted member's rights hereunder.

21. Dissolution.

a. The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (i) the written consent of the Member, or (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act.

b. The bankruptcy of the Member will not cause the Member to cease to be a member of the Company and upon the occurrence of such an event, the business of the Company shall continue without dissolution.

c. In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

22. Separability of Provisions. Each provision of this Agreement shall be considered separable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

23. Entire Agreement. This Agreement constitutes the entire agreement of the Member with respect to the subject matter hereof.

24. Governing Law. This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

25. Amendments. This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

26. Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The exchange of a fully executed Agreement (in counterparts or otherwise) by facsimile transmission, by electronic mail (in .PDF or similar format), or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, shall be sufficient to bind the parties hereto to the terms and conditions of this Agreement.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date first written above.

**Member:**

ALTENER, S.A. DE C.V.

By: ______________________________
Name: J. Enrique Uruñuela L
Title: Legal Representative

**Prior Members:**

TFCF LATIN AMERICAN CHANNEL LLC

By: ______________________________
Name: James M. Kapenstein
Title: President

FOX SPORTS MEXICO DISTRIBUTION LLC

By: ______________________________
Name: James M. Kapenstein
Title: President

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date first written above.

**Member:**

ALTENER, S.A. DE C.V.

By: ______________________________
Name:
Title:

**Prior Members:**

TFCF LATIN AMERICAN CHANNEL LLC

By: ______________________________
Name: James M. Kapenstein
Title: President

FOX SPORTS MEXICO DISTRIBUTION LLC

By: ______________________________
Name: James M. Kapenstein
Title: President

**Schedule A**

Mexico Sports Distribution LLC
Amended and Restated Limited Liability Company Agreement

MEMBER:

| **Name:** | **Mailing Address** | **% Interest** |
|---|---|---|
| Altener, S.A. de C.V. | Guillermo Gonzalez Camarena 600 piso 6<br>Ciudad Santa Fe, Alcaldía Álvaro Obregón<br>CP 01210, Ciudad de México | 100% |

**Schedule B**

Mexico Sports Distribution LLC
Amended and Restated Limited Liability Company Agreement

OFFICERS:

| Name | Position |
|---|---|
| Manuel Arroyo Rodríguez | President |
| Israel Gómez Castruita | Member of the Board |
| Carlos E. Martínez | Member of the Board |
| Cristina Ruiz de Velasco | Secretary |
| Alejandro Santos Sánchez | Treasurer |