**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FOX CORPORATION; FOX MEDIA LLC; and FOX SPORTS EN ESPAÑOL LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MEDIA DEPORTES MEXICO, S. de R.L. de C.V.,<br><br>Defendant. | Case No.: 1:25-cv-06703-JSR<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO NON-PARTY MEXICO SPORTS DISTRIBUTION LLC'S MOTION TO SET ASIDE CONTEMPT ORDER** |

# TABLE OF CONTENTS

**Page**

I. The Court has specific personal jurisdiction over MSD ....................3

A. MSD's dissemination of Fox trademarks into New York constitute minimum contacts with New York ....................4

B. MSD's pursuit of the Mexico Injunction constitutes minimum contacts with New York ....................6

1. MSD was not required to seek the Mexico Injunction ....................7

2. The IFT expressly authorized the agreements that grant this Court exclusive jurisdiction over disputes involving the Fox Sports Trademarks ....................9

3. MSD's request for the Mexico Injunction exceeded any directive from the IFT ....................10

4. Compliance with the Court's contempt order does not require MSD to violate an IFT directive ....................11

5. MSD participated in the Mexico Injunction intending to assist MDM in violating the Court's injunction ....................12

6. MSD actively participated in MDM's contemptuous conduct because MSD is legally identified with MDM ....................14

C. MSD fails to present a compelling case to defeat personal jurisdiction ....................15

II. MSD's non-sequitur legal arguments are all incorrect ....................17

A. Plaintiffs did not submit to Mexican jurisdiction ....................17

B. The IFT did not require an exclusive license for the Fox Sports Trademarks ....................18

III. Conclusion ....................19

Certification Pursuant To S.D.N.Y. Local Civil Rule 7.1(c) ....................21

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Broad. Mktg. Int'l, Ltd. v. Prosource Sales & Mktg., Inc.*,
345 F. Supp. 2d 1053 (D. Conn. 2004) .....5

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .....3, 15, 16

*ClearOne Commc'ns, Inc. v. Bowers*,
651 F.3d 1200 (10th Cir. 2011) .....4

*Eli Lilly & Co. v. Gottstein*,
617 F.3d 186 (2d Cir. 2010) .....2, 4

*Forbes IP (HK) Ltd. v. Media Bus. Generators, S.A. de C.V.*,
No. 23-CV-11168, 2024 WL 1743109 (S.D.N.Y. Apr. 23, 2024) .....16

*Fox Cable Network Services, et al. v. Grupo Lauman Holding, et al.*,
Case No. 2:25-cv-02444-JFW (C.D. Cal.), ECF No. 78 .....15

*Fox Cable Network Services, LLC v. Grupo Lauman Holding, S. De R.L. De C.V.*,
Case No. 25-cv-6512-JPO, ECF No. 1 .....17

*Gucci Am., Inc. v. Weixing Li*,
768 F.3d 122 (2d Cir. 2014) .....3

*Havens v. James*,
76 F.4th 103 (2d Cir. 2023) .....14

*Keeton v. Hustler Mag., Inc.*,
465 U.S. 770 (1984) .....6

*Lindland v. U.S. Wrestling Ass'n, Inc.*,
227 F.3d 1000 (7th Cir. 2000) (Easterbrook, J.) .....3

*Mashantucket Pequot Tribe v. Redican*,
309 F. Supp. 2d 309 (D. Conn. 2004) .....5

*Metro. Life Ins. Co. v. Robertson Ceco-Corp.*,
84 F.3d 560 (2d Cir. 1996) .....15

*Nye & Nissen v. United States*,
336 U.S. 613 (1949) .....14

*S.E.C. v. Homa*,
514 F.3d 661 (7th Cir. 2008) .....4

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*S.E.C. v. U.S. Env't, Inc.*,
155 F.3d 107 (2d Cir. 1998)....................14

*Shaoxing Bon Textiles Co. v. 4-U Performance Grp. LLC*,
No. 16-CV-6805 (JSR), 2018 WL 11389637 (S.D.N.Y. Aug. 20, 2018)....................2, 4, 17

*United States v. Barnette*,
129 F.3d 1179 (11th Cir. 1997)....................4

*United States v. Rylander*,
460 U.S. 752 (1983)....................1, 2

*United States v. Sullivan*,
118 F.4th 170 (2d Cir. 2024)....................15

*United States v. Turner*,
No. 18-CR-00068, 2023 WL 1364888 (S.D.N.Y. Jan. 31, 2023)....................14

*Waffenschmidt v. MacKay*,
763 F.2d 711 (5th Cir. 1985)....................4

**RULES**

Fed. R. Civ. P.
64(d)....................3
65(d)....................14
65(d)(2)....................5

**OTHER AUTHORITIES**

Fox Sports Mexico website www.foxsports.com.mx....................6

Restatement (Second) of Torts, § 8A(b) (1965)....................14

Non-party Mexico Sports Distribution LLC ("MSD") has openly defied this Court's injunction and contempt order, and signals it will continue to do so. Its motion does not address that misconduct, but instead improperly presents erroneous and irrelevant atmospherics and arguments that attack the merits of the Court's injunction, despite settled law that "a contempt proceeding does not open to reconsideration the legal or factual basis of the [disobeyed] order." *United States v. Rylander*, 460 U.S. 752, 756 (1983). If MSD wishes to contest Plaintiffs' case on the merits, it can encourage its alter ego Defendant Media Deports Mexico ("MDM") to appear and take a swing. But MSD cannot defy court orders because it unilaterally decides it is entitled to do so. The Court should deny the motion and enforce its authority to ensure compliance.

