**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FOX CORPORATION; FOX MEDIA LLC; FOX SPORTS EN ESPAÑOL LLC,<br>Plaintiffs,<br>v.<br>MEDIA DEPORTES MEXICO, S. de R.L. de C.V.,<br>Defendant. | Case No.: 1:25-cv-06703 |

**NON-PARTY MEXICO SPORTS DISTRIBUTION LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND MOTION IN LIMINE**

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. The Challenged Materials Are Directly Relevant to the Personal Jurisdiction Analysis. ..... 2

1. The Challenged Paragraphs Under Introduction on Page Five are Relevant to the Court's Jurisdiction Analysis. ..... 3

2. The Challenged Section on Pages Six and Seven are Relevant to the Court's Jurisdiction Analysis. ..... 4

3. The Challenged Sections in the Final Two Sentences of First Paragraph on Page Eight are Relevant to the Court's Jurisdiction Analysis. ..... 5

4. The Challenged Sections in the First Two Full Paragraphs on Page Nine and Final Two Sentences of Final Paragraph are Relevant to the Court's Jurisdiction Analysis. 6

B. MSD's Filing Is Not a Collateral Attack. ..... 7

C. The Court Should Not Preclude Evidence. ..... 11

III. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

## Cases

*Calder v. Jones*, 465 U.S. 783 (1984) .................... 7

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) .................... 1

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) .................... 5

*Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418 (1911) .................... 7

*Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) .................... passim

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) .................... 2

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976) .................... 2, 6

*Metro. Life Ins. Co. v. Robertson Ceco-Corp.*, 84 F.3d 560 (2d Cir. 1996) .................... passim

*N.Y. State Nat'l Org. For Women v. Terry,* 697 F.Supp. 1324 (1988) .................... 7

*Roadway Exp., Inc. v. Piper*, 447 U.S. 752 (1980) .................... 1

*Sierra v. U.S.*, No. 97CIV.9329 (RWS), 1998 WL 599715 (S.D.N.Y. 1998) .................... passim

*Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396 (S.D.N.Y. 2021) .................... 1

## Rules

Fed. R. Evid. 401 .................... 11

Fed. R. Evid. 402 .................... 11

Non-party Mexico Sports Distribution LLC ("MSD") submits this Memorandum in Opposition to Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC's (collectively, "Plaintiffs" or "Fox") Motion to Strike and Motion in Limine.

## I. INTRODUCTION

Plaintiffs move to strike evidence and argument that is directly relevant to the two-step test for personal jurisdiction; 1) minimum contacts, and 2) reasonableness. The challenged information is not offered to contest the injunction. Instead, it demonstrates that MSD's conduct was purposefully directed to Mexico to comply with Mexican law. The challenged materials pertaining to the Instituto Federal de Telecomunicaciones ("IFT") and Mexican litigation go directly to this inquiry. And by framing MSD's legal actions in Mexico as frivolous, Plaintiffs opened the door to evidence pertaining to MSD's contentions about exclusivity of the trademark license.

## II. ARGUMENT

"[M]otions to strike are viewed with disfavor and infrequently granted." *Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 399 (S.D.N.Y. 2021) (quotations and citations omitted). This disfavor applies equally to motions brought under a district court's inherent authority. *See Sierra v. U.S.*, No. 97CIV.9329 (RWS), 1998 WL 599715, at *9 (S.D.N.Y. 1998) (noting district courts' disfavor for granting motions to strike brought under Rule 12(f) or the court's inherent powers). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980)). Thus, "motions to strike are not favored and will be denied unless the allegations have no possible relations to the controversy….If there is any doubt whether the challenged matter may raise an issue of fact or law, the motion to strike should be

denied. *Sierra,* 1998 WL 599715, at *9 (citation omitted); *see also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible.").

**A. The Challenged Materials Are Directly Relevant to the Personal Jurisdiction Analysis.**

The Court must determine whether MSD "purposefully directed [its] activities at the forum." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 136 (2d Cir. 2014). The Supplemental Memorandum and supporting materials show that MSD's conduct was directed at Mexico, where it sought to vindicate its under binding orders from a Mexican regulator. Fox attacks the basis of MSD's conduct in Mexico, implicitly framing it as a frivolous tactic aimed at this litigation. By putting MSD's motives in Mexico at issue, Fox has opened the door to evidence explaining those motives. MSD is therefore entitled to demonstrate that its conduct was a good faith effort to comply with Mexican law, not a purposeful act directed at New York.

