**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FOX CORPORATION; FOX MEDIA LLC; and FOX SPORTS EN ESPAÑOL LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MEDIA DEPORTES MEXICO, S. de R.L. de C.V.,<br><br>Defendant. | Case No.: 1:25-cv-06703-JSR<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION TO HOLD NON-PARTY MEXICO SPORTS DISTRIBUTION LLC IN CONTEMPT** |

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION ..... 1

II. LEGAL STANDARD ..... 3

III. ARGUMENT ..... 4

A. The TRO Clearly and Unambiguously Applied to Conduct in Mexico ..... 4

B. MSD Aided and Abetted MDM's Violation of the TRO and is Legally Identified with MDM ..... 8

1. MSD Aided and Abetted MDM's Violation of the Injunction ..... 8

2. MSD Is Legally Identified with MDM ..... 10

C. The Sanctions Against MSD Are Appropriate ..... 12

D. The Court Possesses Authority to Freeze MSD's Assets ..... 13

IV. CONCLUSION ..... 14

CERTIFICATION PURSUANT TO S.D.N.Y. LOCAL CIVIL RULE 7.1(C) ..... 16

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Alemite Manufacturing Corp. v. Staff*,
42 F.2d 832 (2d Cir. 1930)....................11

*Apple Computer, Inc. v. Formula Int'l, Inc.*,
594 F. Supp. 617 (C.D. Cal. 1984)....................4

*CBS Broadcast. Inc. v. FilmOn.com, Inc*.,
814 F.3d 91 (2d Cir. 2016)....................3

*Chao v. Gotham Registry, Inc.*,
514 F.3d 280 (2d Cir. 2008)....................4

*China Trade and Development Corp. v. M.V. Choong Yang*,
837 F.2d 33 (2d Cir. 1987)....................7

*Forbes IP (HK) Ltd. v. Media Business Generators, S.A. de C.V.*,
No. 23-cv-11168, 2024 WL 1743109 (S.D.N.Y. Apr. 23, 2024)....................4

*Gompers v. Buck's Stove & Range Co.*,
221 U.S. 418 (1911)....................12

*Gucci America, Inc. v. Weixing Li*,
768 F.3d 122 (2d Cir. 2014)....................7

*Havens v. James*,
76 F.4th 103 (2d Cir. 2023)....................7, 8, 10, 14

*King v. Allied Vision, Ltd.*,
65 F.3d 1051 (2d Cir. 1995)....................3, 12

*Maggio v. Zeitz*,
333 U.S. 56 (1948)....................3

*Matrix Essentials v. Quality King Distributors, Inc.*,
346 F. Supp. 2d 384, 391 (E.D.N.Y. 2004)....................10

*Next Invs., LLC v. Bank of China*,
12 F.4th 119 (2d Cir. 2021)....................3, 5, 7

*Paramedics Electromedicina Comercial, Ltd. v. GE Med. Sys. Info. Techs., Inc.*,
369 F.3d 645 (2d Cir. 2004)....................3

*Perfect Fit Indus. v. Acme Quilting Co.*,
673 F.2d 53 (2d Cir. 1982)....................13

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*Porter v. Warner Holding Co.*,
328 U.S. 395 (1946)....................13

*S.E.C. v. Collector's Coffee, Inc.*,
697 F. Supp. 3d 138 (S.D.N.Y. 2023)....................13

*S.E.C. v. I-Cubed Domains, LLC*,
664 F. App'x 53 (2d Cir. 2016)....................13

*SEC v. U.S. Env't, Inc.*,
155 F.3d 107 (2d Cir. 1998)....................8

*Taggart v. Lorenzen*,
587 U.S. 554 (2019)....................4

*U.S. v. Rylander*,
460 U.S. 752 (1983)....................3, 5

*W.R. Grace and Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum and Plastic Workers of Am.*,
461 U.S. 757 (1983)....................3

**RULES**

Fed. R. Civ. Pro. 65....................1

## I. INTRODUCTION

Now on its third chance before this Court to explain why it should not be held in contempt, Mexico Sports Distribution LLC ("MSD") does not once state in its opposition that it will abide by the Court's injunction by withdrawing from the litigation that issued the August 27, 2025 injunction from the 42nd Superior Court of Mexico City ("Mexico Injunction"). That alone is an admission of MSD's contempt of this Court's injunction.

