# EXHIBIT A

P9JEFOXH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

FOX CORPORATION,

                    Plaintiff,

          v.                              25 Civ. 6703 (JSR)

MEDIA DEPORTES MEXICO, S. DE
R.L. DE C.V.,
                                          Hearing

                    Defendant.

-------------------------------x
                                          New York, N.Y.
                                          September 19, 2025
                                          10:30 a.m.

Before:

                    HON. JED S. RAKOFF,

                                          District Judge

                         APPEARANCES

ELLIS GEORGE LLP
     Attorney for Plaintiffs
BY:  CHRISTOPHER T. BERG
     KATHERINE A. PETTI
     EDWARD M. LEE
     VINCENT H. LI

NASSIRI & JUNG LLP
     Attorneys for Non-Party Mexico Sports Distribution LLC
BY:  JAIME DORENBAUM
     KASSRA NASSIRI

P9JEFOXH

successors and assigns.  Neither this Agreement nor any of the rights, interests or obligations of any Party under this Agreement shall be assigned, in whole or in part, by operation of Law or otherwise, by any Party without the prior written consent of the other Party to this Agreement; provided, however, that each Party (a) may assign any of the foregoing to one or more of its Affiliates; provided further, that such Affiliate agrees to be bound by all of the terms, conditions and provisions contained herein and (b) may assign any of the foregoing in connection with the sale or other transfer of all or substantially all of the applicable business or assets of such Party or its Affiliates to which this Agreement relates; provided further, that assignments pursuant to clause (b) of this sentence shall not relieve the assigning Party of any of its obligations hereunder arising prior to such assignment unless agreed to by the non-assigning Party.  Any assignment in contravention of this Section 12.1 shall be null and void *ab initio*.

And I'll note that the second sentence of the two sentences I just read would normally be of a length only found in a Faulkner novel, but here it is.

So let me ask defense counsel, what about that?

MR. NASSIRI:  Well, your Honor, as two esteemed jurists have noted, facts drive the law.  Mr. Berg's entire argument rests on a misstatement.  Nobody's contending that MSD

P9JEFOXH

has a vital interest in the trademarks.  The litigation in Mexico does not involve just the trademarks, it also involves licenses from sports teams to broadcast sporting events in Mexico.  And as I had mentioned yesterday to the Court, MSD holds licenses to broadcast sports; in other words, permission from the sports teams.  MSD does not hold any right to use the trademarks, as Fox itself has admitted.

And the basis of MSD's claims in Mexico City is not -- it is not suing on the trademarks, your Honor; MDM is doing that.  MSD has an independent interest.

And by the way, I hope we leave enough time so that we can introduce some exhibits ourselves.

THE COURT:  Of course.

MR. NASSIRI:  So, MSD has an independent interest in those licenses that it contends Fox misappropriates.

THE COURT:  I thought since I don't have to go dancing with my wife tonight, we'd go at least to midnight, but whatever is sufficient for your purposes.

MR. NASSIRI:  You're going outlast me, your Honor, which is impressive.

And then, you know, beyond that of course, there's no evidence on the record that this license -- that the trademarks were assigned to MSD, that MSD is an affiliate under the agreement, which it very well may be.

THE COURT:  No.  I think I've seen evidence elsewhere

P9JEFOXH

that it's labeled an affiliate.

MR. NASSIRI:  Okay.  So that may be, your Honor. That's a low hurdle.

But again, MSD does not contend it has any interest in the trademarks.

THE COURT:  And when you filed your papers, which I haven't looked at, in Mexico -- the papers were subsequent to my order -- what specifically were the points being made in those papers?

MR. NASSIRI:  So, I believe those papers were an extension of an injunction that had been already granted by the Mexican court hearing the request for relief by MDM and MSD. And that request for relief, your Honor, as we also noted, predates the filing of the complaint in this district.

