**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FOX CORPORATION; FOX MEDIA LLC; and FOX SPORTS EN ESPAÑOL LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MEDIA DEPORTES MEXICO, S. de R.L. de C.V.,<br><br>Defendant. | Case No.: 1:25-cv-06703-JSR<br><br>**PLAINTIFFS' REPLY BRIEF IN RESPONSE TO SEPTEMBER 26, 2025 HEARING ON NON-PARTY MEXICO SPORTS DISTRIBUTION LLC'S CONTEMPT** |

**TABLE OF CONTENTS**

**Page**


I. ARGUMENT ....................2

A. MSD Is in Contempt ....................2

1. MSD Is in Contempt for Use of the Fox Sports Trademarks ....................2

2. MSD Is in Contempt for Seeking the August 27, 2025 Injunction in Mexico ....................2

3. MSD's Arguments Regarding MDM's Service Are Wrong....................5

B. There Are No "Persisting Questions" About this Court's Power ....................6

1. The Court Conducted the Required Comity Analysis ....................6

2. The Court Properly Conducted the *China Trade* Analysis ....................7

3. Adopting MSD's Position Would Violate the Act of State Doctrine ....................8

C. MDM's Remaining Arguments Are Frivolous ....................10

II. CONCLUSION....................10

CERTIFICATION PURSUANT TO S.D.N.Y. LOCAL CIVIL RULE 7.1(c) ....................12

# TABLE OF AUTHORITIES

**Page**

## CASES

*Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*,
385 F. Supp. 3d 212 (S.D.N.Y. 2019) ........ 3

*China Trade and Development Corp. v. M.V. Choong Yong*,
837 F.2d 33 (2d Cir. 1987) ........ 1, 6, 7

*Davies, Hardy, Ives & Lawther v. Abbott*,
38 N.Y.2d 216 (1975) ........ 10

*Doctor's Associates, Inc. v. Reinert & Duree, P.C.*,
191 F.3d 297 (2d Cir. 1999) ........ 2

*Fanelli v. Adler*,
516 N.Y.S.2d 716 (2d Dep't 1987) ........ 2

*Forbes IP (HK) Ltd. v. Media Bus Generators*,
2024 WL 1743109 (S.D.N.Y. Apr. 23, 2024) ........ 7

*Giuliano v. N.B. Marble Granite*,
2014 WL 2805100 (E.D.N.Y. June 20, 2014) ........ 6

*Havens v. James*,
76 F.4th 103 (2d Cir. 2023) ........ 3

*In re Wedtech Corp.*,
88 B.R. 619 (Bankr. S.D.N.Y. 1988) ........ 2

*Live Brands Holdings, LLC v. Gastronomico Gracias a Dios*,
2021 WL 6064202 (S.D.N.Y. Dec. 21, 2021) ........ 5

*Najjar Grp., LLC v. W. 56th Hotel LLC*,
106 A.D.3d 640 (1st Dep't 2013) ........ 10

*Next Investments, LLC v. Bank of China*,
12 F. 4th 119 (2d Cir. 2021), ECF No. 110 ........ 7

*Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd.*,
312 F.R.D. 329 (S.D.N.Y. 2015) ........ 5

*U.S. v. Thompson*,
921 F.3d 82 (2d Cir. 2019) ........ 3, 4

## RULES

Fed. R. Civ. P. 61 ........ 6

Fed. R. Civ. P. 65(d) ........ 3

On September 26, 2025, the Court ordered the parties to file supplemental briefing on the following issues: (1) the testimony offered by MSD's purported expert Gómez Fierro; (2) the IFT's September 2025 denial of Grupo Lauman's request to initiate compliance proceedings against Fox and Disney, in which the IFT once again stated that the parties must pursue litigation per the terms and before the tribunal (this one) outlined in the 21CF-MDM Assignment Agreement; and, (3) the purported deficiencies in service related to MSD's contempt. Declaration of Christopher T. Berg ("Berg Decl."), ¶ 1 Ex. A (9/26/25 Hr'g Tr.) at 94:25–95:22. MSD abandons its expert without any response to the inconsistencies that Fox flagged in its supplemental brief. MSD is damningly silent on the IFT's September 2025 decision (including why it was unable to produce a copy of that decision). And, while MSD addresses the service issues, it does so wrongly.

