**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

FOX CORPORATION; FOX MEDIA LLC; and FOX SPORTS EN ESPAÑOL LLC,

Plaintiffs,

v.

MEDIA DEPORTES MEXICO, S. de R.L. de C.V.,

Defendant.

Case No.: 1:25-cv-06703-JSR

**MEMORANDUM OF LAW IN OPPOSITION TO NON-PARTY MEXICO SPORTS DISTRIBUTION LLC'S MOTION FOR STAY**

**TABLE OF CONTENTS**

**Page**


TABLE OF AUTHORITIES .................................................................................... ii

I. INTRODUCTION ....................................................................................................1

II. ARGUMENT ............................................................................................................4

A. MSD Fails to Meet Its Burden Under the Four-Factor *Hilton* Test. ........................4

1. MSD has failed to make a strong showing that it is likely to succeed on the merits of its appeal or demonstrate the presence of a serious question. ............................................................................5

2. MSD has failed to show it would suffer irreparable harm without a stay. ...............................................................................................7

3. Issuance of a stay will substantially injure Plaintiffs. ................................9

4. The public interest weighs against a stay. ..............................................10

B. MSD Fails to Meet Its Burden Under the Five-Factor *Strip Search Cases* Test. ...............................................................................................10

1. The collection process is likely to be complex. ......................................13

2. The time to obtain judgment after appeal is likely to be lengthy..............15

3. The Court should doubt that MSD could satisfy the judgment. ................16

4. MSD's ability to pay the judgment is not so plain that the cost of a bond would be a waste of money. ..................................................16

5. MSD presents no basis to conclude that the bond requirement would place its other creditors in an insecure position. ............................17

III. CONCLUSION .......................................................................................................18

Certification Pursuant To S.D.N.Y. Local Civil Rule 7.1(c) ......................................20

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*605 Fifth Prop. Owner, LLC v. Abasic, S.A.*,
No. 21cv811 (DLC), 2022 WL 1422821 (S.D.N.Y. May 5, 2022) ....12, 13

*A.V. By Versace, Inc. v. Gianni Versace, S.p.A.*,
279 F.Supp.2d 341 (S.D.N.Y. 2003)....8

*Blue Citi LLC v. 5Barz Int'l Inc.*,
No. 16-CV-9027 (VEC), 2019 WL 10890126 (S.D.N.Y. Feb. 6, 2019) ....4, 9

*Borey v. Natl. Union Fire Ins. Co. of Pittsburgh, Pennsylvania*,
934 F.2d 30 (2d Cir. 1991)....7

*Butler v. Ross*,
No. 16-cv-1282 (DLC), 2017 WL 6210843 (S.D.N.Y. Dec. 7, 2017) ....13, 17

*Carnegie Inst. of Washington v. Fenix Diamonds LLC*,
No. 20-CV-0200 (JSR), 2024 WL 3012037 (S.D.N.Y. June 13, 2024)
(Rakoff, J.) ....4, 7, 12, 17

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
598 F.3d 30 (2d Cir. 2010)....6

*de la Fuente v. DCI Telecomms., Inc.*,
269 F. Supp. 2d 237 (S.D.N.Y. 2003)....11

*FDIC v. Ann-High Associates*,
No. 97-6095, 1997 WL 1877195 (2d Cir. Dec. 2, 1997)....11

*Gompers v. Buck's Stove & Range Co.*,
221 U.S. 418 (1911)....7

*Hilton v. Braunskill*,
481 U.S. 770 (1987)....4, 10

*Huber v. Marine Midland Bank*,
51 F.3d 5 (2d Cir. 1995)....8

*In re Marc Rich & Co.*,
736 F.2d 864 (2d Cir. 1984)....8

*In re Nassau Cnty. Strip Search Cases*,
783 F.3d 414 (2d Cir. 2015).... *passim*

**TABLE OF AUTHORITIES**
**(Continued)**

*Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*,
596 F.2d 70 (2d Cir. 1979)....................1

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
327 F. Supp. 3d 606 (S.D.N.Y. 2018)....................4, 12, 14, 17

*Moore v. Navillus Tile, Inc.*,
Nos. 14 Civ. 8326, 15 Civ. 8441, 2017 WL 4326537
(S.D.N.Y. Sept. 28, 2017).................... *passim*

*Motorola Credit Corp. v. Uzan*,
275 F.Supp.2d 519 (S.D.N.Y. 2003) (Rakoff, J.) ....................3

*Nat'l Fuel Gas Distrib. Corp. v. Christian*,
No. 1:25-CV-0525, 2025 WL 2634310 (N.D.N.Y. June 16, 2025)....................6

*Palazzetti Import/Export, Inc. v. Morson*,
No. 98 Civ. 722(FM), 2002 WL 562654 (S.D.N.Y. Apr. 16, 2002) ....................11

*Peacock v. Thomas*,
516 U.S. 349 (1996)....................2

*Penfield Co. of Cal. v. Sec. & Exch. Comm'n*,
330 U.S. 585 (1947)....................10

