**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

FOX CORPORATION; FOX MEDIA LLC; and FOX SPORTS EN ESPAÑOL LLC,

Plaintiffs,

v.

MEDIA DEPORTES MEXICO, S. de R.L. de C.V.,

Defendant.

Case No.: 1:25-cv-06703-JSR

**REPLY IN SUPPORT OF PLAINTIFFS' RESPONSE TO DECEMBER 23, 2025 HEARING**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................................1

II. ARGUMENT ...........................................................................................................4

A. The Court Has Personal Jurisdiction Over MDM Because MDM Consented to That Jurisdiction....................................................................4

B. *Smart Study* Does Not Undermine The Court's Authority to Issue and Enforce the Provisional and Protective Orders in This Case ..................................5

1. This is a case of urgency ..............................................................6

2. The Court's orders are provisional or protective measures .........................8

3. MSD's remaining arguments are wrong .....................................................9

III. CONCLUSION ......................................................................................................10

CERTIFICATION PURSUANT TO S.D.N.Y. LOCAL CIVIL RULE 7.1(c) ............................12

## TABLE OF AUTHORITIES

**Pages**

**CASES**

*ABC v. DEF*,
2024 WL 5168624 (S.D.N.Y. Dec. 13, 2024) ....................2, 6, 7

*Abish v. N.W. Nat. Ins. Co. of Milwaukee, Wis.*,
924 F.2d 448 (2d Cir. 1991)....................8

*CBS Broad. Inc. v. FilmOn.com, Inc.*,
814 F.3d 91 (2d Cir. 2016)....................8

*Cleanspark Inc. v. Discover Growth Fund, LLC*,
485 F. Supp. 3d 494 (S.D.N.Y. 2020)....................4

*Footprint Int'l, LLC v. Footprint Asia Ltd.*,
2024 WL 1556347 (D. Ariz. Apr. 9, 2024) ....................6

*Fox Corp, et al. v. Media Deportes Mexico, S. de R.L. de C.V.*,
801 F. Supp. 3d 217 (S.D.N.Y. 2025)....................1, 2, 5, 7

*H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*,
694 F.3d 827 (7th Cir. 2012) ....................5

*Hurlock v. Kelsier Ventures*,
2025 WL 1917939 (S.D.N.Y. June 27, 2025) ....................4

*In re O.P.M. Leasing Services, Inc.*,
40 B.R. 380 (Bankr. S.D.N.Y. 1984)....................7

*King Spider LLC v. 884886 CH Store*,
2024 WL 5145837 (S.D.N.Y. Dec. 17, 2024) ....................2, 6, 7

*Lonati, S.p.A. v. Soxnet, Inc.*,
2021 WL 9839476 (C.D. Cal. Sept. 20, 2021) ....................6

*S.E.C. v. Am. Bd. of Trade, Inc.*,
830 F.2d 431 (2d Cir. 1987)....................8

*S.E.C. v. Cap. Growth Co., S.A. (Costa Rica)*,
391 F. Supp. 593 (S.D.N.Y. 1974) ....................4

*S.E.C. v. MCC Int'l Corp.*,
2024 WL 1508281 (11th Cir. Apr. 8, 2024) ....................4

*Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*,
2025 WL 3672740 (2d Cir. Dec. 18, 2025) .................... *passim*

**TABLE OF AUTHORITIES**
**(Continued)**

**Pages**

*Spin Master Ltd. v. Aganv*,
No. 24-cv-4007-GHW, ECF No. 20 (S.D.N.Y. Sept. 13, 2024) ....................6, 9

*Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co.*,
80 F.4th 536 (5th Cir. 2023) ....................4

**RULES**

Fed. R. Civ. P. 4(f)(3) .................... *passim*

Fed. R. Civ. P. 65 ....................4

**OTHER AUTHORITIES**

Hague Convention, Article 10 ....................1

Hague Convention, Article 15 .................... *passim*

Hague Convention, Article 15(2) ....................10

Hague Convention, Article 15(3) .................... *passim*

## I. INTRODUCTION

Contemnor Mexico Sports Distribution, LLC ("MSD") contends that the Court does not have personal jurisdiction over MDM and thus did not have the authority to issue the injunction against MDM, ECF Nos. 29,41, 49, and the contempt orders for violations of the injunction, ECF Nos. 44, 45, 73, 137. That is wrong. The analysis that confirms the Court has personal jurisdiction over MDM is well-recognized and straightforward.

