**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

FOX CORPORATION; FOX MEDIA LLC; and FOX SPORTS EN ESPAÑOL LLC,

Plaintiffs,

v.

MEDIA DEPORTES MEXICO, S. de R.L. de C.V.,

Defendant.

Case No.: 1:25-cv-06703-JSR

**PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION FOR ORDER TO SHOW CAUSE WHY MEXICO SPORTS DISTRIBUTION, LLC SHOULD NOT BE HELD IN CONTEMPT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .....1

II. ARGUMENT .....3

A. MSD concedes contempt .....3

B. MSD cannot challenge the basis of the Asset Freeze Order .....4

1. The Court has rejected MSD's privity argument .....4

2. The Court has rejected MSD's arbitration argument .....5

3. The Court has rejected MSD's personal jurisdiction argument .....6

4. The Court has rejected MSD's "independent interest" argument .....6

5. The Court has rejected MSD's argument about its "non-use" of Plaintiffs' trademarks .....8

6. The Court has rejected MSD's argument that it lacks authority to impose the Asset Freeze Order .....8

C. MSD's arguments are vexatious and impermissible attempts to relitigate matters already resolved by this Court .....9

III. CONCLUSION .....10

CERTIFICATION PURSUANT TO S.D.N.Y. LOCAL CIVIL RULE 7.1(c) .....12

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Belfiore v. Procter & Gamble Co.*
140 F. Supp. 3d 241 (E.D.N.Y. 2015) ....................10

*Carnegie Inst. of Washington v. Fenix Diamonds, LLC*
544 F. Supp. 3d 440 (S.D.N.Y. 2021) (Rakoff, J.) ....................9

*Eisenberg v. Permanent Mission of Equatorial Guinea to United Nations*
2022 WL 1546673 (S.D.N.Y. Apr. 5, 2022) ....................10

*Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V. ("Media Deportes I")*
801 F. Supp. 3d 217 (S.D.N.Y. 2025) ....................2, 6, 7, 8

*Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V. ("Media Deportes II")*
2025 WL 3029941 (S.D.N.Y. Oct. 30, 2025) ....................2, 4, 5, 6, 7, 8, 9

*Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V. ("Media Deportes III")*
2026 WL 438878 (S.D.N.Y. Feb. 17, 2026) ....................2, 6

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*
527 U.S. 308 (1999) ....................9

*Hudson Motors P'ship v. Crest Leasing Enter.*
845 F. Supp. 969 (E.D.N.Y. 1994) ....................10

*Jennings v. Dolan*
29 F. 861 (S.D.N.Y. 1887) ....................9

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*
729 F.3d 99 (2d Cir. 2013) ....................10

*Lovejoy v. Murray*
70 U.S. 1 (1865) ....................9

*Maggio v. Zeitz*
333 U.S. 56 (1948) ....................2

*Meehan v. Brookliv LLC*
2022 WL 523545 (E.D.N.Y. Feb. 22, 2022) ....................9, 10

*Shrader v. CSX Transp., Inc.*
70 F.3d 255 (2d Cir. 1995) ....................9

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*Suber v. VVP Services, LLC*
2021 WL 2894810 (S.D.N.Y. July 9, 2021) ....................9

*United States v. Carr*
557 F.3d 93 (2d Cir. 2009)....................2

*United States v. Rylander*
460 U.S. 752 (1983)....................2, 4

**FEDERAL STATUTES**

28 U.S.C. § 1927....................10

## I. INTRODUCTION

Like MSD's past attempts to avoid contempt, MSD neglects discussing the actual elements of contempt.[1] It does not contest that the Asset Freeze Order is clear and unambiguous. It does not contest that MSD's violations of the Asset Freeze Order were clear and convincing. It does not contest that MSD failed to diligently comply with the Asset Freeze Order in a reasonable manner.

