**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FOX CORPORATION; FOX MEDIA LLC; and FOX SPORTS EN ESPAÑOL LLC, | Case No.: 1:25-cv-06703-JSR |
| Plaintiffs, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO IMPOSE CIVIL CONFINEMENT ON MANUEL ARROYO** |
| v. | |
| MEDIA DEPORTES MEXICO, S. de R.L. de C.V., | |
| Defendant. | |

3120484

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................................1

II.     BACKGROUND ............................................................................................................2

III.    LEGAL STANDARD ....................................................................................................4

IV.     ARGUMENT..................................................................................................................5

        A.      Arroyo's record of defiance shows that monetary sanctions are inadequate ...........6

                1.      Arroyo has failed to cause MDM to cease using Fox trademarks in
                        Mexico and the United States ...................................................................7

                2.      Arroyo has failed to cause MDM to withdraw from civil litigation
                        in Mexico involving Fox trademarks ..........................................................7

                3.      Arroyo has directed and enabled MDM's ongoing campaign to
                        harass, threaten, and injure the business partners of Fox and its
                        affiliates......................................................................................................7

                4.      Arroyo has dissipated his assets to avoid paying the Court's
                        sanction .....................................................................................................8

                5.      Arroyo has permitted MSD to dissipate its assets to avoid paying
                        the Court's sanction and in violation of the Court's Asset Freeze
                        Order .........................................................................................................9

        B.      Arroyo's conduct has harmed Fox and threatens to cause increasing harm ..........10

        C.      The severity of civil confinement is warranted in light of the record...................10

        D.      Civil confinement is likely to coerce Arroyo's compliance..................................13

        E.      There is no evidence that Arroyo lacks ability to pay the monetary
                sanction ...................................................................................................................14

V.      CONCLUSION..............................................................................................................15

CERTIFICATION PURSUANT TO S.D.N.Y. LOCAL CIVIL RULE 7.1(C).............................17

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Armstrong v. Guccione,*
  470 F.3d 89 (2d Cir. 2006)......................................................................4, 5, 11, 12

*Bank of Credit & Com. Int'l (Overseas) Ltd. v. Tamraz,*
  2006 WL 1643202 (S.D.N.Y. June 13, 2006) ...........................................................4

*Benthos Master Fund, Ltd. v. Etra,*
  2022 WL 17819592 (S.D.N.Y. Dec. 20, 2022) ..............................................5, 10, 11

*Fed. Home Loan Mortgage Corp. v. Berbod Realty Assocs., L.P.,*
  1994 WL 1060301 (S.D.N.Y. Aug. 16, 1994).................................................6, 7, 8, 9

*Huzhou Chuangtai Rongyuan Inv. Mgt. Partn. v. Qin,*
  2023 WL 11898045 (S.D.N.Y. Aug. 24, 2023).......................................................11

*Schwarz v. ThinkStrategy Capital Mgt. LLC,*
  2017 WL 5558682 (S.D.N.Y. May 9, 2017) ................................................5, 11, 12

*Waterkeeper All. Inc. v. Spirit of Utah Wilderness, Inc.,*
  2020 WL 377951 (S.D.N.Y. Jan. 22, 2020) ............................................4, 5, 11, 12

*Wilson v. U.S.,*
  221 U.S. 361 (1911)...............................................................................................6

**FEDERAL STATUTES**

18 U.S.C. § 401(3) ........................................................................................................4

**RULES**

Fed. R. Civ. P. 60.........................................................................................4, 13, 14

## I.    INTRODUCTION

Manuel Arroyo is watching this action—not obeying this Court, but observing it.  He has purposefully avoided appearing here, preferring to have arguments put forth on his and his companies' behalf through contemnor Mexico Sports Distribution, LLC ("MSD").  But he knows this action and the orders issued against him well—and has maneuvered to evade them at every turn.  Days ago, he personally intervened in the miscellaneous action Plaintiffs filed in the Southern District of Texas to register the Court's judgment.  There, he argues that this Court lacks jurisdiction and seeks to invalidate the contempt judgment while defending his hasty and improper post-contempt "gift" of his Texas home to his sister despite the monetary sanctions imposed against him.  Meanwhile, Arroyo has continued his campaign to disrupt Plaintiffs' business in Mexico, most recently with a new assault on the business partners of Plaintiffs and their affiliates.  Arroyo will continue to violate the Court's orders—despite tens of millions of dollars in accrued contempt sanctions—unless he faces a more coercive sanction.

