UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------

FOX CORPORATION, et al.,

            Plaintiffs,

    -v-

MEDIA DEPORTES MEXICO, S. de R.L. de
C.V.,

            Defendant.

--------------------------------------

25-cv-6703 (JSR)

OPINION & ORDER

JED S. RAKOFF, U.S.D.J.:

    Before the Court are two motions. One is the motion of plaintiffs
Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC for an
order directing non-party Mexico Sports Distribution LLC ("MSD") to
show cause why further civil contempt sanctions should not be imposed
on it for dissipating its assets in violation of this Court's order.
ECF No. 173. The other is MSD's motion to vacate the Court's orders
holding it in civil contempt, imposing monetary sanctions, and
prohibiting it from dissipating its assets. ECF No. 192. Both motions
are fully briefed, and given their overlapping subject-matter, the
Court finds that it is appropriate to resolve them simultaneously. Cf.
ECF No. 193 at 1 (requesting simultaneous consideration of motions).

    For the following reasons, plaintiffs' motion is hereby granted,
and MSD's motion is hereby denied.

I.    Factual Background and Procedural History

    The Court assumes familiarity with the factual background and
procedural history of this action, which the Court has previously

1

rehearsed on multiple occasions. See Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V., 801 F. Supp. 3d 217, 220-25 (S.D.N.Y. 2025) ("Media Deportes Mexico I"); Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V., 808 F. Supp. 3d 642, 649-53 (S.D.N.Y. 2025) ("Media Deportes Mexico II"); Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V., --- F. Supp. 3d ---, 2026 WL 438878, at *1-4 (S.D.N.Y. Feb. 17, 2026) ("Media Deportes Mexico III").

In brief, and as relevant here, on August 29, 2025, the Court imposed civil contempt sanctions, consisting of a fine of $200,000 per day, jointly and severally on MSD, defendant Media Deportes Mexico, S. de R.L. de C.V. ("MDM"), non-party Grupo Lauman Holding, S. de R.L. de C.V. ("Grupo Lauman"), and non-party Manuel Arroyo. ECF Nos. 44-45. The Court imposed those sanctions on the motion of plaintiffs and in light of evidence presented by plaintiffs that the co-contemnors violated, in several respects, the temporary restraining order that the Court issued on August 14, 2025. See ECF Nos. 29, 42-43.[1]

The Court temporarily stayed the effectiveness of the civil contempt sanctions as to MSD, Grupo Lauman, and Arroyo after MSD appeared in this action and objected to the Court's exercise of personal jurisdiction over it. See ECF Nos. 47-48. On September 9, 2025, the Court lifted that stay as to Grupo Lauman and Arroyo. See

---

[1] On September 5, 2025, the Court entered a preliminary injunction granting substantially the same relief as the temporary restraining order. See ECF No. 49.

ECF No. 73 at 7. The effectiveness of the civil contempt sanctions remained stayed as to MSD, but the Court ordered the remaining co-contemnors to refrain from "transferring, conveying, or otherwise dissipating any assets, or causing anyone else from transferring, conveying, or otherwise dissipating any assets, located in the United States that they possess, own, or otherwise control, including assets in any bank account maintained in the United States." ECF No. 73 at 8. To compensate plaintiffs for the losses they sustained from the co-contemnors' conduct and to coerce compliance with the Court's orders, the Court also ordered that the contempt sanctions be payable to plaintiffs, rather than to the Clerk of Court. See id. at 6-7 (citing Perfect Fit Indus., Inc. v. Acme Quilting Co., 673 F.2d 53, 56 (2d Cir. 1982) ("[A] sanction imposed on a party held in civil contempt generally may serve either or both of two purposes: to coerce the contemnor into complying in the future with the court's order, or to compensate the complainant for losses resulting from the contemnor's past noncompliance.")).

On September 19, 2025, the Court denied MSD's initial motion to set aside the contempt order as against it but granted MSD the opportunity to raise further objections to that order. ECF No. 95. In doing so, the Court provided that "[t]he accrual of monetary sanctions for civil contempt as to MSD remains stayed" but imposed on MSD, practically verbatim, its previous command regarding the dissipation of assets: "[T]he Court hereby enjoins MSD, or any person or entity

3

acting in concert with it, from transferring, conveying, or otherwise dissipating any assets, as well as from causing anyone else to transfer, convey, or otherwise dissipate any assets, that MSD possesses, owns, or otherwise controls, including assets in any bank account, unless and until the Court orders otherwise." Id. at 2. An extensive Opinion and Order explaining the Court's reasoning issued on September 23, 2025. See generally Media Deportes Mexico I.

