**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

FOX CORPORATION; FOX MEDIA LLC; and FOX SPORTS EN ESPAÑOL LLC,

Plaintiffs,

v.

MEDIA DEPORTES MEXICO, S. de R.L. de C.V.,

Defendant.

REDACTED PUBLICLY-FILED VERSION

Case No.: 1:25-cv-06703-JSR

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONTEMPT AGAINST MEXICO SPORTS DISTRIBUTION LLC AND MANUEL ARROYO**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

A. The Preliminary Injunction and Asset Freeze Order ..... 2

B. MSD Ignores a Court Order Compelling Its Compliance with an Information Subpoena. ..... 3

C. Arroyo Ignores a Court Order Compelling His Compliance with an Information Subpoena. ..... 4

ARGUMENT ..... 6

A. MSD and Arroyo Are in Contempt of the Court's Orders Compelling Compliance with the May 7 and June 30 Subpoenas ..... 6

B. An Adverse Inference Is the Appropriate Sanction Here ..... 7

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*,
2024 WL 1555231 (S.D.N.Y. Apr. 10, 2024)....5

*EM Ltd. v. Republic of Argentina*,
695 F.3d 201 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014) ....5

*First City, Tex. Houstom N.A. v. Rafidain Bank*,
281 F.3d 48 (2d Cir. 2002)....5

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
2017 WL 3671036 (S.D.N.Y. July 18, 2017) ....7, 8

*LiButti v. United States*,
107 F.3d 110 (2d Cir. 1997)....8

*Linde v. Arab Bank, PLC*,
269 F.R.D. 186 (E.D.N.Y. 2010) ....8

*Lisogor v. Nature's Delight, Inc.*,
189 A.D.3d 1386 (2d Dep't 2020) ....5

*New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*,
2024 WL 3549092 (E.D. Ky. July 26, 2024)....8

*Next Invs., LLC v. Bank of China*,
12 F.4th 119 (2d Cir. 2021) ....6

*Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.*,
673 F.2d 53 (2d Cir. 1982)....7, 11

*Willingham v. Cnty. of Albany*,
593 F. Supp. 2d 446 (N.D.N.Y. 2006) ....8

## RULES

Fed. R. Civ. P. 37(b)(2)(A)(i) ....7

Fed. R. Civ. P. 45(g) ....6

Fed. R. Civ. P. 69(a)(2)....5

**OTHER AUTHORITIES**

13 James Wm. Moore et al., Moore's Federal Practice-Civil § 69.04 (2008).................................5

## INTRODUCTION

For months, Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC have attempted to conduct discovery to determine the extent to which Manuel Arroyo participated in and directed the transfer of Mexico Sports Distribution LLC's ("MSD") assets after the Court's contempt and asset freeze orders. But despite orders compelling their compliance with those efforts, MSD and Arroyo have stonewalled this discovery. The Court should impose a sanction on them that prevents MSD and Arroyo from benefiting from their stonewalling: an adverse inference finding that, had the subpoenaed information been produced, it would have shown that Arroyo was directing and participating in MSD's asset transfers after the asset freeze order against MSD was in place.

On May 7, 2026, Plaintiffs served a Second Information Subpoena on MSD via service on Robert Seiden, the Court-appointed receiver over MSD (the "Receiver"), regarding Arroyo's participation in the transfer of MSD's assets. MSD personnel refused to cooperate with the Receiver to provide responsive information. Plaintiffs then sought and received a Court order compelling MSD personnel to provide the Receiver with such information. MSD personnel ignored that order. On June 30, 2026, Plaintiffs served an Information Subpoena on Manuel Arroyo seeking the same information, as well as information about the nature and location of his personal assets. Arroyo ignored that subpoena. Plaintiffs then sought and received an order compelling Arroyo to provide such information. Arroyo ignored that order.