The Court has held MSD in contempt for acting in concert with Defendant MDM to violate the Court's injunction, "including [MDM's] refusal to cease using the trademarks identified in the Temporary Restraining Order and [MDM's] pursuit of the injunction dated August 27, 2025 by the 42nd Civil Department of the Superior Court of Justice in Mexico City" ("August 27, 2025 Mexico Injunction" or "Mexico Injunction," *see* ECF No. 42-1, Ex. B). ECF No. 45. MDM and MSD sought the Mexico Injunction *after* this Court issued its injunction ordering MDM not to pursue any relief from the 42nd Superior Court of Mexico City. The basis for MSD's contempt rests on two independent grounds—(1) aiding and abetting MDM's contempt and (2) being legally identified with MDM. *See* ECF No. 42.

MSD does not dispute that it is legally identified with MDM. It does not dispute that it has engaged in conduct that is prohibited by the temporary restraining order and preliminary injunction in this case. Nor does it address the ongoing, contemptuous conduct occurring in New York—MSD and MDM's unauthorized dissemination of U.S.-registered Fox Sports trademarks on Fox Sports Mexico's websites and social media platforms into New York. Those issues are fatal to

MSD's motion to set aside the contempt order.

MSD devotes dozens of pages contesting the underlying basis for the Court's injunction, including whether MDM's license is non-exclusive and whether this Court has subject matter jurisdiction to issue an injunction. But challenging the merits of the underlying order in a contempt proceeding is forbidden. *See Rylander*, 460 U.S. at 756. For that reason, the vast majority of MDM's brief is inapposite.

MSD's only substantive argument against contempt is that the Court lacks personal jurisdiction over it. The vast majority of MSD's brief and declarations in support are irrelevant to the single question now before the Court: does the Court have personal jurisdiction over MSD? The law is straightforward: in contempt proceedings, courts have personal jurisdiction over U.S.-based nonparties that act in concert with an enjoined party to violate the injunction, regardless of other contacts with the forum. *See Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195 (2d Cir. 2010); *Shaoxing Bon Textiles Co. v. 4-U Performance Grp. LLC*, No. 16-CV-6805 (JSR), 2018 WL 11389637, at *3 (S.D.N.Y. Aug. 20, 2018).

The Court has personal jurisdiction over MSD because (1) MSD and MDM jointly operate Fox Sports Mexico, and thus MSD intended to assist MDM in violating the Court's injunction by continuing to disseminate U.S.-registered Fox Sports trademarks into New York and the rest of the United States, (2) MSD intended to assist MDM in violating the Court's injunction by jointly seeking the August 27, 2025 Mexico Injunction, and (3) MSD is legally identified with MDM, a party over which this Court indisputably has personal jurisdiction due to the forum selection clause in the 21CF-MDM Assignment Agreement. ECF Nos. 11-27 (original) and 11-28 (amended).

Holding MSD in contempt is essential. Because MSD is the joint operating partner of Fox Sports Mexico and a co-utilizer of Fox's trademarks, if not held in contempt MSD will continue

the unauthorized use of Fox's trademarks in Mexico and the United States and pursue litigation against Fox in Mexico related to those marks, all to the benefit of MDM. Such an outcome would compromise the Court's inherent power "necessary to the proper enforcement and supervision of a court's injunctive authority," *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 137 (2d Cir. 2014), because it would permit MDM to violate the Court's injunction through the actions of MSD. *See Lindland v. U.S. Wrestling Ass'n, Inc.*, 227 F.3d 1000, 1006 (7th Cir. 2000) (Easterbrook, J.) ("The 'active concert or participation' clause is designed to prevent what may well have happened here: the addressee of an injunction . . . persuades a friendly third party to take steps that frustrate the injunction's effectiveness.") (quoting Fed. R. Civ. P. 64(d)).

## I. The Court has specific personal jurisdiction over MSD

MSD contends that it lacks sufficient minimum contacts required for the Court to exercise specific personal jurisdiction because it "has [only] engaged in foreign conduct not directed to this forum." ECF No. 76 at 23. That is wrong for two reasons. First, MSD participated with MDM in directing the dissemination of Fox trademarks into New York. Second, MSD's pursuit of the August 27, 2025 Mexico Injunction was purposefully directed to New York. MSD's contempt sanction relates to both of these activities.

To establish specific personal jurisdiction over civil defendants, the Supreme Court requires a two-step analysis. First, the court must decide if the defendant has "'purposefully directed' his activities at . . . the forum, and the litigation . . . 'arise[s] out of or relate[s] to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citation omitted). Second, once the minimum contacts are established, the court must "determine[s] whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Id.* at 476 (internal quotation omitted).

### A. MSD's dissemination of Fox trademarks into New York constitute minimum contacts with New York

MSD has the minimum contacts necessary for this Court to exercise specific personal jurisdiction over it because MSD and MDM jointly disseminate Fox trademarks into New York via Fox Sports Mexico websites and social media platforms, and MSD's contempt proceeding directly relates to that conduct.