The Court must also assess whether exercising jurisdiction "comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of the particular case." *Metro. Life Ins. Co. v. Robertson Ceco-Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) ("*Metro. Life*") (citing and quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see* Supp. Memorandum in Support of MSD's Mot. to Set Aside Contempt Ord. ("Supp. Memorandum"), 26-28, ECF No. 76, Sept. 12, 2025.) The five factors for determining "reasonableness" under *Metro. Life*— burden, interest of the forum state, interest of the plaintiff, interest of the judicial system, and public policy— weigh in favor of dismissal.

The challenged materials show that the core of this dispute involves compliance with a Mexican regulator's mandate concerning competition in the Mexican broadcast market. This context is directly relevant to whether New York has a significant interest in the dispute and whether exercising jurisdiction would intrude upon the sovereign authority of Mexico's regulators and courts. Striking this evidence would prevent the Court from conducting a complete and accurate reasonableness analysis.

### 1. The Challenged Paragraphs Under Introduction on Page Five are Relevant to the Court's Jurisdiction Analysis.

Fox seeks to strike the introductory paragraphs of MSD's Supplemental Memorandum. But this background provides important context that will aid the Court's analysis of both the "minimum contacts" and "reasonableness" prongs of the jurisdictional test.

The context provided in the first two paragraphs of page five is relevant to whether MSD "purposefully directed [its] activities at the forum." *Gucci Am., Inc.*, 768 F.3d at 136. It shows that this dispute originates from and is centered on events in Mexico, predating this action. MSD's conduct was directed at a long-standing controversy centered in Mexico, which undermines Fox's assertion that MSD's conduct was purposefully aimed at New York. The materials are therefore relevant and should not be stricken. *Sierra,* 1998 WL 599715, at *9 ("motions to strike are not favored and will be denied unless the allegations have no possible relations to the controversy.")

The paragraphs on page five are also relevant to the *Metro. Life* "reasonableness" inquiry. *See Metro. Life*, 84 F.3d at 568. They bear directly on Fox's interests in pursuing the litigation in this forum. Supported by Mr. Lopez's testimony, the paragraphs show that, by pursuing this contempt order against nonparty MSD, Plaintiffs aim to sidestep the IFT and the Mexican

process for adjudicating regulatory actions.[1] *See* Supp. Memorandum at 27 ("Third, Fox's main interest in obtaining relief in this forum is to sidestep ongoing litigation in Mexico, where Fox must content with the IFT, and likely Disney."). This evidence is therefore directly relevant to the reasonableness inquiry and should not be stricken.[2]

**2. The Challenged Section on Pages Six and Seven are Relevant to the Court's Jurisdiction Analysis.**

The materials on pages 6 and 7 of the Supplemental Memorandum, which detail the authority of the IFT and the regulatory origins of this dispute, are directly relevant to both prongs of the specific jurisdiction analysis. Specific jurisdiction "permits adjudicatory authority only over issues that arise out off or *relate to the entity's contacts with the forum*." *Gucci Am., Inc.*, 768 F.3d at 134 (emphasis added). The evidence Fox seeks to strike establishes that the rights and obligations at the heart of this dispute do not arise from contacts with New York. Instead, they arise directly from the IFT's 2019 resolution and its continuing constitutional mandate to oversee competition in the Mexican broadcast industry. This context demonstrates that the controversy relates to a Mexican regulatory framework, not to this forum, and is therefore essential to the jurisdictional analysis. Accordingly, this context should not be stricken. *Sierra,* 1998 WL 599715, at *9.

---

[1] The IFT is the Mexican federal agency appointed under the Mexican Constitution to regulate the broadcast and telecommunications industries in Mexico. The IFT's constitutional mandate includes serving as an antitrust regulator for these industries by ensuring that they remain competitive and monopoly-free. Pursuant to this mandate, the IFT is empowered to impose conditions on transactions that have anticompetitive effects, and to order remedies when those conditions are not satisfied.

[2] For the same foregoing reasons, Plaintiffs' request to strike Mr. Lopez's testimony relaying the same information should be denied.