What MSD does provide in its briefing is a combination of (1) unpersuasive efforts to relitigate arguments the Court has already rejected, and (2) a brazen, unsupported legal argument that a non-party with notice of an injunction can disobey the injunction and avoid contempt if it believes there are legal grounds to resist the injunction. That proposition is nowhere recognized in the law. And for good reason—it would eviscerate the powers granted by Federal Rule of Civil Procedure 65 and the Court's inherent authority to enforce compliance with its orders.

Relying on that lawless premise, MSD contends that there was "fair ground of doubt" about whether the Court's injunction prohibiting MDM from "pursuing any legal or regulatory action relating to the Fox Sports Trademarks in Mexico," ECF No. 29 (TRO), applies in Mexico. *See* ECF No. 97 (MSD Opp.) at 6. It would be difficult to conjure a more specious argument.

MSD's purported international comity analysis is also devoid of merit. MSD's argument is premised on there being a conflict between U.S. and Mexican law. There is none. As this Court has already found, the IFT's 2021 Resolution authorized MDM's license assignment agreement, including its forum selection clause, *see* ECF No. 96 at 7–8, and the IFT's July 2025 Resolution spelled out in detail what the IFT's 2021 Resolution already held in general terms—MDM's license assignment agreement complied with the conditions set forth in the IFT's 2019 Resolution, *see id.* at 9–10, 19–20. No comity analysis is warranted here, where both the IFT

and this Court regard New York as the appropriate forum for this litigation over the trademarks in MDM's license agreement. *See* ECF No. 11-27 §§ 12.3, 12.6.

MSD also asserts there was a "fair ground of doubt" as to whether it aided and abetted MDM's contempt—harkening back to its repeated insistence at last week's hearing that MSD's "joint pleading" with MDM was somehow not joint. *See* Declaration of Stephen P. Farrelly ("Farrelly Decl.") ¶ 1, Ex. A (9/19/2025 Hr'g Trans.) at 127:23; ECF No. 97 (MSD Opp.) at 11. The appropriate inquiry is whether MSD intended to aid and abet MDM's violation of the Court's injunction, and the Court has already ruled. ECF No. 96 at 15–16, 18–20 ("the evidence amply supports a finding that MSD acted to benefit or assist MDM in violating the Court's TRO"). MSD's continued attempts to claim that it sought the Mexico Injunction for reasons independent of MDM's—*see, e.g.*, ECF No. 97 (MSD Opp.) at 11—were weighed and rejected by the Court after it painstakingly reviewed MSD's moving papers for its original injunction in Mexico, *see* Farrelly Decl. ¶ 1, Ex. A (9/19/2025 2025 Hr'g Trans.) 125:25–137:14; ECF No. 13-3. MSD's moving papers make clear that MSD was pursuing its "rights under the License Rights Assignment Agreement," ECF No. 13-3 at 0018. *See* ECF No. 96 at 20 (no evidence MSD has "any relevant interests that are independent of MDM or 'Fox Sports Mexico'").

MSD's arguments about legal identification are also misguided. MSD attempts to conflate aiding-and-abetting intent with legal identification. ECF No. 97 (MSD Opp.) at 8. Legal identification does not require intent; entities need only be "substantially intertwined" to be legally identified. The Court has already ruled that MDM and MSD are so. ECF No. 96 at 15–16. MSD offers nothing to dispute the evidence that supports that finding.

The Court was well within its authority when it imposed contempt on MSD. It should uphold its order.

## II. LEGAL STANDARD

A party may not resist an injunction simply because it disagrees with the bases underlying the court's order. *See U.S. v. Rylander*, 460 U.S. 752, 756-57 (1983) ("It would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." (quoting *Maggio v. Zeitz*, 333 U.S. 56, 59 (1948)). Binding precedent clearly states that courts have the power to impose contempt, even where, unlike here, an "injunction[] [was] issued erroneously," *W.R. Grace and Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum and Plastic Workers of Am.*, 461 U.S. 757, 768 (1983). The law does not allow contemnors to evade sanction by second-guessing unambiguous court orders.

"A court may hold a party in contempt if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *CBS Broadcast. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016) (citing *Paramedics Electromedicina Comercial, Ltd. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004)).