THE COURT:  Yeah.  And that's a relevant point.  But maybe I'll put it a different way.  In any of the papers filed by MSD in the Mexican court, did MSD either, one, take a position with respect to the trademark name "Fox" or other such "FOX Sports," et cetera; and independent of that, what did MSD assert, if it did, was its standing?

MR. NASSIRI:  I will get detail on that now.  That's what my colleague is working on.  I will say this:  I believe because it is a joint pleading, it may not be clear with respect to how each allegation might be attributed to one or other of the plaintiff.  But if you read the request and the

resulting injunction that was ordered, it's clear that MSD's standing derives from its interest in the licenses and not the trademarks because it has no interest in the trademarks.  MDM's standing derives from interest in the trademarks.

THE COURT:  All right.

MR. BERG:  Your Honor, two things:

One, the Mexico trademark injunction related to the FOX Sports trademarks is a distinct litigation than the one Mr. Nassiri is referring to about soccer team licenses. Totally different litigations, your Honor.

THE COURT:  And MSD was present in the separate -- in each of the litigations?

MR. BERG:  Yes, that's right, your Honor.  So let's not conflate.  What's happening in Mexico City, there are many things happening in Mexico.  Let's just talk about the emergency relief that they sought with MDM in Mexico City before the 42nd Superior Civil Court.

If you'd turn to Exhibit 112.

THE COURT:  Hold on.

MR. BERG:  This is the joint filing by MSD and MDM presented to the Mexico court seeking an injunction against certain Fox entities from using the FOX Sports trademarks.

THE COURT:  Okay.  What page are you on?

MR. BERG:  This would be bottom right-hand, page 18.

And this is the entirety of the text on that page

P9JEFOXH

above --

THE COURT:  I'm sorry.  This is Plaintiff's Exhibit 112?

MR. BERG:  Yes, your Honor.

THE COURT:  And page -- maybe I'm looking at the wrong page because, as always, there's page numbers --

MR. BERG:  Yes.  Should be 0018, your Honor.

THE COURT:  Okay.

MR. BERG:  My apologies.

THE COURT:  Got it.  Go ahead.

MR. BERG:  Above the heading "Law," it says:

As will be seen in detail in the lawsuit that my principals will file in due course, the intention of Fox Corp. is to make my principals lose all their valuable assets -- including the use of the Fox Sports Trademarks.

Going down to the next paragraph:

This is the reason why my principals -- MDM and MSD -- feel the urgent need to resort to present request for precautionary measures of a pre-judicial nature, to request the preservation of their legitimate rights under the License Rights Assignment Agreement.

Very clear.  MSD has claimed it has rights under that agreement.

THE COURT:  Okay.  Now, just so I'm clear, this is, as I think I can tell from page 0002, that document is a document

P9JEFOXH

that was filed by -- well, no, I can't tell from --

How do you attach this document to MDS?

MR. BERG:  Sure.  It's page 0003.

THE COURT:  Oh.  Three.  Okay.

MR. BERG:  The heading at the top right.

THE COURT:  Oh, yes.  Okay.  MDS v. Fox.

So let me go back to defense counsel.  What about it? This seems to be something that you filed asserting that you were acting on behalf of your principals who would lose their valuable assets, including "the use of the Fox Sports trademarks," and then you go on to say:  This is the reason why my principals feel the urgent need to resort to the present request, to request the preservation of their legitimate rights under the License Rights Assignment Agreement.

So, whatever else may be the basis of MDS standing here, it seems clear that they're acting, in whole or in part, as agents of what are called "the principals," which is presumably MDM and above.  Specifically, with respect to the License Rights Assignment Agreement.

What about that?

(Counsel confer)

MR. NASSIRI:  So, we're trying to also look at the Spanish version.  A few things, your Honor.

First, if you'll notice, again we have are on page -- I believe Bates number 18.

P9JEFOXH

THE COURT:  Right.