MSD also ignores the Court's directive that the briefing should raise "no new issues." *Id.* at 96:1–2. MSD's new issues are meritless, in addition to being improperly raised. Fox addresses MSD's kitchen sink opposition as follows: MSD is in contempt of the Court's order because: (1) as a joint venturer, MSD is liable for MDM's continued use of the Fox Sports trademarks in the United States and Mexico; (2) MSD had actual notice of the Court's TRO when it sought the August 27, 2025 injunction in Mexico; (3) MSD was properly served with the contempt papers before having contempt sanctions enforced on it; (4) MDM was properly served with contempt papers, which enables MSD to be held in contempt; (5) the Court conducted the appropriate international comity analysis by applying *China Trade* when issuing the TRO; and, (6) adopting MSD's IFT arguments would violate the Act of State doctrine.

MSD's opposition stretches the "fair ground for doubt" doctrine beyond coherence, conflates legal principles, and misstates facts. MSD must be held to account for its contempt.

# I. ARGUMENT

## A. MSD Is in Contempt

### 1. MSD Is in Contempt for Use of the Fox Sports Trademarks

MSD argues that it cannot be held in contempt because there is no evidence that it uses the Fox Sports trademarks. *See* ECF No. 110 at 3. That is wrong. The Court has already found that "MDM and MSD are joint venturers in the 'business known as Fox Sports Mexico'" and thus "they are each the principal and each the agent of the other." ECF No. 96 (9/23/25 Opinion) at 13–14. Fox has shown that MDM operates the Fox Sports Mexico website. *See, e.g.*, ECF No. 10 (8/14/25 TRO Br.) at 20–21. MSD conceded that MDM uses the Fox Sports trademarks in Mexico and in the United States on the Fox Sports Mexico website. Berg Decl., ¶ 3 Ex. B (9/19/25 Hr'g Tr.) at 144:7–11, 146:9–19. That injunction-violating conduct by MDM is therefore attributable to MSD as a joint venturer. *See In re Wedtech Corp.*, 88 B.R. 619, 623 (Bankr. S.D.N.Y. 1988) (joint venturers "may be jointly and severally liable for . . . illegal activity within the scope of the partnership business"); *Fanelli v. Adler*, 516 N.Y.S.2d 716, 717 (2d Dep't 1987) ("A partner is jointly and severally liable for a tort committed by another partner acting within the scope of the partnership business, and an injured party may bring an action against all or any of the partners in their individual capacities.").[1]

### 2. MSD Is in Contempt for Seeking the August 27, 2025 Injunction in Mexico

MSD argues that "the Court cannot hold MSD in contempt for conduct it engaged in before it accepted service [of the contempt filings] on September 5." ECF No. 110 at 7. MSD's

[1] MSD's reliance on *Doctor's Associates, Inc. v. Reinert & Duree, P.C.* is misplaced. That case held that an injunction obtained against non-parties was inappropriate because the enjoined parties were not virtual representatives of the non-parties and that the enjoined parties could only be considered agents—not principals—of the nonparties. *See* 191 F.3d 297, 303–04 (2d Cir. 1999). That analysis if irrelevant here as this Court has already concluded that the relationship between

position—that a nonparty contemnor cannot be held in contempt for conduct predating service of contempt filings—is nonsensical; how could a party serve contempt filings on a nonparty *before* the contemptuous conduct occurred? MSD once again is confusing actual notice with service. "[A]n injunction binds . . . those 'who are in active concert or participation' with the enjoined parties to violate the injunction" and who have actual notice of the injunction. *Havens v. James*, 76 F.4th 103, 111 (2d Cir. 2023) (quoting Fed. R. Civ. P. 65(d)). MSD received actual notice of the Court's TRO on August 14, 2025. *See* ECF No. 59. MSD therefore is liable for any contemptuous conduct it committed after August 14—after it had actual notice of the TRO.