*Penzo v. Consol. Edison Co. of N.Y., Inc.*,
No. 1:19-CV-07478-MKV, 2025 WL 369708 (S.D.N.Y. Feb. 3, 2025)....................4, 13

*State of New York v. Shore Realty Corp.*,
763 F.2d 49 (2d Cir. 1985)....................9

*Tatas v. Ali Baba's Terrace, Inc.*,
No. 19-cv-10595 (ER), 2025 WL 1190806 (S.D.N.Y. Apr. 22, 2025) ....................4, 13, 17

*Tucker Anthony Realty Corp. v. Schlesinger*,
888 F.2d 969 (2d Cir.1989)....................7

*United States v. Fayton*,
704 F. Supp. 3d 449 (S.D.N.Y. 2023)....................12

*United States v. Petito*,
671 F.2d 68 (2d Cir. 1982)....................10

**RULES**

Fed. R. Civ. P. 62, 2018 advisory committee's note ....................11

**TABLE OF AUTHORITIES**
**(Continued)**

Fed. R. Civ. P. 62(b) ....................................................................................................................11

Fed. R. Civ. P. 62(d) ....................................................................................................................11

## I. INTRODUCTION

Mexico Sports Distribution LLC ("MSD") once again attempts to evade responsibility for its ongoing, willful contempt—this time by trying to obtain a stay of the Court's contempt order pending appeal without providing the financial assurances required of every other litigant. MSD makes no showing of success on appeal, no evidence of irreparable harm, and no basis to avoid the bond required by Rule 62.

MSD's brief is remarkable for how little it addresses the standards for a stay. It seeks (1) to stay the accrual of its civil contempt sanctions and the enforcement of any judgment based on those sanctions, and (2) to do so without posting any bond. MSD offers almost no case law in support, and that which it cites does not support its position.

On its request for a stay, MSD's own case law makes clear that a movant must show that it is likely to succeed on its appeal. ECF No. 144-1 at 2. MSD has not done so. MSD instead attempts to avoid this standard by claiming that a lack of clarity surrounding the jurisdictional boundaries of various Mexican governmental entities implicates the "serious questions" doctrine, ECF No. 144-1 at 2, which requires that MSD demonstrate the existence of a serious question going to the merits and that the balance of hardships decidedly favors MSD. *See Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). But the Court rejected that premise in its October 30 order. It made clear that any such lack of clarity had no bearing on the merits of the contempt ruling because it did not implicate "the narrow question immediately before the Court," namely, "whether there was a fair ground of doubt as to whether this case would dispose of the case that MDM and MSD brought" in Mexico City. ECF No. 137 at 34. The Court answered that question unequivocally: it concluded "there is no such ground of doubt," *id.* at 35, and further determined that MSD's arguments were "not objectively reasonable," *id.* at 32. There is no serious question here.

MSD also claims it will suffer irreparable harm by asserting that a year of sanctions would be ruinous. But it offers zero evidence to support that assertion, including nothing to show that the sanctions would impair its operations, dwarf its assets, or be unrecoverable through monetary damages. Moreover, MSD can stop the accrual of sanctions at any time by complying with the Court's orders. MSD cannot establish irreparable harm when it can avoid the very harm it claims simply by complying with the Court's orders. By contrast, MSD's ongoing disobedience causes significant daily harm to Plaintiffs, which undermines the strong public interest in upholding respect for court orders.

Separately, MSD seeks the extraordinary relief of staying this Court's contempt sanctions without posting a bond. MSD obliquely states that it is not required to offer a bond at this juncture, citing no authority for that extreme position and oddly purporting to reserve argument on the point for reply. Any such arguments introduced on reply are waived. Relief under Rule 62 requires a bond or other security unless a movant can satisfy the five-factor test set forth in *In re Nassau Cnty. Strip Search Cases* ("*Strip Search Cases*"), 783 F.3d 414, 417 (2d Cir. 2015). *Cf. Peacock v. Thomas,* 516 U.S. 349, 359 (1996) ("In the event a stay is entered pending appeal, the Rules require the district court to ensure that the judgment creditor's position is secured, ordinarily by a supersedeas bond."). By failing to even mention the *Strip Search Cases* standard, MSD has failed to meet its burden that it qualifies for a stay without a bond.[1]

If the Court is inclined to grant a stay, MSD must provide security "to ensure that the prevailing party will recover in full, if the decision should be affirmed, while protecting the other

[1] Such an obvious omission is so egregious that it must be tactical. To the extent MSD attempts to introduce arguments about why it satisfies the *Strip Search Cases* standard in its reply brief, the Court should disregard those arguments. But if the Court is inclined to consider them, Plaintiffs request that they be permitted a sur-reply to address MSD's belated contentions.

side against the risk that payment cannot be recouped if the decision should be reversed." *Strip Search Cases*, 783 F.3d at 417 (cleaned up). That means MSD must post a bond for the sanctions it has accrued to date (approximately $16 million) through the resolution of its appeal (likely a year from now)—in total, approximately $89 million.