First, MDM consented to the Court exercising personal jurisdiction over it.[1] That consent was sufficient for the Court to issue its injunction against MDM. Second, the service requirements under the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters ("Hague Convention") do not apply to MDM for the purpose of the Court issuing the injunction and contempt orders that MSD claims are void.

Federal Rule of Civil Procedure 4(f)(3) permits methods of alternative service ordered by a court, including by email, that are not prohibited by international agreement. Under certain circumstances—for example, when a defendant resides in a country that has objected to Article 10 of the Hague Convention—the Convention imposes restrictions on the service of foreign defendants, including prohibiting service via email. *See Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 2025 WL 3672740 (2d Cir. Dec. 18, 2025). However, the Hague Convention contains an exception to its service restrictions whenever a judge issues "any provisional or protective measure" in a "case of urgency." Art. 15(3), Hague Convention ("Notwithstanding the provisions of the preceding paragraphs, the judge may order, in case of

[1] *See Fox Corp, et al. v. Media Deportes Mexico, S. de R.L. de C.V.* ("*Media Deportes*"), 801 F. Supp. 3d 217, 227 (S.D.N.Y. 2025) (". . . MDM 'irrevocably' submitted itself to the 'exclusive jurisdiction, forum[,] and venue' of this Court 'over any and all claims, disputes, controversies[,] or disagreements between' itself and certain Fox entities 'under or related to' the License Assignment Agreement . . . ." (citation omitted)).

urgency, any provisional or protective measures."). In that scenario, the Hague Convention does not prohibit service by email because the Hague Convention's service requirements do not apply. *See ABC v. DEF,* 2024 WL 5168624, at *2 (S.D.N.Y. Dec. 13, 2024) (permitting e-mail service on China-based defendants under Article 15, which "does not prevent a court from granting interim relief"). As a result, a court may obtain personal jurisdiction over a foreign defendant by authorizing service via email under Rule 4(f)(3) so long as the exercise of that personal jurisdiction does not exceed issuing provisional or protective measures in cases of urgency. *See King Spider LLC v. 884886 CH Store,* 2024 WL 5145837, at *1 (S.D.N.Y. Dec. 17, 2024) ("In any event, Article 15 of the Hague Convention allows alternative methods of service in cases of 'urgency,' when courts are permitted 'to issue provisional or protective measures.'").

The Court's exercise of personal jurisdiction over MDM falls squarely within Article 15(3) of the Hague Convention. First, the Court's injunction and contempt orders are provisional and protective measures. Second, this is a clear case of urgency, as the Court has repeatedly recognized by issuing an ex parte injunction, ECF No. 29, granting numerous rounds of expedited and emergency relief to expand, modify, and enforce that injunction in response to the fast-developing facts of the case, ECF Nos. 41, 49, 73, 95, 137 and by imposing substantial daily fines on MDM and its co-contemnors to coerce compliance with Court orders, ECF Nos. 44, 45, 137. These Court actions underscore the cataclysmic circumstances that MDM has foisted upon Fox, which include MDM stealing Fox's identity in Mexico, *see* ECF No. 66 at 10, and pursuing litigation in Mexican courts to prevent Fox from using its own intellectual property (including property to which MDM has no colorable claim), *see* ECF No. 9 at 9-10[2], all of which threaten to unravel Fox's business in

[2] *See also Media Deportes*, 801 F. Supp. 3d at 225, 228–29 (observing that MDM and MSD obtained a "retaliatory injunction" in Mexico that expanded an existing injunction to prohibit Fox from using the name "Fox" in Mexico).

Mexico. On top of that, MDM's ongoing, affirmative acts of contempt (as recent as January 2026) constitute yet another dimension of urgency.

Because the Court's injunction and contempt orders are provisional and protective measures issued in an urgent case, Article 15(3) dictates that the Hague Convention's service requirements do not apply to MDM for the purpose of the Court exercising personal jurisdiction to issue those orders. Thus, the Court acted within its authority when it authorized Fox to serve MDM via email, ECF Nos. 29, 38, 39, 41, 49, 73, and when it issued the injunction and contempt orders, ECF Nos. 29, 44, 45, 49, 137, because by doing so the Court only exercised personal jurisdiction over MDM to issue provisional or protective measures.