Indeed, MSD only devotes two paragraphs on the final page of its 24-page brief to address MSD's contumacious conduct, in which MSD baldly asserts it has done no wrong and then concedes that MSD violated the Asset Freeze Order by acknowledging the violating transactions occurred—although it attempts to excuse them as "ordinary business activities, including pre-existing obligations." ECF No. 191 ¶¶ 59–60. Remarkably, MSD offers no evidence to substantiate that the violating transactions were "ordinary business activities" or the result of "pre-existing obligations." The only basis offered by MSD to support that characterization is a declaration by MSD's outside counsel in this case, who of course has no firsthand knowledge about the nature of those transactions (and does not claim to). *See* ECF No. 191 ¶ 60 (citing ECF No. 191-1 ¶ 13).

MSD's dearth of factual support aside, there is no legal exception to an asset freeze order for "ordinary course of business" operations or pre-existing contractual obligations. Fox identified case law making that point in its opening brief. *See* ECF No. 173 at 6–7. MSD's opposition does not mention those cases, much less attempt to distinguish them. MSD's failure to address the merits of Fox's contempt motion underscores MSD's obvious contempt.

---

[1] Capitalized terms used herein have the same meanings as in Plaintiffs' Emergency Motion for Order to Show Cause Why Mexico Sports Distribution, LLC Should Not Be Held in Contempt, ECF No. 173, or the Court's prior orders, unless otherwise defined.

MSD's only strategy is to contest the underlying basis for the Court's Asset Freeze Order. But those arguments are squarely foreclosed by Supreme Court precedent. *See United States v. Rylander*, 460 U.S. 752, 756 (1983) ("a contempt proceeding does not open to reconsideration the legal or factual basis of the [disobeyed] order") (quoting *Maggio v. Zeitz*, 333 U.S. 56, 59 (1948)). Moreover, those arguments are a tired rehash of arguments the Court has already rejected. *See Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V.* ("*Media Deportes II*"), 2025 WL 3029941, at *8 (S.D.N.Y. Oct. 30, 2025) ("when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case") (quoting *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009)), *appeal filed*, No. 25-2983 (2d Cir. Nov. 24, 2025). Aside from those compelling reasons to disregard MSD's arguments, MSD's attacks are all wrong on the merits.

MSD's attempt to relitigate issues already decided by the Court reveals its opposition to be a disguised motion for reconsideration directed at the Court's prior rulings.[2] This latest effort to have the Court reverse itself is frivolous, vexatious, and a waste of the parties'—and the Court's—resources. On October 30, 2025, the Court addressed MSD's earlier attempt to recycle arguments by rejecting them under the law-of-the-case doctrine. *See Media Deportes II*, 2025 WL 3029941, at *8, 9, 13, 14, 15. Nevertheless, MSD persists in raising those *same* arguments rejected by the Court, despite the Court's prior invocation of the law-of-the-case doctrine.

The Court should put an end to MSD's wasteful litigation tactics. The Court has already addressed and rejected the arguments MSD asserts in its opposition. MSD has been afforded

[2] The Court has ruled on nearly all of the issues raised by MSD on at least three occasions. *See generally Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V.* ("*Media Deportes I*"), 801 F. Supp. 3d 217, 227 (S.D.N.Y. 2025); *Media Deportes II*, 2025 WL 3029941; *Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V. ("Media Deportes III")*, 2026 WL 438878 (S.D.N.Y. Feb. 17, 2026).

numerous opportunities to litigate those issues, which is unduly prejudicing Fox by forcing it to incur legal fees to repeat the same battles. The law-of-the-case doctrine applies here. The Court should reject MSD's arguments, bar MSD from asserting them again, and hold MSD in further contempt.

## II. ARGUMENT

### A. MSD concedes contempt

MSD's opposition offers no argument against the clarity of the Asset Freeze Order, no argument that the transfers identified by Fox did not clearly violate the order, and no argument that MSD has been diligently attempting to comply with the Asset Freeze Order.