Manuel Arroyo has demonstrated that financial sanctions are inadequate to coerce his compliance with the Court's orders.  Nearly seven months after the Court imposed monetary sanctions against Arroyo, Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports en Español (collectively, "Fox") move the Court to impose civil confinement on Arroyo until he purges his contempt.  Arroyo continues to willfully defy the Court's injunction and contempt orders, notwithstanding repeated court orders and the accrual of over $35 million in sanctions against him.  Since being sanctioned, Arroyo has caused Defendant Media Deportes Mexico ("MDM") to violate the injunction by permitting it to continue using Fox Sports Trademarks in Mexico and

1

U.S. Fox Sports marks in the U.S.,[1] as well as causing MDM to advance civil litigation related to Fox's trademarks in Mexico. Most recently, he has compounded his contempt of the Court's anti-suit injunction by causing MDM and MSD to request that the 42nd Superior Court of Mexico City ("42nd Court") impose fines on the business partners of Fox and its affiliates for "breaching" the 42nd Court's injunction against Fox using its own trademarks in Mexico. Arroyo's escalating defiance is inflicting severe harm on Fox. That injunction-violating conduct warrants severe sanction beyond the monetary sanctions that have not achieved his compliance. The Court should impose civil confinement until Arroyo purges his contempt.

## II.    BACKGROUND

On August 14, 2025, the Court enjoined MDM from using the Fox Sports Trademarks and from pursuing litigation in Mexico related to those marks. ECF No. 29. In response, on August 18, 2025, Arroyo, as president of MDM and CEO of Grupo Lauman, caused those entities to publish a press release that openly defied the Court's authority and jurisdiction over them. ECF No. 36-2. On August 22, 2025, Arroyo, as president of MDM, caused MDM to violate the Court's injunction by seeking an expanded injunction against Fox in the 42nd Court, which purported to enjoin Fox from using any mark in Mexico containing the word "Fox." ECF No. 42-1, Ex. A.

On August 29, 2025, the Court held Arroyo in contempt for violating the Court's injunction. ECF No. 45. The Court imposed a $200,000 daily fine on Arroyo to compel his compliance with the injunction. *Id.* Days later, on September 2, 2025, Arroyo gifted a multi-million dollar house in Texas to his sister. ECF No. 114-1. On September 9, 2025, the Court ordered that the contempt sanction be paid to Fox to compensate for the harm Arroyo's contempt was causing it. ECF No. 73.

---

[1] The Fox Sports Trademarks and U.S. Fox Sports marks are defined and enumerated in the Court's preliminary injunction and orders referenced therein. ECF No. 49.

Arroyo has accrued over $35 million in contempt sanctions. He has not paid a dollar. Instead, he has attempted to move assets he holds in the United States out of his control to avoid paying the contempt sanction. ECF No. 114-1. He has caused or permitted MSD—the U.S.-based joint venturer of Fox Sports Mexico for whom Arroyo serves as president, ECF No. 77-30 at 10— to violate the Court's asset freeze order, ECF No. 73 ("Asset Freeze Order"). *See* ECF No. 176. He has caused or permitted MDM to continue to use the Fox trademarks in Mexico and the United States. *See* Declaration of Christopher T. Berg dated March 12, 2026 ("Berg Decl.") ¶¶ 3–8, Exs. 1–6. And he has caused or permitted MDM to continue civil litigation against Fox in the 42nd Court in Mexico (and related appellate courts) regarding Fox's trademarks. ECF No. 172 at 23; ECF No. 170-1.