On October 30, 2025, the Court denied MSD's second motion to set aside the contempt order as against it. See generally Media Deportes Mexico II. At that time, the Court lifted the stay of the effectiveness of the civil contempt sanctions as to MSD. Id., 808 F. Supp. 3d at 668.[2] Finally, on February 17, 2026, the Court again reaffirmed its decisions to hold MSD in civil contempt and to impose civil contempt sanctions on MSD in an Opinion and Order examining at length the ramifications of the Second Circuit's then-recent decision in Smart Study Co., Ltd. v. Shenzhenshixindajixieyouxiangongsi, 164 F.4th 164 (2025). See generally Media Deportes Mexico III.

---

[2] MSD timely noticed its appeal of the Court's October 30, 2025, ruling. Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V., No. 25-2983 (2d Cir. Nov. 25, 2025). On March 6, 2026, MSD moved to dismiss its appeal, but the Second Circuit denied MSD's motion. Id., ECF Nos. 34, 36. It appears, however, that, MSD's appeal was nevertheless dismissed by operation of an order of the Second Circuit dated December 23, 2025, which set March 6, 2026, as the deadline for MSD to file its appellate brief and provided that MSD's appeal "is dismissed effective March 6, 2026, if the brief is not filed by that date." Id., ECF No. 33. MSD did not file its brief by the deadline. See id., ECF No. 37 (order dismissing appeal for failure to file).

## II.  Plaintiffs' Motion for an Order to Show Cause

On February 20, 2026, plaintiffs filed their motion for an order directing MSD to show cause why it should not be held in further contempt for dissipating its assets in violation of the Court's order. ECF No. 173. The motion was fully briefed on March 5, 2026. See ECF Nos. 191 (opposition brief), 195 (reply brief).

In this motion, plaintiffs contend that MSD has dissipated at least $1 million of its assets in violation of the Court's order. ECF No. 173 at 1-2.[3] According to plaintiffs, a document that MSD produced in discovery indicates that, on September 1, 2025, MSD held approximately $5.09 million in an account at Santander Bank but that, on September 30, 2025, that account held only approximately $1.044 million. ECF No. 173 at 3 (citing ECF No. 177-3). Another document produced by MSD indicates that, by November 2025, the balance of MSD's account at Santander Bank had declined still further, to less than $40,000. Id. (citing ECF No. 177-4). Based on these documents, plaintiffs argue that MSD must have violated the Court's order enjoining it from "transferring . . . assets in any bank account." Id.

MSD barely addresses the substance of plaintiffs' assertions. See

_____

[3] Plaintiffs also contend that MSD remains in violation of the Court's preliminary injunction -- by continuing to use the trademarks at issue in this action and by continuing to litigate against plaintiffs and their affiliates in the courts of Mexico -- as well as the Court's contempt order -- by refusing to pay the substantial monetary sanctions that have accrued against it and by refusing to purge its contempt. See ECF No. 173 at 1. Plaintiffs' instant motion, however, concerns only MSD's alleged dissipation of assets.

generally ECF No. 191. Instead, MSD's opposition brief offers a litany of reasons why, in MSD's view, the injunctive relief that the Court entered and the contempt sanctions that the Court imposed on MSD were inappropriate. Id. Because MSD relies on substantially the same reasons in advancing its own motion to vacate the Court's orders, the Court addresses those arguments in the following section of this Opinion and Order. As to the dissipation of its assets, MSD explains only that the transactions that caused the precipitous decline in its bank balance "were ordinary business activities, including pre-existing contractual obligations." Id. at 24.

To resolve plaintiffs' motion, the Court must determine whether plaintiffs' allegations and evidence concerning MSD's conduct satisfy the elements of civil contempt, namely, (1) that there is a clear and unambiguous court order; (2) that a contemnor has failed to comply with that order and proof of the noncompliance is clear and convincing; and (3) that the contemnor has not diligently sought to comply with the court order in an objectively reasonable manner. See, e.g., Al Hirschfeld Found. v. Margo Feiden Galleries Ltd., 438 F. Supp. 3d 203, 207 (S.D.N.Y. 2020); Media Deportes Mexico II, 808 F. Supp. 3d at 659-67. As to the first element, an order is "clear and unambiguous" where it "leaves no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden." Next Invs., LLC v. Bank of China,

12 F.4th 119, 131.[4]

All three elements of civil contempt are plainly present here. First, plaintiffs contend that the language of the Court's order is clear and unambiguous. Specifically, the Court plainly prohibited MSD from "transferring, conveying, or otherwise dissipating any assets . . . including in any bank account, unless and until the Court orders otherwise." ECF No. 173 at 4-5 (citing ECF No. 95 at 2). The Court agrees. The language of the Court's September 19, 2025, order was as unremarkable as it was unequivocal, and MSD does not attempt to argue otherwise.