MSD and Arroyo's defiance of their discovery obligations and the Court's orders warrant sanctions; the only question is the appropriate sanction. As MSD and Arroyo have made clear, monetary sanctions mean nothing to them. They have already collectively accrued $65,800,000 in contempt sanctions because they refuse to comply with the Court's preliminary injunction issued nearly a year ago and related orders. They have not paid a penny of those sanctions, nor have they

shown any sign of complying with the preliminary injunction. To the contrary, the Court's contempt and asset freeze orders have prompted MSD and Arroyo to dissipate and conceal their assets. The Court has appointed a receiver over MSD as a result of its violation of the Court's asset freeze order. ECF Nos. 215; 227. And Arroyo deeded his Texas mansion to his sister for "love and affection" four days after the Court held him in contempt. ECF Nos. 45, 114-1. This pattern of conduct makes clear that further monetary sanctions or further orders directing compliance with discovery will make no difference. Instead, the Court should impose an evidentiary sanction in the form of an adverse inference against MSD and Arroyo as to what the requested discovery would have shown if produced: that Arroyo personally directed the transfer of MSD's assets after the date the asset freeze order was imposed on MSD. If MSD and Arroyo want to free themselves of that inference, and are in possession of documents and information requested by the subpoenas that show Arroyo did *not* direct the transfer of MSD's assets during the relevant period, the Court's adverse inference will incentivize them to produce those materials and come into compliance with the Court's discovery orders.

## BACKGROUND

### A. The Preliminary Injunction and Asset Freeze Order

On August 14, 2025, the Court issued an injunction prohibiting Defendant Media Deportes Mexico ("MDM"), and those acting in concert with it, from using certain trademarks belonging to Plaintiffs in Mexico and from pursuing litigation in Mexico related to those trademarks. ECF No. 29. On August 29, 2025, the Court held MDM, MSD, Grupo Lauman Holding, and Arroyo in contempt of the Court's injunction and fined the contemnors $200,000 per day, jointly and severally. ECF Nos. 44, 45 (the "Contempt Order"). On September 5, 2025, the Court stayed the effectiveness of its contempt order against Arroyo and Grupo Lauman Holding, ECF No. 47, and stayed the effectiveness of the Contempt Order as to MSD until a further hearing on the Contempt

Order, ECF No. 48.

On September 9, 2025, the Court modified the Contempt Order to lift the stay of effectiveness as against Arroyo and to make the civil contempt sanction payable to Plaintiffs as a compensatory sanction. ECF No. 73. In that same order, the Court also enjoined Arroyo and co-contemnors MDM and Grupo Lauman Holding from transferring any of their assets. *Id.* ("Arroyo Asset Freeze Order"). On September 19, 2025, the Court enjoined MSD from transferring any of its assets. ECF No. 95 ("MSD Asset Freeze Order"). On October 30, 2025, the Court lifted the stay of effectiveness on the Contempt Order as to MSD. ECF No. 137. To date, MSD and Arroyo have accrued approximately $65,800,000 in contempt sanctions payable to Plaintiffs.

On April 1, 2026, the Court held MSD in further contempt for violating the MSD Asset Freeze Order by dissipating assets from its bank accounts. ECF No. 215. On April 24, 2026, the Court appointed the Receiver over MSD as a contempt sanction. ECF No. 227.

### B. MSD Ignores a Court Order Compelling Its Compliance with an Information Subpoena.

On May 7, 2026, Plaintiffs served an information subpoena (the "May 7 Subpoena") on MSD via the Receiver to ascertain information relating to MSD's dissipation of its assets and violation of the MSD Asset Freeze Order. ECF No. 247-2, ¶¶ 2-3. On May 21, 2026, the Receiver made a small production in response to the May 7 Subpoena. *Id.* ¶ 4; *see also* ECF No. 247-5. In its production letter, the Receiver explained that its production was incomplete because the Receiver had "not yet received any cooperation from Mr. Arroyo or any officer, director or employee of MSD despite seeking assistance with responding to [Plaintiffs'] Requests." ECF No. 247-5. On May 26, 2026, the Receiver filed a report with the Court explaining that it had attempted to obtain access to MSD's books and records from MSD personnel but that MSD personnel had ignored the Receiver's requests. ECF No. 240. On June 25, 2026, Plaintiffs met and conferred

with the Receiver about the status of MSD's responses to the May 7 Subpoena. During that conference, the Receiver explained that MSD still had not granted the Receiver access to MSD's books, records, or communications. ECF No. 247-2 ¶ 5.