"Many circuits, including the Second Circuit, agree that '[n]onparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order. This is so despite the absence of other contacts with the forum.'" *Shaoxing Bon Textiles Co.*, 2018 WL 11389637, at *3 (quoting *Waffenschmidt v. MacKay*, 763 F.2d 711, 714 (5th Cir. 1985)); *see also Eli Lilly & Co. v. Gottstein,* 617 F.3d 186, 195 (2d Cir. 2010); *S.E.C. v. Homa*, 514 F.3d 661, 673 (7th Cir. 2008); *ClearOne Commc'ns, Inc. v. Bowers*, 651 F.3d 1200, 1214–15 (10th Cir. 2011); *United States v. Barnette*, 129 F.3d 1179, 1182 (11th Cir. 1997). "Such recalcitrant non-parties have established minimum contacts because the intentional violation of a court order is often 'designed to have purpose and effect in the forum.'" *Shaoxing Bon Textiles Co.*, 2018 WL 11389637, at *3 (quoting *Homa*, 514 F.3d at 675).

MSD aided and abetted MDM's violation of the injunction because it jointly operates Fox Sports Mexico and jointly exploits the Fox Sports Trademarks[1] with MDM for their mutual benefit, including after the Court's injunction issued. ECF No. 42 at 4–5; *see also* ECF No. 35 (MDM refusing to cease using Fox Sports trademarks in Mexico and the United States after injunction

[1] The term "Fox Sports Trademarks" refers to the Mexico-registered trademarks defined in the Court's temporary restraining order as the Fox Sports Trademarks. ECF No. 29.

issued). By doing so, MSD has assisted MDM—with whom it jointly operates Fox Sports Mexico—in violating the Court's injunction. This is precisely the type of concerted conduct Federal Rule of Civil Procedure 65(d)(2) is designed to prevent.

By their own admission, MSD and MDM jointly operate Fox Sports Mexico, ECF 13-3 at 6, which includes Fox Sports Mexico's websites and social media platforms. Those websites and platforms continue to disseminate U.S.-registered Fox Sports trademarks[2] into New York and the rest of the United States in violation of the Court's injunction. *See* Declaration of Edward Lee ("Lee Decl.") ¶ 3; ECF No. 36 ¶¶ 5–13; ECF No. 9 at 21 (showing MDM claims the copyright to the Fox Sports Mexico website). MDM and MSD's Fox Sports Mexico websites and social media platforms allow "significant interactions by users" in New York, including by displaying English-language advertisements and "allowing users to hyperlink to advertiser's sites," which no doubt generates revenue for MSD. *Mashantucket Pequot Tribe v. Redican*, 309 F. Supp. 2d 309, 318 (D. Conn. 2004) (finding "website interactivity" supports "a finding that the exercise of personal jurisdiction is proper here"); *see also* Lee Decl. ¶ 4, Ex. 1 (screenshot of Fox Sports Mexico website displaying the U.S.-registered Fox Sports trademarks and advertisements when accessed from New York); *id.* ¶ 4 (clicking on advertisement that appears on Fox Sports Mexico website takes user to the advertiser's website). MSD's use of its websites and social media platforms to direct U.S.-registered Fox Sports trademarks into New York, along with its use of advertisements to target users in New York, is conduct that is designed to have purpose and effect in New York, and therefore establishes that MSD has minimum contacts with the forum. *See Broad. Mktg. Int'l, Ltd. v. Prosource Sales & Mktg., Inc.*, 345 F. Supp. 2d 1053, 1062–63 (D. Conn. 2004) (use of

---

[2] References to "U.S.-registered Fox Sports trademarks" refer to the U.S.-registered trademarks identified in the Court's temporary restraining order as the U.S. Fox Sports marks. ECF No. 29.

interactive website to advertise business in forum satisfies minimum contacts test).

There can be no question that MSD purposefully directed the unauthorized dissemination of the Fox Sports trademarks into New York. On August 18, 2025, two business days after the Court's temporary restraining order issued, the Fox Sports Mexico website www.foxsports.com.mx was inaccessible from the United States. *See* September 14, 2025 Declaration of Christopher Berg ¶ 2 (Fox Sports Mexico website returning an Access Denied page when visited from Los Angeles, California). But MSD and MDM restored the ability to access the Fox Sports Mexico website in the United States no later than September 8, 2025. *See* ECF No. 67 ¶ 15 (Fox Sports Mexico website accessible when visited from California); Lee Decl. ¶ 3 (Fox Sports Mexico website accessible when visited on September 14, 2025 from New York).

MSD and MDM's volitional conduct to restrict and then resume access to the Fox Sports Mexico website to users in the United States, including New York, after the Court's injunction issued underscores that MSD purposefully directed its conduct to New York. *See Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 779–81 (1984) (upholding exercise of specific personal jurisdiction where defendant disseminated offending publication to every state, including the forum state). And MSD's contempt relates to the unauthorized use of the Fox Sports trademarks in the United States, including New York. ECF No. 42 at 4–5; ECF No. 35. MSD therefore has sufficient minimum contacts in New York to permit the exercise of specific personal jurisdiction over it. MSD has deliberately projected its conduct into this forum, and the law forecloses its attempt to evade jurisdiction.