The challenged materials on pages 6 and 7 are also relevant to the *Metro. Life* "reasonableness" inquiry. *See Metro. Life*, 84 F.3d at 568. They support the argument that Plaintiffs' motive for litigating in this forum is improper (to "sidestep" Mexico's regulatory regime), weighing against a finding of reasonableness. *See* Supp. Memorandum at 6 ("This lawsuit is a baseless procedural attack, designed to drain the resources of the Business and evade the authority of the proper Mexican courts and regulators.") These paragraphs also provide the context of that regulatory process as it relates to Plaintiffs and MSD. They show that the dispute is intertwined with the IFT's effort "to ensure the viability of the Fox Sports Mexico Business so that it could become a competitor in the marketplace, thereby enforcing the public policy the IFT is mandated to pursue." Exercising jurisdiction would risk interfering with this sovereign regulatory function. *Id.* at 7. The Court must consider this context to properly assess the reasonableness of asserting jurisdiction.

**3. The Challenged Sections in the Final Two Sentences of First Paragraph on Page Eight are Relevant to the Court's Jurisdiction Analysis.**

The final two sentences on page eight establish the IFT's continuing authority over the conditions of the 2019 Resolution and are relevant to the public policy analysis under the fifth *Metro. Life* factor. *See Metro. Life*, 84 F.3d at 568; *see also* Supp. Memorandum at 28 ("Finally, because this dispute implicates Mexico's public policy in the area of regulation of media competition, this factor weighs in favor of dismissal."). By extension, the sentences are also relevant to public policy considerations of comity. *See, e.g.*, *Gucci Am., Inc.*, 768 F.3d at 135 (noting that in in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Supreme Court "warned against the risks to international comity of an overly expansive view of general jurisdiction inconsistent with the fair play and substantial justice due process demands." (cleaned up).) These

sentences also refute any suggestion that MSD's conduct arises from a contract with a New York forum selection clause; rather, it arises from a regulatory matter within Mexico's exclusive purview.

**4. The Challenged Sections in the First Two Full Paragraphs on Page Nine and Final Two Sentences of Final Paragraph are Relevant to the Court's Jurisdiction Analysis.**

The first two full paragraphs on page nine and the final two sentences of the final paragraph are relevant to the *Metro. Life* "reasonableness" inquiry. *See Metro. Life*, 84 F.3d at 568. For example, the materials support the argument that Plaintiffs' interests in pursuing litigation in this forum are to sidestep Mexico's regulatory process. See Supp. Memorandum at 9 ("By filing this lawsuit and seeking sanctions against non-party MSD, Fox aims to sidestep the IFT and the Mexican process for adjudicating regulatory actions.") These materials also provide the context of that regulatory process as it relates to Plaintiffs and MSD. Furthermore, the materials show the public policy interests at stake that weigh against asserting personal jurisdiction – namely the damage that it would have on the IFT's constitutional mandate to regulate competition in the broadcast and telecommunications industries in Mexico. *See id*. ("The issues implicated by non-party MSD's foreign litigation—the viability of the Fox Sports Mexico Business and the use of the "FOX" name—are precisely the issues over which the IFT set conditions and retained jurisdiction to investigate and adjudicate. Fox's contracts do not override the IFT's authority.").

These materials also provide context for MSD's conduct in Mexico. As noted above, MSD is permitted to provide context for its personal jurisdiction challenge. *See Lipsky*, 551 F.2d at 893 ("Usually the questions of admissibility in general require the context of an ongoing and

unfolding trial in which to be properly decided.") The context provided is relevant to whether MSD "purposefully directed [its] activities at the forum." *Gucci Am., Inc.*, 768 F.3d at 136. The context shows that MSD's conduct relates to matters beyond this forum, which also predates this dispute. This undermines Fox's contention that MSD's conduct is directed at the forum. The materials are therefore relevant and should not be stricken. *Sierra,* 1998 WL 599715 at *9 ("motions to strike are not favored and will be denied unless the allegations have no possible relations to the controversy.").

**B. MSD's Filing Is Not a Collateral Attack.**

The collateral bar rule precludes a party over whom the district court has personal jurisdiction, from making himself a judge of the validity of a district court's orders. *N.Y. State Nat'l Org. For Women v. Terry,* 697 F.Supp. 1324, 1334 (1988) ("NY State Women"), citing *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418 (1911). Indeed, the *NY State Women* case, relied on by Plaintiffs, the district court was concerned that parties would purposefully ignore a court order and effectively use the contempt proceeding as a de facto appeal, or motion for reconsideration. The *NY State Women* court noted that "in the instant case, the jurisdiction of this Court over the parties or the subject matter has not been questioned." *Id*. Our case is distinguishable. MSD is challenging jurisdiction, not the temporary restraining order. And it's doing so by presenting its case to the Court, not by making the decision itself via a non-appearance. Accordingly, MSD's challenge is the antithesis of a collateral attack.