"A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden." *Next Invs., LLC v. Bank of China*, 12 F.4th 119, 131 (2d Cir. 2021) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)). Thus, "a contempt order is inappropriate if there is a fair ground of doubt as to the wrongfulness of the [alleged contemnor's] conduct" stemming from "[a]mbiguities in the order's language and persisting questions about legal limits on the court's power." *Id.* (citations and quotation marks omitted).

Resisting a contempt order on the basis of "questions about the legal limits of the court's power" is limited to scenarios where compliance with the contempt order would require the contemnor to correctly answer a "novel question" of law that "was not the subject of an obvious answer." *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 292 (2d Cir. 2008). "The proper measure of clarity . . . [is] whether [the order] unambiguously proscribes the challenged conduct." *Id.* Yet, even in scenarios involving a novel underlying legal issue, contempt is appropriate where the contemnor's interpretation of the order was a "mere pretext" to avoid an injunction. *Id.* (citing *Apple Computer, Inc. v. Formula Int'l, Inc.*, 594 F. Supp. 617, 623 (C.D. Cal. 1984)).

## III. ARGUMENT

### A. The TRO Clearly and Unambiguously Applied to Conduct in Mexico

MSD asserts that there is a "fair ground of doubt" whether the Court's anti-suit injunction "applie[d] extraterritorially in Mexico." ECF No. 97 (MSD Opp.) at 6. The Court's injunction plainly states that "Defendant and anyone acting in concert with Defendant are restrained from . . . pursuing any legal or regulatory action relating to the Fox Sports Trademarks *in Mexico*." ECF No. 29 (TRO) at 10 (emphasis added). There is no plausible reading of the Court's order to suggest it did not apply in Mexico. *See Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) ("fair ground of doubt as to wrongfulness of the defendant's conduct" standard reflects principle "that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt") (quotations and citations omitted). Defendant's conduct in Mexico was the very impetus of the anti-suit injunction. *See, e.g.*, ECF No. 29, at 4-5, 7-8. The Court's injunction is a common form of relief when foreign parties violate a forum selection clause by initiating litigation in their home forum. *See Forbes IP (HK) Ltd. v. Media Business Generators, S.A. de C.V.*, No. 23-cv-11168, 2024 WL 1743109 at *4-7 (S.D.N.Y. Apr. 23, 2024).

In reality, MSD challenges the merits underlying the Court's TRO. Specifically, MSD claims it was "reasonably uncertain" whether the Court would enforce the anti-suit injunction once MSD presented its arguments concerning "IFT's continuing jurisdiction and sovereign interest in enforcing the 2019 Conditions." ECF No. 97 (MSD Opp.) at 7. In other words, MSD argues that it should not be held in contempt because of its belief that the Court would conclude that it erred in issuing its injunction. But it is well-settled that a disagreement with the legal basis underlying a court's order is not grounds to disobey it. *See Rylander*, 460 U.S. at 756–57. MSD has no reasonable basis to conclude the order was ambiguous.

*Next Investments, LLC v. Bank of China*, 12 F.4th 119 (2d Cir. 2021), does not help MSD. There, the injunction at issue froze "money or assets [] held in the U.S. or abroad." *Id.* at 124. The Second Circuit held that non-party Chinese banks "had a reasonable basis to doubt whether the asset restraints applied to their foreign branches" on the ground that compliance with the court's order would cause the banks to violate of Chinese law. *Id.* at 132.[1]

There is no similar "reasonable basis to doubt" here. MSD does not—and cannot—point to any Mexican law prohibiting compliance with the Court's injunction or any law requiring MSD to pursue the Mexico Injunction. As this Court has recognized, by the time MSD and MDM sought the Mexico Injunction in August 2025, the IFT had already confirmed that MDM's license assignment agreement complied with the IFT's 2019 Resolution, including the forum selection clause, dispelling any colorable doubt that Mexican law somehow prevented MSD from complying with the Court's injunction. *See* ECF No. 96 at 19.

---

[1] The Second Circuit also affirmed the district court's denial of contempt sanctions on the basis that plaintiffs had unreasonably delayed in seeking to enforce the order against the banks, had "expressly disclaimed enforcement against the Banks . . . forestall[ing] any case or controversy about the scope of the orders," and engaged in "gamesmanship" by engaging in dilatory tactics. *See id.* at 124–31.