MR. NASSIRI:  Okay.  So the phrase you just read, your Honor, references the trademark specifically, but note that it says "including."  Okay?  And then it says, the next sentence: The foregoing -- which is the trademarks -- together with the unlawful conduct displayed by Carlos Martinez.

The unlawful conduct displayed by Carlos Martinez is a tort being alleged by MSD.  And this gets into a lot more background about what's happening there, but the allegation is he had a duty to MSD to negotiate for an extension of these broadcast licenses for MSD, and that instead, he flipped, he became a turncoat, and he negotiated the renewal of these licenses not for MSD but for Fox, in violation of his fiduciary duties.  Committing a tort to MSD.  That is as important in the whole story as the trademark issue.

THE COURT:  Well, let's assume for the sake of argument that that is, but that doesn't obviate that in the paragraphs we just looked at, MSD is acting as an agent with respect to the issue of trademarks expressly, and with respect to rights of others under the exact agreement that has the forum selection clause, which is expressly in your papers referenced.  So, you may have your own beef with Mr. Martinez Sanchez, but that's not all that you're asserting here.  You're asserting that the foregoing, which is the loss of the use of the Fox Sports trademarks, plus the unlawful

P9JEFOXH

conduct of Mr. Sanchez, gives rise to a fear by your principals that they will lose their trademark rights under the License Rights Assignment Agreement.

So I'm not clear how you can possibly be saying you're not, at least in part, acting as their agent for purposes of protecting their rights under the License Rights Assignment Agreement. And since that agreement has a specific forum selection clause, which, as I indicated yesterday, is effectively a waiver of any personal jurisdiction argument, why isn't that now binding on you?

MR. NASSIRI: Your Honor, I believe that this is a group pleading. This is far from an adjudicated issue in terms of whether MSD is asserting, as an agent, the right to --

THE COURT: Wait. Let's get back to basics. And I'm sure this is true under not only U.S. law and Mexican law but every country in the world. We'll start with the lawyer. When a lawyer makes a filing in a court, it is binding upon the client because the lawyer is the agent of the client, yes?

MR. NASSIRI: Correct.

THE COURT: Okay. When the client joins with others in making that filing, the client is asserting that we are collectively making the arguments here. If they want to single out separate arguments, they need to file separate briefs where they say in the face of the document, you know, that the following assertion is made by three of us but not by the

P9JEFOXH

fourth or something like that.  But if several entities collectively file a single document in any court in the world saying our joint position is X, they are adopting each other's positions with respect to whatever it is they're asserting in that document.

Do you disagree with that?

MR. NASSIRI:  I do disagree with that, your Honor.

THE COURT:  And what is your -- point me to any case anywhere in the world that says what you just said.

MR. NASSIRI:  Well, your Honor, in Mexico they have a procedure that is quite unlike the procedure here where they don't file a complaint when they seek an injunction.  And as you'll see, what is referenced, and I believe it's referenced on a prior page -- no, it's referenced here, they file the complaint after they get the injunction.

And this is a group pleading.  There's nothing in here that says they are acting in concert or as agents for one another, there's nothing in here that would support the notion that MSD is seeking relief on the trademarks as opposed to the licenses for which it will file a tort complaint against Fox and Carlos Martinez.

And, your Honor, the case law talks about the scrutiny that should be applied here, and particularly in the context of an evidentiary hearing, preponderance of the evidence.  While the Court is entitled to make inferences, this is quite the

P9JEFOXH

inference, your Honor, based on a Mexican legal document and a procedure that's not familiar to the Court for which there's no evidence presented, which is clearly a group pleading.  To draw the inference that MSD is seeking relief on the trademarks, I believe, is unwarranted.

THE COURT:  So --

MR. NASSIRI:  It's equally likely, your Honor --

THE COURT:  -- the --

MR. NASSIRI:  It's equally --

THE COURT:  Excuse me.

MR. NASSIRI:  Sorry.

THE COURT:  The person who signed this, who is that?