MSD's argument appears to be that it was not subject to the personal jurisdiction of this Court when it sought the August 27, 2025 injunction in Mexico. But the Court has had personal jurisdiction over MSD ever since MDM submitted to this Court's jurisdiction in the 21CF-MDM Assignment Agreement in November 2021. *See* ECF No. 96 at 14 ("when MDM 'irrevocably' submitted itself to the 'exclusive jurisdiction . . .' of this Court . . . MDM also bound its joint venturer . . . MSD"); *id*. at 16 ("because MDM submitted to the Court's jurisdiction . . . the Court may exercise personal jurisdiction over MSD"). "Contempt proceedings may move forward upon a showing of actual notice, but only as long as the court making the contempt finding already has personal jurisdiction over the [contemnor]." ECF No. 110 at 5 (quoting *U.S. v. Thompson*, 921 F.3d 82, 87 (2d Cir. 2019)). Although not required, that is the situation here.[2]

---

MSD and MDM is far more intertwined than any principal-agent relationship; they are joint venturers (and thus both principal and agent to one another) and legally identified with each other. *See* ECF No. 96 (9/23/25 Opinion) at 13–14.

[2] The two cases on which MSD principally relies discuss the requirement of personal jurisdiction in contempt proceedings generally. They do not address the particular timing issue that is present here. For example, in *Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, the court held it could not hold a nonparty in contempt because it lacked personal jurisdiction over the nonparty entirely and proper service had never been made. *See* 385 F. Supp. 3d 212, 218–19 (S.D.N.Y. 2019). The court did not address the circumstance in which a non-party accepted service following

MSD also seems to contend that it could not be held in contempt until after it accepted service of the contempt papers on September 5, 2025. MSD received electronic service of the contempt filings on August 29, 2025. ECF No. 63. Although MSD claims that service was ineffective, the point is inapposite. The Court has never enforced contempt sanctions against MSD. It has refrained from doing so until evidentiary hearings and additional briefing on MSD's contempt proceedings are complete. *See* ECF Nos. 45, 48, 95. At present, MSD has filed four written submissions contesting the grounds for its contempt, ECF Nos. 46, 76, 97, 110, and has presented evidence and argument across three days of evidentiary hearings. If MSD's argument is that it cannot suffer this Court's contempt sanction until after it has been served and participated in contempt proceedings, then that has occurred in spades.

At bottom, MSD's gripe is that the Court's contempt order should not have issued against MSD on August 29, 2025 (despite that order being stayed as to MSD). There is no practical distinction between the Court issuing and simultaneously staying its August 29, 2025 contempt order pending contempt proceedings versus the Court withdrawing its August 29, 2025 contempt order and issuing a new contempt order upon the completion of contempt proceedings. The issue is an enormous red herring. The critical point here is that MSD is plainly wrong when it claims "the Court cannot hold MSD in contempt for conduct it engaged in before it accepted service on September 5."[3] ECF No. 110 at 7. As discussed above, MSD is liable for its contemptuous conduct occurring after it had actual notice of the Court's injunction. Whether that contempt is ultimately

---

its contemptuous conduct and then contempt proceedings were conducted thereafter. The same is true for *U.S. v. Thompson*, which, in any event, applied New York, not federal, law. *See* 921 F.3d 82, 87–88 (2d Cir. 2019).

[3] Even accepting MSD's incorrect view of the law, MSD committed contempt after accepting service on September 5. On September 25, MDM and MSD submitted a brief opposing an appeal filed by Fox Cable Network Services, LLC ("Fox Cable") challenging the August 27, 2025 injunction in Mexico. *See* ECF No. 109-9, 10/8/25 Berg Decl., ECF No. 109, ¶ 6 Ex. E1.

found in the Court's August 29, 2025 order or in a new order to be issued by the Court, MSD cannot avoid contempt for seeking the August 27, 2025 injunction in Mexico.[4]

3. MSD's Arguments Regarding MDM's Service Are Wrong

MSD claims that email service on MDM was improper because email service on Mexican citizens is prohibited by international agreement. ECF No. 110 at 10. But no international agreement forbids email service on a Mexican citizen: Mexico has objected to service by postal mail but not service by email. *See, e.g.*, *Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd.*, 312 F.R.D. 329, 331 (S.D.N.Y. 2015) ("[T]he Court finds more persuasive the reasoning of several courts that have declined to extend countries' objections to specific forms of service permitted by Article 10 of the Hague Convention, such as postal mail, to service by other alternative means, including email.") (Rakoff, J.). Accordingly, courts in this district have permitted service via email on Mexican citizens. *See, e.g.*, *Live Brands Holdings, LLC v. Gastronomico Gracias a Dios*, 2021 WL 6064202, at *1 & n.1 (S.D.N.Y. Dec. 21, 2021).