A bond is extremely important in this case. Although this Court enjoined MSD from transferring any assets, ECF No. 73, MSD has been in continuous, willful violation of the Court's TRO and preliminary injunction for 80 days. There is no basis to conclude MSD will obey some injunctions but not others. Indeed, contemnors' efforts to conceal assets are well underway. MSD's President, Manuel Arroyo, has already attempted to fraudulently transfer his real property assets in the United States to avoid the Court's contempt sanction. *See* ECF No. 113 at 2-3; *Fox Corp. v. Laura Paola Arroyo Rodriguez*, 25-cv-04650, Dkt. No. 22 (S.D. Tex. Nov. 10, 2025) (preliminary injunction voiding Manuel Arroyo's fraudulent transfer of real property). Furthermore, MSD has made clear that it is a non-operational entity with no employees—an empty vessel used to sign contracts. *See* ECF No. 137 at 39 (citation omitted). Plaintiffs have extremely serious concerns that MSD is rewriting those contracts to divert revenue streams that would have been paid to MSD to instead be rerouted to other Grupo Lauman entities.

The Court should act swiftly and decisively to prevent MSD from placing its assets beyond the Court's reach. Plaintiffs would withdraw their opposition to MSD's request for a stay provided that MSD continues to accrue sanctions and that it posts a bond for the full amount of sanctions it would accrue through its appeal—roughly $89 million. *See Motorola Credit Corp. v. Uzan*, 275 F.Supp.2d 519 (S.D.N.Y. 2003) (Rakoff, J.) (ordering a $1 billion bond). That way, MSD's assets would at least be protected from dissipation or concealment, and Plaintiffs would be able to execute on MSD's bond promptly after prevailing on appeal.

## II. ARGUMENT

MSD has not met its burden for a stay and, even if it had, MSD has not met its burden for a bond waiver. Courts in this District appear divided on whether, for a stay of a money judgment pending appeal, a movant must satisfy the five-factor test set forth in the *Strip Search Cases* or the four-factor test articulated in *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).[2] MSD's motion fails under either standard, which Plaintiffs address in turn.

### A. MSD Fails to Meet Its Burden Under the Four-Factor *Hilton* Test.

The *Hilton* test requires the Court to weigh four factors to determine whether a stay is warranted: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton*, 481 U.S. at 776. "It is well established that the first two factors are the most critical, and that both must be satisfied to warrant a stay." *Carnegie Inst. of Washington v. Fenix Diamonds LLC*, No. 20-CV-0200 (JSR), 2024 WL 3012037, at *1 (S.D.N.Y. June 13, 2024) (Rakoff, J.) (internal quotation marks and citation omitted). None of these factors weighs in MSD's favor.

---

[2] *Compare Tatas v. Ali Baba's Terrace, Inc.*, No. 19-cv-10595 (ER), 2025 WL 1190806, at *3 (S.D.N.Y. Apr. 22, 2025) (holding that "Rule 62(b) applies only to stays of money judgments" and applying *Strip Search Cases* factors); *Penzo v. Consol. Edison Co. of N.Y., Inc.*, No. 1:19-CV-07478-MKV, 2025 WL 369708, at *3 (S.D.N.Y. Feb. 3, 2025) (agreeing with approach of "several courts in this district" that "have interpreted *Strip Search Cases*[] as holding that these four factors [for injunctions] do not apply" for requests for waiving bond requirement) (collecting cases); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 649 (S.D.N.Y. 2018) (stating that, in *Strip Search Cases*, the Second Circuit rejected use of four-factor test for stays of money judgments) *with Carnegie Inst. of Washington v. Fenix Diamonds LLC*, No. 20-CV-0200 (JSR), 2024 WL 3012037, at *1-2 (S.D.N.Y. June 13, 2024) (applying *Strip Search Cases* framework for request to waive bond requirement but applying four-factor test for stay application) (Rakoff, J.); *Blue Citi LLC v. 5Barz Int'l Inc.*, No. 16-CV-9027 (VEC), 2019 WL 10890126, at *3 (S.D.N.Y. Feb. 6, 2019) (same).

**1. MSD has failed to make a strong showing that it is likely to succeed on the merits of its appeal or demonstrate the presence of a serious question.**

MSD does not even try to make the strong showing of likelihood of success required for it to obtain a stay. Nor can it. MSD's "fair ground of doubt" argument is based on the notion that the IFT did not authorize the forum selection clause on which the Court bases its jurisdiction. *See* ECF No. 97 at 6-7; ECF No. 110 at 13-24. Although MSD makes no mention of this evidence in its brief, the only support for that contention comes from opinion testimony of incredibly suspect reliability, which claims that the IFT did not actually authorize the forum selection clause. *See* ECF No. 76 at 24-25; ECF No. 110 at 16-17. That position is highly unlikely to succeed on appeal because it is flatly contradicted multiple times by resolutions issued by the IFT itself, which approve and endorse the language of the agreement that contains the forum selection clause—and expressly direct the parties to resolve disputes before the tribunals referenced in the forum selection clause. *See* ECF No. 108 at 4-7. As this Court has already concluded, MSD's arguments on "fair ground of doubt" are "not objectively reasonable." ECF No. 137 at 32.