MSD has no answer to the Hague Convention's exemption under Article 15(3). MSD claims there is no urgency here, but that bald assertion ignores the copious record presented to the Court—not to mention the Court's lived experience of this case. MSD also says nothing of the active contempt it and MDM are engaged in, which itself constitutes an urgent case.

MSD further asserts (without argument or explanation) that the Court's contempt orders and sanctions are not provisional or protective measures. *See* ECF No. 168 at 4-5 ¶ 17. That is obviously incorrect. A contempt sanction for violating an injunction is a measure designed to protect a litigant from the violation of provisional relief. The Court's contempt orders and sanctions are also designed to protect the Court's authority.

MSD claims that *Smart Study* invalidates the email service made on MDM. But *Smart Study* does not support MSD's position. As the Second Circuit observed, the circumstances that trigger Article 15(3) were not present in *Smart Study* because the plaintiff in that case was not seeking provisional relief. *Smart Study*, 2025 WL 3672740, at *6. The only apposite point made in *Smart Study* is that Article 15(3) "preserves a judge's authority to 'order, in case of urgency,

any provisional or protective measures.'" *Id.* at *2 (quoting Art. 15(3), Hague Convention). The Court's injunction and contempt orders are provisional and protective measures, and thus they fall within the Court's authority left undisturbed by the Hague Convention.

The facts of the case and the orders issued by the Court satisfy Article 15(3). Therefore, the Court was not prohibited by the Hague Convention from authorizing email service on MDM under Rule 4(f)(3), and the Court did not exceed the scope of Article 15(3)'s Hague Service exception by issuing the injunction and contempt orders against MDM. The Court has personal jurisdiction over MDM for the limited purpose of issuing and enforcing those orders. The injunction and contempt orders are therefore valid.

## II. ARGUMENT

### A. The Court Has Personal Jurisdiction Over MDM Because MDM Consented to That Jurisdiction

MSD contends that MDM must be served via the Hague Convention before the Court can obtain personal jurisdiction over it. ECF No. 168 at 18 ¶ 56. MSD ignores that MDM explicitly consented to this Court's exercise of personal jurisdiction. *See* ECF No. 11-28 at 29 ¶ 12.3; *accord Cleanspark Inc. v. Discover Growth Fund, LLC*, 485 F. Supp. 3d 494, 501 (S.D.N.Y. 2020) (Rakoff, J.) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." (quotation and citation omitted)). MDM's consent conferred the requisite personal jurisdiction for the issuance of the TRO.

Contrary to MSD's incorrect assertion, service of process is not required for an injunction to bind MDM—only notice is required. That unremarkable proposition is black letter law. *See* Fed. R. Civ. P. 65; *Hurlock v. Kelsier Ventures,* 2025 WL 1917939, at *2 (S.D.N.Y. June 27, 2025); *S.E.C. v. Cap. Growth Co., S.A. (Costa Rica)*, 391 F. Supp. 593, 600 (S.D.N.Y. 1974); *S.E.C. v. MCC Int'l Corp.*, 2024 WL 1508281, at *2 (11th Cir. Apr. 8, 2024); *Whirlpool Corp. v.*

*Shenzhen Sanlida Elec. Tech. Co.*, 80 F.4th 536, 542-44 (5th Cir. 2023); *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012).

None of MSD's cases are to the contrary. None hold that service is a prerequisite for the issuance of a TRO when the enjoined party has already consented to jurisdiction. In short, the Court had personal jurisdiction over MDM to issue the injunction by virtue of MDM's consent to personal jurisdiction in the License Assignment Agreement. *See Media Deportes*, 801 F. Supp. 3d at 227. The Court therefore could exercise personal jurisdiction over MDM's co-contemnors because they acted in concert with MDM in violating the Court's orders or were otherwise legally identified with MDM. *See id.* at 225–28.