MSD has offered no evidence that it has complied with the Asset Freeze Order at all. In fact, MSD has admitted that its violating conduct is ongoing. In seeking an extension to the filing deadline for its opposition, MSD's counsel represented that during the pendency of the extension "there will be no asset transactions while your motion is pending." March 5, 2026 Declaration of Christopher T. Berg, ¶ 2, Ex. A at 1. The clear implication of that representation is that MSD has continued to make asset transactions violative of the Asset Freeze Order since November 2025 (the last record Fox has received reflecting MSD's transactions). *See* ECF No. 176 at 3. The Court needs nothing more to find MSD in contempt.

MSD meekly asserts that the transfers at issue are part of the ordinary course of business, but MSD does not contest that those transfers violated the order. ECF No. 191 ¶ 60. MSD does not even offer proof from a percipient witness that the transfers actually were in the ordinary course of business. *See* ECF No. 191 ¶ 60 (citing ECF No. 191-1 ¶ 13). MSD's attempt to characterize the transfers as "ordinary business activities" is a ham-handed way to sidestep the record in this case. Asset freezes (like this one) are imposed precisely to prevent a contemnor from continuing to operate in a manner that facilitates the conduct the injunction was designed to stop. If a party

could get out from under a contempt sanction simply by relabeling transfers as "ordinary course" or "pre-existing obligations," then the Asset Freeze Order would have no practical impact. The Court did not give MSD authority to determine which transactions it believed were allowed, nor did it create an exception permitting MSD to move funds—whether to affiliates like MDM or otherwise—while violations of the TRO were ongoing. So, as a practical matter, MSD's "ordinary course of business activities" have been funding (and compounding) the continued harm to Fox through MDM's ongoing infringement and contempt.

### B. MSD cannot challenge the basis of the Asset Freeze Order

The rest of MSD's brief is dedicated to attacking the legal and factual basis underlying the Asset Freeze Order. Contempt proceedings are limited to evaluating whether a potential contemnor violated a court order. MSD is foreclosed from challenging the underlying basis for the Asset Freeze Order in these proceedings. *See Rylander*, 460 U.S. at 756 ("a contempt proceeding does not open to reconsideration the legal or factual basis of the [disobeyed] order").

MSD's arguments are foreclosed for another, independent reason: the Court has already considered and rejected them. *See Media Deportes II*, 2025 WL 3029941, at *8 ("when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case"). Not only does the law-of-the-case doctrine preclude their consideration, MSD fails to contend with the reasoning offered by the Court in its previous orders (or mention that the Court has already ruled on these issues). The Court should reject MSD's arguments based on the well-reasoned analysis the Court relied on in its past orders.

#### 1. The Court has rejected MSD's privity argument

MSD attempts to relitigate its argument that there is no privity of contract between Fox and MDM. *Compare* ECF No. 191 ¶ 44 *with* ECF No. 110 at 24 ("Fox may not sue MDM anywhere for breach of the Trademark License Agreement because Fox and MDM are not in privity"). The

Court rejected that argument: "Because the License Assignment Agreement provides that MDM would 'undertake[ ], with respect to the Fox Sports Trademarks ..., to meet all of the disclosed obligations of [TFCF] as set forth in" the Trademark License Agreement, MDM is TFCF's assignee. An assignee stands in the shoes of the assignor, which means that, by operation of the License Assignment Agreement, Fox and MDM are in contractual privity as to the Trademark License Agreement." *Media Deportes II*, 2025 WL 3029941, at *2 n.4 (quotation and citation omitted).

**2. The Court has rejected MSD's arbitration argument**

MSD attempts to relitigate its argument that Fox is bound by an arbitration provision. *Compare* ECF No. 191 ¶¶ 45–47 *with* ECF No. 110 at 24 ("[A]ny lawsuit against MDM . . . would have to be brought before an arbitration court in London."). The Court rejected that argument: "While the License Assignment Agreement contains an arbitration clause governing disputes 'arising out of or in connection with' that agreement, the parties' dispute about the nature of MDM's license for the Fox Sports Trademarks arises under the Trademark License Agreement, which contains the forum-selection clause in lieu of any arbitration provision, rather than under the License Assignment Agreement." *Media Deportes II*, 2025 WL 3029941, at *12 n.16. Only MDM and Twenty-First Century Fox, Inc. are bound by the arbitration provision in the License Assignment Agreement. Fox Corporation is only a signatory to the Trademark License Agreement, which contains the forum selection clause and to which MDM agreed to be bound, and did not take on any obligations under the License Assignment Agreement (unlike MDM).[3]