Arroyo recently escalated his efforts to harm Fox and disrupt its business in Mexico. On November 20, 2025, Arroyo, in his capacity as president of MDM and MSD, caused those entities to request that the 42nd Court issue an order threatening to impose a fine on Telefonica Cable S.A. de C.V. ("Megacable") and Total Play Telecomunicaciones S.A.P.I.D. ("Total Play") unless they ceased participating in the display of Fox trademarks in Mexico. Declaration of Jordi Oropeza Solórzano ("Oropeza Decl.") ¶¶ 3, 5, Exs. 1A, 3A. On December 4, 2025, the 42nd Court issued orders requiring Megacable and Total Play to comply with the 42nd Court's injunction within 72 hours or face monetary sanction. Oropeza Decl. ¶¶ 4, 6, Exs. 2A, 4A. On February 9, 2026, Arroyo caused MDM and MSD to accuse Total Play of breaching the 42nd Court's injunction and December 4, 2025 order, and to move the 42nd Court to sanction Total Play. Oropeza Decl. ¶ 7, Ex. 5A.[2]

---

[2] On March 3, 2026, the 42nd Court declined to impose a sanction on Total Play because it concluded that MDM and MSD failed to prove that Total Play did not comply with the injunction. Oropeza Decl. ¶ 8, Ex. 6. But the threat of sanction still looms.

3

Meanwhile, Arroyo has finally surfaced in the United States, revealing his forum-shopping strategy. On March 9, 2026, Arroyo appeared in the miscellaneous action in the Southern District of Texas that Fox opened to register the Court's judgment against Arroyo. He filed a Rule 60 motion to vacate the judgment on the grounds that the Court lacked personal jurisdiction to enter the judgment against him. *See Fox Corporation, et al. v. Manuel Arroyo*, Case No. 4:25-mc-02271, ("Registration Action") ECF No. 3 (S.D. Tex. Mar. 9, 2026). Arroyo's appearance in that action demonstrates his attempt to game the U.S. legal system: it shows that Arroyo is aware of the Court's contempt orders against him; it shows that Arroyo consciously disregarded the opportunities afforded to him to contest his sanction in the appropriate forum; and it shows that Arroyo is endeavoring to launch a collateral attack on the Court's judgment in the hopes of persuading a court less familiar with Arroyo's record of contempt to rule in his favor.

## III.    LEGAL STANDARD

The Court has "the inherent power to order coercive civil confinement," *Armstrong v. Guccione*, 470 F.3d 89, 102 (2d Cir. 2006), and the statutory power "to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority," 18 U.S.C. § 401(3). "While courts must judiciously exercise their authority in imposing the least restrictive and intrusive sanctions so as not to unnecessarily harm a contemnor, a court may nonetheless utilize all sanctions at its disposal which are reasonably likely to coerce the contemnor of not only the need for compliance but to achieve full compliance. In a civil contempt proceeding such sanctions may include a conditional jail term." *Waterkeeper All. Inc. v. Spirit of Utah Wilderness, Inc.*, No. 10-CV-1136 (NSR), 2020 WL 377951, at *4 (S.D.N.Y. Jan. 22, 2020) (citations omitted); *see also Bank of Credit & Com. Int'l (Overseas) Ltd. v. Tamraz*, No. 97-CV-4759 (SHS), 2006 WL 1643202, at *3 (S.D.N.Y. June 13, 2006) ("Arrest is an appropriate coercive sanction for civil contempt, so

4

long as its purpose is not punitive but is instead to compel the contemnor to perform the required act.").

Courts weigh the following factors when determining whether to impose civil confinement as a contempt sanction: (1) the record of diligence in attempting to comply with court orders, (2) the character and magnitude of the harm caused and threatened by the contemnor's noncompliance, (3) the severity of the sanction of civil confinement, (4) the probable effectiveness of incarceration, and (5) whether conditioning civil confinement would be equitable given any evidence of contemnor's inability to pay. *See Benthos Master Fund, Ltd. v. Etra*, 2022 WL 17819592, at \*17–18 (S.D.N.Y. Dec. 20, 2022).