Second, plaintiffs assert that the documents MSD has produced show that at least $1 million left MSD's account at Santander Bank between September 30, 2025, and some unspecified date in November 2025. That, plaintiffs say, is clear and convincing evidence that MSD violated the Court's order by "transferring, conveying, or otherwise dissipating" its assets. Id. at 5-6. Again, the Court agrees. The substantial decrease in MSD's bank balance during this period of time can only be explained by transactions prohibited by the Court's order, and MSD does not offer any other explanation.[5]

_____

[4] Except where otherwise indicated, all quotations in this Opinion and Order omit citations, internal quotation marks, footnotes, brackets, ellipses, and other non-substantive alterations in source material.

[5] As plaintiffs acknowledge, the documents produced by MSD are insufficient to show when the approximately $4 million that left MSD's bank account between September 1, 2025, and September 30, 2025, was dissipated. See ECF No. 173 at 6. Because those funds could have left

Third, plaintiffs assert that MSD's conduct cannot reasonably be explained as an attempt to diligently comply with the Court's order. Id. at 6-7. Even were the Court to credit MSD's explanation that it engaged in transactions representing "ordinary business activities" and "pre-existing contractual obligations," ECF No. 191 at 24, that does not mean that those transactions were permissible. The Court's order provided that MSD was prohibited from engaging in transfers, conveyances, or other dissipations of its assets "unless and until the Court orders otherwise." ECF No. 95 at 2. MSD did not apply to the Court for permission to undertake any transactions, and neither the law governing asset-freeze orders generally nor the Court's order here contains an exception for ordinary business activities or pre-existing contractual obligations. See, e.g., Gilead Scis., Inc. v. Safe Chain Sols., LLC, 753 F. Supp. 3d 173, 187-88 (E.D.N.Y. 2024); SEC v. Xia, No. 21 Civ. 5350, 2022 WL 17539124, at *29 (E.D.N.Y. Dec. 8, 2022) (rejecting argument that defendants' "legitimate business expenses have any bearing on the scope of the asset freeze").

Accordingly, the Court concludes that plaintiffs are entitled to an order directing MSD to show cause why further civil contempt sanctions should not be imposed on it for dissipating its assets. The Court construes MSD's motion to vacate the Court's contempt orders,

---

MSD's bank account prior to the entry of the Court's asset-freeze order, the Court relies for its finding that MSD violated that order only on the transfers or transactions that occurred between September 30, 2025, and November 2025.

which it discusses at length in the next section of this Opinion and Order, as MSD's attempt to show such cause. And because that attempt is unavailing, for the reasons set forth below, the Court hereby holds MSD in further contempt and directs plaintiffs and MSD to provide the Court with briefing as to what further civil contempt sanctions it should impose on MSD.

III. MSD's Motion to Vacate the Court's Orders

On March 4, 2026, MSD filed its motion to vacate various orders that the Court has entered against it, including the Court's contempt order of August 29, 2025; the Court's order of September 19, 2025, directing MSD not to transfer, convey, or otherwise dissipate its assets; and the Court's orders of September 19, 2025, and October 30, 2025, denying MSD's motions to set aside the contempt order and the civil contempt sanctions as against it. ECF Nos. 192-93. MSD's present motion was fully briefed on March 31, 2026, after the Court granted each side leave to file a short surreply. See ECF Nos. 207 (opposition brief), 210 (reply), 212 (plaintiffs' surreply), 213 (MSD's surreply).[6]

In its motion, MSD sets forth numerous reasons why the Court should vacate its prior orders. See generally ECF No. 193. MSD's motion

---

[6] Plaintiffs' surreply argues that the Court should disregard certain arguments of MSD's that plaintiffs assert were raised for the first time in MSD's reply brief. ECF No. 212 at 1. MSD responds that each of the supposedly new arguments was responsive to points raised in plaintiffs' opposition brief. ECF No. 213 at 1. The Court generally agrees with MSD that the challenged arguments are properly before the Court. However, as explained herein, the Court concludes that all such arguments are unavailing.