On June 30, 2026, Plaintiffs moved to compel MSD to comply with the May 7 Subpoena. ECF No. 247. On July 8, 2026, the Court granted the motion and ordered MSD personnel to provide the Receiver with access to the books, records, and communications required to respond to the May 7 Subpoena within seven days. The Receiver provided MSD personnel, including Manuel Arroyo, with a copy of the Court's order. Declaration of Robert W. Seiden ("Receiver Decl."), ¶ 2. The Court's deadline for MSD's compliance came and went; MSD did not give the Receiver access to its books, records, and communications, *id.*, and MSD produced nothing.

### C. Arroyo Ignores a Court Order Compelling His Compliance with an Information Subpoena.

After Plaintiffs could not obtain responsive information from MSD about Arroyo's role in transferring MSD's assets after the MSD Asset Freeze Order was entered, Plaintiffs served an information subpoena on Arroyo on June 30, 2026 (the "June 30 Subpoena"). ECF No. 252 ¶¶ 2-4. The June 30 Subpoena sought information about Arroyo's participation in the transfer of MSD's assets after the MSD Asset Freeze Order, as well as information about his participation in the transfer of MDM and Grupo Lauman Holding's transfer of assets in the same period. ECF No. 252-1. The June 30 Subpoena also sought information about Arroyo's own assets. *Id.* The return date for the June 30 Subpoena was July 7, 2026. *Id.* Arroyo did not respond to the June 30 Subpoena by that date or since. *See* ECF No. 252 ¶ 5; Declaration of Christopher T. Berg ("Berg Decl.") ¶ 3.

On July 8, 2026, Plaintiffs moved to compel Arroyo to comply with the June 30 Subpoena. ECF Nos. 250-253. Plaintiffs served Arroyo with the motion, ECF No. 255; he did not oppose or

respond to the motion. On July 17, 2026, the Court granted the motion and ordered Arroyo to comply with the June 30 Subpoena within seven days. ECF No. 256. That same day, Plaintiffs served Arroyo with the order via email. Berg Decl. ¶ 2, Ex. A. As of the filing of this motion, Arroyo has still not responded to the June 30 Subpoena or complied with the Court's July 17 order. *Id.* ¶ 3.

## LEGAL STANDARD

"[B]road post-judgment discovery in aid of execution is the norm in federal and New York state courts." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014). "Discovery of a judgment debtor's assets is conducted routinely under" Rule 69(a)(2), *First City, Tex. Houstom N.A. v. Rafidain Bank*, 281 F.3d 48, 54 (2d Cir. 2002), which provides: "In aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). "The purpose of discovery under Rule 69(a)(2) is to allow the Judgment Creditor to identify assets from which the judgment may be satisfied and consequently, the Judgment Creditor should be permitted to conduct a broad inquiry to uncover any hidden or concealed assets of the judgment debtor." 13 James Wm. Moore et al., Moore's Federal Practice-Civil § 69.04 (2008); *see also, e.g.*, *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, 2024 WL 1555231, at *2 (S.D.N.Y. Apr. 10, 2024) ("A judgment creditor is entitled to discovery from either the judgment debtor or a third party in order to determine whether the judgment debtor concealed any assets or transferred any assets so as to defraud the judgment creditor or improperly prevented the collection of the underlying judgment." (quoting *Lisogor v. Nature's Delight, Inc.*, 189 A.D.3d 1386, 1388 (2d Dep't 2020))).

## ARGUMENT

### A. MSD and Arroyo Are in Contempt of the Court's Orders Compelling Compliance with the May 7 and June 30 Subpoenas

There is no question that MSD and Arroyo are in contempt of the Court's orders. A party who disobeys a subpoena may be held in contempt if the party, "having been served [with the subpoena], fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). To prove contempt of a court order, the moving party "must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Next Invs., LLC v. Bank of China*, 12 F.4th 119, 134 (2d Cir. 2021) (internal quotation marks omitted).