**B. MSD's pursuit of the Mexico Injunction constitutes minimum contacts with New York**

MSD has minimum contacts with New York for an independent reason: MSD's pursuit of the Mexico Injunction was designed to have purpose and effect in New York—to continue to

advance the Mexican litigation that this Court prohibited MDM from pursuing.

MSD claims that it was required to seek the Mexico Injunction in order to comply with a 2019 IFT Resolution, *see* ECF Nos. 77-1–77-4 (2019 IFT Resolution), and therefore its conduct was not purposefully directed to New York. ECF No. 76 at 23. It characterizes that contention as an independent basis for pursuing the Mexico Injunction that is distinct from assisting MDM to violate the Court's injunction. MSD's position is meritless for several reasons.

**1. MSD was not required to seek the Mexico Injunction**

MSD incorrectly asserts that Article 28 of the Mexican Constitution grants "Mexican courts [] the exclusive jurisdiction to enjoin anyone violating the IFT's condition." ECF No. 76 at 14.[3] Based on that faulty premise, MSD claims that the only way to bring about compliance with the 2019 IFT Resolution and MSD's "only legal recourse" was to seek the Mexico Injunction. *Id.* at 23.

First, the 2019 IFT Resolution, which imposed the license requirement for the Fox Sports trademarks, ECF Nos. 77-1–77-4, does not mention MSD at all. Nor does the 2021 IFT Resolution, which verified that the 21CF-MDM Assignment Agreement complied with the directives in the 2019 IFT Resolution. Berg Decl. ¶ 3, Ex. 1 at 48 (2021 IFT Resolution); *see also* ECF No. 11-53 (reaffirming IFT approved the terms of the 21CF-MDM Assignment Agreement). MSD cannot articulate a basis that shows it has any rights to the Fox Sports Trademarks or that the IFT directed MSD to comply with any of its directives. In short, MSD's argument that it was somehow required by the IFT to pursue the Mexico Injunction lacks merit. MSD is not a party to the 21CF-MDM Assignment Agreement, and MSD has not been granted any rights or obligations

[3] Conspicuously, MSD does not cite the Mexican Constitution for that proposition, but rather a statement from a purported expert declaration. *Id.* citing ECF No. 76-3 (Declaration of Mony S de Swaan Addati § 2.3(2)).

by the IFT in connection with the Fox Sports Trademarks. It therefore has no standing to claim it is acting to comply with the 2019 IFT Resolution.

Second, Mexican courts do not have exclusive jurisdiction over this dispute. Article 28 of the Mexican Constitution does not say that Mexican courts have exclusive jurisdiction to enjoin violations of the IFT's resolution. Rather, it states that the "[g]eneral rules and acts . . . or any omissions [of the IFT] may be challenged only through indirect amparo [special writ of protection] . . . . [before] specialized judges and courts . . . ." Berg Decl. ¶ 4, Ex. 2 at 43. In other words, *acts of the IFT* can only be challenged through special Mexican courts. But no party here is challenging an act of the IFT. Article 28 says nothing about Mexican courts, much less Mexico City courts like the one that issued the Mexico Injunction, having exclusive jurisdiction to enjoin noncompliance with an IFT resolution. MSD runs head on into that inconsistency when it admits that it filed a complaint with the IFT seeking relief from Fox and Disney's alleged noncompliance with the 2019 IFT Resolution. *See* ECF No. 76 at 18; ECF No. 77-20 (Grupo Lauman complaint to IFT). That complaint was rejected by the IFT.[4] Thus, MSD cannot claim it was required to pursue the Mexican Injunction before a Mexican court.

Moreover, in direct contradiction to MSD and its purported expert's characterization of the Mexican Constitution, the 2019 IFT Resolution makes clear that the IFT itself is charged with enforcing its own resolutions through an "incidental procedure."[5] The IFT has not elected to

[4] It is troubling that MSD has failed to disclose that the IFT has issued a decision rejecting Grupo Lauman's complaint. *See* Berg Decl. ¶ 5. Plaintiffs have requested a copy of that IFT decision through Mexico's public transparency laws, but such requests take approximately 20 days to process. *Id.* Plaintiffs will therefore not be able to provide the Court with a copy of that IFT decision by the September 18, 2025 hearing. The IFT has not initiated a noncompliance proceeding against Plaintiffs nor has it given Plaintiffs any reason to think it is contemplating doing so. *Id.* ¶ 6.

[5] "In the event that the Institute has indications or an objective cause of a possible non-compliance

initiate such a proceeding against Plaintiffs. Berg Decl. ¶ 6. All this makes clear that MSD was not legally required to seek the Mexico Injunction. MSD has not been endowed with the responsibility to vindicate IFT mandates. MDM's attempt to cloak itself in the mantle of Mexican national sovereignty is meritless.

### 2. The IFT expressly authorized the agreements that grant this Court exclusive jurisdiction over disputes involving the Fox Sports Trademarks

MSD claims that Fox is attempting to sidestep the IFT's regulatory authority and the Mexican adjudicatory process. ECF No. 76 at 9. That is an impermissible attack on the underlying merits of the injunction, and MSD gets the facts exactly backwards. The IFT itself approved and authorized the exclusive forum selection clause on which Plaintiffs rely to bring this litigation before this Court. By seeking the Mexico Injunction, MDM and MSD have defied the IFT's directives and have tried to sidestep the forum approved for this dispute.