To be sure, and as discussed above, jurisdictional considerations can be intertwined with the underlying merits of a dispute. *See, e.g.*, *Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (considering merits issue of defamation claim (i.e. intent) when determining whether assertion of personal jurisdiction is appropriate.) But that does not mean the attack is collateral, or that it is

barred. This is especially true here, where MSD challenges the threshold issue of the Court's jurisdiction over it.

Further, Plaintiffs rely on the merits of their arguments to argue that MSD availed itself of jurisdiction in this forum. *See* Opp. to Mot. to Set Aside Contempt Ord. at 12-13, Sept. 16, 2025, ECF No. 88 ("Opp. Memorandum") ("The foregoing discussion makes clear that the only independent interest offered by MSD to pursue the Mexico Injunction—compliance with the 2019 IFT Resolution—is illusory."). Thus, to meet their burden on jurisdiction, Plaintiffs cite the merits as evidence. Indeed, Plaintiffs have repeatedly argued MSD's conduct in Mexico is illegitimate. *See, e.g.,* Aug. 29, 2025 Hearing Tr. at 5:14-16 ("Obviously all we want is a fair shake, both here and in the courts of Mexico, and we don't think we are getting that …"). Plaintiffs have argued that that the supposed lack of merit in MSD's efforts to enforce the Mexican injunction is proof that MSD is not acting for any legitimate purpose. *See, e.g.*, Sept. 5, 2025 Hearing Tr. at 19:8-12 ("On Monday of this week they attempted to serve that Fox entity with that second Mexico injunction that was in violation of the TRO. The whole reason behind that is to try to disrupt Fox's production capacity in Mexico and leverage, frankly weaponize the Mexican government against Fox.") Thus, it is proper and necessary for MSD to respond by establishing its conduct is legitimate, and therefore, not directed at the forum.

That is what MSD does in the challenged sections of the Supplemental Memorandum. MSD's discussion of the exclusivity provision in the IFT's 2019 Resolution shows that the dispute about exclusivity is, contrary to Plaintiffs' assertion, legitimate. This too explains why MSD includes the discussion of Disney's understanding that the 2019 IFT Resolution required the granting of exclusive licenses. Ultimately, the existence of that legitimate dispute in turn is

directly relevant to the Court's "reasonableness" inquiry as well as its specific jurisdiction inquiry.

It is relevant to Court's reasonableness inquiry because it shows that the public policy interests at stake that weigh against asserting personal jurisdiction – namely the damage that it would have on the IFT's constitutional mandate to regulate competition in the broadcast and telecommunications industries in Mexico. *See* Supp. Memorandum at 7 ("The IFT also sought to ensure the viability of the Fox Sports Mexico Business so that it could become a competitor in the marketplace, thereby enforcing the public policy the IFT is mandated to pursue.")

The discussion is also relevant to the specific jurisdiction analysis by disputing Plaintiffs' inference that MSD directed its conduct to this forum because MSD's stated reason for pursing the Mexico Injunction is "illusory." Opp. Memorandum at 12-13. The discussion supports MSD's argument against personal jurisdiction, that its conduct is not directed at the forum. Supp. Memorandum at 23. ("MSD – a domestic non-party – has engaged in foreign conduct that is not directed to this forum. MSD's conduct in Mexico seeks to comply with the IFT's constitutionally authorized orders, which MSD is required to do as part of the Fox Sports Mexico Business.").

The challenged portions of the de Swaan declaration are also relevant to the Court's specific jurisdiction analysis. Mr. de Swaan's testimony regarding the IFT is relevant to explaining why MSD's conduct is not directed to this forum, and why the *Metro. Life* reasonableness factors weigh against asserting personal jurisdiction over MSD.