There is no novel legal question behind which MSD can hide to avoid contempt. In the IFT's 2021 Resolution, the IFT approved this Court's jurisdiction to adjudicate disputes among the parties to MDM's license assignment agreement. *See* ECF No. 96 at 19; ECF No. 11-53 at 10–11. Plaintiffs filed suit in this Court after obtaining that clarification from the IFT. *See* ECF No. 1 (Complaint filed on August 14, 2025). The uncontradicted evidence in the record demonstrates that in its 2021 Resolution the IFT approved this Court's authority to resolve private disputes among the parties related to the Fox Sports Trademarks, and the IFT spelled out the import of the 2021 Resolution's approval in the IFT's July 2025 Resolution.[2] Thus, there was no "fair ground of doubt" in August 2025 about whether this Court had the power to issue an injunction covering conduct in Mexico.

MSD presents a purported expert that claims the IFT did not authorize the forum selection clause in MDM's license agreement because the IFT cannot "delegate enforcement of its constitutionally mandated duties to a foreign court." ECF No. 97 (MSD Opp.) at 8 (citing Declaration of Juan Pablo Gomez Fierro at 7–8). But neither the IFT nor Plaintiffs claim that the IFT did such a thing. The IFT did not purport to delegate its authority to oversee the enforcement of its resolutions or purport to delegate the authority of the amparo courts in its 2021 Resolution or its July 2025 Resolution. For instance, amparo proceedings are designed to challenge regulations, acts, or omissions of the IFT, not to adjudicate disputes between private parties. *See id.* at 9 n.4. MSD's expert says nothing about the IFT's authority to approve

[2] Plaintiffs recently became aware that Grupo Lauman Holding has filed an amparo proceeding against the IFT for denying Grupo Lauman's petition, ECF No. 77-20, asking the IFT to initiate a compliance proceeding against Fox and Disney. As Plaintiffs mentioned in their last briefing, Plaintiffs have reason to believe that the IFT order denying Grupo Lauman's petition contains statements by the IFT that support Plaintiffs' position and would aid the Court in reaching a decision on this matter. The Court should order MSD to produce that document before the hearing on September 26, 2025.

agreements that direct private parties to resolve disputes between themselves arising from agreements that comply with IFT directives, as is the case here. Moreover, MSD's arguments are obviously pretextual because MDM and MSD did not seek relief from the IFT or the amparo courts; they instead sought the Mexico Injunction from a Mexico City court. In sum, MSD's purported expert claims that the IFT did not do what the IFT said it did. MSD simply cannot wish the 2021 and July 2025 IFT Resolutions out of existence. More fundamentally, MSD offers no evidence that it had its expert's (implausible) legal interpretation of the IFT's 2021 and July 2025 Resolutions in mind at the time MSD sought the Mexico Injunction. That is fatal to MSD's contention.

MSD also faults the Court for not undertaking a comity analysis before issuing the anti-suit injunction. ECF No. 97 (MSD Opp.) at 7 n.1 ("This Court should have engaged in a comity analysis prior to ordering the injunction[.]") (citing *Next Invs.*, 12 F.4th at 132). As an initial matter, both *Next Investments* and *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014)—the opinion cited by the court in *Next Investments*—concerned asset freeze injunctions in the context of an actual conflict between Chinese law and the court's order. As discussed above, no such conflict exists here. Moreover, the injunction at issue here is an anti-suit injunction, not an asset freeze. The relevant comity analysis for an anti-suit injunction is set forth in the seminal case *China Trade and Development Corp. v. M.V. Choong Yang*, 837 F.2d 33 (2d Cir. 1987). The Court made the requisite findings under *China Trade* in its TRO. *See* ECF No. 29 at 8 ¶ 5; *see also* ECF No. 10 at 39-41 (Plaintiffs' application of *China Trade* factors). There is no novel legal issue implicated by a comity analysis. Here, a Mexican regulator has approved this Court's exercise of jurisdiction over this dispute. MSD cannot evade contempt in the name of comity.