MR. BERG:  Your Honor, the signatory on this document is -- this is page 0036 -- Rogello Arturo Islas Perez.  And if you flip between 00 --

THE COURT:  And he says right above that on the same page --

MR. BERG:  Yes, sir.

THE COURT:  -- to you, Chief Judge, I attentively request:

First -- To acknowledge the personality that I hold, in my capacity as general attorney-in-fact for lawsuits and collections of Media Deportes Mexico and Mexico Sports Distribution, LLC.

So, he is asserting that he's a single person acting

P9JEFOXH

on behalf of both of them.

Then, if we go way back to page Baits stamp six, he begins by saying that:  By principals, MDM and MSD, are subsidiaries -- indirectly -- of Grupo Lauman that currently operate the business known as Fox Sports.

We looked at that yesterday.

And so I don't see how this can be construed as anything other than his assertion that he is acting without distinction on behalf of both entities.

MR. NASSIRI:  Your Honor, the fact that one lawyer represents two distinct entities, I think, is indisputably not uncommon or evidence that everything that comes out of that lawyer's mouth is on behalf of its clients.  I think it's equally probable here, and I would say is actually the case, but at least equally probable that this is a group pleading for which the attorney did not take the time to separate out all of the allegations.  Again, it is equally probable that that is the case.  There's no basis here --

(Counsel confer)

MR. NASSIRI:  And by the way, Fox made the assertion in this litigation that MSD has no right or interest in the trademarks.  Fox itself knows this.  MSD's role here is that it holds separate rights, and those are the broadcast rights.  It does not hold any rights to the trademark.  And so, your Honor, irrespective of what's happening with the trademarks -- and

P9JEFOXH

this is important, your Honor -- MSD has independent standing as the holder of the licenses that were misappropriated by Fox to bring suit. And it is equally probable, based on this group pleading, that MSD's wall here and the allegations attributed to it are those for which it has standing, which are those tort allegations related to Fox's misappropriation of the license agreement. There are two distinct sets of issues.

THE COURT: Well, take a look also at page five of this, what you're describing as, group pleading. It says that it's being -- they're seeking preliminary injunctive relief with request to two requests.

One: The court order, of a provisional nature, consisting in maintaining the legal and factual situation that currently prevails, consisting in the continuous and uninterrupted use by Media Deportes Mexico and/or Mexico Sports Distribution, (i.e., in the Mexican Republic), of the trademarks described in fact 5 of this request.

Two: The court order, of an interim nature, by virtue of Fox Corporation and Fox Media are ordered to refrain from performing intimidating, et cetera, MDM and/or MSD, from the continuous and uninterrupted use of the aforementioned trademarks.

And those are the two, and the only two, requests for relief. And I think, by the way, this also shows that the Mexican procedure is quite similar to the American procedure.

P9JEFOXH

Here is a request for a TRO or a preliminary injunction or both, and it's supported by a sworn submission from the lawyer who says he's representing both MDM and MSD, and all he's asking for is relief with respect to what he alleges is the wrongful use of the trademarks by Fox and the permissible use of the trademarks by both of the entities he represents.

If the lawyer was confused, and I can't imagine that's something this Court could ever take cognizance of, I mean, a client is bound by what the lawyer submits, but it's neither here nor there. Here, under oath, he's making a flat-out assertion as the agent of his clients, who you agreed with me that lawyers are the agents of their clients. He's the agent of MSD as well as MDM, and he's asserting relief relating to trademarks under the license agreement.

MR. NASSIRI:  Your Honor --

MR. BERG:  Your Honor --

MR. NASSIRI:  -- so, again, the Mexican proceeder is different.  My understanding is that -- so, if -- so you have -- I think about compulsory claims, okay, that need to be brought because they arise out of the same facts and circumstances and involve, at least in this case, the same defendant, Fox or Fox entities.  So when MSD and MDM filed their complaint -- which, by the way, I don't believe they've even filed yet, they will file it together because it's all part of one scheme that is being alleged that Fox basically