MSD next contends that September 5 was "the first time the Court approved email service of the contempt filings on MDM." ECF No. 110 at 12. That is wrong. The Court first approved alternative service on MDM via email on August 14, 2025. ECF No. 29 at 10; *see also* ECF No. 73 at 3 ("the Court has repeatedly authorized electronic service in this action"). Although the Court was not required to reauthorize email service, on August 20, 2025 the Court nevertheless specifically authorized email service of its Order to Show Cause why MDM should not be held in contempt along with all papers upon which that Order is based. ECF No. 38. Fox served MDM with that Order, along with the papers on which Fox premised MDM's contempt, via email. *See*

[4] MSD asserts it had an independent interest in pursuing the August 27, 2025 injunction in Mexico. But, as the Court has concluded, there is "no evidence . . . that MSD's interests are meaningfully independent of those of MDM or 'Fox Sports Mexico.'" ECF No. 96 at 14.

ECF Nos. 53 (service on August 19, 2025 of original contempt papers), 54 (service on August 21, 2025 of Order to Show Cause), 55 (service on August 29, 2025 of additional contempt papers). MSD's claim that email service was not authorized until September 5 simply misstates the facts. Fox served MDM via email only after the Court authorized Fox to do so.[5] Accordingly, there is no "fair ground for doubt" about whether MDM has had its opportunity to challenge the Court's contempt order. ECF No. 110 at 13. To the contrary, the Court has taken extraordinary efforts to provide fair opportunity to MDM and all non-party contemnors to contest their contempt.

**B. There Are No "Persisting Questions" About this Court's Power**

1. The Court Conducted the Required Comity Analysis

MSD recycles its argument that the Court failed to conduct a comity analysis before issuing the injunction. ECF No. 110 at 18–21. But the TRO on its face reflects that the Court conducted a comity analysis and concluded that "the *China Trade* factors weigh in favor of granting an anti-suit injunction." ECF No. 29 at 8 ¶ 5; *see also* ECF No. 10 (8/14/25 TRO Br.) at 31–35 (conducting a detailed application of the *China Trade* factors for the Court's consideration). The *China Trade* case is in turn crystal clear that the "principles of international comity" are central to the anti-suit injunction doctrine. *See China Trade and Development Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35–36 (2d Cir. 1987) (the court must give "due regard to principles of international comity"). MSD cannot credibly claim that the Court did not perform a comity analysis.

[5] MSD complains that MDM was not served with a copy of Local Rule 83.6 at the same time as MDM's Order to Show Cause regarding contempt. MSD cites no case holding that subsequent service of Local Rule 83.6 negates otherwise proper service. Courts have reached the opposite conclusion. *See Giuliano v. N.B. Marble Granite*, 2014 WL 2805100, at * 9 n.13 (E.D.N.Y. June 20, 2014) (finding no substantial rights were affected per Fed. R. Civ. P. 61 when Local Rule 83.6 was not served with an Order to Show Cause but was later served), *report and recommendation adopted*, No. 1:11-mc-00753-JG-VMS, Dkt. No 21 (S.D.N.Y. July 15, 2014).

MSD next contends that the Court conducted the wrong comity analysis by not applying the factors in Section 403 of the Restatements (Third) of Foreign Relations Law. ECF No. 110 at 19. But MSD cites no case that holds a Section 403 analysis must be conducted in the context of an anti-suit injunction. The only case MSD cites is *Next Investments, LLC v. Bank of China*, 12 F. 4th 119 (2d Cir. 2021), ECF No. 110 at 18–19, which involves an injunction requiring a foreign asset freeze, not an anti-suit injunction. In contrast, Fox cites several cases, including *China Trade* itself, to show that the *China Trade* analysis is the appropriate comity inquiry when issuing an anti-suit injunction. *See* ECF No. 10 at 31–34 (collecting cases). MSD cannot claim a fair ground for doubt that the Court engaged in the wrong comity analysis.