Rather than explain why it contends it is likely to succeed on appeal, MSD attempts to argue that there is a serious question on the merits and the balance of equities tips decidedly in their favor. MSD falls short on both legs. *First*, there is no serious question going to the merits. The only "serious question" claimed by MSD is that the Court observed there was a lack of clarity regarding the jurisdictional boundaries of various Mexican governmental entities implicated in this case. ECF No. 144-1 at 2 (quoting ECF No. 137 at 34). But the Court went on to make clear that the aforementioned lack of clarity did not impact the "narrow question immediately before the Court," that is, whether there was a fair ground of doubt that this case would dispose of the case that MSD and its co-contemnors brought in Mexico City. ECF No. 137 at 34. That lack of clarity only implicated a "hypothetical future litigation" involving parties subject to the Court's

injunction, not whether the Court's injunction "would fail to dispose of the litigation [MSD] actually brought in Mexico City". ECF No. 137 at 32-33 n.15. Thus, MSD's proffered "serious question" has nothing to do with the merits of the Court's decision under appeal and thus does not qualify under the serious questions doctrine.

Second, a "serious question" means "a question that is so "substantial, difficult and doubtful as to require a more deliberate investigation." *Nat'l Fuel Gas Distrib. Corp. v. Christian*, No. 1:25-CV-0525 (GTS/MJK), 2025 WL 2634310, at *5 (N.D.N.Y. June 16, 2025) (internal quotation and citations omitted). MSD has made its argument regarding the IFT, and this Court has carefully considered it and rejected it in a thoughtful and deliberate decision. ECF No. 137 at 32. MSD makes no showing that the argument requires more investigation. Nor can it. The basis for the Court's ruling rests in part on the IFT not claiming jurisdiction over this dispute. ECF No. 137 at 30-35. That basis turns the potentially complex issue of the jurisdictional boundaries of certain Mexican governmental entities into an extremely easy issue that does not require further deliberate investigation. The clarity with which the IFT has repeatedly declined to exercise jurisdiction over this dispute is what enabled the Court to conclude MSD's "fair ground of doubt" arguments "are not objectively reasonable." *Id.* at 31-32. There is no serious question here.

Third, the balance of equities, as explained below, does not tip decidedly in MSD's favor; it tips against MSD. That balance is all the more fatal to MSD under the serious questions doctrine, which requires a *stronger* showing on the equities—a party asserting the serious question standard must "establish that the balance of hardships tips *decidedly* in its favor," such that its "overall burden is no lighter than the one the party bears under the likelihood of success standard." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (internal quotations marks and citations omitted).

Because MSD "has not even attempted to articulate why it will succeed on the merits, much less make the 'strong showing' required," *Carnegie Inst. of Washington*, 2024 WL 3012037, at *1, and because MSD does not come close qualifying for the serious questions standard, MSD is not entitled to a stay.

**2. MSD has failed to show it would suffer irreparable harm without a stay.**

MSD fails to make a colorable case for irreparable harm. MSD asserts without evidentiary support that the continued accrual of contempt sanctions would be "plainly ruinous." ECF No. 144-1 at 3.

First, the accrual of MSD's contempt sanctions is caused by MSD's refusal to comply with the Court's injunction. MSD is able to relieve itself of further sanctions through obedience. MSD "carries the keys of [its] prison in [its] own pocket." *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 442 (1911). There can be no irreparable harm caused by the Court's contempt order where MSD has the power to purge its contempt. MSD makes no showing or argument that it is unable to take the actions necessary to purge its contempt. It just does not want to do so. That is not irreparable harm.

Second, although MSD baldly asserts the financial burden from the sanctions would be ruinous, it offers no evidence in support. "Monetary loss alone will generally not amount to irreparable harm." *Borey v. Natl. Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 934 F.2d 30, 34 (2d Cir. 1991). "A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation." *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir.1989). MSD bears the burden of presenting evidence of irreparable harm, including that the imposition of additional fines would ruin it. Cases in analogous circumstances impose a high burden of production on the movant to establish inability

to pay. *See, e.g.*, *A.V. By Versace, Inc. v. Gianni Versace, S.p.A.,* 279 F.Supp.2d 341, 348 (S.D.N.Y. 2003) (finding that "until such time as Alfredo satisfies the judgments and fines or meets his burden of production [to show his inability to pay], he remains in contempt of this Court"); *In re Marc Rich & Co.,* 736 F.2d 864, 866 (2d Cir. 1984) ("The burden of proving 'plainly and unmistakably' that compliance is impossible rests with the contemnor."); *Huber v. Marine Midland Bank,* 51 F.3d 5, 10 (2d Cir. 1995) ("The alleged contemnor bears the burden of producing evidence of his inability to comply. . . . Further, the alleged contemnor's burden is to establish his inability clearly, plainly and unmistakably.").