### B. *Smart Study* Does Not Undermine The Court's Authority to Issue and Enforce the Provisional and Protective Orders in This Case

The only remaining issue is whether the Court's injunction and contempt orders against MDM and its co-contemnors are valid in light of *Smart Study.* In *Smart Study,* the Second Circuit held that e-mail service of a summons and complaint did not establish personal jurisdiction sufficient to issue a default judgment against defendants. 2025 WL 3672740, at *6. In doing so, the Second Circuit rejected the notion that Rule 4(f)(3) contains an emergency exception that overrides the requirements of the Hague Convention. *Id.*

That holding does not disturb the validity of the Court's injunction or contempt orders. Although Rule 4(f)(3) does not contain an exception to the Hague Convention's service requirements, the Hague Convention itself contains such an exception. Article 15(3) states that "Notwithstanding the provisions of the preceding paragraphs, the judge may order, in case of urgency, any provisional or protective measures." Art. 15(3), Hague Convention. *Smart Study* itself recognized that Article 15(3) "preserves a judge's authority to 'order, in case of urgency, any provisional or protective measures.'" 2025 WL 3672740, at *2.

Numerous courts have recognized that "Article 15 of the Hague Convention allows alternative methods of service in cases of 'urgency,' when courts are permitted 'to issue provisional or protective measures.'" *King Spider,* 2024 WL 5145837, at *1(citation omitted); *see also Spin Master Ltd. v. Aganv,* No. 24-cv-4007-GHW, ECF No. 20 at 6–7 (S.D.N.Y. Sept. 13, 2024) ("the urgency exception in Article 15 . . . allows email service."); *ABC,* 2024 WL 5168624, at *2 (permitting email service of TRO and related orders after finding urgency under Article 15(3)); *Lonati, S.p.A. v. Soxnet, Inc.,* 2021 WL 9839476, at *3 (C.D. Cal. Sept. 20, 2021) ("Alternative service in case of urgency, . . . is expressly *allowed* as an exception to the usual requirements of the Hague Convention"); *Footprint Int'l, LLC v. Footprint Asia Ltd.*, 2024 WL 1556347, at *4 n.2 (D. Ariz. Apr. 9, 2024) (service "formalities of the Convention did not apply" under Article 15(3)); *accord* Fed. R. Civ. P. 4(f)(3), 1993 adv. comm. note. ("The Hague Convention . . . authorizes special forms of service in cases of urgency"). In all of the cases cited above, the courts recognized that Rule 4(f)(3) permits service by email when Article 15(3) is satisfied: where (1) there is a case of urgency and (2) the orders at issue concern provisional or protective measures.[3] The requirements of Article 15(3)'s well-recognized exception to Hague Service are satisfied here.

1. This is a case of urgency

This is a case of urgency, as this Court has repeatedly acknowledged. *See, e.g.*, ECF Nos. 29 (issuing ex parte TRO), 44, 45 (granting emergency relief, imposing $200,000 daily contempt

[3] MSD fails to address this case law, which is directly contrary to its position. That failure underscores the weakness of the legal reasoning advanced in its brief. Instead, MSD broadly asserts that any holdings inconsistent with *Smart Study* are overruled, ECF No 168 at 22 ¶ 67, without explaining which were overruled or responding to Fox's arguments that those cases, all concerning Article 15(3), remain good law, ECF No. 162 at 12–17, including cases like *ABC*, 2024 WL 5168624, at *1–2, which held that that Article 15(3) did not prohibit service by email of a TRO and related orders to China-based defendants even though China had objected to e-mail service under the Hague Convention.