[3] MSD seems to insinuate that Fox Corporation is bound to arbitration because an arbitration provision appears in the Equity Purchase Agreement. *See* ECF No. 191 ¶¶ 16, 45–47. That is obviously wrong because Fox Corporation is not a signatory to the Equity Purchase Agreement, *see* ECF No. 12-26, and Fox Corporation did not agree to assume any obligations in the Equity Purchase Agreement. In contrast, MDM agreed to be bound by the unredacted provisions of the

**3. The Court has rejected MSD's personal jurisdiction argument**

MSD attempts to relitigate its argument that the Court lacks personal jurisdiction over MDM. ECF No. 191 ¶ 48. The Court rejected that argument, including most recently finding that it has personal jurisdiction over MDM for the purposes of issuing its injunction and contempt orders. *Compare* ECF No. 168 ¶ 9 ("[T]his Court does not have personal jurisdiction over [] Defendant") *with Media Deportes III*, 2026 WL 438878, at *6 (S.D.N.Y. Feb. 17, 2026) ("*Smart Study*'s holdings do not invalidate the Court's exercise of jurisdiction to either (1) grant plaintiffs' motions for temporary injunctive relief; or (2) hold MDM, MSD, and their co-contemnors in civil contempt and impose appropriate sanctions on them"); *see also Media Deportes II*, 2025 WL 3029941, at *4–6 (rejecting MSD's argument that "jurisdictional defects, including whether the Court may properly exercise personal jurisdiction over MDM . . . preclude the Court from holding [MSD] in civil contempt."); *Media Deportes I*, 801 F. Supp. 3d at 227 (observing that "MDM irrevocably submitted itself to the exclusive, jurisdiction, forum[,] and venue of this Court"). With no citation to any authority, MSD baldly asserts that reliance on the forum-selection clause is "fundamentally flawed." ECF No. 191 ¶ 48. But that contention is nonsensical. As the Court already found, MDM bound its "joint venturer, principal, and agent, MSD" to the exclusive forum-selection clause when MDM bound itself. *Media Deportes I*, 801 F. Supp. 3d at 227. The personal jurisdiction question in particular has been litigated extensively in this case, and MSD should not be heard any further on this issue.

**4. The Court has rejected MSD's "independent interest" argument**

MSD attempts to relitigate its argument that it cannot be aiding and abetting MDM's

---

Trademark License Agreement, including the forum selection clause. *See Media Deportes II*, 2025 WL 3029941, at *2 n.4.

violation of the anti-suit injunction by participating in the Mexican Litigation[4] because MSD has been acting to vindicate its purportedly "independent" interests in that forum. *Compare* ECF No. 191 ¶ 55–57 *with* ECF No. 97 at 7. The Court rejected that argument on the ground that there is no evidence that MSD's "interests are meaningfully independent of those of MDM or 'Fox Sports Mexico.'" *Media Deportes II*, 2025 WL 3029941, at *13 (quoting *Media Deportes I*, 801 F. Supp. 3d at 226); *see id.* at *13 ("the law of the case [is] that MDM and MSD are joint venturers in 'Fox Sports Mexico' and joint litigants pursuing common interests in Mexico City").

MSD's only new contribution to this tired argument is that it has attached to its opposition pleadings from courts in Mexico and the United States related to MSD's purported interest in broadcast rights for certain Mexican soccer teams. *See* ECF No. 191 ¶ 55 n.49. But those litigations (and MSD's purported interests asserted in them) have nothing to do with the Fox Sports Trademarks—the pleadings are from a different court in Mexico—and, contrary to MSD's bald assertion, have nothing to do with the Mexican Litigation (which pertain only to the Fox Sports Trademarks).[5] In other words, MSD continues to offer no evidence that MSD has an interest in the Fox Sports Trademarks that is independent from the interests pursued by MDM in the Mexican Litigation.