Courts have imposed civil confinement in situations less egregious than present here—where the contemnor has ignored over $30 million in monetary sanctions and is pressing civil litigation in Mexico against Fox, its affiliates, and its business partners in violation of an anti-suit injunction. For example, civil confinement was imposed where a contemnor accrued six months of monetary sanctions totaling over $16.3 million, *id.*, at \*17–18; where a contemnor failed to pay approximately $10 million in judgments, *Schwarz v. ThinkStrategy Capital Mgt. LLC*, 2017 WL 5558682, at \*1 (S.D.N.Y. May 9, 2017); where a contemnor refused to turn over corporate records and $16 million in assets in his possession, *Armstrong*, 470 F.3d at 92; and where a contemnor refused to obey a court order to cease using infringing trademarks and after a $100 daily monetary sanction did not coerce compliance, *Waterkeeper All. Inc.*, 2020 WL 377951, at \*2, \*4. This case presents a stronger record of defiance than any of those cases. Civil confinement is warranted.

## IV.    ARGUMENT

Every relevant consideration weighs in favor of imposing civil confinement on Arroyo. His contempt is sustained, deliberate, and flagrant. The machinations he has pursued to evade

sanctions for himself and his companies are galling. And Arroyo's disobedience is not static—it is escalating. All of this conduct continues to inflict increasing harm on Fox.

### A.    Arroyo's record of defiance shows that monetary sanctions are inadequate

Since the issuance of the Court's injunction, Arroyo has openly defied the Court's orders through the conduct of his companies. "In the Second Circuit, it has long been established that that a judicial order obtaining 'a command to a company is in 'effect a command to those who are officially responsible for the conduct of its affairs.'" ECF No. 73 at 4 (citation omitted); s*ee also Fed. Home Loan Mortgage Corp. v. Berbod Realty Assocs., L.P.*, 1994 WL 1060301, at *7 (S.D.N.Y. Aug. 16, 1994) ("A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the [order] directed to the corporation,…fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt") (quoting *Wilson v. U.S.*, 221 U.S. 361, 376 (1911)), report and recommendation adopted, 1995 WL 7988 (S.D.N.Y. Jan. 10, 1995). As this Court has previously held, "Arroyo, as MDM's president, has 'prevent[ed] compliance or fail[ed] to take appropriate action within [his] power' and, thus, 'may be punished for contempt.'" ECF No. 73 at 4–5; *see also* Berg Decl. ¶ 15, Ex. 13 (8/29/2025 Contempt Hr'g) at 10:6–9, 13:13–24.

Not only did Arroyo fail to take appropriate action within his power as MDM's president to comply with the injunction, he authorized (either expressly or implicitly) the publication of a press release in El Financiero (the Mexican newspaper he owns) that openly rejected the Court's authority. ECF No.36-2; ECF No. 42-1, Ex. D; ECF No. 172 at 23–24. That press release set the stage for the following seven months of Arroyo's uninterrupted and escalating contempt.

1. **Arroyo has failed to cause MDM to cease using Fox trademarks in Mexico and the United States**

Arroyo has allowed MDM to use Fox's trademarks in Mexico and the United States in direct violation of the Court's injunction. *See Fed. Home Loan Mortgage Corp.*, 1994 WL 1060301, at *7; ECF No. 73 at 4–5. The same Fox Sports Mexico websites and social media accounts first identified in Fox's TRO application continue to prominently display Fox's trademarks. Berg Decl. ¶¶ 3–8, Exs. 1–6. Arroyo has permitted this violating conduct to continue unabated notwithstanding the over $35 million in sanctions Arroyo has accrued.

2. **Arroyo has failed to cause MDM to withdraw from civil litigation in Mexico involving Fox trademarks**

Arroyo has allowed MDM to continue to pursue civil litigation in Mexico involving Fox trademarks. *See Fed. Home Loan Mortgage Corp.*, 1994 WL 1060301, at *7; ECF No. 73 at 4–5. As recently as January 7, 2026, Arroyo, as MDM's president, has permitted MDM to violate the Court's anti-suit injunction by filing briefing seeking to maintain MDM's Mexican injunction against Fox. *See* ECF No. 170-1; ECF No. 172 at 23. Arroyo has permitted this violating conduct to continue unabated notwithstanding the over $35 million in sanctions Arroyo has accrued.