9

invokes Federal Rule of Civil Procedure 60(b), which provides six grounds on which a party may seek relief from a judgment or order. Across its moving and reply papers, MSD invokes five of those grounds: where there has been "mistake, inadvertence, surprise, or excusable neglect"; where there has been "misrepresentation . . . by an opposing party"; where "the judgment is void"; where applying the judgment "prospectively is no longer equitable"; and where there is "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (3)-(6).[7]

A.   MSD's Recycled Arguments

The bulk of MSD's arguments have already been considered and rejected by the Court. It is well established that "Rule 60(b) is not a substitute for appeal" and may not be used to relitigate arguments already made and lost. E.g., Competex, S.A. v. Labow, 783 F.2d 333, 335 (2d Cir. 1986).[8] Moreover, the Court's prior rulings on many of the issues that MSD's motion attempts to resurrect are now the law of the case, meaning that they "should generally be adhered to" by the Court "unless cogent and compelling reasons militate otherwise." E.g.,

---

[7] A motion under Rule 60(b) "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). Because the Court concludes, for the reasons below, that MSD's motion lacks merit, it need not (and does not) reach plaintiffs' independent arguments that substantial portions of MSD's arguments are untimely. See ECF No. 207 at 20-22.

[8] This doctrine has particular force where, as here, MSD timely noticed, but chose not to pursue, an appeal of many of the issues it now presents for reconsideration under Rule 60(b). See supra n.2; Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V., No. 25-2983 (2d Cir.).

Johnson v. Holder, 564 F.3d 95, 99 (2d Cir. 2009).[9]

Accordingly, the Court addresses MSD's recycled arguments only briefly, and the Court strictly admonishes MSD to refrain from further raising issues that the Court has already resolved.

First, MSD argues that the forum-selection clause in one of the underlying assignment agreements does not apply to MDM because MDM purportedly agreed to resolve disputes arising from that agreement via arbitration in London. See ECF No. 193 at 12-13, 18-19; see also ECF No. 210 at 5-6. The Court has previously held, however, that "the parties' dispute about the nature of MDM's license for the Fox Sports Trademarks" does not arise under the agreement containing the arbitration clause but, rather, under the separate Trademark License Agreement. See Media Deportes Mexico II, 808 F. Supp. 3d at 664 n.16. The Court sees no reason to depart from its prior analysis.

Second, MSD contends that the Court lacks personal jurisdiction over MDM and that, accordingly, the Court was without power to issue temporary injunctive relief and contempt sanctions in this case. See

---

[9] MSD attempts to avoid the law-of-the-case doctrine by arguing that (1) rulings on preliminary injunctive relief do not constitute the law of the case; (2) the law-of-the-case doctrine is in any event "discretionary"; and (3) MSD is represented by different counsel on this motion than on its previous motions. See ECF No. 210 at 8 n.37. The Court finds none of these arguments persuasive because the bulk of the rulings that MSD is challenging concern the imposition of civil contempt sanctions, not the grant of preliminary injunctive relief, because MSD has failed to offer any colorable reason the Court should exercise its discretion to depart from the law of the case, and because changing counsel is not a basis for a party to seek reconsideration.

ECF No. 193 at 14-15, 19-20; ECF No. 210 at 8. This, of course, is an argument that MSD has raised many times. On September 23, 2025, the Court issued an extensive Opinion and Order denying MSD's motion to set aside the contempt order and civil contempt sanctions as against it for lack of personal jurisdiction. See Media Deportes Mexico I, 801 F. Supp. 3d 217. Then, in another lengthy Opinion and Order dated October 30, 2025, the Court reaffirmed that conclusion after it held a further evidentiary hearing and received further written submissions from MSD's counsel. See Media Deportes Mexico II, 808 F. Supp. 3d 642. On February 17, 2026, the Court again concluded that it had jurisdiction to issue temporary injunctive relief and civil contempt sanctions in this matter, notwithstanding the Second Circuit's intervening decision in Smart Study. See Media Deportes Mexico III, 2026 WL 438878. MSD's instant motion retreads substantially the same ground as its prior submissions, and the Court once again reaffirms its prior conclusions.[10]