All three elements are satisfied here. As to MSD: (1) this Court's order directing that MSD personnel cooperate with the Receiver to allow him to adequately respond to the May 7 Subpoena is clear and unambiguous; and (2) the Receiver has reported to Plaintiffs that MSD personnel still have not cooperated with his requests despite being sent the Court order, *see* Receiver Decl. ¶ 2. As to Arroyo: (1) this Court's order compelling him to comply with the June 30 Subpoena was unambiguous; and (2) he has provided no response whatsoever to the June 30 Subpoena despite being sent the Court order via email, *see* Berg Decl. ¶ 3. MSD and Arroyo's contempt of the Court's orders is clear. The silence from MSD and Arroyo in response to the Court's orders compelling them to comply with the subpoenas establishes that they have not diligently attempted to comply with the subpoenas in a reasonable manner. That silence is another instance of their course of conduct defying the Court's authority, which they have done since the inception of this action.

### B. An Adverse Inference Is the Appropriate Sanction Here

This Court has broad discretion to fashion an appropriate sanction, and here, it should impose an adverse inference as to what the responsive documents and information would have shown had they been produced so that MSD and Arroyo do not benefit from their noncompliance.

"[A] sanction imposed on a party held in civil contempt generally may serve either or both of two purposes: to coerce the contemnor into complying in the future with the court's order, or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.*, 673 F.2d 53, 56 (2d Cir. 1982) (citations omitted). "When . . . the purpose is coercive, the district court has broad discretion to design a remedy that will bring about compliance." *Id.* at 57 (citations omitted). The Court should consider several factors in the exercise of this discretion, including "the character and magnitude of the harm threatened by continued contumacy," "the probable effectiveness of any suggested sanction in bringing about compliance," and the "amount of the contemnor's financial resources and the consequent seriousness of the burden to (him)." *Id.* (cleaned up).

Imposing an adverse inference for refusing to comply with discovery orders is a well-recognized sanction in this discovery setting. In determining an appropriate discovery sanction, courts consider "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 3671036, at *21 (S.D.N.Y. July 18, 2017).

"If a party . . . fails to obey an order to provide or permit discovery," the court may "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims[.]" Fed. R. Civ. P. 37(b)(2)(A)(i). An adverse

inference is an appropriate sanction for the nonproduction of documents because "the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its [nonproduction]." *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 200 (E.D.N.Y. 2010); *see also Willingham v. Cnty. of Albany*, 593 F. Supp. 2d 446, 452 (N.D.N.Y. 2006) ("The purpose underlying the allowance of an adverse inference in civil cases is equitable, not punitive, and serves to vitiate the prejudice to the party denied discovery . . . ."). Such "adverse inference orders, preclusion orders, and orders 'deeming disputed issues determined adversely to the position of the disobedient party'" are generally appropriate where monetary sanctions are ineffective.[1] *Joint Stock Co.*, 2017 WL 3671036, at *20 (citation omitted); *see also, e.g.*, *New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 2024 WL 3549092, at *4–5 (E.D. Ky. July 26, 2024) (holding that where "purpose of the post-judgment discovery was to discover facts that would support a finding of alter ego," and the defendant "engaged in abusive practices for the sole purpose of frustrating the Plaintiffs' ability to extract the discovery," an adverse inference of the existence of an alter ego relationship was an appropriate sanction under Rule 37).

An adverse inference is the appropriate sanction here. MSD and Arroyo's non-compliance is willful: they have received notice of the orders compelling their compliance with the subpoenas, and they are simply continuing their strategy of ignoring the Court.[2] They are both well aware of the escalating sanctions the Court has imposed for their defiance of the myriad other orders it has

---

[1] MSD and Arroyo's status as non-parties does not change the appropriateness of an adverse inference. First, MSD and Arroyo are parties to the contempt proceedings that have resulted in sanctions against them. Second, courts impose adverse inferences on non-parties. *See, e.g.*, *LiButti v. United States,* 107 F.3d 110, 123–24 (2d Cir. 1997).

[2] On April 29, 2026, Arroyo acknowledged he receives email sent to marroyo@comtelsat.com.mx, including the service emails sent to him in relation to this action. *See Fox Corporation, et al. v. Manuel Arroyo*, Case No. 25-mc-02271 (S.D. Tex.), Dkt. No. 14-5 at 9–10.

issued, including the appointment of a receiver over MSD. MSD and Arroyo's conduct is an effort to conceal the facts from the Court—to prevent the Court from learning the conduct that MSD and Arroyo have undertaken to circumvent the Court's orders and continue the harm they are inflicting against Plaintiffs. The Court should not countenance such bad faith conduct designed to distort the facts and conceal violations of Court orders.