The 2021 IFT Resolution expressly approved "The Equity Purchase Agreement ["EPA"], including its ancillary agreements and exhibits entered into on May 21, 2021." Berg Decl. ¶ 3, Ex. 1 at 48–49 (2021 IFT Resolution); *see also* ECF No. 11-53 at 10. Exhibit B of the EPA is the form license assignment agreement substantively identical to the 21CF-MDM Assignment Agreement, including the exclusive forum selection clause. ECF-No. 12-26 at 84, 109 § 12.3. Just weeks before this litigation commenced, the IFT confirmed in July 2025 the significance of the IFT approving the EPA and its exhibits:

> the [21CF-MDM Assignment Agreement] was incorporated to the EPA as Exhibit B . . . ; as well as the [Fox-21CF License Agreement] entered into by and between Fox Corp and [21CF] on March 19, 2019. . . . The [Fox-21CF License Agreement] and the [21CF-MDM Assignment Agreement], being ancillary agreements and

---

by the Parties to any of the conditions and/or obligations to which the authorization of the Transaction is subject, the Institute will initiate an incidental procedure related to compliance with the conditions." ECF No. 77-3 at 4 § 4.3(Part 3 of machine translated 2019 IFT Resolution).

> exhibits incorporated into the EPA, were agreements approved by the IFT in the [2021 IFT Resolution].

ECF No. 11-53 at 10. The IFT went on to make clear that the terms of these agreements govern the rights and obligations of the parties: the parties should comply "with the terms agreed upon between Fox Corp, [21CF], and Grupo Lauman in the [21CF-MDM Assignment Agreement] and the [Fox-21CF License Agreement], respectively." *Id.* at 11.[6]

The IFT's approval of the forum selection clause in the 21CF-MDM Assignment Agreement confirms that this Court—not the court that issued the Mexico Injunction—is the forum *authorized by the IFT* to address any disputes between the parties arising out of the Fox Sports Trademarks.[7] MSD's claim that it sought the Mexico Injunction to comply with the IFT's 2019 Resolution is baseless.

**3. MSD's request for the Mexico Injunction exceeded any directive from the IFT**

MSD claims that it sought the Mexico Injunction, which purported to enjoin Fox from using any "Fox" marks, *see* ECF No. 42-1, Ex. B (Mexico Injunction), "to comply with the IFT's constitutionally authorized orders"—specifically, the 2019 IFT Resolution. ECF No. 76 at 23. That is demonstrably false because the Mexico Injunction seeks relief far beyond anything contemplated by any IFT directive. The IFT did not approve a license covering all "Fox" trademarks in Mexico. As it reaffirmed in the July 2025 IFT Letter, the IFT only approved a

---

[6] Far from trying to sidestep the IFT, Plaintiffs requested the IFT's clarification in its July 2025 IFT Letter before Plaintiffs initiated this litigation in order to ensure that Plaintiffs did not circumvent the Mexican regulatory process.

[7] For that reason, MSD's contention that "this litigation is interfering with the IFT's constitutional mandate to protect the Mexican public," ECF No. 76 at 9, is entirely without merit. The IFT authorized Plaintiffs to bring this litigation in this Court.

license for specific "Fox Sports" trademarks listed in Exhibit B of the Equity Purchase Agreement.[8] ECF No. 11-53 at 9–10; *see also* ECF No. 12-26, Ex. B at 84, 115–116. The July 2025 IFT Letter also explicitly clarified that its approval of the EPA in the 2021 IFT Resolution satisfied the license requirement of section 8.4.12.4 of the 2019 IFT Resolution:

> Fox Corp, [21CF], and Grupo Lauman designed and implemented the compliance with section 8.4.12.4 of [the 2019 IFT Resolution] through the [21CF-MDM Assignment Agreement] and the [Fox-21CF License Agreement], establishing its scope and assuming rights and obligations in accordance with their particular interests.

ECF No. 11-53 at 11.

By seeking an injunction preventing Fox from using *any* trademark containing the name "Fox," *see* ECF No. 42-1, Ex. B, MSD sought relief far beyond the scope of the IFT "orders" with which it claims to have sought to "comply." Having done so, MSD cannot now hide behind the claim that it was merely trying to comply with the 2019 IFT Resolution as an independent basis to avoid personal jurisdiction.

**4. Compliance with the Court's contempt order does not require MSD to violate an IFT directive**

MSD claims that the 2019 IFT Resolution requires it to use the Fox Sports Trademarks and, thus, suggests that the Court should not exercise personal jurisdiction if it would mean ordering MSD to violate the 2019 IFT Resolution. ECF No. 76 at 10 (arguing that there is no personal jurisdiction because MSD's violations were an attempt to comply with Mexican law). But the IFT did not require MSD to use the Fox Sports Trademarks. The agreement approved by the IFT granted MDM a license, not MSD. *See* ECF No. 11-53 at 10-11 (acknowledging IFT

[8] It is telling that MSD makes no mention of the July 2025 IFT Letter. *See* ECF No. 11-53. Instead, MSD has hired a purported expert to offer an opinion on the meaning of the 2019 IFT Resolution, whose opinion is squarely contradicted by the July 2025 IFT Letter.

approved the Equity Purchase Agreement and its "ancillary agreements and exhibits," including Exhibit B); ECF No. 12-26 at 85 (form License Assignment Agreement attached as Exhibit B to Equity Purchase Agreement naming MDM as party). By joining MDM in affirmatively seeking to enjoin Fox's use of all Fox trademarks in Mexico, MSD steps far beyond any purported IFT requirements.

Moreover, the 21CF-MDM Assignment Agreement approved by the IFT included Quality Control and Choice of Law provisions. Thus, in approving the agreement, the IFT approved the remedies incorporated by those provisions in the event MDM violated the Quality Control provision, as it has here, including the portion of the agreement that permits Fox to pursue injunctive relief before this Court. ECF No. 11-28 at 29 §§ 12.3 (agreeing to exclusive jurisdiction in Southern District of New York), 12.6 (providing for injunctive relief). The July 2025 IFT Letter bolsters that conclusion by directing Fox, 21CF, and Grupo Lauman to comply "with the terms agreed upon between Fox Corp, [21CF], and Group Lauman in the Sublicense Agreement [the 21CF-MDM Assignment Agreement] and the License Agreement [the Fox-21CF License Agreement]." ECF No. 11-53.

Because the IFT expressly authorized the 21CF-MDM License Agreement and the Fox-21CF License Agreement, Plaintiffs do not contravene an IFT directive by pursuing the remedies afforded by those agreements. And, in any event, MSD's attempt to reframe its defiance as compelled by Mexican regulators is irrelevant here: compliance with the Court's injunction is mandatory, and the propriety of that injunction cannot be relitigated in contempt proceedings.

#### 5. MSD participated in the Mexico Injunction intending to assist MDM in violating the Court's injunction

The foregoing discussion makes clear that the only independent interest offered by MSD

to pursue the Mexico Injunction—compliance with the 2019 IFT Resolution—is illusory. The record clearly demonstrates that in pursuing the Mexico Injunction, MSD intended to assist MDM in continuing to pursue legal action relating to the Fox Sports Trademarks in Mexico, even after MSD knew the Court had enjoined MDM from doing so. That intent is evident in MSD and MDM's joint request for the Mexico Injunction seeking sole use of all "Fox" marks, which far surpassed any IFT order related to Fox Sports Trademarks. That conduct shows that MSD directed its conduct to have a purpose and effect in New York—the circumvention of the Court's injunction.

The timing of the Mexico Injunction shows that MSD and MDM sought that relief to undermine the Court's injunction. On March 24, 2025, MSD and MDM sought the original Mexico injunction enjoining Fox from using the Fox Sports Trademarks. ECF No. 13-3. On August 14, 2025, the Court issued its temporary restraining order and plaintiffs served that order on MSD and MDM. ECF Nos. 29, 51, 59. On August 18, 2025, MDM and Grupo Lauman published a press release defying the Court's authority to issue its injunction. ECF Nos. 36-2, 36-3. On August 22, 2025, MSD and MDM sought the Mexico Injunction. ECF No. 42-1, Ex. A.

MSD and MDM requested the Mexico Injunction six months after seeking their original injunction against Fox but only six business days after the Court issued its temporary restraining order: a timeline that underscores their intent to evade this Court's authority. MSD and MDM purposefully directed their conduct in Mexico to have effects in New York—to undermine the measures that the Court's injunction implemented to protect Fox's intellectual property from misuse in Mexico and the United States.

MSD repeatedly claims that it cannot be found to have purposefully directed its conduct to New York if it sought the Mexico Injunction to ensure compliance with the IFT's 2019 Resolution. ECF No. 76 at 23-25. But MSD's subjective motive for pursuing the Mexico Injunction is not

relevant to whether MSD intended its actions to have a purpose and effect in New York. *See Havens v. James*, 76 F.4th 103, 114 (2d Cir. 2023) (rejecting notion that "a nonparty could avoid Rule 65(d) because he had his own motivation for assisting an enjoined party"). For personal jurisdiction purposes, it is enough that MSD knew a violation of the Court's injunction was likely to occur when it participated with MDM in pursuing the Mexico Injunction. *See S.E.C. v. U.S. Env't, Inc.*, 155 F.3d 107, 111 (2d Cir. 1998) ("If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." (quoting Restatement (Second) of Torts, § 8A(b) (1965)); *United States v. Turner*, No. 18-CR-00068, 2023 WL 1364888, at *10 (S.D.N.Y. Jan. 31, 2023) ("Intent may be inferred from the natural and probable consequences of a defendant's conduct.").

Not only is MSD's motive in seeking the Mexico Injunction not plausible, but, more importantly, MSD's motive is not legally relevant to the inquiry because MSD knew that its conduct with MDM was likely to result in a violation of the Court's injunction. That is sufficient for establishing minimum contacts in New York under an aiding and abetting theory.[9]

**6. MSD actively participated in MDM's contemptuous conduct because MSD is legally identified with MDM**

MSD insists it is a distinct corporate entity with interests independent of MDM that justified MSD in seeking the Mexico Injunction. *See* ECF No. 76 at 26 n.7. MSD's independence

---

[9] MSD claims that there can be no finding of aiding and abetting MDM because MDM could have sought the Mexico Injunction without MSD. ECF No. 76 at 26 n.7. But MSD overstates the required showing under an aiding-and-abetting theory. Aiding and abetting requires only that MSD "'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *Havens*, 76 F.4th at 120 (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949)). By jointly seeking the Mexico Injunction, which MSD knew or should have known would violate the Court's injunction, MSD associated itself with MDM's violative venture. That subjects MSD to personal jurisdiction for contemnors.

is a fiction.

MDM and MSD operate jointly as the same entity—Fox Sports Mexico. ECF No. 13-3 at 7. That joint entity is controlled by Grupo Lauman, *id.*, an entity that is already in contempt for acting in concert with MDM to violate the Court's injunction, *see* ECF No. 45. And MSD has no employees. *See Fox Cable Network Services, et al. v. Grupo Lauman Holding, et al.*, Case No. 2:25-cv-02444-JFW (C.D. Cal.), ECF No. 78 at 96 (Joint Stipulation to Motion to Compel) ("Defendant [MSD] responds as follows: Defendant [MSD] does not have any current employees.").

"[A] corporation can manifest its desires only through the acts of its agents." *United States v. Sullivan*, 118 F.4th 170, 219 (2d Cir. 2024) (citation and quotation marks omitted). Because MSD employs no individuals through which it can act, MSD necessarily takes action through entities and individuals outside its corporate form: it functions as nothing more than a shell through which contemnors MDM, Grupo Lauman, and Manuel Arroyo pursue their interests.

Failing to exercise personal jurisdiction over MSD and hold it in contempt would enable MDM to utilize MSD for what it really is—a mere instrument of MDM that will be used to circumvent the Court's injunction by having MSD perpetuate MDM's violating conduct.

**C. MSD fails to present a compelling case to defeat personal jurisdiction**

With MSD's minimum contacts in New York established, it becomes MSD's burden to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. 462 at 477. MSD fails to make a compelling case. The factors outlined in *Metro. Life Ins. Co. v. Robertson Ceco-Corp.,* 84 F.3d 560, 575 (2d Cir. 1996) all favor exercising personal jurisdiction. At bottom these factors boil down to whether exercising jurisdiction would comport with "fair play and substantial justice,"

*Burger King Corp.*, 471 U.S. at 476, and they overwhelmingly do here.

First, litigating in New York would impose minimal burden on MSD. It is a Delaware LLC with contacts in New York.

Second, New York and this Court have a profound interest in having this case litigated in this forum because there is a strong public policy to enforce forum selection clauses. *See Forbes IP (HK) Ltd. v. Media Bus. Generators, S.A. de C.V.*, No. 23-CV-11168 (JGLC), 2024 WL 1743109, at *5 (S.D.N.Y. Apr. 23, 2024) ("there is a strong public policy in enforcing forum selection clauses."). The only reason MSD can claim that the "gravamen of the dispute" is in Mexico, ECF No. 76 at 27, is because MSD and MDM have initiated litigations in Mexico in breach of Fox Corporation's forum selection clause. MSD's claim that this litigation somehow interferes with the IFT's regulatory mandate is specious. This dispute is a matter of contract, which is precisely why the IFT directed the parties to refer to the terms of the license agreements to determine their respective rights. *See* ECF No. 11-53 at 12. There is no conflict with this litigation and the IFT's constitutional mandate. The IFT has even declined to initiate an investigation based on MDM's allegations of Plaintiffs' noncompliance with the IFT's 2019 Resolution. Berg Decl. ¶ 5. MSD's regulatory arguments, along with its purported expert declaration, are a meritless sideshow.

Third, Plaintiffs have a profound interest in litigating in this forum because it is the forum that Fox Corporation negotiated for in its exclusive forum selection clause. Plaintiffs seek to avoid litigation in Mexico because that litigation is premised on MDM's breach of contract.

The fourth and fifth factors present the most compelling reason to exercise personal jurisdiction: all courts everywhere have a vital interest in ensuring the enforcement of their orders. Accordingly, "[e]xercising jurisdiction is fair and just because the authority to force compliance is

necessary to the proper enforcement and supervision of a court's injunctive authority and offends no precept of due process." *Shaoxing Bon Textiles Co.,* 2018 WL 11389637, at *3 (citation and internal quotation marks omitted).

Far from MSD presenting a compelling case against exercising personal jurisdiction, MSD underscores the need for it. The exercise of personal jurisdiction here is not only reasonable but vital to preventing MDM from further violating the injunction through MSD.

## II. MSD's non-sequitur legal arguments are all incorrect

MSD's brief contains legal arguments and factual allegations that have absolutely no bearing on why it should not be held in contempt,[10] but they so distort the record that a response to them is warranted.

### A. Plaintiffs did not submit to Mexican jurisdiction

MSD claims that Plaintiffs submitted to Mexican jurisdiction when Fox Cable Networks Services LLC ("FCNS") and Tubi, Inc. sought an injunction from the 35th Civil Department of the Superior Court in Mexico City to enjoin Grupo Lauman Holding and its subsidiaries ("Grupo Lauman") from interfering with FCNS and Tubi's commercial interests. ECF No. 76 at 19. FCNS and Tubi sought that injunction after Grupo Lauman threatened to disrupt FCNS and Tubi's business in Mexico in response to FCNS deciding not to move forward with acquiring certain assets from Grupo Lauman. *See generally Fox Cable Network Services, LLC v. Grupo Lauman Holding, S. De R.L. De C.V.*, Case No. 25-cv-6512-JPO, ECF No. 1, ¶¶ 5–7, 32 (S.D.N.Y.). Plaintiffs did not seek the injunction from the 35th Civil Court and are otherwise not a party to that proceeding. *See* ECF No. 77-26 (35th Civil Court injunction). The forum selection clause that

[10] That material is subject to a pending motion to strike. If the Court grants that motion, then the Court need not consider Plaintiffs' responses to MSD's irrelevant material.

governs the Court's jurisdiction in this case is between Fox Corporation and Media Deportes Mexico. *See* ECF No. 11-27 (original) and 11-28 (amended). Plaintiffs have not acquiesced to Mexican jurisdiction, and the actions of distinct corporate entities before the 35th Civil Court of Mexico City do not change that.[11]

### B. The IFT did not require an exclusive license for the Fox Sports Trademarks

The Court's temporary restraining order found that MDM was assigned "a non-exclusive license to the [Fox Sports Trademarks]" and that the contention that the IFT required that MDM receive an exclusive license for the Fox Sports Trademarks is "inconsistent with statements made by the IFT." ECF No. 29. That finding forecloses MSD's attempt to argue that the IFT required an exclusive license.

Moreover, MSD's argument about the exclusivity of the Fox Sports Trademarks license is misleading and incomplete. *See* ECF No. 76 at 14. MSD gives no mention of the 2021 IFT Resolution or the July 2025 IFT Letter—both of which confirm Plaintiffs' position that MDM's (now-terminated) license was non-exclusive.

As Plaintiffs have briefed in detail, the IFT did not require an exclusive license for the Fox Sports Trademarks. *See generally* ECF No. 9. The Fox-21CF License Agreement granted 21CF a non-exclusive license over the Fox Sports Trademarks. ECF No 11-25. The 21CF-MDM Assignment Agreement assigned that non-exclusive license to MDM, incorporating the same language that created the non-exclusive license in the Fox-21CF License Agreement. ECF Nos. 11-27 (original) and 11-28 (as amended).

[11] Plaintiffs also did not assent to Mexican jurisdiction by sending inquiries to the IFT, including an April 28, 2025 letter, which asked the IFT to clarify that the 2019 IFT Resolution directed the issuance of a non-exclusive license for the Fox Sports trademarks. Asking a Mexican regulator for clarification of a prior resolution does not trigger the jurisdiction of Mexican courts or forfeit the jurisdiction of U.S. courts.

The 2019 IFT Resolution set forth a requirement in section 8.4.12.4 to grant a license over the Fox Sports Trademarks. ECF No. 11-51 at 44–45. In the 2021 IFT Resolution, the IFT approved and authorized the agreements that implemented and complied with section 8.4.12.4 of the 2019 IFT Resolution. Specifically, the IFT approved Exhibit B of the EPA, which was the form agreement of the 21CF-MDM Assignment Agreement. Berg Decl. ¶ 3, Ex. 1 at 48 (2021 IFT Resolution); ECF No. 12-26 at 99 (EPA, Ex. B); ECF No. 11-27 (21CF-MDM Assignment Agreement). Exhibit B of the EPA and the 21CF-MDM Assignment Agreement contain the same non-exclusive license language. *Compare* ECF No. 12-26 at 84, 99 (EPA, Ex. B), *with* ECF No. 11-27 at 19 (21CF-MDM Assignment Agreement). In July 2025, the IFT affirmed that the 21CF-MDM Assignment Agreement complied with section 8.4.12.4 of the 2019 IFT Resolution, including the non-exclusive license provision and the forum selection provision. ECF No. 11-53 at 10–11. Thus, contrary to MSD's contention that the 2019 IFT Resolution "imposed a non-contractual obligation" requiring an exclusive license, ECF No. 76 at 14, the IFT affirmed and approved the language of 21CF-MDM Assignment Agreement without alteration. The IFT's express approval of the agreement in 2021 means that the IFT did not impose a "non-contractual obligation" in 2019.

## III. Conclusion

For the reasons discussed above, MSD has minimum contacts in New York because it directed Fox Sports trademarks into New York without authorization and because it assisted MDM in pursuing the Mexico Injunction, both in violation of the Court's injunction. MSD's contempt directly relates to that conduct, and exercising personal jurisdiction over MSD is reasonable because of the need to enforce compliance with the Court's orders. The Court has personal jurisdiction over MSD. The Court should deny the motion.

Respectfully submitted,

Dated: Los Angeles, California
September 16, 2025

ELLIS GEORGE LLP

By: Christopher T. Berg

Eric M. George
Katherine A. Petti, *Pro Hac Vice*
Christopher T. Berg, *Pro Hac Vice*

2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697
egeorge@ellisgeorge.com
kpetti@ellisgeorge.com
cberg@ellisgeorge.com

Stephen P. Farrelly
ELLIS GEORGE LLP
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629
sfarrelly@ellisgeorge.com

*Attorneys for Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC*

**Certification Pursuant To S.D.N.Y. Local Civil Rule 7.1(c)**

I, Christopher T. Berg, an attorney duly admitted Pro Hac Vice to practice in the Southern District of New York hereby certify that this memorandum is no longer than 25-double spaced pages and the text and footnotes are in 12 point type, which complies with Rule 2(e) of this Court's Individual Rules of Practice.

Dated: September 16, 2025

Christopher T. Berg, *Pro Hac Vice*