For example, Mr.de Swaan ties the IFT's conditions in the 2019 Resolution to its regulatory purpose, as outlined in the Mexican constitution. (Expert Opinion of Mony S de Swaan Addati (English Translation) ("de Swaan Decl."), § 2.2, ECF No. 76-3 ; Mot. to Strike at 11 ("de Swaan Challenged Portions"), bullet point 1, ECF No. 82, Sept. 16, 2025.) Specifically,

he ties the condition of granting an exclusive trademark license to the IFT's purpose of promoting and preserving competition in the broadcast industry. (de Swaan Decl., § 6; de Swaan Challenged Portions, bullet point 5.) He explains that this purpose is to protect Mexican consumers. (de Swaan Decl., § 2.3; de Swaan Challenged Portions, bullet point 2.) And Mr. de Swaan notes that the IFT derives its authority to protect Mexican consumers from the Mexican constitution. Thus, Mr. de Swaan explains, any order from a foreign court effectively reversing the IFT would infringe on the rights conferred to the agency though the Mexican constitution. (de Swaan Decl., §§ 2.3, 5.2; de Swaan Challenged Portions, bullet points 2, 4.)

This information is relevant to the Court's reasonableness analysis because it shows that the public policy interests at stake that weigh against asserting personal jurisdiction – namely the damage that it would have on the IFT's constitutional mandate to regulate competition in the broadcast and telecommunications industries in Mexico. *See* Supp. Memorandum at 7 ("The IFT also sought to ensure the viability of the Fox Sports Mexico Business so that it could become a competitor in the marketplace, thereby enforcing the public policy the IFT is mandated to pursue.")

Mr. de Swaan's testimony is also relevant to the special jurisdiction analysis. It supports MSD's position that its conduct in Mexico is legitimate, and therefore not directed to this forum. *See* Supp. Memorandum at 23 ("MSD – a domestic non-party – has engaged in foreign conduct that is not directed to this forum. MSD's conduct in Mexico seeks to comply with the IFT's constitutionally authorized orders, which MSD is required to do as part of the Fox Sports Mexico Business.").

//

//

**C. The Court Should Not Preclude Evidence.**

As discussed above, the evidence that Plaintiffs move to strike is relevant to the jurisdiction analysis. It is therefore relevant under Fed. R. Evid. 401, and admissible under Fed. R. Evid. 402. Specifically, Plaintiffs' misconduct prior to filing this case is relevant the Court's reasonableness analysis under *Metro. Lif*e. This evidence shows that Plaintiffs' interests in litigating this case is to sidestep the Mexican regulatory authority. The evidence of this misconduct is also relevant to the specific jurisdiction analysis. It rebuts Plaintiffs' contention that MSD's conduct in Mexico is not legitimate. *See* Opp. Memorandum at 12-13 ("The foregoing discussion makes clear that the only independent interest offered by MSD to pursue the Mexico Injunction—compliance with the 2019 IFT Resolution—is illusory.") To the contrary, the evidence underscores the legitimacy of MSD's conduct (which is reinforced by the fact that an independent court granted the Mexico Injunction, and that decision has been affirmed on appeal.)

Further, the evidence relating to the exclusivity of the disputed trademarks is relevant to the Court's reasonableness analysis. This evidence shows that this forum has a minimal comparative interest in the gravamen of the dispute, a Mexican regulatory agency's promotion of a competitive marketplace in Mexico for sports media. It shows that Plaintiffs' main interest in obtaining relief in this forum is to sidestep ongoing litigation in Mexico. And, it also implicates Mexico's public policy in the area of regulation of media competition. *See* Supp. Memorandum at 27-28. The evidence of exclusivity likewise is relevant to the specific jurisdiction analysis because it shows the legitimate interest that MSD has in pursuing the Mexico Injunction, which in turn contradicts Plaintiffs' arguments that any justification for MSD's conduct, other than to defy the Court's order, is "illusory."

## III. CONCLUSION

For all the foregoing reasons, MSD respectfully requests that the Court deny Plaintiffs' Motion to Strike.

Respectfully submitted,

Dated: September 17, 2025

Kassra P. Nassiri, *Pro Hac Vice*
Jaime Dorenbaum, *Pro Hac Vice*
NASSIRI & JUNG LLP
1700 Montgomery Street, Suite 207
San Francisco, California 94111
(415) 762-3100
kass@njfirm.com
jaime@njfirm.com
*Attorneys for non-party Mexico Sports Distribution LLC*

**CERTIFICATION PURSUANT TO S.D.N.Y. LOCAL CIVIL RULE 7.1(c)**

I, Jaime Dorenbaum, an attorney duly admitted to practice law in the State of California, hereby certify that this memorandum complies with the word count limit set forth in Local Civil Rule 7.1 and contains 3,450 words, excluding the parts exempted by the Rule.

Dated: September 17, 2025

______________________________
Jaime Dorenbaum