### B. MSD Aided and Abetted MDM's Violation of the TRO and is Legally Identified with MDM

MSD relies on the same arguments—already rejected by this Court—to argue that there is a "fair ground of doubt" as to whether it aided and abetted MDM's violation of the Court's injunction and whether it is legally identified with MDM. Either basis is sufficient to hold MSD in contempt for acting in concert with MDM in violating the Court's injunction. *See Havens v. James*, 76 F.4th 103, 111 (2d Cir. 2023) ("The nonparty must either be legally identified with the enjoined party or abet the enjoined party's violation of the injunction.") (quotations and citation omitted). The Court found both bases exist here.

#### 1. MSD Aided and Abetted MDM's Violation of the Injunction

To hold that MSD aided and abetted MDM's violation of the injunction, the Court must, first, "conclude that [MDM,] the party subject to the court's mandate[,] committed contempt," and, second, "conclude that the challenged action of the nonparty, [MSD,] was taken for the benefit of, or to assist" MDM's violation of the TRO. *See Havens*, 76 F.4th at 112 (quotations and citations omitted).

MDM's contempt is uncontested. MSD challenges only the factual sufficiency of the determination that it aided and abetted MDM's contempt to the extent that its participation in the Mexico Injunction was purportedly for its own "independent and legitimate interests." ECF No. 97 (MSD Opp.) at 11.

MSD's "independent interest" argument is meritless. First, it is irrelevant whether MSD had an independent interest to pursue the Mexico Injunction. The inquiry concerns "the actuality of concert or participation, without regard to the motives that prompt the concert or participation." ECF No. 96 at 18 (quoting *Havens*, 76 F.4th at 114). MSD does not suggest that it sought the Mexico Injunction by accident. MSD intended to seek the Mexico Injunction with

MDM, and it therefore intended that conduct to violate the Court's injunction because such a violation was a "certain, or substantially certain" consequence of MSD's action. *See id.* (quoting *SEC v. U.S. Env't, Inc.*, 155 F.3d 107, 111 (2d Cir. 1998)).

Even if motive were part of the relevant inquiry, the best evidence of why MSD sought the Mexico Injunction lies in its moving papers for its request for the original injunction in Mexico before the 42nd Superior Court of Mexico City, in which MSD explains precisely why it sought an injunction. At the evidentiary hearing on September 19, 2025, the Court painstakingly walked through those moving papers, which confirmed that the interest expressed by MSD in seeking the Mexico Injunction was "the preservation of [MSD's] legitimate rights under the License Rights Assignment Agreement." ECF No. 13-3 at 0018; *see also* Farrelly Decl. ¶ 1, Ex. A (9/19/2025 Hr'g Trans.) 125:25–137:14.

This motive is corroborated by the timing of MSD's moving papers for the Mexico Injunction. Four days after the Court's injunction issued, on August 18, 2025, Fox Sports Mexico (MSD and MDM), MDM, and Grupo Lauman jointly issued a press release denying this Court's jurisdiction and arguing that MDM possessed the exclusive right to use the Fox Sports Trademarks, in defiance of the Court's injunction. *See* ECF No. 96, at 18–19 (collecting evidence). Four days later, on August 22, 2025, MSD and MDM jointly sought the Mexico Injunction. *See id.* at 19; ECF No. 42-1, Ex. A. "The most plausible inference from this sequence of events is that MDM and MSD sought the expanded injunction in retaliation for plaintiffs' having sought and obtained a TRO against MDM from this Court." ECF No. 96 at 19.

Accordingly, the evidence comprising MSD's original joint moving papers and its joint press release show that "MSD's participation in a joint request for a retaliatory injunction could only have been for the purpose of benefiting or assisting MDM." *Id.*

MSD claims that it had independent reason for seeking the Mexico Injunction—to pursue tort claims against Fox Cable Network Services and one of Fox's executives for "misappropriating content rights belonging to MSD." ECF No. 97 (MSD Opp.), at 11. That contention is classic post-hoc, made-for-litigation rationalization. Nowhere in MSD's moving papers for the original injunction in Mexico, ECF No. 13-3, or in its moving papers for the Mexico Injunction, ECF No. 42-1, Ex. A, does MSD seek any relief related to those claims in its moving papers. MSD offers no other evidence of its purported "independent" motive. MSD does not even proffer a declaration from an MSD officer purporting to claim what MSD's motive actually was in seeking the Mexico Injunction. That silence is deafening.[3] The Court properly noted that there is simply "no evidence before the Court that MSD's interests are meaningfully independent of those of MDM or 'Fox Sports Mexico.'" ECF No. 96 at 14; *see also Havens*, 76 F.4th at 115 ("aiding and abetting a party is not acting independently even if one has one's own motives for doing so" (quotations and citations omitted)).

### 2. MSD Is Legally Identified with MDM

MSD misstates the law by claiming that "legal identification" analysis contains an intent element. ECF No. 97 (MSD Opp.) at 8–9. MSD is legally identified with MDM if it is "substantially intertwined" with MDM through a legal relationship, including shared ownership or control, regardless of whether MSD intended to assist MDM's contempt. ECF No. 96 at 15 (collecting cases).

---

[3] In the event MSD introduces a declaration, after the filing of Plaintiffs' reply, from one of its officers claiming a post-hoc motive for MSD seeking the Mexico Injunction, the Court should afford that document the weight such a self-serving declaration deserves. MSD would still lack any contemporaneous evidence showing MSD's intent at the time MSD sought the Mexico Injunction. There is simply nothing in the record that contradicts the motive expressed in MSD's moving papers for the original injunction in Mexico. *See* ECF No. 13-3.

MSD's cases are inapposite. *See* ECF No. 97 (MSD Opp.), at 12. *Matrix Essentials v. Quality King Distributors, Inc.* discussed successor liability in the context of non-party contempt sanctions and explained that "[t]he issue of whether or not a successor may be held liable for violation of an injunction depends upon whether there is a 'substantial continuity of identity' between the bound corporation and the alleged successor." 346 F. Supp. 2d 384, 391 (E.D.N.Y. 2004) (quotation and citation omitted). The court then explained that the relevant inquiry was whether a successor entity was "so identified in interest with those named in the decree that it would be reasonable to conclude that [his] rights and interests have been represented and adjudicated in the original [injunction] proceeding." *Id.* at 392 (quotation and citation omitted). This is simply another way of asking whether the originally-bound party and the successor entity are "substantially intertwined." The case does not stand for the proposition that a non-party can sidestep legal identification analysis—*e.g.*, common ownership, common control, common interests—simply because it can articulate a reason for acting that is independent from the enjoined party's reason for acting.

MSD's reliance on *Alemite Manufacturing Corp. v. Staff* fares no better. 42 F.2d 832 (2d Cir. 1930). That case stands for the unremarkable proposition that a nonparty can be held in contempt for violating a court order if it "either abet[ted] the defendant, or [is] legally identified with him." *Id.* at 833. Intent is simply not an element of legal identification.

Plaintiffs' evidence of legal identification shows, and this Court has found, that:

1. MSD is in a joint venture with MDM that operates the business Fox Sports Mexico and it was in pursuit of that joint venture that MSD and MDM jointly sought the Mexico Injunction. ECF No. 96 at 13 (collecting evidence);
2. MSD and MDM "operate within the same corporate umbrella" and "are both

indirect subsidiaries of Grupo Lauman," *id.* (collecting evidence);

3. "The chief executive of Grupo Lauman, the president of 'Fox Sports Mexico,' and the president of MSD are all the same person: Manuel Arroyo," *id.* at 14 (collecting evidence);
4. MSD is a "'non-operational entity' that exists to hold certain contracts that are necessary for the operation of 'Fox Sports Mexico,'" *id.*; *see also* Farrelly Decl. ¶ 2, Ex. B (Sept. 18, 2025 Hr'g Trans.) 17:15-24;
5. MSD and MDM "have filed joint pleadings and are represented by the same counsel in the courts of Mexico," ECF No. 96 at 16; *see also* ECF No. 13-3;
6. MSD and MDM "have, either in their own names or that of their joint venture 'Fox Sports Mexico,' authored joint statements in the press," ECF No. 96 at 16; *see also* ECF No. 36-2 (August 18, 2025 Press Release).

That evidence overwhelmingly establishes that MSD is legally identified with MDM. MSD offers no evidence to rebut that evidence or the Court's findings based on that evidence. For that reason, Plaintiffs have demonstrated MSD is legally identified with MDM, which means that the Court properly held MSD in contempt.

**C. The Sanctions Against MSD Are Appropriate**

The compensatory sanctions imposed on MSD are appropriate. "Compensatory sanctions 'should correspond to at least some degree with the amount of damages' substantiated by the complaining party." ECF No. 73, at 6 (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1062 (2d Cir. 1995)). The law does not impose exacting precision on a party seeking relief from a contemnor, nor should the law impose such a rule in favor of a wrongdoer. Here, the damages sustained by Plaintiffs correspond to the financial windfall that Fox Sports Mexico (and, thus,

MDM and MSD) receives by virtue of the wrongful use of the Fox Sports Trademarks, which Plaintiffs would otherwise receive. *See* ECF No. 71 (C. Martinez Decl.), at ¶ 2. That is more than a sufficient basis to support the Court's sanction.

Further, although MSD asserts that the amount of the contempt sanction is "crippling," it offers no evidence about its inability to pay the sanction. In any event, as the old adage goes, MSD holds the keys to free it from its own contempt. *See Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911). MSD can relieve itself of the contempt sanction by directing MDM to cease violating the Court's injunction, and to cease violating it itself. MSD makes no such representation.

**D. The Court Possesses Authority to Freeze MSD's Assets**

MSD is wrong when it claims that this Court cannot impose an asset freeze on MSD. The Court has "broad discretion to design a remedy that will bring about compliance" with its contempt order. *Perfect Fit Indus. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982). The breadth of that discretion cannot be overstated. When the Court issues an injunction, as well as contempt orders meant to enforce that injunction, it exercises its equitable jurisdiction. In that posture, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) (citations omitted). "Power is thereby resident in the District Court, in exercising this jurisdiction, to do equity and to mould each decree to the necessities of the particular case" and, in doing so, "the court may go beyond the matters immediately underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary under the circumstances. Only in that way can equity do complete rather than truncated justice." *Id.* (quotations and citations omitted).

Here, the Court issued the asset freeze because Plaintiffs presented evidence showing a legitimate risk that MSD would dissipate its assets. The Court's asset freeze was done to ensure the coercive effect of its contempt order. That purpose falls squarely within the Court's broad discretion. Nor is the Court's remedy novel. Courts have the power to order an asset freeze of a non-party. *See, e.g.*, *S.E.C. v. Collector's Coffee, Inc.*, 697 F. Supp. 3d 138, 177 (S.D.N.Y. 2023) (in securities enforcement action, "[t]he plenary powers of a federal court to order an asset freeze are not limited to assets held solely by an alleged wrongdoer, who is sued as a defendant in an enforcement action.") (quoting *S.E.C. v. I-Cubed Domains, LLC*, 664 F. App'x 53, 55 (2d Cir. 2016)).[4] The Court's sanction is proper.

## IV. CONCLUSION

For the foregoing reasons, the Court should confirm its contempt order against MSD.

Dated: September 25, 2025

Respectfully submitted,

ELLIS GEORGE LLP

By: /s/ Christopher T. Berg

Eric M. George
Katherine A. Petti, *Pro Hac Vice*
Christopher T. Berg, *Pro Hac Vice*

2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

[4] MSD cites *Havens* for the proposition that a court cannot make a decree against a nonparty because "jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court." ECF No. 97 (MSD Opp.) at 14 (quoting 76 F.4th at 111). But MSD's counsel accepted service before this Court. ECF No. 96, at 12 n.6. And, by virtue of this very proceeding, MSD is not deprived of its "day in court" to argue against the contempt order.

egeorge@ellisgeorge.com
kpetti@ellisgeorge.com
cberg@ellisgeorge.com

Stephen P. Farrelly
ELLIS GEORGE LLP
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629
sfarrelly@ellisgeorge.com

*Attorneys for Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC*

**CERTIFICATION PURSUANT TO S.D.N.Y. LOCAL CIVIL RULE 7.1(C)**

I, Christopher T. Berg, an attorney duly admitted Pro Hac Vice to practice in the Southern District of New York hereby certify that this memorandum is no longer than 25-double spaced pages and the text and footnotes are in 12 point type, which complies with Rule 2(e) of this Court's Individual Rules of Practice.

Dated: September 25, 2025

Christopher T. Berg