2. The Court Properly Conducted the *China Trade* Analysis

MSD fails to articulate any flaw with the Court's application of the *China Trade* factors. MSD claims that this Court's injunction would not be dispositive of the litigation before the 42nd Court in Mexico City. ECF No. 110 at 14. The Court's injunction is dispositive of that Mexico litigation because it means MDM initiated the Mexico litigation in violation of the 21CF-MDM Assignment Agreement's exclusive forum selection clause. *See* ECF No. 10 at 33 (citing *Forbes IP (HK) Ltd. v. Media Bus Generators*, 2024 WL 1743109, at *5 (S.D.N.Y. Apr. 23, 2024)).

MSD claims that the Court's injunction would not be dispositive of the future tort claims it may bring. But, as this Court has already observed, the case brought by MSD and MDM before the 42nd Court in Mexico does not involve tort claims. *See* Berg Decl. ¶ 3 Ex. B (9/19/25 Hr'g Tr.) at 139:24–140:16. MSD conceded that understanding when it asserted that it "intends to bring" tort claims. ECF No. 110 at 14. *China Trade* only requires that "resolution of the case before the enjoining court must be dispositive of *the action to be enjoined*," not some hypothetical, future case. *China Trade*, 837 F.2d at 35 (emphasis added).

MSD next contends that the Court's ruling would not be dispositive of whether the IFT's 2019 Resolution required Fox to grant an exclusive license to MDM. ECF No. 110 at 19. But the Court's injunction need not resolve that issue to be dispositive of the litigation before the 42nd Court in Mexico. All that is required is the conclusion that the forum selection clause prohibited MDM from initiating litigation in the 42nd Court. Taking MSD at its word, the 42nd Court is not even able to resolve what the IFT's 2019 Resolution requires. By MSD's own admission, adjudicating the meaning of the IFT's 2019 Resolution is reserved to the IFT and then specialized federal courts in Mexico in the event a litigant contests the IFT's decision.[6] *See, e.g.*, ECF No. 76 (9/12/25 MSD Br.) at 9, 23.

Moreover, the IFT has made it abundantly clear that disputes among the parties to the Fox Sports Trademarks license must be resolved according to the governing contracts between them. MSD does not breathe a word in response to the IFT's September 2025 decision, which is now the third time the IFT has indicated (each time more expressly) that the forum selection clause in this case will be dispositive of the dispute among the parties. *See* ECF No. 108 (10/8/25 Supp. Br.) at 4–5. There is no basis to claim that the Court's exercise of jurisdiction infringes on the IFT's jurisdiction, especially when the IFT has repeatedly disclaimed such an infringement.[7]

### 3. Adopting MSD's Position Would Violate the Act of State Doctrine

MSD has asked this Court to disregard the IFT's July 2025 Resolution and interpret the IFT's 2021 Resolution as authorizing the Equity Purchase Agreement for Fox Sports Mexico but

---

[6] MSD complains no evidence was presented on Mexico's comity interests when the Court issued its TRO. ECF No. 110 at 21. A non-party contemnor cannot be permitted to evade contempt because an injunction was issued *ex parte* without the presentation of argument favored by the enjoined party. That would upend the point of no-notice injunctions.

[7] MSD attempts to distract from its weak arguments by asserting Fox Cable took positions inconsistent with what Plaintiffs have asserted here. *See* ECF No. 110 at 15–18. The Court already rejected that contention. Berg Decl. ¶ 2 Ex. A (9/26/25 Hr'g Tr.) at 12:24-13:12.

not its exhibits (which includes the form agreement of the 21CF-MDM Assignment Agreement). *See, e.g.*, ECF No. 97 (9/23/25 MSD Br.) at 4. Doing either would violate the Act of State doctrine because both the July 2025 and 2021 IFT Resolutions are official acts of the Mexican government through the IFT. *See* ECF No. 108 (10/8/25 Supp. Br.) at 13–15.

First, MSD argues that there is no official act to which the Act of State doctrine can apply until Grupo Lauman exhausts its amparo proceeding regarding the IFT's September 2025 decision not to initiate compliance proceedings against Fox and Disney. ECF No. 110 at 21. MSD cites no authority for its exhaustion argument. Nor does MSD's imagined principle of law make sense. There is no amparo proceeding pending against the IFT's 2021 Resolution or the IFT's July 2025 Resolution. Both resolutions confirm that the IFT authorized this Court's power to adjudicate the dispute currently before it. Because no amparo proceeding is contesting those resolutions, MSD offers no reason why they should not be considered official acts by the IFT and, thus, of Mexico.

Second, the only thing MSD has to say about the July 2025 Resolution is that it was a decision issued by the Economic Competition Unit, not the full IFT commission. But Grupo Lauman initiated amparo proceedings against the September 2025 decision issued by the IFT's Economic Competition Unit, contradicting its argument that only decisions by the full IFT commission constitute official IFT acts. *See* ECF No. 108 (10/8/25 Supp. Br.) at 4–7. In that September 2025 decision, the IFT made clear that what must be "exhausted" are the proceedings before the "competent courts and/or tribunals regarding breaches . . . of the terms of the EPA, and in particular of the License Agreement and the Sublicense Agreement" before the IFT will act. *See* ECF No. 109-2 at 15, 10/8/25 Berg Decl., ECF No. 109, ¶ 2 Ex. A1.[8]

[8] MSD's objection to Fox's use of the IFT's September 2025 decision is baseless. Fox obtained that document through proper means. *See* Declaration of Iván Gabriel Favela Ramírez.

### C. MDM's Remaining Arguments Are Frivolous

MSD argues (without citation to case law) that Fox is not in contractual privity with MDM. ECF 110 at 24. That is wrong because MDM expressly agreed to assume 21CF's disclosed obligations under the 21CF-MDM Assignment Agreement. ECF No. 12-28 at 3 ¶ 3; *see also Najjar Grp., LLC v. W. 56th Hotel LLC*, 106 A.D.3d 640, 641 (1st Dep't 2013) ("an assignee stands in the shoes of the assignor" and "the plain language of an assignment determines its breadth and scope"); *Davies, Hardy, Ives & Lawther v. Abbott*, 38 N.Y.2d 216, 218–19 (1975) (same).

MSD next claims Fox Corporation waived the forum selection clause when non-parties Fox Cable and Tubi, Inc. sought an injunction in Mexico against Grupo Lauman and its subsidiaries to prevent them from interfering with Fox Cable and Tubi's commercial interests in Mexico, and filed suit in the Central District of California on that basis. Fox Cable and Tubi are not parties to the forum selection clause and are not successors or assigns to those parties. *See* ECF No. 12-28 at 0029 § 12.3 (forum selection clause limited to disputes "between the Parties or any of their respective successors and assigns"). Their conduct thus cannot waive the application of the forum selection clause as to Fox Corporation. Fox Corporation—the only Fox entity that is a party to the 21CF-MDM Assignment Agreement—has engaged in no conduct to waive its rights under the forum selection clause.

## II. CONCLUSION

The Court should hold MSD in contempt.

Dated: Los Angeles, California
October 21, 2025

Respectfully submitted,

ELLIS GEORGE LLP

By: /s/ Christopher T. Berg

Eric M. George
Katherine A. Petti, *Pro Hac Vice*
Christopher T. Berg, *Pro Hac Vice*
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697
egeorge@ellisgeorge.com
cberg@ellisgeorge.com
kpetti@ellisgeorge.com

Stephen P. Farrelly
ELLIS GEORGE LLP
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629
sfarrelly@ellisgeorge.com

*Attorneys for Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC*

**CERTIFICATION PURSUANT TO S.D.N.Y. LOCAL CIVIL RULE 7.1(c)**

I, Christopher T. Berg, an attorney duly admitted Pro Hac Vice to practice in the Southern District of New York hereby certify that this memorandum is no longer than 25-double spaced pages and the text and footnotes are in 12 point type, which complies with Rule 2(e) of this Court's Individual Rules of Practice.

Dated: October 21, 2025

Christopher T. Berg