Here, MSD offers no evidence of how continued sanctions would be ruinous. MSD does not claim or make a showing of its inability to pay the sanctions. MSD does not claim or make a showing of its inability to obtain financial support from any of the other intertwined Grupo Lauman entities or any other source. MSD does not claim or make a showing that its perceived harm could not be adequately compensated with monetary damages. And MSD makes no claim or showing that Plaintiffs would be unable to pay MSD were MSD to succeed on appeal, which Plaintiffs are plainly able to do.

MSD's failure of proof is even more damning because MSD has refused to produce the documents that might have shown its purported inability to pay, which Plaintiffs have sought via subpoena. *See* November 26, 2025 Declaration of Christopher T. Berg ("Berg Decl."), ¶ 3, Ex. A; *see also Huber*, 51 F.3d at 10-11 (finding that because documents which alleged contemnor refused to produce might have shown that he did have assets and income, alleged contemnor failed to meet his burden of proving inability to pay). MSD is clearly trying to conceal evidence of its

financial status, while nevertheless claiming financial peril.[3] MSD has failed to meet its burden of establishing irreparable harm.

**3. Issuance of a stay will substantially injure Plaintiffs.**

Plaintiffs will be substantially injured if a stay is issued. By the time the Court is scheduled to render a decision on MSD's motion (December 2), MSD will have accrued $17.4 million in contempt sanctions, reflecting 87 days of disobedience of this Court's TRO and preliminary injunction orders. If a stay is issued, MSD estimates that its accrued sanctions will total approximately $72 million by the time its appeal is resolved. That figure reflects the injury that Plaintiffs will suffer if a stay is issued and MSD is permitted to continue to violate the Court's orders. MSD, with its history of disobeying court orders, should not be permitted to inflict tens of millions of dollars of additional damage on Plaintiffs. *See Blue Citi LLC v. 5Barz Intl. Inc.*, No. 16-CV-9027 (VEC), 2019 WL 10890126, at *4 (S.D.N.Y. Feb. 6, 2019) ("a stay risks irreparably injuring Plaintiff, because of Defendant's history of failing to comply with court orders . . .and because of the risk that Defendant will be unable to pay the full amount of Plaintiff's judgment."). MSD has willfully violated this Court's orders for months, inflicting millions of dollars of damage against Plaintiffs in the process, and now asks the Court to impose a stay, which would inflict tens of millions of dollars in additional damage against Plaintiffs. Moreover, as described below in

---

[3] On November 24, MSD represented that it would provide responses to Plaintiffs' information subpoena on December 5 if MSD were not granted a stay. Berg Decl., ¶ 4, Ex. B. The Court need not wait to see whether MSD will honor that representation, given that MSD has put at issue its ability to pay the Court's sanction. The Court has the power to order MSD to produce financial discovery concerning its ability to comply with orders issued. *State of New York v. Shore Realty Corp.*, 763 F.2d 49, 53 (2d Cir. 1985) ("Discovery may occur in connection with a pending contempt proceeding, and we see no reason why a court must await the formal initiation of contempt proceedings to order discovery concerning a party's ability to comply with orders issued but not carried out, at least when ability has been put in issue."); *see id.* (ability to pay placed at issue when defendants contended that damages would be "ruinous"). The Court should order MSD to produce all information responsive to Plaintiffs' information subpoena.

Section II.A., there is a further, significant concern that MSD may be using its appellate maneuvering and the prospect of a stay without security to extend its runway to collect whatever revenues remain on its existing contracts, only to dissipate those funds or shutter the entity before any sanctions or judgment can be enforced. There is no question that the balance of the equities weighs in favor of Plaintiffs.

#### 4. The public interest weighs against a stay.

MSD is a willful contemnor that has offered meritless arguments to justify its wrongful conduct. "The public interest in orderly government demands respect for compliance with court mandates." *United States v. Petito*, 671 F.2d 68, 72 (2d Cir. 1982). A stay would permit MSD to continue to violate the Court's injunction for an additional year, all while causing tremendous injury to Plaintiffs. Such an outcome would upend the purpose of contempt proceedings, which "is to uphold the power of the court, and also to secure to suitors therein the rights by it awarded." *Penfield Co. of Cal. v. Sec. & Exch. Comm'n*, 330 U.S. 585, 593-94 (1947). The public interest weighs against a stay.

* * *

MSD's failure to satisfy any of the *Hilton* factors demonstrates that MSD is not entitled to a stay pending appeal.

### B. MSD Fails to Meet Its Burden Under the Five-Factor *Strip Search Cases* Test.

MSD is not entitled to a stay because it also fails the *Strip Search Cases* test. The application of that test demonstrates that not only is MSD not entitled to a stay, it, *a fortiori*, is not entitled to a stay without bond.

Although MSD seeks a stay of enforcement of judgment pending appeal, MSD takes the conclusory—and bizarre—position that that it is not required to provide a bond "at this juncture"

and that it "will address Plaintiffs' arguments about a bond on reply if necessary." ECF No. 144-1 at 1.

Federal Rule of Civil Procedure 62(b) provides the default rule that an appellant seeking a stay of judgment pending appeal must post a bond. "Rule 62, read in its entirety, reflects the federal policy of providing a judgment creditor with security during the pendency of an appeal." *FDIC v. Ann-High Associates*, No. 97-6095, 1997 WL 1877195, at *2 (2d Cir. Dec. 2, 1997). Under that rule, an appellant may obtain a stay pending an appeal "by posting a supersedeas bond." *Strip Search Cases*, 783 F.3d at 417 (citing Fed. R. Civ. P. 62(d));[4] *see* Fed. R. Civ. P. 62(b) ("At any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security."). "The purpose of the rule is to ensure that the prevailing party will recover in full, if the decision should be affirmed, while protecting the other side against the risk that payment cannot be recouped if the decision should be reversed." *Strip Search Cases*, 783 F.3d at 417 (internal quotation marks and citation omitted).

MSD apparently believes it can ignore the bond requirement in its moving papers and take up the issue on reply. But "[b]ecause a supersedeas bond is designed to protect the appellee, the party seeking the stay without a bond has the burden of providing specific reasons why the court should depart from the standard requirement of granting a stay only after posting of a supersedeas bond in the full amount of the judgment." *de la Fuente v. DCI Telecomms., Inc.*, 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003) (citing *Palazzetti Import/Export, Inc. v. Morson*, No. 98 Civ. 722(FM),

[4] Prior to 2018, the supersedeas bond requirement was contained in FRCP 62(d). In 2018, the requirement was moved, in modified form, to FRCP 62(b). *See* Fed. R. Civ. P. 62, 2018 advisory committee's note ("Subdivision 62(b) carries forward in modified form the supersedeas bond provisions of former Rule 62(d).").

2002 WL 562654, at *3 (S.D.N.Y. Apr. 16, 2002)); *see also United States v. Fayton*, 704 F. Supp. 3d 449, 453 (S.D.N.Y. 2023) ("Arguments made for the first in a reply brief need not be considered by a court . . . . And a party may be deemed to have waived an argument through inadequate briefing, such as a perfunctory one-sentence argument.") (quotation and citations omitted).[5] MSD's failure to address the five-factor *Strip Search Cases* test in its opening motion constitutes a failure to meet its burden for a stay without a bond. It may not raise the issue for the first time on reply.

The Second Circuit has enumerated in the *Strip Search Cases* the following non-exclusive factors that a court should consider in waiving the supersedeas bond requirement, which MSD fails:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

[5] "[W]hile it is true that the Court may, in its discretion, waive the bond requirement, it will only do so 'if the appellant provides an acceptable alternative means of securing the judgment.'" *Carnegie Inst. of Washington,* 2024 WL 3012037, at *2 (quoting *Strip Search Cases*, 783 F.3d at 417) (Rakoff, J.). MSD has not "provide[d] an acceptable alternative means of securing the judgment," *id.*, and provides no basis for why it should not be required to do so. That alone is reason to deny MSD's request for a stay of judgment execution without a bond. *See id.* (rejecting appellant's proposal to place funds in bank account as alternative security); *see also 605 Fifth Prop. Owner, LLC v. Abasic, S.A.*, No. 21cv811 (DLC), 2022 WL 1422821, at *2 (S.D.N.Y. May 5, 2022) ("[A] district court may only waive the requirement to post a supersedeas bond when the appellant provides an acceptable alternative means of securing the judgment.") (quotation and citation omitted); *John Wiley & Sons, Inc.*, 327 F.Supp. 3d at 648 (same); *Moore v. Navillus Tile, Inc.*, Nos. 14 Civ. 8326, 15 Civ. 8441, 2017 WL 4326537, at *1 (S.D.N.Y. Sept. 28, 2017) ("[A] district court can, in its discretion, waive the bond requirement . . . but only if the appellant provides an acceptable alternative means of securing the judgment.").

*Strip Search Cases*, 783 F.3d at 417-18. These factors "contemplate waiving the requirement of a supersedeas bond because a court is satisfied that the debtor would be able to pay the judgment with ease." *Tatas v. Ali Baba's Terrace, Inc.*, 19-cv-10595 (ER), 2025 WL 1190806, at *4 (S.D.N.Y. Apr. 22, 2025) (quoting *Butler v. Ross*, No. 16-cv-1282 (DLC), 2017 WL 6210843, at *3 (S.D.N.Y. Dec. 7, 2017)). "The vast majority of courts in this district applying these factors have denied a motion to stay enforcement without a supersedeas bond." *Penzo v. Consol. Edison Co. of N.Y., Inc.*, No. 1:19-CV-07478-MKV, 2025 WL 369708, at *3 (S.D.N.Y. Feb. 3, 2025). Although MSD utterly fails to address these factors, it is apparent that they weigh against waiver of the bond requirement.

**1. The collection process is likely to be complex.**

The first factor weighs against waiving the bond requirement because MSD has persistently resisted attempts to enforce the civil contempt sanctions, including on bases devoid of legal support. *See 605 Fifth Prop. Owner*, 2022 WL 1422821, at *2 ("Collection of the judgment is likely to be difficult . . . [as appellant] has resisted enforcement of its Guarantee at every stage, frequently with legal arguments firmly foreclosed by applicable authority.").

As the Court is well aware, MSD has attempted to set aside the contempt sanction on three occasions, offering shifting—and, at times, improper—arguments for why the Court could not hold MSD in contempt for its conduct. *See* ECF No. 137 (10/30/25 Opinion) at 2 (noting MSD's initial argument was based on personal jurisdiction but MSD raised new arguments at hearings), 7 n.6 (observing that MSD relied on certain documents from Mexican regulatory proceedings after claiming an inability to obtain documents from that proceeding at the Court's request), 23 (MSD resisted contempt based on arguments foreclosed by law-of-the-case doctrine), 31-32 (MSD's arguments on "fair ground of doubt" are "not objectively reasonable"), 41 (MSD raised new arguments in violation of Court order to not introduce new issues). MSD's motion fits into that

pattern, as it seeks a stay of proceedings pending appeal while completely ignoring the requirement of a bond or addressing the reasons why the bond requirement should be waived.

Moreover, "MSD's counsel has conceded that it is a 'non-operational' entity that exists to hold certain contracts that are necessary for the operation of 'Fox Sports Mexico.'" ECF No. 137 at 39 (citation omitted). As such, MSD's assets may consist of illiquid assets, demonstrating that any collection effort will be complex. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F.Supp. 3d 606, 649 (S.D.N.Y. 2018) ("[I]t appears that Defendants' net worth consistent largely of illiquid assets, likely complicating any collection effort."); *Moore v. Navillus Tile, Inc.*, Nos. 14 Civ. 8326, 15 Civ. 8441, 2017 WL 4326537, at *2 (S.D.N.Y. Sept. 28, 2017) (inferring that collection will be "complicated and time consuming" where defendant's net worth was "tied up in hard assets"). In addition, as a shell entity, Plaintiffs have serious concerns that MSD has used the weeks since it has been held in contempt to redirect the payment of certain contracts, or move its assets, just as its co-contemnor Manuel Arroyo did after being held in contempt.

Worse yet, it is entirely possible that MSD's principal (Manuel Arroyo) is pursuing another gambit: exercising MSD's appellate rights for tactical advantage, hoping that a stay—without any surety—will extend its runway to collect on any existing contracts from which it derives revenue, extracting as much as possible before shutting down the only Grupo Lauman-affiliated entity to appear before the Court. Because MSD has refused to produce discovery up to this point, Plaintiffs cannot know what inbound payments MSD may receive from its potential sublicensing, distribution, or advertising arrangements tied to sports programming. Importantly, the timing of such payments often tracks the seasons of major sports calendars, making the dissipation risk particularly acute. Without a bond, nothing would prevent MSD's principal (Manuel Arroyo) from collecting on any remaining U.S.-based contracts, transferring that money to MSD's Mexican

affiliates, and then shuttering the entity at the end of a season, effectively evading the Court's orders entirely (once again). In light of MSD's admitted shell structure, its ongoing contempt, and the attempted fraudulent transfer by its principal, there is a substantial risk that MSD could receive such payments and then dissipate or transfer assets before judgment is enforceable. This is precisely the type of dissipation risk Rule 62's security requirement is designed to mitigate.

This factor weighs against a stay without bond.

**2. The time to obtain judgment after appeal is likely to be lengthy.**

For similar reasons, the second factor also weighs against waiver of the bond requirement. If MSD's appeal is unsuccessful, Plaintiffs will likely face lengthy delays in enforcing the judgment. As noted above, MSD has a history of resisting the contempt sanctions at every opportunity and is concededly a "non-operational" entity which exists simply to hold contracts. Enforcing a judgment on those assets will be necessarily complex and time-consuming, particularly if MSD's only assets are contracts with third-parties upon which Plaintiffs will have to enforce a judgment, which itself will be procedurally complex. *Cf. Strip Search Cases*, 783 F.3d at 418 (no bond necessary where county demonstrated "the existence of appropriated funds, available for the purpose of paying judgments without substantial delay or other difficulty") (quotation and citation omitted).

In addition, MSD itself suggests in its motion that it will not be able to satisfy the contempt sanctions, arguing that the sanctions are "ruinous." ECF No. 144-1. at 3. While MSD offers absolutely no evidence of its financial situation, if MSD's position is taken as true, *arguendo*, that would militate against a waiver of the bond requirement. *See Moore*, 2017 WL 4326537, at *2 (defendant's position that it could not satisfy the judgment or obtain a bond was "determinative" as to *Strip Search Cases* factors two, three and four). This factor weighs against a stay without bond.

### 3. The Court should doubt that MSD could satisfy the judgment.

MSD, who bears the burden of proof as the moving party, provides no reason why the Court should be confident that it could satisfy the judgment if affirmed on appeal. In fact, MSD's arguments should cause the Court to doubt MSD's ability to satisfy the judgment: MSD has not provided any alternative security, has admitted that it has no operations and exists simply to hold contracts, and has claimed that it has no ability to pay the judgment by describing the sanctions as "ruinous." A claim of inability to pay is dispositive that bond cannot be waived. *See Moore*, 2017 WL 4326537, at *2 (inability to satisfy judgment is "determinative").

In addition, MSD's President, Manuel Arroyo, has already demonstrated a willingness to transfer assets in an attempt to avoid enforcement of civil contempt sanctions. Just days after this Court issued its order holding Arroyo and others in contempt for violating the TRO, Arroyo transferred real property in Texas under his name to his sister for consideration identified as "Love and affection and other good and valuable consideration." *See* ECF No. 113 (Fox Motion to Promptly Enforce Judgment Against Arroyo) at 2-3. Granting MSD a stay of judgment enforcement without requiring it to provide any security runs the real risk that MSD's assets would be similarly transferred and the judgment rendered uncollectible. This factor weighs against a stay without bond.

### 4. MSD's ability to pay the judgment is not so plain that the cost of a bond would be a waste of money.

Given MSD's complete failure to provide any information concerning its ability to pay the judgment, the illiquidity of MSD's assets, the ongoing asset dissipation by MSD's president, and MSD's claim that it lacks the ability to pay the judgment, MSD has "not shown that [it] will be able to quickly pay the judgment following the appeal, that [it] will have funds available to pay the judgment, or that [its] ability to pay is so plain that it would be a waste of money to post a

bond." *Moore*, 2017 WL 4326537, at *2 (inability to satisfy judgment is "determinative"). Accordingly, "[w]aiving the bond requirement potentially jeopardizes [appellee's] ability to collect its judgment should it prevail on appeal." *Carnegie Inst. of Washington*, 2024 WL 3012037, at *2. The *Strip Search Cases* factors "contemplate waiving the requirement of a supersedeas bond because a court is satisfied that the debtor would be able to pay the judgment with ease. [MSD] has not demonstrated that [it] has the appropriate funds available for the purposes of paying the judgment without delay or difficulty. Indeed, [it] pleads a case of impecuniosity." *Butler*, 2017 WL 6210843, at *3. This factor weighs against a stay without bond.

**5. MSD presents no basis to conclude that the bond requirement would place its other creditors in an insecure position.**

To the extent that MSD's motion suggests that it is in a precarious financial situation, the fifth factor concerns such precarity only "in the context of considering prejudice to other creditors who may have claims to [MSD's] property." *Tatas*, 2025 WL 1190806, at *4 (quoting *Butler*, 2017 WL 6210843, at *3). MSD has provided no evidence about its creditors and whether the requirement of a bond would prejudice their claims to MSD's property. Moreover, "this factor requires the debtor to show that their inability to pay other creditors would stem from the <u>bond itself</u>, not merely from the judgment." *John Wiley & Sons*, 327 F. Supp. 3d at 650. The fifth factor "does not envisage waiving the bond requirement because a debtor simply cannot pay." *Butler*, 2017 WL 6210843, at *3. And, even if the fifth factor weighed in favor of waiver of the bond requirement, "it does not outweigh the other factors." *John Wiley & Sons*, 327 F. Supp. 3d at 650; *see Moore*, 2017 WL 4326537, at *3 (fifth factor is "a weak reed on which to premise an argument that the bond requirement should be waived").

* * *

The analysis of the *Strip Search Cases* factors is made difficult because of MSD's total failure to address them in its moving papers, as its burden requires it to do. But that failure of proof makes the Court's work simple: MSD has failed to meet its burden seeking a stay without bond. MSD's motion should be denied.

## III. CONCLUSION

For the foregoing reasons, the Court should deny MSD's motion. Plaintiffs are willing to withdraw their opposition if the accrual of fines continues during the pendency of the appeal and MSD posts a bond of approximately $89 million to cover MSD's accrued sanctions should Plaintiffs prevail on appeal.

Dated: Los Angeles, California
November 26, 2025

ELLIS GEORGE LLP

By: [signature]
Christopher T. Berg

Eric M. George
Katherine A. Petti, *Pro Hac Vice*
Christopher T. Berg, *Pro Hac Vice*
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697
egeorge@ellisgeorge.com
kpetti@ellisgeorge.com
cberg@ellisgeorge.com

Stephen P. Farrelly
ELLIS GEORGE LLP
Carnegie Hall Tower
152 West 57th Street, 28th Floor

New York, New York 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629
sfarrelly@ellisgeorge.com

*Attorneys for Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC*

**<u>Certification Pursuant To S.D.N.Y. Local Civil Rule 7.1(c)</u>**

I, Christopher T. Berg, an attorney duly admitted Pro Hac Vice to practice in the Southern District of New York hereby certify that this memorandum is no longer than 25-double spaced pages and the text and footnotes are in 12 point type, which complies with Rule 2(e) of this Court's Individual Rules of Practice.

Dated: November 26, 2025

Christopher T. Berg

Christopher T. Berg, *Pro Hac Vice*