sanction, and setting expedited briefing schedule), 73 at 7 (contemnors are "jointly reaping hundreds of thousands of dollars daily" from unauthorized use of trademarks). MDM, along with its co-contemnors, has obtained an injunction in Mexico, in violation of a forum-selection clause, preventing Fox from using Fox Sports trademarks. *See* ECF No. 9 at 14. After Fox initiated litigation in this Court to vindicate its rights, MDM sought and obtained an injunction in Mexico prohibiting Fox from using *any* trademark that uses the word "Fox," which has imperiled Fox's business in Mexico. *See Media Deportes*, 801 F. Supp. 3d at 225. MDM also induced Mexico's Trademark Office to raid a Fox business partner, which disrupted Fox's broadcasts from Mexico to the United States. ECF No. 9 at 12–13. As recently as January 7, 2026, MDM and its co-contemnors continue to violate the Court's anti-suit injunction by filing briefing seeking to maintain their Mexican injunction against Fox. *See* February 2, 2026 Declaration of Christopher T. Berg, ¶ 3, Ex. A. On top of all that, MDM's co-contemnors Arroyo and MSD are actively insulating themselves from the consequences of their contemptuous conduct by dissipating their assets in the United States. *See* ECF No. 157 at 4–5, 8–9; ECF No. 162 at 15; January 27, 2026 Dkt. Entry. The Court's contempt orders for this ongoing misconduct make crystal clear that this is a case of urgency. *See In re O.P.M. Leasing Services, Inc.*, 40 B.R. 380, 403 (Bankr. S.D.N.Y. 1984) ("The drastic nature of contempt dictates that it should be used only in clear and urgent instances of effrontery to the power of the court." (quotation and citations omitted)). MSD spectacularly mischaracterizes the record when it claims Fox "simply alleg[ed]" urgency. ECF No. 168 at 4 ¶ 17.[4]

[4] MSD asserts this case is no more urgent than "any other case involving the alleged infringement of intellectual property[.]" ECF No. 168 at 4 ¶ 17. That assertion ignores the cases cited by Fox that hold intellectual property infringement is sufficiently urgent to trigger Article 15(3). *See, e.g.*, *King Spider LLC,* 2024 WL 5145837, at *1; *ABC*, 2024 WL 5168624, at *1.

2. The Court's orders are provisional or protective measures

The Court's injunction and contempt orders are plainly provisional or protective measures. Article 15(3) is disjunctive—it applies to the issuance of either provisional or protective measures. Nevertheless, the orders at issue here are both. A preliminary injunction (as opposed to a permanent injunction) is definitionally provisional and protective. *See Abish v. N.W. Nat. Ins. Co. of Milwaukee, Wis.*, 924 F.2d 448, 453 (2d Cir. 1991) (a preliminary injunction is an "order directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought by a complaint"). Contempt orders issued to enforce a preliminary injunction are also provisional and protective in nature. They are provisional measures in the sense that they are the enforcement mechanism for a preliminary injunction, and thus are a necessary corollary to that provisional relief. *See id.* (preliminary injunction enforceable through contempt). And they are protective measures because they are designed to protect a beneficiary of an injunction if it is violated. *See, e.g.*, *S.E.C. v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 441–42 (2d Cir. 1987) (recognizing civil contempt is necessary to protect the beneficiaries of the injunction). Contempt orders are also protective in nature because they safeguard the Court's authority. *See CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016) ("The contempt power serves to protect the due and orderly administration of justice." (quotation and citation omitted)). MSD offers no argument why the injunction and contempt orders are neither provisional nor protective. *See* ECF No. 168 at 4-5 ¶ 17. MSD's position is inconsistent with precedent and common sense.

* * *

Because the facts of this case and the nature of the orders at issue satisfy the requirements of Article 15(3), the Hague Convention's service formalities do not apply for the purpose of the Court exercising personal jurisdiction over MDM to issue provisional or protective measures. Because the Hague Convention's service requirements do not apply to MDM in this context, *see*

*supra* at 6, no international agreement prohibited the Court from authorizing email service on MDM. *See* Fed. R. Civ. P. 4(f)(3). MSD claims that *Smart Study* prohibits email service, but *Smart Study*'s holding is only applicable to situations where the Hague Convention's service requirements apply. Unlike in *Smart Study*, which concluded that Article 15(3) did not apply to the plaintiff's request for default judgment, *Smart Study*, 2025 WL 3672740, at *6, the facts here fall under Article 15(3), which excuses compliance with the Hague Convention's service requirements for the limited purpose of granting provisional or protective relief. *Smart Study* therefore has no bearing on cases that fall under Article 15(3).

3. MSD's remaining arguments are wrong

MSD argues that Article 15(3) does not permit the exercise of personal jurisdiction for the entire case. ECF No. 168 at 19 ¶ 59. That is undisputed. The point is that Article 15(3) excuses Hague Service for the issuance of provisional or protective measures in urgent circumstances, which are what the Court's injunction and contempt orders are. After *Smart Study*, the Court cannot issue a default judgment based on MDM's email service. No such relief has been requested.

MSD also claims that Fox needed to seek leave to serve MDM by email "pursuant to Article 15(3)." *Id.* at 19 ¶ 60. There is no such requirement. Article 15(3) does not set forth a mechanism by which litigants can seek authorization to be exempt from Hague Service requirements; it simply states that "Notwithstanding the preceding paragraphs" (*i.e.*, the Hague service requirements), a judge has the power to issue protective or provisional measures in urgent circumstances. *See Spin Master Ltd.*, No. 24-cv-4007, ECF No. 20 at 6 (acknowledging that Article 15(3) suspends the application of all articles that precede Article 15). That language means that the Court's power to issue provisional relief is "preserved," *Smart Study*, 2025 WL 3672740, at *2; in other words, the Court's authority is *not altered* by the Hague Convention in those circumstances. Thus, a litigant may seek alternative service pursuant to Rule 4(f)(3) as it would in any other circumstance when

the Hague Convention does not apply (*i.e.*, without reference to the Hague Convention). Rule 4(f)(3) provides that service may be effectuated on a foreign entity "by other means not prohibited by international agreement, as the court orders." Thus, the relevant inquiry is whether e-mail service of contempt orders in aid of the Court's provisional or protective measures was "prohibited by international agreement"—not whether Fox invoked the relevant provision of the Hague Convention showing that such service was not prohibited.

MSD next asserts that Mexico objected to Article 15(2) of the Hague Convention. ECF No. 168 at 19 ¶ 61. That matters not at all. Mexico did not object to Article 15(3), *see* ECF No. 162 at 12 & n.5, which means Mexico acknowledges the Court's authority to issue provisional or protective measures without complying with typical Hague Service requirements.

MSD's arguments about Fox's alternative bases for personal jurisdiction are also wrong. MSD's joint venture status is law of the case, not an allegation. MSD cannot escape (by ignoring) the evidence of its agent and alter ego status.[5] ECF No. 162 at 22–25.

## III. CONCLUSION

Article 15(3) clearly demonstrates that the Court has personal jurisdiction over MDM and its co-contemnors to issue and enforce the Court's injunction and contempt orders. *Smart Study* does not impact Article 15(3)'s application to this case. For that reason and the reasons set forth in Fox's opening brief, the Court should affirm its jurisdiction.[6]

---

[5] As to Arroyo's service, once again MSD is trying to litigate for him, which underscores Fox's alter ego argument. If Arroyo ever chooses to appear to contest service, Fox will address the issue more fully then. But for present purposes, Article 15(3) places Arroyo outside Hague Service requirements in any event.

[6] MSD casts aspersions against a Fox declarant by referencing his criminal trial, despite his having been acquitted by a jury of his peers. *See* ECF No. 168 at 10 n.7. MSD also attached documents concerning the criminal proceeding to its briefing. *See* ECF Nos. 168-2 to 168-5. This is disgraceful and harassing conduct. None of that material is relevant to jurisdictional issues. The Court should strike ECF Nos. 168 at 10 n.7 and 168-2 to 168-5 from the record.

Respectfully submitted,

Dated: Los Angeles, California
February 2, 2026

ELLIS GEORGE LLP

By: /s/ Christopher T. Berg

Eric M. George
Katherine A. Petti, *Pro Hac Vice*
Christopher T. Berg, *Pro Hac Vice*

2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697
egeorge@ellisgeorge.com
kpetti@ellisgeorge.com
cberg@ellisgeorge.com

Stephen P. Farrelly
Edward Lee
ELLIS GEORGE LLP
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629
sfarrelly@ellisgeorge.com
elee@ellisgeorge.com

*Attorneys for Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC*

**CERTIFICATION PURSUANT TO S.D.N.Y. LOCAL CIVIL RULE 7.1(c)**

I, Christopher T. Berg, an attorney duly admitted Pro Hac Vice to practice in the Southern District of New York hereby certifies that this memorandum is no longer than 10-double spaced pages and the text and footnotes are in 12 point type, which complies with Rule 2(e) of this Court's Individual Rules of Practice.

Dated: February 2, 2026

Christopher T. Berg