MSD also fails to mention that its interest in broadcasting the Mexican soccer rights referenced in the exhibits to the Draper Declaration is the same interest that MDM has in them—

[4] "Mexican Litigation" refers to the proceedings before the Civil Department 42 of the Superior Court of Justice of Mexico City. *See* ECF No. 191 ¶ 7 n.9.

[5] The pleadings from the "Fox California Litigation," ECF No. 191-1 ¶ 5, relate to a breach of contract action certain Fox affiliates asserted against MSD related to unpaid fees from certain Mexican soccer team broadcast sublicenses. *See* ECF No. 191-6 (Exhibit E to Declaration of Matthew E. Draper ("Draper Decl.")) ¶¶ 1–10. The Mexican court pleadings relate to an injunction MSD obtained against soccer teams at issue in the "Fox California Litigation." *See* ECF No. 191-3 (Exhibit B to Draper Decl.) at 5; ECF No. 191-5 (Exhibit D to Draper Decl.) at 5.

because MDM is the entity that would actually broadcast those games under the name Fox Sports Mexico. MSD and MDM's only colorable interest in those soccer rights is limited to the extent they can be used in connection with the operation of Fox Sports Mexico. *See Media Deportes II*, 2025 WL 3029941, at *14 ("MSD's counsel has conceded that it is a 'non-operational entity that exists to hold certain contracts that are necessary for the operation of 'Fox Sports Mexico.'").

**5. The Court has rejected MSD's argument about its "non-use" of Plaintiffs' trademarks**

MSD attempts to relitigate its argument that it is not in contempt because it has not used any of Fox's trademarks. *Compare* ECF No. 191 ¶ 58 *with* ECF No. 110 at 3–4. The Court rejected that argument when it concluded that MSD is a joint venturer with MDM in operating Fox Sports Mexico, that MSD is "the principal and the agent" of MDM when MDM uses the Fox Sports Trademarks, and that "MSD's role in 'Fox Sports Mexico' is a clear form of 'active . . . participation' in the 'use' of the Fox Sports Trademarks." *Media Deportes II*, 2025 WL 3029941, at *13–14. On that basis, MSD controls MDM's actions, is legally identified with MDM, and otherwise aided-and-abetted MDM by pursuing the Mexican Litigation. *Media Deportes I*, 801 F. Supp. 3d at 226–29; *see Media Deportes II*, 2025 WL 3029941, at *14.

**6. The Court has rejected MSD's argument that it lacks authority to impose the Asset Freeze Order[6]**

MSD attempts to relitigate its argument that the Court cannot impose the Asset Freeze Order on MSD. *Compare* ECF No. 191 ¶ 40 *with* ECF No. 97 at 10. The Court rejected that argument when it held that "the law is clear that district courts must have broad discretion in exercising their equitable jurisdiction to bring about compliance with contempt orders." *Media*

[6] The Court also already rejected MSD's recycled argument about the amount of the sanction fine. *See Media Deportes II*, 2025 WL 3029941 at *15.

*Deportes II*, 2025 WL 3029941, at *15 (quotation and citation omitted). The new cases that MSD cites are inapposite, and MSD misstates their holdings by trying to apply them in the contempt context. Neither *Suber v. VVP Services, LLC*, 2021 WL 2894810 (S.D.N.Y. July 9, 2021) nor *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) had anything to do with an asset freeze as a contempt sanction. Those cases stand for the unremarkable proposition that a prejudgment asset freeze injunction is not permitted to secure a future claim for money damages. MSD's attempt to apply them to the equitable authority of the Court to fashion an appropriate contempt sanction is baseless.[7]

### C. MSD's arguments are vexatious and impermissible attempts to relitigate matters already resolved by this Court

MSD's recycled arguments should be treated as a disguised motion for reconsideration, and the Court should reject them as improper. *See, e.g.*, *Carnegie Inst. of Washington v. Fenix Diamonds, LLC*, 544 F. Supp. 3d 440, 451 (S.D.N.Y. 2021) ("The Court rejects plaintiffs' disguised motion for reconsideration, which identifies no legal or factual basis for departing from the law of the case.") (Rakoff, J.). MSD's recycled arguments do not satisfy the strict standard for granting a motion to reconsider. *See Meehan v. Brookliv LLC*, 2022 WL 523545, at *1 (E.D.N.Y. Feb. 22, 2022) ("The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.") (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).[8]

---

[7] MSD claims Fox has sought double recovery by pursuing separate judgments against Grupo Lauman and Manuel Arroyo. ECF No. 191 ¶ 41 n.47. That is obviously wrong. "There may be several judgments, but only one satisfaction." *Jennings v. Dolan*, 29 F. 861, 862 (S.D.N.Y. 1887); *see also Lovejoy v. Murray*, 70 U.S. 1, 12 (1865) (multiple judgments permissible against litigants who are jointly and severally liable so long as only one satisfaction is made).

[8] "A motion for reconsideration should only be granted only when the moving party identifies 'an

MSD does not address the standard for reconsideration, the law-of-the-case doctrine, or offer any other reasons why its already-rejected arguments are being reasserted in good faith.

MSD's brief can only be considered vexatious, frivolous, and made in bad faith. The law provides protection for litigants like Plaintiffs, who are forced to endure the delay and costs resulting from such misconduct. *See Eisenberg v. Permanent Mission of Equatorial Guinea to United Nations*, 2022 WL 1546673, at *2 (S.D.N.Y. Apr. 5, 2022) ("District courts within the Second Circuit have imposed sanctions where a party persists in raising previously rejected claims or defenses") (collecting cases); *Hudson Motors P'ship v. Crest Leasing Enter.*, 845 F. Supp. 969, 978-79 (E.D.N.Y. 1994) ("Conduct which allows for the imposition of sanctions under [28 U.S.C. § 1927] pursuant to the discretion of the court include the following: resubmitting a motion that had previously been denied [and] bringing a motion based on 'facts' the opposite of which were previously found by the court . . . .") (citations omitted); 28 U.S.C. § 1927. Plaintiffs reserve the right to seek leave to file a motion for sanctions against MSD and its counsel for raising already-rejected arguments without identifying a good-faith basis to revisit the Court's prior rulings.

## III. CONCLUSION

MSD's opposition recycles virtually every argument it has already raised in this litigation to avoid contempt. The Court should not permit this rehash every time MSD engages in contumacious conduct. MSD's contempt is clear, egregious, and ongoing. The Court should hold MSD in further contempt.

---

intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Meehan*, 2022 WL 523545, at *2 (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)). Further, "in a motion for reconsideration, a party may not introduce new facts or raise new arguments that could have been previously presented to the court." *Id.* (quoting *Belfiore v. Procter & Gamble Co.*, 140 F. Supp. 3d 241, 244 (E.D.N.Y. 2015)).

Respectfully submitted,

Dated: Los Angeles, California
March 5, 2026

ELLIS GEORGE LLP

Eric M. George
Katherine A. Petti, *Pro Hac Vice*
Christopher T. Berg, *Pro Hac Vice*

2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697
egeorge@ellisgeorge.com
kpetti@ellisgeorge.com
cberg@ellisgeorge.com

Stephen P. Farrelly
Edward Lee
ELLIS GEORGE LLP
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629
sfarrelly@ellisgeorge.com
elee@ellisgeorge.com

*Attorneys for Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC*

**CERTIFICATION PURSUANT TO S.D.N.Y. LOCAL CIVIL RULE 7.1(c)**

I, Christopher T. Berg, an attorney duly admitted Pro Hac Vice to practice in the Southern District of New York hereby certify that this memorandum is no longer than 10-double spaced pages and the text and footnotes are in 12 point type, which complies with Rule 2(e) of this Court's Individual Rules of Practice.

Dated: March 5, 2026

Christopher T. Berg