3. **Arroyo has directed and enabled MDM's ongoing campaign to harass, threaten, and injure the business partners of Fox and its affiliates**

In addition to maintaining litigation against Fox in Mexico in violation of the Court's injunction, Arroyo, as MDM and MSD's president, has used those entities to harass, threaten, and injure the business partners of Fox and its affiliates in Mexico. MDM and MSD's efforts to persuade the 42nd Court to impose sanctions on Megacable and Total Play for supposedly "breaching" the 42nd Court's injunction, *see* Oropeza Decl. ¶¶ 3, 5, 7, Exs. 1A, 3A, 5A, are in direct violation of the Court's injunction prohibiting MDM from "pursuing any legal or regulatory action relating to any trademark containing the word 'Fox' in Mexico, including seeking to enforce

7

the injunction issued on March 26, 2025 [by the 42nd Court] and the injunction dated August 27, 2025 [by the 42nd Court]," ECF No. 49, at 2.  Those efforts by MDM and MSD, which Arroyo has sanctioned and enabled by virtue of his position as president of both entities, *see Fed. Home Loan Mortgage Corp.*, 1994 WL 1060301, at *7; ECF No. 73 at 4–5, demonstrate that Arroyo is still actively engaged in a campaign to harm Fox's commercial interests in Mexico—despite nearly seven months of substantial monetary sanctions.  Unsatisfied with the direct harm he has been able to inflict on Fox, Arroyo is now wreaking havoc on Fox indirectly by threatening and harassing the business partners of Fox and its affiliates, causing serious reputational harm to Fox in the process.

The fact that Arroyo's litigation efforts in Mexico are escalating shows that the substantial monetary sanctions imposed on him are inadequate to coerce his compliance.

### 4.    Arroyo has dissipated his assets to avoid paying the Court's sanction

Arroyo's efforts to dissipate his assets demonstrate why the Court's substantial monetary sanction has proven insufficient to coerce Arroyo's compliance.  On September 2, 2025—four days after the Court held Arroyo in contempt—Arroyo deeded to his sister a property located at 3 Philbrook Way in Spring, Texas—appraised to be valued at $5.1 million—for the consideration of "love and affection."  ECF No. 114-1; Berg Decl. ¶ 9, Ex. 7.[3]  The transfer was obviously a fraudulent conveyance meant to obstruct Fox from satisfying Arroyo's contempt sanction.  A preliminary injunction has already issued voiding the transfer and placing the Philbrook Way property in trust for Fox's benefit.  *Fox Corporation, et al. v. Rodriguez*, Case No. 4:25-cv-04650

---

[3]  Arroyo also deeded another property in Texas, valued at approximately $1.5 million, to another one of his relatives on the same date as the Philbrook Way property.  Berg Decl. ¶¶ 14, 16, Exs. 12, 14.  Fox has not pursued execution on that property because county assessor records indicate it is designated as a homestead, a designation that helps shield the property from forced sale under Texas law.  Berg Decl. ¶ 14, Ex. 12.

("Fraudulent Transfer Action"), ECF No. 22 (S.D. Tex. Nov. 11, 2025).  Aside from the fictitious consideration enumerated on the deed, Arroyo's sister has testified that Arroyo's belongings remain in the house and that she does not know who pays for the utilities.  *See* Berg Decl. ¶ 10, Ex. 8.  Although this is a clear fraudulent conveyance case, Arroyo's transfer has kept him from feeling the bite of the Court's monetary sanction for at least several more months by forcing Fox to initiate litigation in the Southern District of Texas to claw back the transfer.  That litigation will take at least three more months to complete—no trial date has been scheduled and one is not likely to be calendared until June 2026, *see* Fraudulent Transfer Action, ECF No. 26, notwithstanding Fox's efforts to expedite execution of the judgment on the Philbrook Way property, *see* Fraudulent Transfer Action, ECF No. 37.

### 5.    Arroyo has permitted MSD to dissipate its assets to avoid paying the Court's sanction and in violation of the Court's Asset Freeze Order

Arroyo, as MSD's president, is responsible for MSD's failure to pay the contempt sanctions that the Court has imposed on it.  Not only has Arroyo not directed MSD to pay the contempt sanction (or contemnors MDM or Grupo Lauman Holding), he has overseen MSD as it has violated the Court's Asset Freeze Order by transferring very substantial sums out of MSD's bank account. ECF Nos. 178, 177, 177-1; *see also Fed. Home Loan Mortgage Corp.*, 1994 WL 1060301, at *7; ECF No. 73 at 4–5.  Arroyo's contumacious conduct is thwarting Fox's ability to collect its contempt fine from Arroyo's companies, not just from Arroyo himself.  These underhanded maneuvers, executed swiftly before the Court can evaluate the misconduct and impose an appropriate remedy, demonstrate that the Court's monetary sanction is inadequate to coerce Arroyo's compliance.

*        *        *

Arroyo has caused MDM and MSD to violate the Court's anti-suit injunction, to violate the Court's injunction against the use of Fox's trademarks, and to cause MSD to violate the Court's Asset Freeze Order, and he has acted to dissipate his own assets in the United States to avoid the Court's sanction. He has accrued over $35 million in unpaid contempt sanctions. He has been in continuous and escalating contempt for seven months. This record of noncompliance weighs heavily in favor of civil confinement.

**B.      Arroyo's conduct has harmed Fox and threatens to cause increasing harm**

As the Court has found, Arroyo's contumacious conduct is harming Fox at least $200,000 a day—and has inflicted over $35 million in harm to date. ECF Nos. 107, 197. The prospect of the 42nd Court's injunction (which the Court has forbidden MDM to pursue or enforce) threatens Fox's ability to do *any* business in Mexico, with potentially catastrophic financial repercussions, particularly as Arroyo has begun to train his sights on the business partners of Fox and its affiliates in Mexico. Arroyo's contempt has wreaked havoc on Fox's business and threatens to continue to do so. This weighs in favor of a civil confinement sanction. *See Benthos Master Fund, Ltd.*, 2022 WL 17819592, at *18 ("After weighing the character and magnitude of the harm caused and threatened by [defendant's] continued noncompliance [among other factors], the Court found that arrest was an appropriate coercive sanction in this case.").

**C.      The severity of civil confinement is warranted in light of the record**

As the above record reflects, Arroyo has an egregious record of contumacious noncompliance, escalation, and sanction evasion. Arroyo's efforts to evade sanctions enforcement by dissipating assets *and* his efforts to continue pursuing civil litigation against Fox in Mexico underscore the inadequacy of monetary sanctions. Because the Court and Fox currently lack the

means to coerce Arroyo's compliance through monetary sanction, the only avenue left for the Court is to impose civil confinement.

Courts have imposed civil confinement in far less egregious circumstances than those present here. *See Benthos Master Fund, Ltd.*, 2022 WL 17819592, at *17–18 (contemnor ordered to civil confinement after six months of monetary sanctions (totaling over $16 million) did not coerce compliance by contemnor to produce documents responsive to subpoenas); *see Huzhou Chuangtai Rongyuan Inv. Mgt. Partn. v. Qin*, 21-CV-9221 (KPF), 2023 WL 11898045, at *1 (S.D.N.Y. Aug. 24, 2023) (contemnor ordered to civil confinement one week after being ordered to disclose passwords after willfully refusing to comply with court's order); *Schwarz*, 2017 WL 5558682, at *1 (contemnor ordered to civil confinement after failing to pay approximately $10 million in judgments); *Armstrong*, 470 F.3d at 92 (contemnor ordered to civil confinement after refusing to turn over corporate records and $16 million in assets in his possession); *Waterkeeper All. Inc.*, 2020 WL 377951, at *2, *4 (contemnor ordered to civil confinement after refusing to obey court order to cease using infringing trademarks and after $100 daily financial sanction did not coerce compliance).

The conduct in the aforementioned cases pales in comparison to Arroyo's. In *Armstrong*, the district court entered a preliminary injunction against Armstrong on October 14, 1999, which required him to turn over all corporate records and assets of the corporate defendants in the litigation to a court-appointed receiver. *Armstrong*, 470 F.3d at 93–94. On December 15, 1999, the receiver moved to hold Armstrong in contempt for refusing to give up those records and assets in his possession. *Id.* at 94. The district court ordered Armstrong to produce the records and assets by January 14, 2000 and scheduled a hearing on the same date. *Id.*

11

At that hearing, evidence was presented showing that Armstrong did not produce the required materials and assets. *Id.* At the conclusion of the hearing, the district court held Armstrong in contempt and immediately directed the marshals to imprison him until he complied with the Court's order or demonstrated it would be impossible to do so. *Id.* Arroyo's facts are far more egregious. Here, the Court has ordered Arroyo to pay over $35 million in fines (far greater than Armstrong's $16 million) and Arroyo has been in contempt for nearly seven months (rather than Armstrong being remanded into custody immediately following being held in contempt).

In *Waterkeeper Alliance, Inc.*, the district court enjoined defendant and non-party Jeffrey Salt, defendant's principal, from using plaintiff's trademarks. *Waterkeeper Alliance, Inc.*, 2020 WL 377951, at *1. On October 2, 2017, the court found that defendant and Salt had violated the injunction and held both in contempt. *Id.* at *2. The court imposed an initial $500 fine and a $100 daily fine until the contempt was purged. *Id.* After Salt failed to purge his contempt following the court's imposition of monetary sanctions against him, the court ordered that Salt be committed to civil confinement. *Id.* at *4. Arroyo, like Salt, is the principal of contemnors MDM and MSD. Unlike Salt, the monetary sanction imposed on Arroyo ($200,000 per day) is far greater than the sanction imposed on Salt ($100 per day).

In *Schwartz*, the court entered judgments against defendant Kapur for approximately $10 million. *Schwarz*, 2017 WL 5558682, at *1. After failing to pay anything toward satisfying the judgment, the court held Kapur in contempt on July 1, 2015. *Id.* The court also ordered Kapur to surrender himself to the United States Marshals on July 7, 2015 if he had not purged his contempt by then. *Id.* Unlike Kapur's approximately $10 million in unpaid judgments, Arroyo has failed to pay over $35 million in unpaid judgments. And unlike the seven days Kapur was afforded before

12

being ordered to civil confinement, Arroyo has been afforded nearly seven months to purge his contempt.

The severity of civil confinement is warranted under the facts here and is amply supported by precedent.

### D.    Civil confinement is likely to coerce Arroyo's compliance

Civil confinement is likely to coerce Arroyo's compliance because Arroyo maintains a presence in the United States, which makes it likely that the U.S. Marshals will be able to seize him. Arroyo travels via private plane to the United States, including to private airfields near his Philbrook Way property outside Houston. Declaration of Naphtali Rivkin ("Rivkin Decl.") ¶¶ 5–10, Appx. B. Although he recently fraudulently transferred ownership of that house to his sister, Arroyo has not abandoned the property—all of his belongings remain at that home despite his purporting to transfer the property six months ago. Berg Decl. ¶ 10, Ex. 8. If Arroyo is in Mexico when the Court's civil confinement order issues, Arroyo will effectively be barred from entering the United States. This would deprive him of the enjoyment of his Philbrook Way house, the possessions he keeps there, and the benefits and opportunities, personal and professional, that visiting the United States has to offer. This will likely have a coercive effect on Arroyo beyond what difficult-to-enforce monetary sanctions have been capable of producing.

A civil confinement order will have an even greater coercive effect if Arroyo is actually imprisoned. Arroyo's recent actions have significantly increased the likelihood of that occurring. Arroyo has had myriad opportunities to contest his contempt, including to contest the Court's exercise of personal jurisdiction over him by entering a special appearance. He has refused to seize those opportunities in this action. However, days ago, on March 9, 2026, Arroyo appeared in the miscellaneous action in the Southern District of Texas that Fox opened to register the Court's

judgment against Arroyo.  Arroyo filed a Rule 60 motion to vacate the Court's judgment on the grounds that the Court lacked personal jurisdiction to enter the judgment against him.  *See* Registration Action, ECF No. 3.  Arroyo's appearance in the miscellaneous action suggests that Arroyo is neither ignorant of, nor indifferent to, the sting of the Court's sanction.  Rather, it shows that (1) he has received the contempt papers and related orders against him, (2) he has consciously disregarded the myriad efforts the Court has afforded him to contest contempt, including on jurisdictional grounds, and (3) he instead has attempted to game the system by strategically waiting to contest personal jurisdiction in another venue in the hopes of persuading a court less familiar with Arroyo's record of contempt to rule in his favor.

Arroyo's gambit has placed him in a dilemma of his own making.  By contesting the Court's personal jurisdiction in the miscellaneous action, Arroyo has opened the door for Fox to seek jurisdictional discovery concerning the basis for his motion to vacate.  For instance, in his Rule 60 papers Arroyo does not deny that he uses the email address that Fox used to serve him with Court filings.  He also does not deny that he actually received the papers that Fox served using Arroyo's email address.  He also claims to qualify for service under the Hague Convention.  These and many other points are fair game for jurisdictional discovery.  Accordingly, Fox will seek discovery on Arroyo in order to adequately prepare an opposition to his motion, including Arroyo's in-person deposition.  That discovery may have the incidental effect of requiring Arroyo to be present in the United States, which would afford the U.S. Marshals an opportunity to seize him.  That will likely have a strong coercive effect to bring him into compliance with the Court's orders.

Like the others, this factor weighs in favor of civil confinement.

**E.      There is no evidence that Arroyo lacks ability to pay the monetary sanction**

Arroyo would not suffer any injustice by being confined until he pays the Court's sanction because he is capable of paying, and he has had numerous opportunities to present evidence to the

14

contrary, including in response to this motion. Arroyo is reported to be a billionaire. *See, e.g.,* Berg. Decl. ¶¶ 11, 12, Exs. 9, 10. He is the president of MDM and MSD, the CEO of Grupo Lauman Holding, the CEO of Comtelsat (a telecommunications technology company), and the Director General of El Financiero (a newspaper in Mexico). *See* ECF No. 43-1, Ex. D; ECF No. 77-30 at 10. Last year, he was reported to have purchased a $25 million Italian yacht. Berg. Decl. ¶ 13, Ex. 11A at 2. He recently gifted (albeit as fraudulent transfers to avoid the Court's contempt sanction) a $5.1 million home and a $1.5 million home to his relatives. Berg. Decl. ¶¶ 10, 14, 16, Exs. 8, 12, 14. Public records in the United States reveal that Arroyo has three 2021 Chevrolet Tahoes, a 2022 Chevrolet Tahoe, a 2023 Land Rover, a 2021 Cadillac Escalade, and a 2022 Cadillac Escalade registered in his name at his 3 Philbrook Way property. Rivkin Decl. ¶¶ 3, 4, Appx. A. Given this evidence, and the complete lack of evidence suggesting an inability to pay, this factor weighs in favor of civil confinement, including requiring Arroyo to pay the Court's monetary sanction to purge his contempt.

## V.    CONCLUSION

All factors weigh strongly in favor of civil confinement. The Court should impose civil confinement on Arroyo until he (1) causes MDM to cease using Fox trademarks as set forth in the preliminary injunction, (2) causes MDM to cease pursuing litigation and regulatory action in Mexico related to those trademarks, and (3) pays the fine ordered by the Court.

Dated: March 13, 2026                       ELLIS GEORGE LLP

                                            By: _____
                                                    Christopher T. Berg

                                            Eric M. George
                                            Katherine A. Petti, *Pro Hac Vice*

15

Christopher T. Berg, *Pro Hac Vice*
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone:  (310) 274-7100
Facsimile:  (310) 275-5697
egeorge@ellisgeorge.com
kpetti@ellisgeorge.com
cberg@ellisgeorge.com

Stephen P. Farrelly
Edward Lee
ELLIS GEORGE LLP
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone:  (212) 413-2600
Facsimile:  (212) 413-2629
sfarrelly@ellisgeorge.com
elee@ellisgeorge.com

*Attorneys for Plaintiffs Fox Corporation, Fox Media
LLC, and Fox Sports en Español LLC*

16

## CERTIFICATION PURSUANT TO S.D.N.Y. LOCAL CIVIL RULE 7.1(c)

I, Christopher T. Berg, an attorney duly admitted Pro Hac Vice to practice in the Southern District of New York hereby certify that this memorandum is no longer than 25-double spaced pages and the text and footnotes are in 12 point type, which complies with Rule 2(e) of this Court's Individual Rules of Practice.

Dated: March 13, 2026

_____
Christopher T. Berg

17