Third, MSD argues that it "is not, and has never been" in contempt

_____

[10] Moreover, to the extent that MSD relies on Fed. R. Civ. P. 60(b)(4), which permits relief from court orders that are void, MSD has failed to meet the high standard for such relief. "In the context of a Rule 60(b)(4) motion, a judgment may be declared void for want of jurisdiction only when the court plainly usurped jurisdiction, or put somewhat differently, when there is a total want of jurisdiction and no arguable basis on which it could have rested a finding that it had jurisdiction." Vega v. Trinity Realty Corp., No. 14 Civ. 7417, 2021 WL 738693, at *3 (S.D.N.Y. Feb. 24, 2021). As recounted above, the Court has issued three extensive Opinions and Orders examining and rejecting in detail MSD's jurisdictional arguments.

of the temporary restraining order and preliminary injunction that the Court has entered in this matter. See ECF No. 193 at 22-24. This is because, MSD argues, (1) it is pursuing its independent interests, rather than those of MDM, in litigation before the courts of Mexico, and (2) it has not used the Fox Sports Trademarks. Id.; see also ECF No. 210 at 1-2. The Court has squarely rejected these arguments as well. In its September 23, 2025, Opinion and Order, the Court held that "there is no evidence . . . that MSD's interests are meaningfully independent of those of MDM." Media Deportes Mexico I, 801 F. Supp. 3d at 226. At that time, the Court also held that MDM and MSD are joint venturers in the business operating as "Fox Sports Mexico" and that, as joint venturers, each is the principal and each is the agent of the other. Id. The Court reaffirmed those conclusions in its Opinion and Order of October 30, 2025. Media Deportes Mexico II, 808 F. Supp. 3d at 665-66. Similarly, the Court has twice before rejected MSD's argument that it is not involved in the allegedly improper use of the Fox Sports Trademarks. Specifically, the Court found that MSD has engaged in "active concert or participation" with MDM as to the use of the Fox Sports Trademarks. See Media Deportes Mexico I, 801 F. Supp. 3d at 226; Media Deportes Mexico II, 808 F. Supp. 3d at 666.[11]

---

[11] MSD repeats several of these arguments in its surreply, where it contends that MDM and MSD are not legally identified, that there is not "any evidence" of a joint venture between them, and that there is a contradiction between the Court's conclusions that MSD has engaged in "active concert or participation" with MDM and that MSD is a "non-operational entity." ECF No. 213 at 1-2. The law of the case again

Fourth, MSD argues that the Court's order prohibiting it from dissipating its assets is improper because "an asset freeze can only lie against a claim in equity." ECF No. 193 at 3-4, 15-16, 20; see also ECF No. 210 at 6-7. But, as the Court has previously explained, it entered the asset-freeze order "only after the Court had held MSD in contempt (and, for good measure, only after MSD had accepted service of the Contempt Order)." Media Deportes Mexico II, 808 F. Supp. 3d at 668. The Court reiterates that its authority to prohibit MSD from dissipating its assets derives from the Court's "broad discretion" in exercising its "equitable jurisdiction to bring about compliance with contempt orders." Id.[12]

---

precludes these arguments. See Media Deportes Mexico I, 801 F. Supp. 3d at 227 (holding that "MDM and MSD are substantially intertwined to the point of being legally identifiable" and citing recent cases on the doctrine of legal identification); id. at 226-27 (holding that "MDM and MSD are joint venturers in the business known as Fox Sports Mexico"); Media Deportes Mexico II, 808 F. Supp. 3d at 666 (holding that "MSD's role in Fox Sports Mexico," defined as the "non-operational" role of holding certain contracts that are necessary for the operation of the joint venture, "is a clear form of active participation in the use of the Fox Sports Trademarks"). To the extent that MSD's surreply contends that these holdings are belied by MSD's new assertion that Arroyo has not been the president, an officer, or a director of MDM at any time relevant to this litigation, the Court notes that MSD relies for that assertion solely on unauthenticated documents that are presently under challenge in the Southern District of Texas. See Fox Corp. v. Arroyo, No. 25 Misc. 2271 (S.D. Tex.), ECF Nos. 9-12. A court in that District has authorized plaintiffs to seek jurisdictional discovery into such matters as the nature of Arroyo's roles at MDM, MSD, and Grupo Lauman and the relationships among these entities. See ECF No. 5 at 10-11, ECF No. 13. No authenticated evidence supporting MSD's assertion about Arroyo is presently before this Court.

[12] The same is true of the civil contempt sanctions that the Court imposed on MSD and its co-contemnors, including the Court's decisions to impose such sanctions jointly and severally and to make them payable

14

B.    MSD's New Arguments

MSD's motion presents a handful of new arguments, all of them unavailing. Chiefly, MSD contends, under Fed. R. Civ. P. 60(b)(3), that plaintiffs made certain misrepresentations to the Court in connection with their requests for injunctive relief and contempt orders. See ECF No. 193 at 1-2, 20-22; ECF No. 210 at 8-10.[13]

_____

to plaintiffs rather than the Clerk of Court. See ECF No. 73. To be clear, the Court imposed the sanctions not because plaintiffs had pled a "claim for damages" against MSD but, rather, because the Court determined -- and later reaffirmed -- both that the co-contemnors' violations of the Court's orders were imposing a financial burden on plaintiffs and that plaintiffs would be better situated than the Clerk of Court to enforce the sanctions. Id. at 7; see also Media Deportes Mexico II, 808 F. Supp. at 667-68. As noted above, a civil contempt sanction "may serve either or both of two purposes," coercion of a contemnor and compensation for a complainant. See Perfect Fit. Indus., 673 F.2d at 56 (emphasis added). In its surreply, MSD contends that the Court's decisions were improper because (1) coercive sanctions must be paid to the Court, (2) plaintiffs sought compensatory rather than coercive sanctions, (3) plaintiffs have purportedly conceded that the amount of the sanctions is not based on their underlying claims against MDM, and (4) plaintiffs have identified no "actual loss" that is traceable to MSD. ECF No. 213 at 3. MSD's authorities fail to support any of these propositions. General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986), which is, in any case, not binding on this Court, commented only in a parenthetical that the Supreme Court had, in one case, "impl[ied]" that a "coercive fine is not payable to [a] complainant." Plaintiffs have consistently sought a "contempt order [that] is both coercive and compensatory." E.g., ECF No. 66 at 8. MSD cites only its own papers for plaintiffs' supposed concession regarding the amount of the sanctions, see ECF No. 213 at 3 n.14, and, in any case, plaintiffs long ago proffered a sworn declaration estimating the losses they have suffered because of the conduct of MDM and its co-contemnors, see ECF No. 72.

[13] On reply, MSD also cites Rule 60(b)(1), which permits relief from a judgment or order in case of "mistake, inadvertence, surprise, or excusable neglect." See ECF No. 210 at 8-10. However, MSD's arguments under this heading do not refer to any particular alleged mistake, inadvertence, surprise, or neglect, so there is no basis on which the Court could grant relief under Rule 60(b)(1).

"To prevail on a motion for reconsideration under Rule 60(b)(3), [MSD] must show (1) by clear and convincing evidence that [plaintiffs] engaged in fraud, misrepresentation, or misconduct before this Court and (2) that the fraud, misrepresentation, or misconduct substantially interfered with [MSD's] ability to present [its] case." Res. Grp. Int'l Ltd. v. Chishti, 794 F. Supp. 3d 234, 238 (S.D.N.Y. 2025). And a motion under Rule 60(b)(3) "cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits." Fleming v. N.Y. Univ., 865 F.2d 478, 484 (2d Cir. 1989).

No such evidence exists here. MSD asserts that plaintiffs made three misrepresentations to the Court. The first of those alleged misrepresentations is that plaintiffs purportedly "misrepresented to the Court that there was privity of contract between Plaintiffs and Defendant, and that Defendant was bound by a forum selection clause that required litigation in this Court." ECF No. 193 at 1, 8-9. The content of this supposed misrepresentation is a set of colorable legal arguments that are at the heart of plaintiffs' complaint. See generally ECF No. 1. In granting preliminary injunctive relief and enforcing that relief through its civil contempt powers, the Court has indicated on several occasions why, in its view, plaintiffs are likely to succeed on the merits of their claims against MDM. See ECF No. 29 at 1-7; Media Deportes Mexico I, 801 F. Supp. at 223-25. Even though MDM has entirely absented itself from these proceedings, MSD (which, to its

credit, has appeared) has had ample opportunities to be heard as to the arguments it now characterizes as misrepresentations. See, e.g., ECF No. 110 at 14-18 (discussing forum selection clause at length). Accordingly, the Court cannot conclude either that plaintiffs' arguments constituted material misrepresentations or that any such misrepresentations, had they been made, substantially interfered with MSD's ability to advance its arguments.

The same is true of the second alleged misrepresentation, which, according to MSD, is that plaintiffs "misstated the scope (and breadth) of their trademark claims" and that, as a result, the preliminary injunctive relief that the Court issued exceeded the scope of those claims. ECF No. 193 at 2, 15; see also id. at 9-10 & n.21. Because MSD cites only the complaint and the Court's orders in connection with this alleged misrepresentation, the Court is perplexed as to what statement by plaintiffs MSD regards as erroneous. Assuming that the alleged misrepresentation is somehow related to plaintiffs' request that the Court issue injunctive relief prohibiting MDM and those acting in concert with it from continuing to litigate before the courts of Mexico, the record is clear that the Court entered injunctive relief based on plaintiffs' claim under the Lanham Act as well as plaintiffs' claims that MDM breached the underlying license agreement, so the injunctive relief did not exceed the scope of plaintiffs' claims. See ECF No. 10 at 14-15 & n.4, 19-27, 31; ECF No. 29 at 7. Hence, the Court discerns no misrepresentation, much less one that has interfered

17

with MSD's ability to make its case.

The third alleged misrepresentation is that, according to MSD, plaintiffs "misinformed the Court when they failed to acknowledge" MSD's "separate and independent broadcasting rights" that are the subject of ongoing litigation in Mexico. ECF No. 193 at 2-3. Again, this supposed misrepresentation appears to concern plaintiffs' legal arguments. But, as discussed above, MSD has repeatedly attempted to persuade the Court that it has an independent interest in the broadcasting rights at issue in the Mexican litigation, and the Court has repeatedly held otherwise. E.g., Media Deportes Mexico I, 801 F. Supp. 3d at 226-27; Media Deportes Mexico II, 808 F. Supp. 3d at 666.[14] Thus, the Court concludes once more that there is no evidence to support the view that plaintiffs made material misrepresentations to the Court or that any such misrepresentations prejudiced MSD.

Separate from its arguments regarding plaintiffs' alleged misrepresentations, MSD offers two further sets of contentions. On the

---

[14] MSD newly contends that litigation filed by different Fox Corporation affiliates against MDM, MSD, and other defendants in the Central District of California somehow proves that MSD is an independent owner of broadcasting rights. See ECF No. 193 at 2-3 & n.4. But MSD offers little argument in support of this contention, and the Court's review of the complaint in Fox Cable Network Services, LLC v. Grupo Lauman Holding, S. de R.L. de C.V., No. 25 Civ. 2444 (C.D. Cal.) indicates both that that lawsuit concerns different intellectual property rights than those at issue in the instant case and that the plaintiffs in that lawsuit, like plaintiffs here, have asserted that MSD, MDM, and other entities ultimately controlled by Grupo Lauman "are alter egos of one another" because they have "a unity of interest and ownership to such an extent that any individuality or separateness between Defendants does not exist." Id., ECF No. 1 ¶ 20.

one hand, MSD argues that plaintiffs have acted improperly in seeking sanctions against MSD and its co-contemnors because, among other things, plaintiffs "have sought contempt orders against Non-Parties against whom they have no cause of action"; have "sought a 'joint and several' 'compensatory sanction'" against the co-contemnors in this case; and have requested that the Court reduce to written judgments the civil contempt sanctions that have accrued against two co-contemnors. See ECF No. 193 at 10 & nn.22-23, 20-21. On the other hand, MSD argues, primarily in its reply and surreply, that certain indemnification provisions in the Trademark License Agreement belie plaintiffs' assertions of irreparable harm because plaintiffs purportedly have "a contractual right to full satisfaction" of their alleged losses from Twenty-First Century Fox, Inc. ("TFCF") and/or The Walt Disney Company ("Disney"). See ECF No. 210 at 4-6; ECF No. 213 at 3-5. According to MSD, these indemnification provisions continue to bind TFCF and Disney because there was no novation of TFCF's and/or Disney's obligations. ECF No. 213 at 3-5.

Although MSD's moving papers are not models of clarity in this respect, its reply brief suggests that MSD is advancing these arguments under Fed. R. Civ. P. 60(b)(5), on the basis that applying a judgment "prospectively is no longer equitable," as well as under Fed. R. Civ. P. 60(b)(6), on the basis that plaintiffs' allegedly inequitable conduct or the purported availability of indemnification "justifies relief" apart from Rule 60(b)'s enumerated grounds. See ECF No. 210

19

at 10.

MSD has not, however, carried its heavy burden to claim relief under either provision.[15] Under Rule 60(b)(5), "a movant must show, first, that the challenged order is prospective in nature, and second, that it would be inequitable to permit the order to remain in place." SEC v. Bronson, 602 F. Supp. 3d 599, 615 (S.D.N.Y. 2022). The Supreme Court has explained that Rule 60(b)(5) "may not be used to challenge the legal conclusions on which a prior judgment or order rests" but may be invoked "if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." Horne v. Flores, 557 U.S. 433, 447 (2009). Here, the orders

_____

[15] To the extent that MSD's reply and surreply argue that plaintiffs have a contractual right to seek relief for their alleged losses from TFCF and/or Disney and that, therefore, plaintiffs are not suffering irreparable harm, that argument misses the mark. First, the indemnification provisions to which MSD points do not provide plaintiffs an avenue to obtain the injunctive relief that is at the heart of their complaint (and that has been the subject of the temporary injunctive orders the Court has entered to date). That is, indemnification from TFCF and/or Disney is hardly the same as injunctive relief prohibiting MDM and those acting in concert with it from using the Fox Sports Trademarks, interfering with plaintiffs' business relationships, and continuing to engage in litigation in Mexico. See ECF No. 1 at 37; ECF No. 49 at 2-3. As plaintiffs point out, "[n]o amount of indemnification would remedy the ongoing unauthorized use of those marks or Defendant's attempt to litigate in an unauthorized forum." ECF No. 212 at 2. Second, that TFCF and/or Disney retain obligations under the Trademark License Agreement is of no moment to the claim that MDM voluntarily took on -- and has allegedly breached -- certain obligations under that agreement. See id. at 3. Finally, to the extent that MSD disputes "whether [MDM] is bound by" the Trademark License Agreement's forum-selection clause, that is the fundamental question presented by Count One of plaintiffs' complaint, as to which the Court has already held plaintiffs are likely to succeed. See ECF No. 29 at 1-7. As explained below, none of these arguments provides a basis for relief under Rules 60(b)(5) or 60(b)(6).

20

that MSD is challenging are partially prospective because they impose ongoing obligations on MSD. But MSD points to no change in relevant facts or legal standards that somehow renders the continued enforcement of the Court's orders inequitable. Rather, MSD only challenges the legal conclusions underpinning those orders, which is plainly impermissible under Rule 60(b)(5). See ECF No. 207 at 14-15.

MSD fares no better under Rule 60(b)(6) because relief under that provision "is available only when Rules 60(b)(1) through 60(b)(5) are inapplicable." See BLOM Bank SAL v. Honickman, 605 U.S. 204, 211 (2025). MSD has invoked four of those other five provisions, so MSD can hardly be heard to argue that they are inapplicable. See ECF No. 210 at 8-10. Moreover, even were relief under Rule 60(b)(6) available to MSD, that provision is reserved for "extraordinary circumstances." BLOM Bank SAL, 605 U.S. at 211-13 (collecting cases and holding that "very strict interpretation of Rule 60(b) is essential"). For instance, this Court recently granted a motion under Rule 60(b)(6) where plaintiffs sought to vacate a nine-figure judgment in their favor because factual circumstances outside plaintiffs' control rendered the judgment "practically worthless despite their extensive efforts to enforce prior and related judgments." Pharo Gaia Fund, Ltd. v. Petróleos de Venezuela, S.A., No. 23 Civ. 10071, 2025 WL 1380685, at *3 (S.D.N.Y. May 12, 2025). Nothing of the sort has occurred here. To the contrary, MSD has had numerous opportunities to contest the Court's decisions, and it has only been MSD's failure to comply with the

21

Court's orders over a period of more than six months that has resulted in the accrual of substantial sanctions against it.[16]

IV.  Conclusion

For the foregoing reasons, the Court hereby grants plaintiffs' motion, holds MSD in further civil contempt, and denies MSD's motion. Plaintiffs and MSD are hereby directed to submit, no later than one week from the date of this Opinion and Order, simultaneous letter-briefs of no more than five single-spaced pages regarding what further civil contempt sanctions the Court should impose on MSD.

The Clerk of Court is respectfully directed to terminate the motions at docket numbers 173 and 192.

SO ORDERED.

New York, New York
April ⎽⎽ , 2026

⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽
JED S. RAKOFF, U.S.D.J.

_____

[16] In particular, the Court notes that, in order to afford MSD the opportunity to present its arguments, the Court stayed the effectiveness of its contempt order as against MSD from August 29, 2025, through October 30, 2025. See ECF Nos. 48 (initial stay), 73 (maintenance of stay), 95 (further maintenance of stay), 137 (termination of stay). During those two months, the Court received three rounds of briefing and conducted three days of evidentiary hearings. See Media Deportes Mexico II, 808 F. Supp. 3d at 668.