Furthermore, MSD and Arroyo's conduct is perpetuating the harm they have inflicted on Plaintiffs and preventing Plaintiffs from obtaining adequate remedies for that harm. MSD and Arroyo's conduct is obstructing Plaintiffs' ability to determine the individuals responsible for the violations of the MSD Asset Freeze Order and seeking appropriate remedies against those individuals. Without that information, Plaintiffs are unable to seek full recourse against the dissipation of MSD's assets, which they are entitled to in satisfaction of the Court's compensatory sanction, which itself was designed in part to remedy the harms Plaintiffs have suffered from MSD and Arroyo's failure to comply with the Court's preliminary injunction and related orders.

The requested adverse inference is also appropriate because it is consistent with the scant documentation that Plaintiffs received from MSD's records, which were produced by the Receiver. That documentation shows Manuel Arroyo[3] [redacted] For example, Exhibit B from the Berg Declaration [redacted]

[3] The Court has granted Plaintiffs permission to file redacted versions of Plaintiffs' papers that contain information that has been designated Confidential under the Court's protective order in this case. Unredacted versions have been filed with the Court under seal.

[redacted]

[redacted]

[redacted]

[redacted] Exhibit B was produced by the Receiver from documents that it obtained from MSD's former U.S. counsel. *Id.* It is sheer fortuity that Plaintiffs uncovered this evidence. Plaintiffs no doubt would have more evidence supporting the inferences that can be drawn from this document had MSD and Arroyo complied with their discovery obligations. The reason Plaintiffs do not is because of MSD and Arroyo's efforts to conceal documents like these. The requested adverse inference is warranted.

An adverse inference is also appropriate because MSD and Arroyo have made clear that a monetary sanction will not result in their compliance with the Court's discovery orders. Both have already accrued a staggering $65,800,000 in sanctions intended to coerce their compliance with the preliminary injunction. Neither have paid that sanction, nor have they indicated any intent to comply with the preliminary injunction. To the contrary, they both have endeavored to dissipate and conceal their assets to evade the Court's monetary sanction. *See* ECF Nos. 114-1, 215, 227. There is no point in a further monetary sanction in this instance; they will not pay it, and it will not bring about their compliance.

The more effective sanction is an adverse inference on the key fact that MSD and Arroyo are trying to conceal: that Arroyo personally directed MSD to transfer its assets after the date of the MSD Asset Freeze Order. Such a sanction bears a clear and appropriate relationship to the "character and magnitude of the harm threatened by continued contumacy," *Perfect Fit Indus.*, 673 F.2d at 57: it would remove the incentive for MSD and Arroyo to block Plaintiffs from inquiring into this critical issue. For that same reason, it is also the sanction most likely to bring about MSD and Arroyo's compliance with the Court's discovery orders: if the actual information and

documents responsive to the subpoenas show Arroyo did *not* direct the transfer of MSD's assets during the relevant period, MSD and Arroyo would be incentivized to produce those materials. The sanction also imposes no extra burden on MSD or Arroyo beyond compliance with the Court orders already issued.

## CONCLUSION

The appropriate sanction against Arroyo and MSD for their failure to comply with post-judgment discovery and this Court's orders compelling compliance is to deem as established fact that Arroyo directed MSD to transfer its assets after the Court imposed the MSD Asset Freeze Order. Anything less would permit MSD and Arroyo to perpetuate their contempt of Court and enhance their ability to inflict harm on Plaintiffs.

Dated: Los Angeles, California
August 3, 2026

Respectfully submitted,

STEPTOE LLP

By: ______________________
Christopher T. Berg

Eric M. George
GEORGE LLP
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697
egeorge@ellisgeorge.com

Katherine A. Petti, *pro hac vice*
Christopher T. Berg, *pro hac vice*
STEPTOE LLP
633 W. Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9543
Facsimile: (213) 439-9599

kpetti@steptoe.com
cberg@steptoe.com

Stephen P. Farrelly
GEORGE LLP
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629
sfarrelly@ellisgeorge.com

*Attorneys for Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC*